# Exhibit P





## Firearms Technology Criminal Branch
## Report of Technical Examination

244 Needy Road #1600
Martinsburg, WV 25405

Phone: 304-616-4300
Fax: 304-616-4301

| | |
|---|---|
| **To:**<br>Special Agent Nestor J. Vazquez<br>Bureau of Alcohol, Tobacco, Firearms and Explosives<br>135 West Central Blvd.<br>Suite 740<br>Orlando, FL 32801 | **Date:** 10/21/2021<br><br>**UI#:** 767070-21-0065<br><br>**RE:** AR Triggers - Bosnia<br><br>**FTCB#:** 2022-030-CJT<br>317970 |

| | |
|---|---|
| **Date Exhibit Received:** 10/14/2021 | **Type of Examination Requested:** |
| **Delivered By:** FedEx 2848 5453 4756 | Examination, Test, Classification |

**Note:** *This report has been amended to correct the components that comprise Exhibit 1.*

### Exhibit:

1. Two (2) ███████████, model Wide Open Trigger for AR-15, no serial number (suspected machinegun).

### Pertinent Authority:

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 C.F.R. 0.130 the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state and local law enforcement agencies regarding the Gun Control Act and the National Firearms Act.

The Gun Control Act (GCA), 18 U.S.C. § 921(a)(23), defines the term **"machinegun"** as:

*"...has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."*

The National Firearms Act (NFA), defines **"firearm"** to mean, in part: *"...(6) a machinegun...."* (See 26 U.S.C. § 5845(a).)

767070-21-0065
2022-030-CJT
Page 2

**Pertinent Authority (cont).:**

Also, the NFA 26 U.S.C. § 5845(b) defines "**machinegun**" as:

"...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or <u>combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*" (See 26 U.S.C. § 5845(b).)

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines the term "**firearm**" as:

"...*(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in 18 U.S.C. § 921); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the...[Attorney General]...finds by reason of the date of its manufacture, value, design and other characteristics is primarily a collector's item and is not likely to be used as a weapon.*"

Further, the NFA, 26 U.S.C. § 5842, "**Identification of firearms**," states:

"... *(a) Identification of firearms other than destructive devices. - Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the ...[Attorney General]... may by regulations prescribe. (b) Firearms without serial number. - Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the ... [Attorney General]... and any other information the...[latter]... may by regulations prescribe.*"

27 CFR § 479.11 defines the term "**machinegun**" and includes, in part: "...*For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter."*

767070-21-0065
2022-030-CJT
Page 3

**Findings:**

**Exhibit 1** consists of two (2) ▬▬▬▬▬▬▬, model Wide Open Trigger (WOT) for AR15, AR15-type drop-in fire-control groups, manufactured at an undetermined location, distributed by ▬▬▬▬▬▬ in Albuquerque, New Mexico, and marketed by ▬▬▬▬▬▬ of Gainesville, Florida. Neither of the devices in the Exhibit is marked with a serial number.

The Exhibit 1 devices are each comprised of the following individual component parts:

- One (1) aluminum housing
- One (1) hammer
- One (1) hammer spring
- Two (2) tubular pins
- One (1) trigger
- One (1) trigger spring
- One (1) locking bar
- Three (3) solid pins
- One (1) locking bar spring
- One (1) locking bar guide rod
- Two (2) pins with interior threads at both ends

Each Exhibit 1 devices bears the following markings on the right and left side of its aluminum housing:

> **PATENT PENDING**
> **WOT**
> **WIDE OPEN TRIGGERS**

The Wide Open Trigger device is designed to allow "drop-in" installation into AR15-type firearms. The device is designed to function in conjunction with a standard weight buffer and M16-type machinegun bolt carrier rather than a standard semiautomatic AR15-type bolt carrier. The M16-type bolt carrier incorporates a contact surface that is unnecessary on AR15-type semiautomatic firearms because this surface is designed to "trip" the auto sear in standard M16-type machineguns. This surface is utilized to similarly "trip" the "locking bar" in WOT equipped AR15-type firearms during the operating cycle. Indeed, it is telling that the M16 pattern bolt carrier assembly interacts with the "locking bar" in the same manner that it interacts with an automatic sear.

