IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | )<br>)<br>) |
| Plaintiffs, | ) Case No. 4:23-cv-00830-O<br>) |
| v. | )<br>) |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiffs request a temporary restraining order in this case to preserve the status quo pending a hearing on the merits of Plaintiffs' forthcoming Motion for Preliminary Injunction. As described in the Complaint (ECF No. 1, at ¶¶ 41-47), Defendants have taken the view that forced reset triggers are "machineguns" and that the possession of forced reset triggers by private citizens is generally prohibited. Plaintiffs disagree with this interpretation and have brought this suit to vindicate their rights.

However, by bringing this suit, at least two individual Plaintiffs, James Joseph Ross Wheeler and Travis Speegle ("Individual Plaintiffs"), have placed themselves in potential jeopardy by acknowledging that they currently own and possess forced reset triggers. *See* Declaration of James Joseph Ross Wheeler, App'x at 1; Declaration of Travis Speegle, App'x at 3. There is a credible threat, based on the information contained in these Declarations, that Defendants will try to seize the Individual Plaintiffs' property immediately and without warning and/or criminally or civilly prosecute them.

1

Defendants have a track record of pursuing civil and criminal enforcement actions against people and companies that own, possess, or sell forced reset triggers. (*See* ECF No. 1 at ¶¶ 48-56). Defendants have previously visited another Plaintiff personally, Mr. Patrick Carey, and threatened criminal and/or civil consequences if he did not "voluntarily" surrender his forced reset triggers. *See* Declaration of Patrick Carey, App'x at 5.  Defendants have recently stated that they are "chomping at the bit" to seize outstanding forced reset triggers in other civil cases.  *See* Declaration of Michael Columbo, App'x at 9. And Defendants have followed through on their stated intentions, executing a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC—one of the locations where the government was "chomping at the bit" to seize outstanding forced reset triggers—on August 4, 2023, a mere ten days ago.  (*See* ECF No. 1 at ¶ 55).

Plaintiffs will be irreparably harmed if their triggers are seized.  First, they will lose the use and enjoyment of their property during the pendency of this litigation.  Second, they will incur nonrecoverable compliance costs. Third, they risk being criminally and/or civilly prosecuted.

In order to prevent these harms, the Individual Plaintiffs seek a temporary restraining order preserving the status quo until such time as the Court is able to hear Plaintiffs' separately filed Motion for a Preliminary Injunction.

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7.1, Plaintiffs have provided notice to counsel for Defendants and conferred regarding this Motion.  On August 11, 2023, Plaintiffs' Counsel Benjamin Sley spoke via telephone with Mr. Michael Clendenen with the U.S. Department of Justice.  Plaintiffs understand that Mr. Clendenen represents Defendants in this matter.  Plaintiffs asked whether Defendants would forgo enforcement against the three individual Plaintiffs until such time as the Court is able to hear Plaintiffs' forthcoming Motion for Preliminary Injunction.  Defendants have refused to disavow enforcement against the three individual Plaintiffs

in this case and indicated that they oppose this Motion. Declaration of Benjamin Sley, App'x at 65.

## ARGUMENT

**I.   Plaintiffs are Likely to Succeed on the Merits**

The Court of Appeals for the Fifth Circuit spoke clearly: the National Firearms Act unambiguously "requires that a machinegun be capable of firing automatically once the *trigger* performs a single function." *Cargill v. Garland*, 57 F.4th 447, 463 (5th Cir. Jan. 6, 2023) (en banc). Forced reset triggers do not enable a weapon to fire multiple rounds with a single function of the trigger. Thus, they are not "machineguns."

In an attempt to circumvent this conclusion, Defendants have relied on ATF regulations—specifically, 27 C.F.R. § 479.11—and administrative opinions. This reliance is misplaced. ATF regulations and opinions cannot contradict the plain meaning of the underlying statute. The Fifth Circuit in *Cargill* held that the ATF's regulation exceeded the agency's authority, in violation of the Administrative Procedure Act. Moreover, the administrative opinions produced by the ATF rely on the same flawed interpretation of "machinegun," which dooms the agency's regulation and thus do not support Defendants' position.

The ATF's interpretation of "machinegun" set forth in section 479.11 was unambiguously rejected by the Fifth Circuit. As described above, in 2018, the ATF revised section 479.11, expanding the definition of "machinegun" by asserting that "'single function of the trigger' means a single pull of the trigger and analogous motions." This language was understood to be aimed at criminalizing the manufacture, sale, and possession of "bump stocks." "A bump stock is an accessory that attaches to a semi-automatic weapon and assists the shooter to engage in bump firing. Bump firing, in turn, is a technique whereby a shooter uses a firearm's natural recoil to

quickly reengage the trigger, resulting in an increased rate of fire." *Cargill*, 57 F. 4th at 453. A skilled shooter using a bump firing technique can fire multiple rounds with a single motion of the shooter's finger by depressing the trigger, holding the finger still, and allowing the recoil of the weapon to press the trigger against the stationary finger. *See id.* at 454 ("With a bump stock, the shooter need not pull and release his trigger finger. But the shooter must still apply forward pressure to the weapon's forebody in order to maintain the shooting mechanism.").

