**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:23-cv-00830-O |
| v. | ) ) | |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiffs request a preliminary injunction order in this case to prevent Defendants from pursuing civil and criminal enforcement actions relating to their erroneous classification of forced reset triggers as "machineguns." Specifically, Plaintiffs seek a preliminary injunction enjoining Defendants from:

1. Initiating or pursuing criminal prosecutions against persons for possessing forced reset triggers;

2. Initiating or pursing civil proceedings against persons for possessing, selling, or manufacturing forced reset triggers;

3. Initiating or pursuing criminal prosecutions against persons for representing to the public or potential buyers and sellers that forced reset triggers are not machineguns;

4. Initiating or pursing civil actions against persons for representing to the public or potential buyers and sellers that forced reset triggers are not machineguns;

5. Sending "Notice Letters" or other similar communications to known or suspected owners, sellers, and manufacturers of forced reset triggers stating that forced reset triggers are machineguns;

6. Requesting that any person "voluntarily" surrender their forced reset trigger to the government based upon the claim that forced reset triggers are machineguns;

7. Destroying any surrendered or seized forced reset triggers; or

8. Otherwise interfering in the possession and exchange of forced reset triggers.

Pursuant to Local Rule 7.1, Plaintiffs conferred with counsel for Defendants regarding this Motion. Defendants indicated that they oppose this Motion.

Date: August 15, 2023

Respectfully submitted,

/s/ Whitney A. Davis
Whitney A. Davis (TX Bar No. 24084843)
Ben Sley (TX Bar No. 18500300)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue
Suite 300
Weatherford, TX 76086
Telephone: (703) 748-2266
whit@ekdlaw.com
ben@ekdlaw.com

David A. Warrington*
Jonathan M. Shaw*
Gary M. Lawkowski*
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com

ATTORNEYS FOR PLAINTIFFS

Glenn Bellamy*

WOOD HERRON & EVANS
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

ATTORNEY FOR PLAINTIFF
NATIONAL ASSOCIATION OF GUN
RIGHTS, INC.

*Application for Admission
pro hac vice pending*

## CERTIFICATE OF CONFERENCE

This Motion is opposed.  Pursuant to Local Rule 7.1, a conference was held by telephone on August 15, 2023, between Mr. Benajmin Sley, counsel for Plaintiffs, and Mr. Michael Clendenen, counsel for Defendants. The Parties were unable to reach agreement because Defendants were unwilling to agree to refrain from pursuing civil and/or criminal proceedings against the Plaintiffs, including Mr. Carey, Mr. Wheeler, and Mr. Speegle, relating to their current or past ownership or possession of forced reset triggers.

Date: August 15, 2023                    Respectfully submitted,

                                         /s/ Whitney A. Davis
                                         Whitney A. Davis (TX Bar No. 24084843)
                                         Ben Sley (TX Bar No. 18500300)
                                         EGGLESTON KING DAVIS, LLP
                                         102 Houston Avenue
                                         Suite 300
                                         Weatherford, TX 76086
                                         Telephone: (703) 748-2266
                                         whit@ekdlaw.com
                                         ben@ekdlaw.com

                                         David A. Warrington*
                                         Jonathan M. Shaw*
                                         Gary M. Lawkowski*
                                         DHILLON LAW GROUP, INC.

2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com

ATTORNEYS FOR PLAINTIFFS

Glenn Bellamy*
Wᴏᴏᴅ Hᴇʀʀᴏɴ & Eᴠᴀɴs
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

ATTORNEY FOR PLAINTIFF
NATIONAL ASSOCIATION OF GUN
RIGHTS, INC.

*Application for Admission
pro hac vice pending

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | ) ) ) |
| Plaintiffs, | ) Case No. 4:23-cv-00830-O ) |
| v. | ) ) |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

(ORAL ARGUMENT REQUESTED)

The Court of Appeals for the Fifth Circuit spoke clearly: in order to be a "machinegun," a weapon or part has to fire multiple rounds with a single function of the trigger. *Cargill v. Garland*, 57 F.4th 447, 463 (5th Cir. Jan. 6, 2023) (en banc). Forced reset triggers do not fire multiple rounds with a single function of the trigger. Instead, they make it easier for users to function the trigger to fire subsequent rounds. Thus, they are not "machineguns."

