## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN ) <br> RIGHTS, INC., ET AL., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> MERRICK GARLAND, ) <br> IN HIS OFFICIAL CAPACITY AS ) <br> ATTORNEY GENERAL ) <br> OF THE UNITED STATES, ET AL, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 4:23-cv-00830-O |

## **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
## **TEMPORARY RESTRAINING ORDER**

Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order (ECF No. 32) ("Opposition") advocates a novel approach to standing and pre-enforcement injunctions that is contrary to the law of this Circuit and, if adopted, would effectively place the government above the law. This is not and cannot be correct.

Tellingly, Defendants tacitly concede the merits of Plaintiffs' claims, presenting *no* substantive argument whatsoever that Plaintiffs will not succeed on the merits of their claim. Instead, Defendants' *only* mention of the merits is the conclusory statement—relegated to a footnote—that "Plaintiffs are incorrect" and "Defendants reserve further argument on this point." Opposition at 9 n.1. In addition to its substantive deficiency, this Court should deem the government's decision to address the merits only in a perfunctory footnote a waiver. *See, e.g.*, *Murphy v. Davis*, No. 3:09-CV-1368-L, 2017 WL 1196855, at *7 (N.D. Tex. Mar. 31, 2017) (holding an argument mentioned only in a footnote "waived by inadequate briefing"); *see also, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (citation omitted); *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) (citation omitted) ("Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived.

Equally telling is the fact that Defendants—yet again—have pointedly refused to disavow criminal enforcement against Plaintiffs. Instead, Defendants claim "ATF has no *current* intention to arrest or bring charges against the individual Plaintiffs." Opposition at 4 (emphasis added). Implicit in this statement is that Defendants reserve the right to pursue criminal enforcement at any time, whenever their subjective "intentions" change. This implicit threat is confirmed by Defendants' representation that they will "notify this Court prior to issuing any such warning notice or taking other enforcement action against the Individual Plaintiffs in this case, at least until

1

the Court has an opportunity to rule on Plaintiffs' motion for a preliminary injunction." Opposition at 6. This representation would be wholly unnecessary if Defendants actually were disavowing an intent to take enforcement action while this Court considers the preliminary injunction motion. The fact that they will not—despite conceding the merits—is strong proof the TRO is necessary.

Plaintiffs thus face credible threats of prosecution or civil seizure under threat of prosecution. Pre-enforcement judicial review, even for criminal laws, is a well-recognized procedure for preventing executive branch abuses. Plaintiffs will be irreparably harmed by complying with Defendants impermissible interpretation of law. And Defendants' arguments on the balance of equities are internally contradictory and would effectively strip the courts of the ability to grant pre-enforcement injunctions—an outcome that is not and cannot be correct.

## ARGUMENT

### I.   Plaintiffs Face a Credible Threat of Prosecution

Defendants' armed agents went to Plaintiff Carey's house and expressly warned him that he could be prosecuted if he did not surrender his forced reset triggers or if he purchased additional forced reset triggers. Declaration of Patrick Carey, App'x 5-8. It is hard to imagine a threat being more direct and credible and still qualifying as a "pre-enforcement" action.

Contrary to Defendants' contention, *see* Opposition at 5, Plaintiffs' *have* cited examples of enforcement actions carried out against individual small-scale owners of forced reset triggers. *See* Complaint (ECF No. 1) at ¶ 54. To wit, Defendants have prosecuted individuals for:

- Possessing six Rare Breed Triggers FRT-15, Second Superseding Indictment at Count One, *United States v. Bruggeman*, No. 2:22-cr-185 (S.D. Tex. Nov. 9, 2022);

- Possessing one Rare Breed Trigger FRT-15, Indictment at Count Two, *United States v. Berrios-Aquino*, No. 3-22-cr-473 (D.P.R. Apr. 20, 2023); and

- Possessing three Rare Breed FRT-15 forced reset triggers and one Tommy Triggers FRT-15 3MD forced reset trigger, Superseding Indictment at Count One, *United States v. Augusto*, No. 3:22-cr-30025 (D. Mass. Sept. 1, 2022).

2

Plaintiffs do not (and cannot) know what prompted the government to bring charges in these cases and not others. But Plaintiffs do know that they have been brought; that Defendants have threatened to bring them against other individuals, including Plaintiff Carey; and that even in Defendants' Opposition they continue to refuse to disavow bringing them against Plaintiffs. Under clear, recent Fifth Circuit law, this is enough to confer standing on Plaintiffs. *See generally Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022) ("In its brief on appeal, HHS simply says it 'has not to date evaluated' whether it will enforce Section 1557 against Franciscan Alliance—in other words, it concedes that it may. We have repeatedly held that plaintiffs have standing in the face of similar prosecutorial indecision." (footnotes omitted)).