Basic operation of the WOT device installed within an AR15-type firearm having a M16-type machinegun bolt carrier is as follows:

- Firearm ready to fire with the hammer in a "cocked" position being held by the sear surface on the front of the trigger.

**Finding (Cont.):**

- Rearward pressure is applied to "pull" the trigger thus releasing the hammer, which falls impacting the firing pin and discharging the primer, which in turn ignites the propellant powder to accelerate the projectile (bullet) down the rifled bore.

- As the projectile moves past the gas port, a quantity of the gas is bled off through the gas port, gas tube and bolt carrier key into a cylindrical section in the bolt carrier where it expands and drives the bolt carrier rearward. Note that this happens rapidly while rearward "pull" pressure from the trigger pull is generally maintained on the trigger. During the first rearward travel of the carrier assembly, the bolt is rotated by the cam pin acted on by the bolt carrier cam slot. This rotation disengages the bolt lugs from the barrel extension lugs so the bolt is unlocked. The bolt carrier group then continues rearward with the unlocked bolt assembly which starts to act upon the hammer.

- The fired cartridge case is withdrawn from the chamber as the bolt carrier group continues its rearward travel, also continuing to further depress the hammer.

- As the spent case is fully drawn out of the chamber, the spring-loaded ejector, acting against the left side of the case head, pushes the spent case out of the ejection port. The bolt carrier group continues rearward still depressing the hammer.

- At this point, the operation of a firearm with a WOT differs from a semiautomatic AR15-type firearm. In a semiautomatic AR-15-type firearm, the hammer is pushed down by the bolt carrier and is retained by the disconnector. Upon the shooters release of the trigger, the disconnector releases the hammer, and the hammer comes to rest on the trigger sear surface, ready to expel a second projectile with a subsequent pull of the trigger. *Conversely*, in the WOT equipped firearm, as the bolt carrier group continues rearward, the hammer is pushed down by the bolt carrier group, but it also pushes down on the trigger which forces it forward. The trigger is pushed slightly forward as an automatic function of the WOT design without any further action by the shooter. This causes the hammer to engage the triggers sear surface. Differing from a standard semiautomatic firearm, the unique WOT trigger design also engages the "locking bar" to momentarily keep the trigger in place so that the shooter may not override the automatic functioning of the weapon.

- As the bolt carrier moves forward into battery using the force of the action spring, the contact surface on the required M16-type machinegun bolt carrier (which is designed to interact with the automatic sear on M16-type firearms), strikes the WOT "locking bar", releasing the trigger. The necessity of an M16-type machinegun bolt carrier is clear at this point—it acts on the "locking bar" in the same way it acts on the machinegun auto-sear. Specifically, when the bolt moves back in to firing position, it contacts the surface area on the "locking bar" or the auto sear and automatically fires a subsequent round. Note that the disconnector on the AR15-type semiautomatic retains the hammer until the shooter manually releases the trigger.

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 5

**Findings (Cont.):**

- After firing a shot with a <u>semiautomatic</u> AR15-type firearm, the shooter is required to manually release the trigger which releases the hammer from the disconnector, and then manually pull the trigger a second time to fire a subsequent shot.

- If the shooter maintains constant rearward pressure from the original single function (pull) of the trigger, the self-acting or self-regulating mechanism of the WOT device allows subsequent projectiles to be fired during the continuing cycle of operation.

- From the moment of the application of trigger pressure, and as long as rearward pressure is applied to the trigger through a single constant pull, a firearm with a WOT continues to fire until the firing finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted; this firing takes place regardless of the purported "forced reset" pushing the trigger forward.

Additional rounds are fired based on the automatic functioning of the firearm and the continuous pressure applied to the trigger during the single continuous function (pull) of the trigger. With both an WOT equipped AR15-type firearm, and an M16-type machinegun (with the selector set in its "Full Auto" position), the shooter maintains a constant pull of the trigger to fire subsequent shots with a single function (pull) of the trigger, through both the M16-type machinegun and WOT equipped AR15-types self-acting or self-regulating mechanisms during the operating cycle of the firearms.

To function test the Exhibit 1 WOT devices, I installed one of the devices into an AR15-type firearm obtained from the ATF National Firearms Collection (NFC). The ATF NFC firearm was comprised of a Superior Arms S15 receiver, M16-type barreled upper assembly (having the required M16-type machinegun bolt carrier), and a standard buffer.