The ATF's regulation and its application to bump stocks was challenged in *Cargill*. *Cargill* first examined the statutory language of the National Firearms Act and determined that there are two elements for a weapon or part to qualify as a "machinegun": it must be capable of firing multiple rounds by a single function of the trigger and it must operate automatically.

Single function of the trigger means single function of the *trigger*, not a single pull or action by the shooter. Per the court, "[t]he statutory definition of machinegun utilizes a grammatical construction that ties the definition to the movement of the trigger itself, and not the movement of a trigger finger. . .. The Government offers nothing to overcome this plain reading[.] . . . [T]he statutory definition of machinegun unambiguously turns on the movement of the trigger and not a trigger finger." *Cargill*, 57 F. 4th at 460; *see also United States v. Alkazahg*, 81 M.J. 764, 780 (N. M. Ct. Crim. App. 2021) ("The best read implies that the shooter initiates the trigger function by some action, such as pulling the trigger—or it could be by just pushing a button—and it is the follow-on action where the trigger acts out its mechanical design or purpose that speaks to the 'function of the trigger.' The statute does not say 'by a single function of the trigger finger' nor does it say 'by a single pull of the trigger in addition to external pressure from the shooter's non-firing hand.'"). This statutory interpretation is binding on this Court and effectively forecloses

any reliance on section 479.11 or its interpretation of "single function of the trigger" as encompassing merely a single "pull" of the trigger.

Forced reset triggers do not fire multiple rounds with a single function of the trigger, particularly as distinct from a single action of the trigger finger. The trigger moves forward into its reset state and is depressed to release the hammer from its sear surface —*i.e.*, functions—for each and every round fired. This process is illustrated in the video demonstration available here: https://dhillonlaw.box.com/s/83pwi4a97id478f1nv31rv05okda2ccd. *See* Declaration of Cole Leleux, App'x at 11-13; *see also generally* Declaration of Daniel O'Kelly, App'x 17-18. As this footage shows, when using a forced reset trigger, the trigger functions for every round fired.

Automatically means "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Staples v. United States*, 511 U.S. 600, 603 (1994). *Cargill* further explained "the phrase 'by a single function of the trigger' modifies the adverb 'automatically.' Thus, the condition is satisfied only if it is the trigger that causes the firearm to shoot automatically." *Cargill*, 57 F. 4th at 463 (citing *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 43 (D.C. Cir. 2019) (Henderson, J., concurring in part and dissenting in part) ("'Automatically' cannot be read in isolation. On the contrary, it is modified—that is, limited—by the clause 'by a single function of the trigger.'"); *Aposhian v. Wilkinson*, 989 F.3d 990, 896 (10th Cir. 2021) (mem.) (Tymkovich, C.J., dissenting)). "Automatic" thus may be read to mean that firing "maintain[s] if all a shooter does is initially pull the trigger." *Cargill*, 57 F.4th at 463.

Forced reset triggers do not fire "automatically" with a single function of the trigger. If all a shooter does is initially pull the trigger, the weapon will fire one round. If a shooter attempts to resist

5

the reset and hold the trigger in a depressed position, the weapon will malfunction. *See* Declaration of Daniel O'Kelly, App'x at 30.

*Cargill* determined that *Chevron* deference does not save the ATF's regulation. The ATF did not invoke *Chevron* deference, but per *Cargill*, "[t]he *Chevron* framework does not apply for a second, independent reason: the statute which the Final Rule interprets imposes criminal penalties" and "the Supreme Court has 'never held that the Government's reading of a criminal statute is entitled to any deference.'" *Cargill*, 57 F.4th at 466, 467 (quoting *United States v. Apel*, 571 U.S. 359, 369 (2014)).

Finally, *Cargill* determined that the rule of lenity applies to any ambiguity in the National Firearms Act and Gun Control Act and prevents the government from adopting its broader regulatory interpretation. *See Cargill*, 57 F. 4th at 469-471.

In sum, *Cargill* expressly rejected the ATF's regulatory interpretation of "machinegun" embodied in section 479.11, holding that it exceeded the agency's statutory authority and violated the Administrative Procedure Act. *Cargill* is binding precedent on this Court. Its holding and logic dictate that forced reset triggers are not machine guns for precisely the same reason that bump stocks were held not to be machineguns in that case. Thus, Plaintiffs are likely to prevail on the merits of their claims.

II. **There is a Substantial Threat that Plaintiffs Will Be Irreparably Harmed**

By bringing this suit, at least two individual Plaintiffs have placed themselves in potential jeopardy by acknowledging that they currently own and possess forced reset triggers. *See* Declaration of James Joseph Ross Wheeler, App'x at 1; Declaration of Travis Speegle, App'x at 3. There is a credible threat that, based on the information contained in these Declarations, Defendants will try to seize Plaintiffs' property and/or prosecute the Individual Plaintiffs.