Nevertheless, Defendants have continued to claim that forced reset triggers are prohibited and to act on that erroneous claim. *See*, *e.g.* Declaration of Patrick Carey, App'x at 5-8. Defendants have a track record of pursuing civil and criminal enforcement actions against people and companies that own, possess, or sell forced reset triggers.[1] Defendants have previously visited another Plaintiff

---

[1] *See*, *e.g.*, Second Superseding Indictment at Count One, *U.S. v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun, that is, six (6) Rare Breed Triggers FRT-15"); Indictment at Count Two, *U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for possessing a Rare Breed FRT-15 trigger); Superseding Indictment at Count One, *U.S. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for possessing three Rare Breed FRT-15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger); Complaint, *United States of America v. Rare Breed Triggers, LLC, et al.*, Case No. 1:23-cv-00369-NRM-

personally, Mr. Patrick Carey, and threatened criminal and/or civil consequences if he did not "voluntarily" surrender his forced reset triggers. *See* Declaration of Patrick Carey, App'x at 5, 7-8. Defendants have recently stated that they are "chomping at the bit" to seize outstanding forced reset triggers in other civil cases. *See* Declaration of Michael Columbo, App'x at 9. Defendants have followed through on their stated intentions, executing a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC—one of the locations where the government was "chomping at the bit" to seize outstanding forced reset triggers—on August 4, 2023, a mere ten days ago. *Id.* As of the date of this filing, Defendants have refused to disavow enforcement against the three individual Plaintiffs in this case during the pendency of this Motion.  Declaration of Benjamin Sley, App'x at 65.

Plaintiffs should not be forced to vindicate their rights in this matter while Defendants hang a criminal and civil "Sword of Damocles" over their heads.  This Court should grant Plaintiffs' Motion for a preliminary injunction enjoining Mr. Merrick Garland, in his official capacity as Attorney General of the United States, the United States Department of Justice ("DOJ"), Mr. Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, and Firearms, and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") (collectively, "Defendants") from pursuing civil or criminal enforcement actions against persons who are otherwise legally able to own or possess firearms for the manufacture, sale, ownership, or possession of forced reset triggers.

---

RML (E.D.N.Y. Jan. 19, 2023) (Civil proceedings against at least one company and two individuals involved in the manufacture and sale of forced reset triggers.).

## I.      Background

### a.  Operation of Forced Reset Triggers

A "forced reset trigger" is a semi-automatic trigger assembly that allows the trigger to "reset" quicker, in turn allowing the user to fire the firearm quicker than with a standard trigger. *See* Declaration of Daniel O'Kelly, App'x at 18.

In an AR-15 equipped with a standard semi-automatic trigger, the function of the trigger is to release the hammer. This occurs when the trigger is pulled back to the point that a "trigger sear" releases the hammer from its retained position. After being released by the trigger, the hammer pivots to contact a firing pin.  The firing pin then strikes a chambered ammunition cartridge or "round," causing gunpowder in the cartridge to combust and propel the cartridge's bullet out of the barrel of the firearm, *i.e.*, firing.  *See generally id.* at 16-19.

Once fired, a standard semi-automatic trigger will not fire again until the trigger is "reset." This is what distinguishes a semi-automatic firearm from a machinegun, which is a fully automatic firearm. In a machinegun, the trigger does not need to reset to fire subsequent rounds after the first and can fire multiple rounds from a single function of the trigger.  *See id.*, App'x at 19.

A standard semi-automatic trigger resets due to its trigger-return spring moving the trigger forward until the trigger sear retains the hammer again. When this occurs, the trigger is in its ready-to-fire or "set" position and can function once again by releasing the hammer.  *See generally id.*, App'x at 16-19.

An FRT, in contrast, is a device that forcibly returns the trigger to its "reset" state, *i.e.*, its ready-to-fire or "set" position.  In the commercialized FRT designs at issue in this litigation, the trigger is forcibly reset by the hammer when the bolt carrier cycles to the rear. A "locking bar" mechanically locks the trigger in its reset state, preventing the user from moving the trigger

rearward to function by releasing the hammer, until the bolt has returned to the in-battery position and the firearm is safe to fire. When firing multiple shots using an FRT, the trigger must still reset after each round is fired and must separately function to release the hammer by moving far enough to the rear in order to fire the next round.  This process is visible in the two videos illustrating the mechanics of an FRT and comparing the operations of an AR-15 fitted with an FRT to a machinegun, available here: https://dhillonlaw.app.box.com/s/83pwi4a97id478f1nv31rv05okda2ccd. *See also* Declaration of Cole Leleux, App'x at 11-13 (describing the videos and creation of same).