Plaintiffs' current and proposed conduct would clearly be proscribed by Defendants' interpretation of the law. *See generally id.* at 377 (distinguishing *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2008) by observing, "[i]n *Zimmerman v. City of Austin* the plaintiff lacked standing because he failed to show 'a serious intention to engage in conduct proscribed by law.'"). Defendants' interpretation is far from moribund; they are actively pursuing multiple criminal prosecutions based on their erroneous interpretation of the law, have specifically threatened at least one Plaintiff with enforcement actions, *see* Declaration of Patrick Carey, App'x at 6-8, and executed a search warrant seizing forced reset triggers within the past month. *See* Declaration of Michael Columbo, App'x at 9-10; *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 336-37 (5th Cir. 2020) ("Where the policy remains non-moribund, the claim is that the policy causes self-censorship among those who are subject to it, and the students' speech is arguably regulated by the policy, there is standing."). Thus, Plaintiffs have standing under binding Fifth Circuit law.

In response, Defendants point to several out-of-circuit opinions, including three from courts within the Sixth Circuit. *See* Opposition at 4 (citing two Sixth Circuit cases and one case

3

from the Eastern District of Kentucky). These cases are inapposite. As one district court in the Sixth Circuit observed, "[t]he Sixth Circuit's jurisprudence on standing, in particular, the issue of whether there exists a credible threat of prosecution, bears considerable differences from the Fifth . . . Circuit[]." *Am. Coll. of Pediatricians v. Becerra*, Case No. 1:21-cv-195, 2022 WL 17084365 at *13 (E.D. Tenn. Nov. 18, 2022) (declining to find standing where the Fifth Circuit found standing in similar circumstances).

Moreover, even under the Sixth Circuit's more restrictive test, Plaintiffs face a credible threat of prosecution. The Sixth Circuit looks to "[v]arious factors," including "(1) 'a history of past enforcement against the plaintiffs or others'; (2) 'enforcement warning letters sent to plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) the 'defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'" *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quoting *McKay v. Felderspiel*, 823 F.3d 862, 869 (6th Cir. 2016)). Defendants personally delivered an enforcement warning letter to Plaintiff Carey for the conduct at issue. They have pointedly refused to disavow enforcement against the three individual Plaintiffs. And they have a history of past enforcement against others.

Defendants also cite *Blum v. Holder*, 744 F.3d 790, 798 (1st Cir. 2014), for the proposition that enforcement actions against manufacturers "do not raise the specter of enforcement against Individual Plaintiffs in particular." Opposition at 4. This blatantly misreads *Blum*. The problem for the plaintiffs in *Blum* was not that the government chose to exercise its discretion by prosecuting bigger fish for the same underlying offense. The problem was that "no enforcement has been threatened as to plaintiffs' *proposed activities*." *Blum*, 744 F.3d at 798 (emphasis added).

4

To the contrary, in *Blum*, "the Government has affirmatively represented that it does not intend to prosecute such conduct because it does not think it is prohibited by the statute." *Id*.

Defendants have made no such representation here. To the contrary, there is no serious dispute that Plaintiffs' current and proposed conduct is prohibited by Defendants' interpretation of the law. Defendants were very explicit about that in their letter to Plaintiff Carey and have not disavowed that interpretation here. *See* Carey Declaration, App'x at 5-8 ("ATF has information that you have acquired one or more Forced/Hard Reset Trigger (FRT) devices…. These items have been classified as machineguns that were unlawfully manufactured. Possession of these devices is a violation of the law due to their illegal manufacture . . . . [T]he unlawful receipt and possession of any of these devices is a felony violation of Federal law."). Moreover, as shown above, Defendants *are currently prosecuting* at least three individuals for possessing forced reset triggers.

Plaintiffs face a credible threat of prosecution and have standing to pursue this case.

## II. Federal Courts have Authority to Enjoin the Federal Government from Enforcing Illegal Interpretations

Defendants next assert that this Court lacks the power to enjoin the federal government from pursuing an illegal prosecution. This is an illogical proposition that, if taken at face value, would effectively eliminate pre-enforcement challenges. But while, Defendants are correct that the exercise of prosecutorial discretion properly rests with the executive branch, not the judicial branch, they are wrong that this basic separation of powers principle has any relevance to this case or to Plaintiffs' request for a temporary restraining order.

Plaintiffs are not challenging Defendants' exercise of discretion to prosecute one person and not another for possessing forced reset triggers. This is a facial challenge to the lawfulness of Defendants' ability to prosecute *anyone* for possessing a forced reset trigger. If Defendants cannot lawfully prosecute anyone for possessing forced reset triggers, there is no "discretion" to exercise.