The Exhibit 1 device (installed within the ATF exemplar firearm) was test fired on October 20, 2021, at the ATF test range, Martinsburg, West Virginia, using commercially available, Federal brand, 5.56x45mm caliber ammunition and a magazine from the NFC.

I first inserted one round of ammunition into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger. The NFC exemplar weapon, having the Exhibit 1 device installed, discharged the chambered cartridge, and expelled a projectile by the action of an explosive. I repeated this method of test-fire one additional time, obtaining the same result. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that the Exhibit 1 equipped firearm had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

Special Agent Nestor J. Vazquez
767070-21-0065
2022-030-CJT
Page 6

**Findings (Cont.):**

I next inserted a two-round ammunition load into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger holding it to the rear. The NFC exemplar weapon, having the Exhibit 1 device installed, fired two (2) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I continued this testing protocol by inserting a five-round ammunition load into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger holding it to the rear. The NFC exemplar weapon, having the Exhibit 1 device installed, fired five (5) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

The WOT "drop-in" device is uniquely designed to interact with the required M16-type machinegun bolt carrier during the cycle of operation in the same way that the M16-type machinegun bolt interacts with the machinegun auto sear. This allows the weapon to function as a self-acting, or self-regulating mechanism, with one continuous pull of the trigger, and allows the weapon to shoot automatically, more than one shot, without manual reloading, by a single function (pull) of the trigger, until its trigger is released, or the ammunition is exhausted.

While on standard semiautomatic AR15-type firearms, the cycle of operation is interrupted between shots by a disconnector which requires that the trigger be both manually released and manually pulled to fire a subsequent shot, no such action is required to fire subsequent shots on the WOT equipped AR15-type firearm. Indeed, the WOT design requires only that the shooter maintain the initial trigger pull, while the self-acting or self-regulating WOT mechanism forces the trigger forward during the rearward movement of the required M16-type machinegun bolt carrier, and then automatically releases the trigger and hammer, as the "locking bar" interacts with the "trip surface" on the M16-type machinegun bolt carrier, as the firearm goes into battery. All of these actions occur if the shooter maintains a single, constant pull of the trigger.

It is worth noting that the legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, consistent with the language of the statute and Congressional intent, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger.

As received, each device in Exhibit 1 is a combination of parts, designed and intended for use in converting a weapon (AR15-type) into a machinegun; therefore, each is a "**machinegun**" as defined in the GCA and NFA.

**Conclusions:**

Each device in **Exhibit 1** is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, each is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

Each device in **Exhibit 1** is a "**machinegun**" as defined in 18 U.S.C. § 921(a)(23).

ATF Form    3311.2
Revised September 2014

**Conclusions (cont.):**

Each device in **Exhibit 1**, being a machinegun, are also each a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).

Neither device in **Exhibit 1** is marked in accordance with 26 U.S.C. § 5842(a).

Examined by:

CODY
TOY
Digitally signed by
CODY TOY
Date: 2021.10.21
08:52:22 -04'00'

Cody J. Toy
Firearms Enforcement Officer

Approved by:

GREGORY
STIMMEL
Digitally signed by
GREGORY STIMMEL
Date: 2021.10.21
09:01:52 -04'00'

Gregory Stimmel
Chief, Firearms Technology Criminal Branch

Attachments: Eight pages bearing photos.

**Enclosed is a Firearms Technology Criminal Branch report provided in response to your request for assistance. Please be aware that these documents constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103. Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. § 6103(h)(2)(C) and (o)(1). Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**



xhibit 1 as received

767070-21-0065   2022-030-CIT





xhibit 1 as received

767070-21-0065   2022-030-CIT

xhibit 1 as received markings

Lockir

Trigger



767070-21-0065   2022-030-CJT



xhibit 1 top down view

767070-21-0065   2022-030-CJT

xhibit 1 top down/hammer forward



767070-21-0065   2022-030-CIT



xhibit 1 installed in NFC S-15

767070-21-0065   2022-030-CJT



hibit 1 installed in NFC S-15/hammer forwar

767070-21-0065   2022-030-CIT



xhibit 1 installed in NFC S-15

767070-21-0065   2022-030-CIT