Plaintiffs will be irreparably harmed if their triggers are seized. First, they will lose the use and enjoyment of their property during the pendency of this litigation. Second, they will incur nonrecoverable compliance costs. Third, they risk criminal and/or civil prosecution and the attendant loss of liberty associated with it.

Defendants have a track record of pursuing civil and criminal enforcement actions against people and companies that own, possess, or sell forced reset triggers. (*See* ECF No. 1 at ¶¶ 48-56). Defendants have previously personally visited one Plaintiff, Mr. Patrick Carey, and threatened criminal and/or civil consequences if he did not "voluntarily" surrender his forced reset triggers. *See* Declaration of Patrick Carey, App'x at 5. Defendants have stated that they are "chomping at the bit" to seize outstanding forced reset triggers in other civil cases. *See* Declaration of Michael Columbo, App'x at 9. And Defendants have followed through on their stated intentions, executing a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC—one of the locations where the government was "chomping at the bit" to seize outstanding forced reset triggers—on August 4, 2023, a mere ten days ago. (*See* ECF No. 1 at ¶ 55).

Plaintiffs will be irreparably harmed if Defendants seize their triggers.

First, they will lose the use and enjoyment of their property during the pendency of this litigation. This loss of use and enjoyment cannot be compensated after the fact.

Second, they will incur nonrecoverable compliance costs. "[C]omplying with [an agency order] later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Wages and White Lion Investments, L.L.C. v. United States*, 16 F.4th 1130, 1142 (5th Cir. 2021) (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)); *see also Vanderstok, et al. v. Garland, et al.*, 625 F.Supp.3d 570, 584 (N.D. Tex. 2022) (quoting *Texas*). Accordingly, "Federal courts have long recognized that, 'when the threatened harm is more than de minimis, it is not so

much the magnitude but the irreparability that counts for purposes of a preliminary injunction.'" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Canal Auth. V. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974)); *see also Vanderstok*, 625 F.Supp.3d at 584 (quoting *Enter. Int'l.*). And "compliance costs are 'likely unrecoverable,' usually 'because federal agencies generally enjoy sovereign immunity for any monetary damages.'" *Vanderstok*, 625 F.Supp.3d at 584 (quoting *Wages and White Lion Investments*, 16 F.4th at 1142).

Mr. Speegle has estimated the value of his forced reset triggers at $4,000. *See* Declaration of Travis Speegle, App'x at 3. Mr. Wheeler has an ownership interest in three forced reset triggers, which are valued at approximately $1,275. Declaration of James Joseph Ross Wheeler, App'x at 1. In the absence of a temporary restraining order, there is a substantial risk that Mr. Speegle and Mr. Wheeler will incur thousands of dollars in compliance costs through the seizure of their triggers.

### III. The Balance of Equities Weighs in Favor of Plaintiffs

Individual Plaintiffs are law-abiding citizens who wish to continue lawfully exercising freedoms they have enjoyed for several years. Individual Plaintiffs are U.S. citizens who are lawfully permitted to possess firearms. Plaintiff Wheeler even holds a Federal Firearms License. As described above, Plaintiffs will be irreparably harmed in the absence of a preliminary injunction through both the imposition of compliance costs and through the chilling impact of Defendants' interpretation.

In other actions, Defendants have pointed to an interest in public safety and preventing dangerous individuals from possessing forced reset triggers. However, there are no facts that connect these interests to forced reset triggers generally and the Individual Plaintiffs in this case specifically.

Defendants have pointed to a list of public mass shootings to justify their actions. But these are effectively nonsequiturs; none of these tragic incidents involved the use of a force reset trigger. Moreover, Defendants can point to no facts to suggest that Individual Plaintiffs—who can lawfully purchase and use AR-15 rifles and bump stocks—pose any threat, let alone any additional threat, to the public by virtue of their possession of forced reset triggers, especially given the strong likelihood that such possession is fully legal.

In short, the balance of equities favors Plaintiffs.

## CONCLUSION

For the foregoing reasons, this Court should enter a temporary restraining order preserving the status quo for the next fourteen (14) days or until this Court is able to rule on Plaintiffs' forthcoming Motion for Preliminary Injunction.

Respectfully submitted,

/s/ Whitney A. Davis
Whitney A. Davis (TX Bar No. 24084843)
Ben Sley (TX Bar No. 18500300)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue
Suite 300
Weatherford, TX 76086
Telephone: (703) 748-2266
whit@ekdlaw.com
ben@ekdlaw.com

David A. Warrington*
Jonathan M. Shaw*
Gary M. Lawkowski*
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
dwarrington@dhillonlaw.com

>jshaw@dhillonlaw.com
>glawkowski@dhillonlaw.com
>
>ATTORNEYS FOR PLAINTIFFS
>
>Glenn Bellamy*
>WOOD HERRON & EVANS
>600 Vine Street, Suite 2800
>Cincinnati, OH 45202
>Telephone: 513-707-0243
>gbellamy@whe-law.com
>
>ATTORNEY FOR PLAINTIFF
>NATIONAL ASSOCIATION OF GUN
>RIGHTS, INC.
>
>*Application for admission
>pro hac vice pending