> **b. Statutory Definition of a Machinegun**

The 1934 National Firearms Act (26 U.S.C. Chapter 53) ("NFA") criminalized the possession or transfer of an unregistered firearm, while also prohibiting the registration of firearms otherwise banned by law. *See* 26 U.S.C. § 5812(a) (registration prohibited "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law"); *see also* 26 U.S.C. § 5861 (prohibited acts).  In 1968, Congress passed the Gun Control Act ("GCA") criminalizing possession of firearms for certain classes of people. *See* 18 U.S.C. § 921 *et seq.*  The Hughes Amendment to the 1986 Firearm Owners Protection Act ("the machinegun ban") amended the GCA to generally prohibit Americans from possessing and transferring machineguns.[2] 18 U. S.C. § 922(o).  Thus, with limited exceptions for governmental actors and machineguns that were in existence and registered prior to the effective date of the statute, May 19, 1986, it is a federal felony offense for any person to "transfer or possess a machinegun." 18 U.S.C. § 922(o). This offense is punishable by up to 10 years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2).

As defined under both the GCA and NFA, the term "machinegun" means:

---

[2] There are exceptions for government actors and machineguns that were in existence and registered prior to the effective date of the statute, May 19, 1986.

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(24) ("The term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b)").

The speed at which a weapon can be fired (i.e., "rate of fire") is not referred to in the statutory definition of a machinegun.

### c.   ATF Definition of "Machinegun"

Until 2018, ATF regulations mirrored the federal definition of the term "machinegun" with respect to firearms manufactured and owned in the United States. 27 C.F.R. §§ 478.11, 479.11. For example, 27 C.F.R. § 479.11 (2017) stated:

> **Machine gun.** Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

In 2018, in an effort to broaden the statutory definition, the ATF "re-interpreted" the statutory definition to add the language shown in italics below:

> **Machine gun**. Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person. *For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple*

*rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.*

27 C.F.R. § 479.11 (2018) (emphasis added); *see also* ATF, *Final Rule: Bump-Stock-Type Devices*, 83 Fed. Reg. 66514 (2018).

### d.  ATF's Application of Its Definition of "Machineguns" to Forced Reset Triggers

Beginning in 2021, the ATF issued several reports purporting to analyze the application of its revised definition of "machinegun" to forced reset triggers.  For example:

- On July 15, 2021, ATF's Firearms Technology Criminal Branch ("FTCB") issued a Technical Examination report in which it purportedly "classified the FRT-15 [version of a forced reset trigger] as a machinegun as defined by the NFA and the GCA."  *See* Complaint at ¶ 117; *see also United States of America v. Rare Breed Triggers, LLC, et al.*, Case No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023).

- On October 21, 2021, FTCB issued a report on the Wide Open Enterprises ("WOT") version of an FRT, opining that the WOT is a machinegun. The WOT operates on the same mechanical principles as the Rare Breed FRT-15. *See* Declaration of Daniel O'Kelly, App'x at 15. The report was similarly flawed and based on the since-rejected statutory interpretation in § 479.11.

- On March 22, 2022, the ATF issued an "Open Letter to All Federal Firearms Licensees" ("Open Letter") stating the ATF "recently examined devices commonly known as 'forced reset triggers' (FRTs) and has determined that *some* of them are 'firearms' and 'machineguns' as defined in the National Firearms Act (NFA), and 'machineguns' as defined

6

in the Gun Control Act (GCA)" (emphasis added).  The Open Letter further explained "ATF's examination found that *some* FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger" and "any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a 'machinegun'" (emphasis added). The vague description of "some FRT devices" creates a chilling effect in which purchasers do not know whether (or not) the forced reset trigger they may possess has been condemned by ATF.

- On April 27, 2023, ATF Firearms and Ammunition Technology Division ("FATD") issued another report on the Rare Breed Triggers FRT-15 trigger.

The ATF has also aggressively threatened and pursued civil and criminal enforcement actions against manufacturers, sellers, and owners of forced reset triggers.  Indeed, DOJ has brought several criminal prosecutions against individuals for possessing forced reset triggers, including at least one prosecution in Texas. *See* Second Superseding Indictment at Count One, *United States v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun, that is, six (6) Rare Breed Triggers FRT-15"); *see also* Indictment at Count Two, *U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for possessing a Rare Breed FRT-15 trigger); Superseding Indictment at Count One, *United States. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for possessing three Rare Breed FRT-15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger).  DOJ also has initiated civil proceedings against at least one company and two individuals involved in the manufacture

and sale of forced reset triggers.  Complaint, *United States  v. Rare Breed Triggers, LLC, et al.*, Case No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023).