5

Moreover, the Supreme Court has long recognized that it is not enough to say that Plaintiffs will have their day in court when they are criminally charged. For example, in *Steffel v. Thompson*, the Court affirmed the federal judiciary's ability to declare a threatened state prosecution unconstitutional prior to the initiation of enforcement proceedings, noting "while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid being enmeshed in a criminal proceeding." 415 U.S. 452, 462 (1974); *compare* Opposition at 6 ("*If* a person is subject to prosecution, federal criminal procedure provides a host of opportunities to test the lawfulness of the government's exercise of prosecutorial authority.").

Thus, it is well-settled that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id*. at 459; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("When an individual is subject to such a threat [of enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *MedImmune, Inc. v. Greentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by the *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis of the threat." (emphasis in original)). Defendants' attempt to reclassify *any* pre-enforcement restraint as an infringement on prosecutorial discretion is contrary to well over half a century of direct, consistent Supreme Court pronouncements.

The fact that Plaintiffs seek injunctive relief does not change this assessment. There is a long history of federal courts granting injunctive relief in pre-enforcement challenges to laws

carrying criminal penalties. *See*, *e.g.*, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536 (1925) (upholding a preliminary injunction against enforcement of a criminal statute, stating "[p]revention of impending injury by unlawful action is a well-recognized function of courts of equity."); *VanDerStok v. Garland*, 625 F. Supp. 3d 570 (N.D. Tex. 2022) (granting preliminary injunction against the government); *VanDerStok v. Garland,* 633 F. Supp. 3d 847 (N.D. Tex. 2022) (granting preliminary injunction against the government).[1] Defendants' argument, if adopted, would effectively insulate illegal government action from pre-enforcement challenges—an absurd result.

### III.     Plaintiffs' Face a Substantial Threat of Irreparable Injury

The threat of criminal prosecution is not the only irreparable injury threatened. First, Defendants fail to address (and thus tacitly concede) the fact that Plaintiffs are chilled from purchasing or possessing additional forced reset triggers by virtue of Defendants' impermissible interpretation of law.  This chilling effect alone is sufficient to establish irreparable injury.  *See id.* at 857 (finding that plaintiffs suffered irreparable harm when their "behavior has been effectively chilled by the credible threat of a potential felony indictment . . . .").

Even if it were not, compliance with Defendants' impermissible interpretation of law would cause irreparable harm. *Id*. at 856 ("[O]ther courts have held that the 'chilling effect' on a plaintiff's conduct that 'arises from the threat of imprisonment and civil penalties' was sufficient to establish irreparable harm.").  Defendants do not (and cannot) argue that complying with the law as the ATF interprets it would not require Plaintiffs to surrender their forced reset triggers. This action would have direct economic and non-pecuniary costs for Plaintiffs.  As described in

---

[1] While injunctions in the *VanDerStok* cases have been stayed, the dispute centers on how broad the injunctions are, not whether the government can be enjoined at all. *See VanDerStok v. Garland*, Case No. 23-10718, 2023 WL 4945360 (5th Cir. July 24, 2023). Moreover, unlike here, the statute at issue in *VanDerStok* does not include a definition of "frame or receiver." In the absence of ATF's regulatory definition, albeit found to be flawed, there would be *no* legal definition in effect during the pendency of the appeal.

7

the record, Mr. Speegle has estimated the value of his forced reset triggers at $4,000 and Mr. Wheeler has an ownership interest in three forced reset triggers, which are valued at approximately $1,275. See Declaration of Travis Speegle, App'x at 3, Declaration of James Joseph Ross Wheeler, App'x at 1.  Contrary to Defendants' dismissive language, if Plaintiffs "voluntarily" surrender their triggers—as would be required to comply with the law as Defendants read it—they would not be able to recover their property at a later time.

Moreover, if Plaintiffs are dispossessed of their forced reset triggers, whether through "voluntary" compliance or forced seizure, they lose the use and enjoyment of their property.  This is a concrete harm that cannot be compensated for *ex post facto*.

Defendants have pointedly refused to disavow enforcement against Plaintiffs—both as to criminal prosecution and civil seizure/forfeiture—and have given no indication that they believe Plaintiffs current and proposed conduct falls outside the scope of their (impermissible) understanding of the law.  "It will not do to say that a prosecutor's sense of fairness and the Constitution would prevent a successful . . . prosecution for some of the activities seemingly embraced within the sweeping statutory definitions." *Baggett v. Bullitt*, 377 U.S. 360, 373 (1964).  "[T]he liberty of our citizens cannot rest at the whim of an individual who could have a grudge or, perhaps, just exercise bad judgement."  *United States v. Wells*, 519 U.S. 482, 512 n.15 (1997) (Stevens, J. dissenting). With their property and liberty on the line, Plaintiffs must take seriously Defendants' view that forced reset triggers are illegal.  Taking that position seriously causes Plaintiffs' irreparable harm.