ATF has indicated that it is not content to rest on its laurels.  The ATF has sent cease-and-desist letters to multiple companies involved in the manufacture, marketing, and sale of forced reset triggers, including Rare Breed Triggers and 3rd Gen Machine.  *See* Complaint at ¶¶ 145, 149, *United States v. Rare Breed Triggers, LLC, et al.*, Case No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023).

The ATF has visited Plaintiff Carey at his home and provided him with a similar letter. *See* Declaration of Patrick Carey, App'x at 5, 7-8.

Defendants have recently stated that they are "chomping at the bit" to seize outstanding forced reset triggers in other civil cases. *See* Declaration of Michael Columbo, App'x at 9. And Defendants have followed through on their stated intentions, executing a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC—one of the locations where the government was "chomping at the bit" to seize outstanding forced reset triggers—on August 4, 2023, less than two weeks ago. *See* Declaration of Michael Columbo, App'x at 9.

Finally, Defendants have refused to disavow enforcement against the three individual Plaintiffs in this case. Declaration of Benjamin Sley, App'x at 65.

## II.     Argument

### a.  Preliminary Injunction Standard

To prevail on a preliminary injunction application, the movant must show:   (1)            a substantial likelihood that the movant will ultimately prevail on the merits, (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing

party, and (4) that granting the injunction is not adverse to the public interest. *Daniels Health Servs.,*

*L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge

when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As movant,

the party seeking relief bears the burden of proving all four elements of the preliminary injunction.

*Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

**b.  Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

The Court of Appeals for the Fifth Circuit spoke clearly: the National Firearms Act

unambiguously "requires that a machinegun be capable of firing automatically once the *trigger*

performs a single function." *Cargill*, 57 F.4th at 463. Forced reset triggers do not enable a weapon

to fire multiple rounds with a single function of the trigger. Thus, they are not "machineguns."

In an attempt to circumvent this conclusion, Defendants have relied on ATF regulations—

specifically, 27 C.F.R. § 479.11—and administrative opinions. This reliance is misplaced.  ATF

regulations and opinions cannot contradict the plain meaning of the underlying statute.  The Fifth

Circuit in *Cargill* held that the ATF's regulation exceeded the agency's authority, in violation of

the Administrative Procedure Act.  Moreover, the administrative opinions produced by the ATF

rely on the same flawed interpretation of "machinegun" that dooms the agency's regulation and

thus do not support Defendants' position.

The ATF's interpretation of "machinegun" set forth in section 479.11 was unambiguously

rejected by the Fifth Circuit.  As described above, in 2018, the ATF revised section 479.11,

expanding the definition of "machinegun" by asserting that "'single function of the trigger' means

a single pull of the trigger and analogous motions."  This language was understood to be aimed at

criminalizing the manufacture, sale, and possession of "bump stocks."  "A bump stock is an

accessory that attaches to a semi-automatic weapon and assists the shooter to engage in bump

firing. Bump firing, in turn, is a technique whereby a shooter uses a firearm's natural recoil to quickly reengage the trigger, resulting in an increased rate of fire." *Cargill*, 57 F. 4th at 453. A skilled shooter using a bump firing technique can fire multiple rounds with a single motion of the shooter's finger by depressing the trigger, holding the finger still, and allowing the recoil of the weapon to press the trigger against the stationary finger. *See id.* at 454 ("With a bump stock, the shooter need not pull and release his trigger finger. But the shooter must still apply forward pressure to the weapon's forebody in order to maintain the shooting mechanism.").

The ATF's regulation and its application to bump stocks was challenged in *Cargill*. *Cargill* first examined the statutory language of the National Firearms Act and determined that there are two elements for a weapon or part to qualify as a "machinegun": it must be capable of firing multiple rounds by a single function of the trigger and it must operate automatically.