**IV. The Balance of Harms Weighs in Favor of a Temporary Restraining Order**

Defendants' view on the balance of harms is incoherent.  On one hand, Defendants claim that they "currently ha[ve] no such plans" to pursue enforcement actions against Plaintiffs, Opposition at 4, and that "ATF has focused its enforcement efforts against large-scale

manufacturers and distributors of forced reset triggers." Opposition at 4.[2] On the other hand, Defendants state "[w]hile the Individual Plaintiffs argue that they do not pose a threat to public safety by virtue of their possession of forced reset triggers, they provide no explanation for why the government's general public safety concerns would apply any less readily to them than other individuals . . ." and that "[p]ublic safety would be jeopardized by the injunction Individual Plaintiffs seek." Opposition at 10. These positions are irreconcilable.

If the public is in such great danger from Plaintiffs' continued possession of forced reset triggers (it is not), then why would Defendants not pursue enforcement actions against Plaintiffs? If Plaintiffs' continued possession of forced reset triggers poses such a low risk of harm that Defendants have no plans of pursuing an enforcement action to end it, how great the threat?

What Defendants seem to be arguing is that the executive branch, and the executive branch alone, should have unreviewable discretion to assess the balance of harms in cases seeking temporary restraining orders. This is just another way of saying Defendants do not believe the federal courts have authority to rule on pre-enforcement challenges to criminal statutes. This is contrary to basic principles of judicial review and the long history of judicial determinations that citizens do not need to wait to be arrested to challenge illegal laws.

Plaintiffs are law-abiding citizens. They do and have possessed forced reset triggers without incident. Defendants have offered no reason why their continued possession of forced reset triggers during the pendency of these proceedings would place the public at any greater risk tomorrow than they were yesterday—a risk that Defendants themselves tacitly concede is

---

[2] This point itself is belied by Defendants' own claim that the ATF has a "*historic practice* of issuing 'warning notices' to individuals who possess a forced reset trigger." Opposition at 5 (emphasis added). If the ATF is not pursing enforcement actions against individuals, how can it have a "historic process" with its own *modus operandi*? *See also Bureau of Alcohol, Tobacco, Firearms, and Explosives Official Notice of August 24, 2023*, App'x at 66, downloaded on August 24, 2023, from https://www.forfeiture.gov/pdf/ATF/OfficialNotification.pdf (showing 67 ATF seizures) (This government publication is self-authenticating.). It also provides little reassurance to Plaintiffs, given that the government *is currently prosecuting* at least three individuals for possessing forced reset triggers.

acceptable. On the other side of the ledger, Plaintiffs would be irreparably harmed by any enforcement action. Accordingly, the balance of equities favors the Plaintiffs.

## CONCLUSION

The crux of this case is that the executive branch has improperly usurped legislative authority by enacting criminal prohibitions that are beyond the scope of its legislatively granted authority. Now, Defendants seek to arrogate unto themselves the judicial authority as well by placing their actions beyond the reach of pre-enforcement judicial review. This cannot be correct.

Plaintiffs have satisfied their burden. Defendants have made no substantive argument whatsoever that Plaintiffs' claims are unlikely to succeed on the merits. That was not an oversight. It was a tacit admission that the Fifth Circuit's ruling in *Cargill* both binds this Court and cannot be squared with Defendants' position. Plaintiffs will be irreparably harmed by any enforcement action. And the balance of equities favors the preservation of the status quo. Accordingly, this Court should grant Plaintiffs' motion for a temporary restraining order.

Respectfully submitted,

/s/ Whitney A. Davis
Whitney A. Davis (TX Bar No. 24084843)
Benjamin Sley (TX Bar No. 18500300)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue, Suite 300
Weatherford, TX 76086
Telephone: (817) 596-4200
Facsimile: (817) 596-4269
whit@ekdlaw.com
ben@ekdlaw.com

Glenn Bellamy (OH Bar No. 0070321)
WOOD HERRON & EVANS
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: (513) 707-0243
gbellamy@whe-law.com

Jonathan M. Shaw (VA Bar No. 98497)
Gary M. Lawkowski (VA Bar No. 82329)
David A. Warrington (VA Bar No. 72293)
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com
dwarrington@dhillonlaw.com