Single function of the trigger means single function of the *trigger*, not a single pull or action by the shooter. Per the court, "[t]he statutory definition of machinegun utilizes a grammatical construction that ties the definition to the movement of the trigger itself, and not the movement of a trigger finger. . . .. The Government offers nothing to overcome this plain reading[.] . . . [T]he statutory definition of machinegun unambiguously turns on the movement of the trigger and not a trigger finger." *Cargill*, 57 F. 4th at 460; *see also United States v. Alkazahg*, 81 M.J. 764, 780 (N. M. Ct. Crim. App. 2021) ("The best read implies that the shooter initiates the trigger function by some action, such as pulling the trigger—or it could be by just pushing a button—and it is the follow-on action where the trigger acts out its mechanical design or purpose that speaks to the 'function of the trigger.' The statute does not say 'by a single function of the trigger finger' nor does it say 'by a single pull of the trigger in addition to external pressure from the shooter's non-firing hand.'"). This statutory interpretation is binding on this Court and effectively forecloses

any reliance on section 479.11 or its interpretation of "single function of the trigger" as encompassing merely a single "pull" of the trigger.

Forced reset triggers do not fire multiple rounds with a single function of the trigger, particularly as distinct from a single action of the trigger finger. The trigger moves forward into its reset state and is depressed to release the hammer from its sear surface —*i.e.*, functions—for each and every round fired. This process is illustrated in the video demonstration available here: https://dhillonlaw.box.com/s/83pwi4a97id478f1nv31rv05okda2ccd. *See* Declaration of Cole Leleux, App'x at 11-13; *see also generally* Declaration of Daniel O'Kelly, App'x 14-18. As this footage shows, when using a forced reset trigger, the trigger functions for every round fired.

Automatically means "once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Staples v. United States*, 511 U.S. 600, 603 (1994). *Cargill* further explained "the phrase 'by a single function of the trigger' modifies the adverb 'automatically.' Thus, the condition is satisfied only if it is the trigger that causes the firearm to shoot automatically." *Cargill*, 57 F. 4th at 463 (citing *Guedes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 920 F.3d 1, 43 (D.C. Cir. 2019) (Henderson, J., concurring in part and dissenting in part) ("'Automatically' cannot be read in isolation. On the contrary, it is modified—that is, limited—by the clause 'by a single function of the trigger.'"); *Aposhian v. Wilkinson*, 989 F.3d 990, 896 (10th Cir. 2021) (mem.) (Tymkovich, C.J., dissenting)). "Automatic" thus may be read to mean that firing "maintain[s] if all a shooter does is initially pull the trigger." *Cargill*, 57 F.4th at 463.

Forced reset triggers do not fire "automatically" with a single function of the trigger. If all a shooter does is initially pull the trigger, the weapon will fire one round. If a shooter attempts to resist

the reset and hold the trigger in a depressed position, the weapon will malfunction.  *See* Declaration of Daniel O'Kelly, App'x at 30.

*Cargill* determined that *Chevron* deference does not save the ATF's regulation.  The ATF did not invoke *Chevron* deference, but per *Cargill*, "[t]he *Chevron* framework does not apply for a second, independent reason: the statute which the Final Rule interprets imposes criminal penalties" and "the Supreme Court has 'never held that the Government's reading of a criminal statute is entitled to any deference.'"  *Cargill*, 57 F.4th at 466, 467 (quoting *United States v. Apel*, 571 U.S. 359, 369 (2014)).

Finally, *Cargill* determined that the rule of lenity applies to any ambiguity in the National Firearms Act and Gun Control Act and prevents the government from adopting its broader regulatory interpretation.  *See Cargill*, 57 F. 4th at 469-471.

In sum, *Cargill* expressly rejected the ATF's regulatory interpretation of "machinegun" embodied in section 479.11, holding that it exceeded the agency's statutory authority and violated the Administrative Procedure Act.  *Cargill* is binding precedent on this Court.  It's holding and logic dictate that forced reset triggers are not machine guns for precisely the same reason that bump stocks were held not to be machineguns in that case.  Thus, Plaintiffs are likely to prevail on the merits of their claims.

### c.  There is a Substantial Threat that Plaintiffs Will Be Irreparably Harmed

Plaintiffs will suffer irreparable harm in three ways.  First, Plaintiffs who currently own forced reset triggers—including National Association of Gun Rights members, Texas Gun Rights members, Mr. Wheeler, and Mr. Speegle—will suffer injury in the form of unrecoverable compliance costs that are more than *de minimis*.  Second, Plaintiffs including NAGR members, Mr. Carey, Mr. Wheeler, and Mr. Speegle who have averred that they would purchase additional forced

reset triggers but for the threat of criminal prosecution, are irreparably harmed by this threat, as well as the threat of criminal and/or civil liability by virtue of possessing forced reset triggers.

### i.    Plaintiffs Will Be Irreparably Harmed by Compliance Costs

"[C]omplying with [an agency order] later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Wages and White Lion Investments, L.L.C. v. United States*, 16 F.4th 1130, 1142 (5th Cir. 2021) (emphasis added) (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)); *see also Vanderstok, et al. v. Garland, et al.*, 625 F.Supp.3d 570, 584 (N.D. Tex. 2022) (quoting *Texas*).   Accordingly, "Federal courts have long recognized that, 'when the threatened harm is more than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction.'"   *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Canal Auth. V. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974)); *see also Vanderstok*, 625 F.Supp.3d at 584 (quoting *Enter. Int'l.*). And "compliance costs are 'likely unrecoverable,' usually 'because federal agencies generally enjoy sovereign immunity for any monetary damages.'"   *Vanderstok*, 625 F.Supp.3d at 584 (quoting *Wages and White Lion Investments*, 16 F.4th at 1142).

The ATF has made its position clear: the government views forced reset triggers as illegal machineguns.  It has made home visits and sent letters to numerous people indicating that they risk felony prosecution if they do not "voluntarily" surrender any forced reset triggers in their possession. *See, e.g.*, Declaration of Patrick Carey, App'x at 5-6.   Thus, complying with Defendants' interpretation requires surrendering all forced reset triggers to the government.

Mr. Speegle has estimated the value of his forced reset triggers at $4,000. See Declaration of Travis Speegle, App'x at 3. Mr. Wheeler has an ownership interest in three forced reset triggers, which are valued at approximately $1,275. Declaration of James Joseph Ross Wheeler, App'x at

1.  Surrendering these forced reset triggers imposes a concrete economic cost on each Plaintiff that is more than *de minimis* and cannot be recovered.

### ii.    Plaintiffs are Irreparably Harmed by the Threat of Criminal Enforcement

In addition, NAGR members, Mr. Carey, Mr. Wheeler, and Mr. Speegle are irreparably harmed by the threat of criminal enforcement.  Mr. Carney, Mr. Wheeler, and Mr. Speegle all represent that they would buy additional forced reset triggers but for the looming threat of criminal enforcement.  *See* Declaration of Patrick Carey, App'x at 6; Declaration of James Joseph Ross Wheeler, App'x at 1; Declaration of Travis Speegle, App'x at 3.

Plaintiffs face a credible threat of civil or criminal prosecution if they acquire additional forced reset triggers.  The ATF has repeatedly claimed that forced reset triggers are machineguns. DOJ has brought criminal charges against individuals for possessing forced reset triggers and civil proceedings against companies that manufacture and sell forced reset triggers.  The ATF has sent letters and had agents visit individuals—including Plaintiff Carey—threatening potential civil or criminal action.  *See* Declaration of Patrick Carey, App'x at 5-8. Defendants have recently stated that they are "chomping at the bit" to seize outstanding forced reset triggers in other civil cases. *See* Declaration of Michael Columbo, App'x at 9. And Defendants have followed through on their stated intentions, executing a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC—one of the locations where the government was "chomping at the bit" to seize outstanding forced reset triggers—on August 4, 2023, less than two weeks ago. *Id*.  Finally, Defendants have refused to disavow enforcement against the individual Plaintiffs in this case, even for the limited time of the pendency of this Motion.

"[O]ther courts have held that the 'chilling effect' on a plaintiff's conduct that 'arises from the threat of imprisonment and civil penalties' was sufficient to establish irreparable harm."

*VanDerStok v. Garland*, -- F.Supp.3d --,  2022 WL 4809376 at *5 (N.D. Tex. Oct. 1, 2022) (quoting *Longoria v. Paxton*, 585 F.Supp.3d 907, 933-35 (W.D. Tex. 2022), *vacated and remanded on other grounds*, No. 22-50110, 2022 WL 2208519 (5th Cir. June 21, 2022) (finding irreparable harm where plaintiffs produced evidence that, but for the credible threat of civil or criminal prosecution, they would have engaged in the statutorily prohibited conduct); *Calif. Trucking Ass'n v. Becerra*, 433 F.Supp.3d 1154, 1169–70 (S.D. Cal. 2020), *rev'd on other grounds sub nom. Calif. Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021) (finding irreparable harm where plaintiff businesses faced the "Hobson's choice" between costly compliance measures or threat of "government enforcement actions, as well as criminal and civil penalties").

This Court previously noted "a plaintiff's purported choice to comply—or else—with a challenged government dictate, as evidenced by the plaintiff's decision to desist from engaging in the regulated activity, is adequate to establish irreparable harm." *VanDerStok*, at *5.

In *VanDerStok*, this Court applied these rules to find that plaintiffs suffered irreparable harm when their "behavior has been effectively chilled by the credible threat of a potential felony indictment." *VanDerStok*, at *5 (addressing plaintiffs who chose "to refrain from purchasing products classified as a "firearm" under the Final Rule in response to the perceived threat of looming civil and criminal liability.")

The same analysis applies in this case.  Plaintiffs are chilled from purchasing additional forced reset triggers by the credible threat of felony indictment stemming from Defendants' interpretation.  Thus, Plaintiffs will suffer irreparable harm in the absence of a preliminary injunction.

### d. The Balance of Equities Weighs in Favor of Plaintiffs

Plaintiffs are law-abiding citizens who wish to continue lawfully exercising freedoms they have enjoyed for several years.  All Plaintiffs are U.S. citizens.  Plaintiffs Carey, Wheeler, and Speegle are all permitted by law to possess firearms.  Plaintiff Wheeler even holds a Federal Firearms License.  Declaration of James Joseph Ross Wheeler, App'x at 1.  Plaintiffs NAGR avers that it only seeks to vindicate the rights of its members who are lawfully able to possess firearms in this matter.  As described above, Plaintiffs will be irreparably harmed in the absence of a preliminary injunction though both the imposition of compliance costs and through the chilling impact of Defendants' interpretation.

In other actions, Defendants have pointed to an interest in public safety and preventing dangerous individuals from possessing forced reset triggers.  However, Defendants have pointed to no facts that connect these interests to forced reset triggers generally and the Plaintiffs in this case specifically.

Defendants have pointed to a list of public mass shootings to justify their actions.  But these are effectively non sequiturs; none of these tragic incidents involved the use of a force reset trigger.  Moreover, Defendants point to no facts to suggest that Plaintiffs—who can lawfully purchase and use AR-15 rifles and bump stocks—pose any threat, let alone any additional threat, to the public by virtue of their possession of forced reset triggers, especially given the strong likelihood that such possession is fully legal.

In short, the balance of equities favors Plaintiffs.

### III.    Conclusion

For the foregoing reasons, this Court should enter a preliminary injunction enjoining Defendants from:

1. Initiating or pursuing criminal prosecutions against persons for possessing forced reset triggers;

2. Initiating or pursing civil proceedings against persons for possessing, selling, or manufacturing forced reset triggers;

3. Initiating or pursuing criminal prosecutions against persons for representing to the public or potential buyers and sellers that forced reset triggers are not machineguns;

4. Initiating or pursing civil actions against persons for representing to the public or potential buyers and sellers that forced reset triggers are not machineguns;

5. Sending "Notice Letters" or other similar communications to known or suspected owners, sellers, and manufacturers of forced reset triggers stating that forced reset triggers are machineguns;

6. Requesting that any person "voluntarily" surrender their forced reset trigger to the government based upon the claim that forced reset triggers are machineguns;

7. Destroying any surrendered or seized forced reset triggers; or

8. Otherwise interfering in the possession and exchange of forced reset triggers.


Date: August 15, 2023                    Respectfully submitted,

                                         /s/ Whitney A. Davis
                                         Whitney A. Davis (TX Bar No. 24084843)
                                         Ben Sley (TX Bar No. 18500300)
                                         EGGLESTON KING DAVIS, LLP
                                         102 Houston Avenue
                                         Suite 300
                                         Weatherford, TX 76086
                                         Telephone: (703) 748-2266
                                         whit@ekdlaw.com
                                         ben@ekdlaw.com

                                         David A. Warrington*
                                         Jonathan M. Shaw*

Gary M. Lawkowski*
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com

ATTORNEYS FOR PLAINTIFFS

Glenn Bellamy*
WOOD HERRON & EVANS
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

ATTORNEY FOR PLAINTIFF
NATIONAL ASSOCIATION OF GUN
RIGHTS, INC.

*Application for Admission
pro hac vice pending