**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Technology Criminal Branch**
**Report of Technical Examination**

|  |  |
|---|---|
|  | **244 Needy Road #1600**<br>**Martinsburg, WV 25405**<br><br>**Phone: 304-616-4300**<br>**Fax: 304-616-4301** |

| | |
|---|---|
| **To:**<br>Special Agent Nestor J. Vazquez<br>Bureau of Alcohol, Tobacco, Firearms and Explosives<br>135 West Central Blvd.<br>Suite 740<br>Orlando, FL 32801 | **Date:** 10/21/2021<br><br>**UI#:** 767070-21-0065<br><br>**RE:** AR Triggers - Bosnia<br><br>**FTCB#:** 2022-030-CJT<br>317970 |

| | |
|---|---|
| **Date Exhibit Received:** 10/14/2021<br><br>**Delivered By:** FedEx 2848 5453 4756 | **Type of Examination Requested:**<br><br>Examination, Test, Classification |

**Note:** *This report has been amended to correct the components that comprise Exhibit 1.*

**Exhibit:**

1. Two (2) Wide Open Enterprises, model Wide Open Trigger for AR-15, no serial number (suspected machinegun).

**Pertinent Authority:**

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 C.F.R. 0.130 the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state and local law enforcement agencies regarding the Gun Control Act and the National Firearms Act.

The Gun Control Act (GCA), 18 U.S.C. § 921(a)(23), defines the term "**machinegun**" as:

*"...has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."*

The National Firearms Act (NFA), defines "**firearm**" to mean, in part: *"...(6) a machinegun...."* (See 26 U.S.C. § 5845(a).)

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 2

**Pertinent Authority (cont.).:**

Also, the NFA 26 U.S.C. § 5845(b) defines "**machinegun**" as:

"...*any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or <u>combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.*" (See 26 U.S.C. § 5845(b).)

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines the term "**firearm**" as:

"...*(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined, in subsection (e); (6) a machinegun; (7) any silencer (as defined in 18 U.S.C. § 921); and (8) a destructive device.  The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the...[Attorney General]...finds by reason of the date of its manufacture, value, design and other characteristics is primarily a collector's item and is not likely to be used as a weapon*."

Further, the NFA, 26 U.S.C. § 5842, "**Identification of firearms,**" states:

"... *(a) Identification of firearms other than destructive devices. - Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the ...[Attorney General]... may by regulations prescribe. (b) Firearms without serial number. - Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the ... [Attorney General]... and any other information the...[latter]... may by regulations prescribe.*"

27 CFR § 479.11 defines the term "**machinegun**" and includes, in part:  "...*For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions.  The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.*"

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 3

## Findings:

**Exhibit 1** consists of two (2) Wide Open Enterprises, model Wide Open Trigger (WOT) for AR15, AR15-type drop-in fire-control groups, manufactured at an undetermined location, distributed by Wide Open Enterprises in Albuquerque, New Mexico, and marketed by Big Daddy Unlimited of Gainesville, Florida. Neither of the devices in the Exhibit is marked with a serial number.

The Exhibit 1 devices are each comprised of the following individual component parts:

- One (1) aluminum housing
- One (1) hammer
- One (1) hammer spring
- Two (2) tubular pins
- One (1) trigger
- One (1) trigger spring
- One (1) locking bar
- Three (3) solid pins
- One (1) locking bar spring
- One (1) locking bar guide rod
- Two (2) pins with interior threads at both ends

Each Exhibit 1 devices bears the following markings on the right and left side of its aluminum housing:

**PATENT PENDING
WOT
WIDE OPEN TRIGGERS**

The Wide Open Trigger device is designed to allow "drop-in" installation into AR15-type firearms. The device is designed to function in conjunction with a standard weight buffer and M16-type machinegun bolt carrier rather than a standard semiautomatic AR15-type bolt carrier. The M16-type bolt carrier incorporates a contact surface that is unnecessary on AR15-type semiautomatic firearms because this surface is designed to "trip" the auto sear in standard M16-type machineguns. This surface is utilized to similarly "trip" the "locking bar" in WOT equipped AR15-type firearms during the operating cycle. Indeed, it is telling that the M16 pattern bolt carrier assembly interacts with the "locking bar" in the same manner that it interacts with an automatic sear.

Basic operation of the WOT device installed within an AR15-type firearm having a M16-type machinegun bolt carrier is as follows:

- Firearm ready to fire with the hammer in a "cocked" position being held by the sear surface on the front of the trigger.

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 4

**Finding (Cont.):**

- Rearward pressure is applied to "pull" the trigger thus releasing the hammer, which falls impacting the firing pin and discharging the primer, which in turn ignites the propellant powder to accelerate the projectile (bullet) down the rifled bore.

- As the projectile moves past the gas port, a quantity of the gas is bled off through the gas port, gas tube and bolt carrier key into a cylindrical section in the bolt carrier where it expands and drives the bolt carrier rearward. Note that this happens rapidly while rearward "pull" pressure from the trigger pull is generally maintained on the trigger. During the first rearward travel of the carrier assembly, the bolt is rotated by the cam pin acted on by the bolt carrier cam slot. This rotation disengages the bolt lugs from the barrel extension lugs so the bolt is unlocked. The bolt carrier group then continues rearward with the unlocked bolt assembly which starts to act upon the hammer.

- The fired cartridge case is withdrawn from the chamber as the bolt carrier group continues its rearward travel, also continuing to further depress the hammer.

- As the spent case is fully drawn out of the chamber, the spring-loaded ejector, acting against the left side of the case head, pushes the spent case out of the ejection port. The bolt carrier group continues rearward still depressing the hammer.

- At this point, the operation of a firearm with a WOT differs from a semiautomatic AR15-type firearm. In a semiautomatic AR-15-type firearm, the hammer is pushed down by the bolt carrier and is retained by the disconnector. Upon the shooters release of the trigger, the disconnector releases the hammer, and the hammer comes to rest on the trigger sear surface, ready to expel a second projectile with a subsequent pull of the trigger. *Conversely*, in the WOT equipped firearm, as the bolt carrier group continues rearward, the hammer is pushed down by the bolt carrier group, but it also pushes down on the trigger which forces it forward. The trigger is pushed slightly forward as an automatic function of the WOT design without any further action by the shooter. This causes the hammer to engage the triggers sear surface. Differing from a standard semiautomatic firearm, the unique WOT trigger design also engages the "locking bar" to momentarily keep the trigger in place so that the shooter may not override the automatic functioning of the weapon.

- As the bolt carrier moves forward into battery using the force of the action spring, the contact surface on the required M16-type machinegun bolt carrier (which is designed to interact with the automatic sear on M16-type firearms), strikes the WOT "locking bar", releasing the trigger. The necessity of an M16-type machinegun bolt carrier is clear at this point—it acts on the "locking bar" in the same way it acts on the machinegun auto-sear. Specifically, when the bolt moves back in to firing position, it contacts the surface area on the "locking bar" or the auto sear and automatically fires a subsequent round. Note that the disconnector on the AR15-type semiautomatic retains the hammer until the shooter manually releases the trigger.

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 5

### Findings (Cont.):

- After firing a shot with a <u>semiautomatic</u> AR15-type firearm, the shooter is required to manually release the trigger which releases the hammer from the disconnector, and then manually pull the trigger a second time to fire a subsequent shot.

- If the shooter maintains constant rearward pressure from the original single function (pull) of the trigger, the self-acting or self-regulating mechanism of the WOT device allows subsequent projectiles to be fired during the continuing cycle of operation.

- From the moment of the application of trigger pressure, and as long as rearward pressure is applied to the trigger through a single constant pull, a firearm with a WOT continues to fire until the firing finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted; this firing takes place regardless of the purported "forced reset" pushing the trigger forward.

Additional rounds are fired based on the automatic functioning of the firearm and the continuous pressure applied to the trigger during the single continuous function (pull) of the trigger. With both an WOT equipped AR15-type firearm, and an M16-type machinegun (with the selector set in its "Full Auto" position), the shooter maintains a constant pull of the trigger to fire subsequent shots with a single function (pull) of the trigger, through both the M16-type machinegun and WOT equipped AR15-types self-acting or self-regulating mechanisms during the operating cycle of the firearms.

To function test the Exhibit 1 WOT devices, I installed one of the devices into an AR15-type firearm obtained from the ATF National Firearms Collection (NFC). The ATF NFC firearm was comprised of a Superior Arms S15 receiver, M16-type barreled upper assembly (having the required M16-type machinegun bolt carrier), and a standard buffer.

The Exhibit 1 device (installed within the ATF exemplar firearm) was test fired on October 20, 2021, at the ATF test range, Martinsburg, West Virginia, using commercially available, Federal brand, 5.56x45mm caliber ammunition and a magazine from the NFC.

I first inserted one round of ammunition into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger. The NFC exemplar weapon, having the Exhibit 1 device installed, discharged the chambered cartridge, and expelled a projectile by the action of an explosive. I repeated this method of test-fire one additional time, obtaining the same result. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that the Exhibit 1 equipped firearm had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 6

## Findings (Cont.):

I next inserted a two-round ammunition load into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger holding it to the rear. The NFC exemplar weapon, having the Exhibit 1 device installed, fired two (2) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I continued this testing protocol by inserting a five-round ammunition load into a magazine, inserted the magazine into the weapon and chambered the cartridge, placed the selector into the "FIRE" position, and pulled the trigger holding it to the rear. The NFC exemplar weapon, having the Exhibit 1 device installed, fired five (5) rounds automatically by a single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

The WOT "drop-in" device is uniquely designed to interact with the required M16-type machinegun bolt carrier during the cycle of operation in the same way that the M16-type machinegun bolt interacts with the machinegun auto sear. This allows the weapon to function as a self-acting, or self-regulating mechanism, with one continuous pull of the trigger, and allows the weapon to shoot automatically, more than one shot, without manual reloading, by a single function (pull) of the trigger, until its trigger is released, or the ammunition is exhausted.

While on standard semiautomatic AR15-type firearms, the cycle of operation is interrupted between shots by a disconnector which requires that the trigger be both manually released and manually pulled to fire a subsequent shot, no such action is required to fire subsequent shots on the WOT equipped AR15-type firearm. Indeed, the WOT design requires only that the shooter maintain the initial trigger pull, while the self-acting or self-regulating WOT mechanism forces the trigger forward during the rearward movement of the required M16-type machinegun bolt carrier, and then automatically releases the trigger and hammer, as the "locking bar" interacts with the "trip surface" on the M16-type machinegun bolt carrier, as the firearm goes into battery. All of these actions occur if the shooter maintains a single, constant pull of the trigger.

It is worth noting that the legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, consistent with the language of the statute and Congressional intent, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger.

As received, each device in Exhibit 1 is a combination of parts, designed and intended for use in converting a weapon (AR15-type) into a machinegun; therefore, each is a "**machinegun**" as defined in the GCA and NFA.

## Conclusions:

Each device in **Exhibit 1** is a combination of parts, designed and intended for use in converting a weapon into a machinegun; therefore, each is a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

Each device in **Exhibit 1** is a "**machinegun**" as defined in 18 U.S.C. § 921(a)(23).

Special Agent Nestor J. Vazquez

767070-21-0065
2022-030-CJT
Page 7

## Conclusions (cont.):

Each device in **Exhibit 1**, being a machinegun, are also each a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).

Neither device in **Exhibit 1** is marked in accordance with 26 U.S.C. § 5842(a).

Examined by:

**CODY TOY**
Digitally signed by
CODY TOY
Date: 2021.10.21
08:52:22 -04'00'

Cody J. Toy
Firearms Enforcement Officer

Approved by:

**GREGORY STIMMEL**
Digitally signed by
GREGORY STIMMEL
Date: 2021.10.21
09:01:52 -04'00'

Gregory Stimmel
Chief, Firearms Technology Criminal Branch

Attachments: Eight pages bearing photos.

**Enclosed is a Firearms Technology Criminal Branch report provided in response to your request for assistance.  Please be aware that these documents constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103.  Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. § 6103(h)(2)(C) and (o)(1).  Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**

ATF Form   3311.2
Revised September 2014

# Exhibit 1 as received



ATF0180

# Exhibit 1 as received



767070-21-0065   2022-030-CJT

ATF0181

# Exhibit 1 as received markings



767070-21-0065   2022-030-CJT

ATF0182

# Exhibit 1 top down view



ATF0183

# Exhibit 1 top down/hammer forward



ATF0184

# Exhibit 1 installed in NFC S-15



# Exhibit 1 installed in NFC S-15/hammer forward



ATF0186

# Exhibit 1 installed in NFC S-15



767070-21-0065   2022-030-CJT

ATF0187

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Firearms Technology Criminal Branch**
**Report of Technical Examination**



244 Needy Road
Martinsburg, WV 25401

Phone: 304-616-4300
Fax: 304-616-4301

| **To:** | | **UI#:** | 765040-23-0011 |
|---|---|---|---|
| Special Agent Daniel Koneschusky | | **RE:** | Rare Breed Triggers |
| Bureau of Alcohol, Tobacco, Firearms and Explosives | | | |
| 32 Old Slip | | **FTCB#:** | 2023-258-ALC |
| Suite 700 | | | 324346 |
| New York, NY 10005 | | | |

| **Date Exhibits Received** | | **Type of Examination Requested:** |
|---|---|---|
| **and Delivered by:** 12/9/2022 | FedEx 7707 1362 5244 | |
| 12/9/2022 | FedEx 7707 1855 3953 | Test, Examination, Classification |
| 12/16/2022 | FedEx 7707 8044 2570 | |
| 12/21/2022 | FedEx 7708 2671 7480 | |
| 1/4/2023 | FedEx 7708 5307 2489 | |

**Exhibits:**

1. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
2. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
3. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
4. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
5. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
7. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
8. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
9. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
10. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
11. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
13. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).

ATF Form    3311.2
Revised September 2014

Special Agent Daniel Koneschusky

765040-23-0011
2023-258-ALC
Page 2

14. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
15. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
16. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
17. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
18. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
19. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
20. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
21. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
22. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
24. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
27. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
28. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
29. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
30. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).
31. Wide Open Enterprises, Wide Open Trigger, "forced reset" trigger assembly, no serial number (suspected machinegun).

**Pertinent Authority:**

Title 28 of the United States Code (U.S.C.) provides the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 C.F.R. 0.130 the Attorney General provides ATF with the authority to investigate, administer, and enforce the laws related to firearms, in relevant part, under 18 U.S.C. Chapter 44 (Gun Control Act) and 26 U.S.C. Chapter 53 (National Firearms Act). Pursuant to the aforementioned statutory and regulatory authority, the ATF Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state, and local law enforcement agencies regarding the Gun Control Act and the National Firearms Act.

The GCA, 18 U.S.C. § 921(a)(24), defines the term **"machinegun"** as: *"…has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."*

ATF Form    3311.2
Revised September 2014

Special Agent Daniel Koneschusky
765040-23-0011
2023-258-ALC
Page 3

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines "**firearm**" to include: *"...(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in 18 U.S.C. § 921); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the...[Attorney General]...finds by reason of the date of its manufacture, value, design and other characteristics is primarily a collector's item and is not likely to be used as a weapon."*

The NFA, 26 U.S.C. § 5845(b), defines "**machinegun**" as: *"...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."*

The NFA, 26 U.S.C. § 5842, "**Identification of firearms**," states: *"... (a) Identification of firearms other than destructive devices. - Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the ... [Attorney General]... may by regulations prescribe. (b) Firearms without serial number. - Any person who possesses a firearm, other than a destructive device, which does not bear the serial number and other information required by subsection (a) of this section shall identify the firearm with a serial number assigned by the ... [Attorney General]... and any other information the...[latter]... may by regulations prescribe."*

### Findings:

As background, Federal law defines "machinegun," in relevant part, as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger" as well as a "combination of parts designed and intended, for use in converting a weapon into a machinegun." Legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. On Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger. Therefore, a firearm is not a machinegun if a projectile is expelled when the trigger is pulled, and a second projectile is expelled when the trigger is released.

Also, Federal courts have noted that automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States*, 511 U.S. 600, 602 n. 1 (1994). "That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released, or the ammunition is exhausted." *Id.* Courts have specifically affirmed ATF's interpretation that a single act of the shooter to initiate the firing sequence is a single function of the trigger. *Akins v. United States*, 312 F. App'x 197, 200 (11th Cir. 2009);

ATF Form     3311.2
Revised September 2014

*Freedom Ordnance Mfg., Inc. v. Brandon*, No. 3:16-cv-00243-RLY-MPB (S.D. Ind. Mar. 27, 2018). *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) (in which electronic switch was the trigger when it served to initiate the firing sequence and the minigun continued to fire until the switch was turned off or the ammunition was exhausted). In the *Freedom Ordnance* case, the United States District Court of Indiana confirmed that ATF was not arbitrary and capricious in the classification of an "electronic reset assist device" as a machinegun even though the firearm's trigger reset before each shot by pushing the trigger forward. *Freedom Ordnance Mfg., Inc*, No. 3:16-cv-00243-RLY-MPB. In these cases, a firearm is a machinegun when it uses an internal mechanism or operation that automatically forces the trigger forward allowing the weapon to fire more than one shot by a continuous pull of the trigger.

**Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** are each a Wide Open Enterprises, model Wide Open Trigger (WOT) AR15-type drop-in fire-control group. The WOT Exhibits are not marked with a serial number.

Exhibits **1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** are each comprised of the following individual component parts:

- One aluminum housing
- One hammer
- One hammer spring
- Two tubular pins
- One trigger
- One trigger spring

- One locking bar
- Three solid pins
- One locking bar spring
- One locking bar guide rod
- One locking bar washer

Exhibits **1, 2, 3, 4, 5, 7, 8, 9, 10,** 11, 13, **14, 15, 16,** 17, **18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and 31 each bear the following markings on the right and left side of its aluminum housing:

    **PATENT PENDING**
    **WOT**
    **WIDE OPEN TRIGGERS**

The Wide Open Trigger device is designed to allow "drop-in" installation into an AR15-type firearm. The device is designed to function in conjunction with a standard carbine weight buffer and M16-type machinegun bolt carrier rather than a standard semiautomatic AR15-type bolt carrier. The M16-type bolt carrier incorporates a contact surface that is unnecessary on AR15-type semiautomatic firearms because this surface is designed to "trip" the automatic sear in standard M16-type machineguns. This surface is utilized to similarly "trip" the "locking bar" in WOT equipped AR15-type firearms during the operating cycle. Indeed, it is telling that the M16-type pattern bolt carrier assembly interacts with the "locking bar" in the same manner that it interacts with an automatic sear.

Basic operation of the WOT device installed within an AR15-type firearm having a M16-type machinegun bolt carrier is as follows:

- Firearm ready to fire with the hammer in a "cocked" position being held by the sear surface on the front of the trigger.

ATF0191

Special Agent Daniel Koneschusky

765040-23-0011
2023-258-ALC
Page 5

- Rearward pressure is applied to "pull" the trigger, thus releasing the hammer, which falls impacting the firing pin and discharging the primer, which in turn ignites the propellant powder to accelerate the projectile (bullet) down the rifled bore.

- As the projectile moves past the gas port, a quantity of the gas is bled off through the gas port, gas tube, and bolt carrier key into a cylindrical section in the bolt carrier where it expands and drives the bolt carrier rearward. <u>Note that this happens rapidly while rearward "pull" pressure from the trigger pull is generally maintained on the trigger</u>. During the initial rearward travel of the carrier assembly, the bolt is rotated by the cam pin, acted on by the bolt carrier cam slot. This rotation disengages the bolt lugs from the barrel extension lugs so the bolt is unlocked. The bolt carrier group then continues rearward with the unlocked bolt assembly which starts to act upon the hammer.

- The fired cartridge case is extracted/withdrawn from the chamber as the bolt carrier group continues its rearward travel, also continuing to further depress the hammer.

- As the spent case is fully extracted/withdrawn from the chamber, the spring-loaded ejector, acting against the left side of the case head, pushes the spent case out of the ejection port. The bolt carrier group continues rearward still depressing the hammer.

- At this point, the operation of a firearm with a WOT differs from a semiautomatic AR15-type firearm. <u>In a semiautomatic AR-15-type firearm</u>, the hammer is pushed down by the bolt carrier and is retained by the disconnector. Upon the shooters release of the trigger, the disconnector releases the hammer, and the hammer comes to rest on the trigger sear surface, ready to expel a second projectile with a subsequent pull of the trigger. *Conversely*, <u>in the WOT equipped firearm</u>, as the bolt carrier group continues rearward, the hammer is pushed down by the bolt carrier group, but it also pushes down on the trigger which forces it forward. The trigger is pushed slightly forward as an automatic function of the WOT design without any further action required by the shooter. This causes the hammer to engage the trigger sear surface. Differing from a standard semiautomatic firearm, the unique WOT trigger design also engages the "locking bar" to <u>momentarily</u> keep the trigger in place so that the shooter may not override the timing of the automatic functioning of the weapon.

"Timing" in relation to automatic firearms can be described as ensuring that the firing mechanism is not activated until the bolt or breech is fully locked or in battery. Timing is especially important in automatic weapons because if the firing mechanism is engaged before the bolt or breech is fully locked or in battery, this can result in two possible outcomes. The first being the firing mechanism does not have enough force to ignite the primer, causing a malfunction known as failure to fire, which would cause the shooter to manually clear the malfunction. The second being that the firing mechanism does provide enough force to ignite the primer and an often catastrophic malfunction, known as "out-of-battery detonation" occurs. An "out-of-battery detonation" occurs when a round is fired without being fully seated in the chamber and the chamber not being fully sealed to contain the explosion. This causes the pressure from the round (e.g.: approximately 55,000 in a .223 Remington cartridge) to be released into the action of the firearm, often causing catastrophic damage to the firearm, and possibly the shooter.

ATF Form   3311.2
Revised September 2014

It is important to note that at this moment the hammer is solely being retained by the trigger sear surface. The trigger, still being pulled rearwards by the shooter is unable to disengage from the hammer because the "locking bar" prevents the trigger from dropping out of engagement with the hammer. This this is done to prevent the firearm from operating in what is known as a "hammer follow" condition. "Hammer follow" is described as when the hammer is not retained by the disconnector and follows the bolt as it feeds the cartridge into the chamber. Without delay in hammer travel imparted, the hammer fall is uncontrolled and may lack sufficient force to detonate the primer of the cartridge. Hammer follow AR-type firearms that shoot automatically are classified as "**machineguns**."

- As the bolt carrier moves forward into battery, using the force of the action spring, the contact surface on the required M16-type machinegun bolt carrier (which is designed to interact with the automatic sear on M16-type firearms), strikes the WOT "locking bar," releasing the trigger, which is still being pulled to the rear by the shooter. The necessity of an M16-type machinegun bolt carrier is clear at this point—it acts on the "locking bar" in the same way it acts on the machinegun automatic sear. Specifically, when the bolt moves forward in to firing position, it contacts the surface area on the "locking bar" or the automatic sear and automatically fires a subsequent round. Note that the disconnector on the AR15-type semiautomatic retains the hammer until the shooter manually releases the trigger.

- After firing a shot with a semiautomatic AR15-type firearm, the shooter is required to manually release the trigger which releases the hammer from the disconnector and the hammer comes to rest on the trigger sear surface, and then manually pull the trigger a second time to fire a subsequent shot. The disconnector is designed to retain the hammer and "disconnect" or stop the firing cycle from automatically continuing, until the shooter has manually manipulated the trigger by releasing it.

- If the shooter maintains constant rearward pressure from the original single function (pull) of the trigger, the WOT trigger will automatically perform the functions described above in a self-acting or self-regulating mechanism, allowing subsequent projectiles to be fired during the continuing cycle of operation. This self-acting or self-regulating mechanism in the WOT device is the function of the bolt carrier assembly pushing down the hammer, which then pushes down on the trigger, forcing it forward. This is done as an automatic function of the operation of the AR15-type system, with no input from the shooter. The "locking bar" is a key component of this self-acting or self-regulating mechanism, as once the bolt carrier assembly has "tripped" the "locking bar," the firing cycle begins again, and will continue until the shooter manually released the trigger, or the ammunition is exhausted.

- From the moment of the application of trigger pressure, and as long as rearward pressure is applied to the trigger through a single constant pull, a firearm with a WOT continues to fire until the firing finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted; this firing takes place regardless of the purported "forced reset" pushing the trigger forward.

Additional rounds are fired based on the automatic functioning of the firearm and the continuous pressure applied to the trigger during the single continuous function (pull) of the trigger. With both a WOT equipped AR15-type firearm, and an M16-type machinegun (with the selector set in its "Full Auto" position), the shooter maintains a constant pull of the trigger to fire subsequent shots with a single function (pull) of the trigger, through both the M16-type machinegun and WOT equipped AR15-types self-acting or self-regulating mechanisms during the operating cycle of the firearms.

ATF Form    3311.2
Revised September 2014

Special Agent Daniel Koneschusky

765040-23-0011
2023-258-ALC
Page 7

To demonstrate that Exhibits **1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** are each a combination of parts designed and intended for use in converting a weapon into a machinegun, I randomly selected Exhibits **1, 17,** and **29** as exemplars, and installed each into a Superior Arms model S-15 (ATF tag number 520663) AR15-type rifle from the ATF National Firearms Collection. Installing each Exhibit into the NFC S-15 was accomplished in approximately five minutes each time using a commonly available pin punch and a standard "flat-head" screwdriver.

Due to none of the Exhibits containing the advertised "anti-walk pins" used to secure the WOT device into an AR15-type receiver, I utilized commonly available standard AR15-type hammer and trigger pins. The "anti-walk" pins typically included in such WOT devices consist of two pins with interior threads at both ends, four screws with exterior threads, and two pin "anti-walk" bars. "Anti-walk pins" are typically used to prevent the hammer and trigger pins from "walking out" of the receiver, which can be a common occurrence with automatic fire weapons. To secure the standard AR15-type hammer and trigger pins within the receiver of the NFC S-15, I utilized common clear packing tape to secure the pins within the receiver of the NFC S-15 receiver (see attached pictures).

I first test fired the NFC S-15 **without any of the Exhibits installed** on December 21, 2022, at the ATF test range, Martinsburg, West Virginia, using commercially available, Federal brand, 5.56 NATO caliber ammunition and a magazine from the NFC. I inserted a one-round ammunition load and pulled the trigger. The NFC S-15 successfully expelled a projectile by the action of an explosive. I then inserted a two-round ammunition load and pulled the trigger. The NFC S-15 fired each round with a separate function of the trigger. Next, I inserted a five-round ammunition load and pulled the trigger; the NFC S-15 fired each round with a separate function of the trigger. I repeated this five-round test fire two additional times, achieving the same result.

I then test fired the NFC S-15 **with Exhibit 1 installed** on December 21, 2022, at the ATF test range, Martinsburg, West Virginia, using the same commercially available, Federal brand, 5.56 NATO caliber ammunition and the same magazine from the NFC. I inserted a one-round ammunition load, with the selector in the "semiautomatic" position and pulled the trigger. The NFC S-15, with Exhibit **1** installed, successfully expelled a projectile by the action of an explosive. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that Exhibit **1** had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I then inserted a two-round ammunition load and pulled the trigger; the NFC S-15, with Exhibit **1** installed, fired both rounds automatically by a single function of the trigger. I repeated this method of test fire two additional times, achieving the same result.

Next, I inserted a five-round ammunition load and pulled the trigger. The NFC S-15, with Exhibit **1** installed, fired all five rounds automatically, without manual reloading, by a single function of the trigger. I repeated this five-round method of test fire two additional times, achieving the same result.

ATF Form   3311.2
Revised September 2014

Special Agent Daniel Koneschusky

765040-23-0011
2023-258-ALC
Page 8

I then test fired the NFC S-15 **with** Exhibit 17 installed on December 22, 2022, at the ATF test range, Martinsburg, West Virginia, using the same commercially available, Federal brand, 5.56 NATO caliber ammunition and the same magazine from the NFC. I inserted a one-round ammunition load, with the selector in the "semiautomatic" position and pulled the trigger. The NFC S-15, with Exhibit **17** installed, successfully expelled a projectile by the action of an explosive. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that Exhibit **17** had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I then inserted a two-round ammunition load and pulled the trigger; the NFC S-15, with Exhibit **17** installed, fired both rounds automatically by a single function of the trigger. I repeated this method of test fire two additional times, achieving the same result.

Next, I inserted a five-round ammunition load and pulled the trigger. The NFC S-15, with Exhibit **17** installed, fired all five rounds automatically, without manual reloading, by a single function of the trigger. I repeated this five-round method of test fire two additional times, achieving the same result.

I then test fired the NFC S-15 **with** Exhibit 29 installed on January 4, 2023, at the ATF test range, Martinsburg, West Virginia, using the same commercially available, Federal brand, 5.56 NATO caliber ammunition and the same magazine from the NFC. I inserted a one-round ammunition load, with the selector in the "semiautomatic" position and pulled the trigger. The NFC S-15, with Exhibit **29** installed, successfully expelled a projectile by the action of an explosive. I repeated this same test with the magazine being removed after the cartridge was chambered, and noted that the hammer, rather than remaining in a cocked position, as would normally be the case with a standard AR15-type semiautomatic firearm, after firing one round with a single function (pull) of the trigger, had been released a second time, indicating that Exhibit **29** had initiated a second firing cycle with the original single function (pull) of the trigger. I repeated this method of test-fire one additional time, obtaining the same result.

I then inserted a two-round ammunition load and pulled the trigger; the NFC S-15, with Exhibit **29** installed, fired both rounds automatically by a single function of the trigger. I repeated this method of test fire two additional times, achieving the same result.

Next, I inserted a five-round ammunition load and pulled the trigger. The NFC S-15, with Exhibit **29** installed, fired all five rounds automatically, without manual reloading, by a single function of the trigger. I repeated this five-round method of test fire two additional times, achieving the same result.

Due to Exhibits **1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** being the same, the test fire procedure was only conducted on Exhibits **1, 17,** and **29,** which were chosen at random.

The WOT "drop-in" device is uniquely designed to interact with the required M16-type machinegun bolt carrier during the cycle of operation in the same way that the M16-type machinegun bolt interacts with the machinegun

ATF Form   3311.2
Revised September 2014

auto sear. This allows the weapon to function automatically with the WOT self-acting, or self-regulating mechanism, with one continuous pull of the trigger, and allows the weapon to shoot automatically, more than one shot, without manual reloading, by a single function (pull) of the trigger, until its trigger is manually released by the shooter, or the ammunition is exhausted.

While on standard semiautomatic AR15-type firearms, the cycle of operation is interrupted between shots by a disconnector which requires that the trigger be both manually released and manually pulled to fire a subsequent shot, no such action is required to fire subsequent shots on the WOT equipped AR15-type firearm. Indeed, the WOT design requires only that the shooter maintain the initial trigger pull, while the self-acting or self-regulating WOT mechanism forces the trigger forward during the rearward movement of the required M16-type machinegun bolt carrier, and then automatically releases the trigger and hammer, as the "locking bar" interacts with the "trip surface" on the M16-type machinegun bolt carrier, as the firearm goes into battery. All of these actions occur if the shooter maintains a single, constant pull of the trigger.

It is worth noting that the legislative history for the NFA indicates that the drafters equated a "single function of the trigger" with "single pull of the trigger." National Firearms Act: Hearings Before the Comm. on Ways and Means, House of Representatives, Second Session on H.R. 9066, 73rd Cong., at 40 (1934). Therefore, consistent with the language of the statute and Congressional intent, ATF has long held that a single function of the trigger is a "single pull" or alternatively, a single release of a trigger.

For informational purposes, the cyclic rate of fire of an M16-type, M4 machinegun is approximately 700 to 970 RPM as published in U.S. Army Technical Manual TM 9-1005-319-10, page 0002 00-3. To verify this, FTCB has previously tested the rate of fire of a 5.56 caliber M16-type, M4 machinegun, (tag number 0488490) from the ATF NFC utilizing a Competition Electronics brand shot timer to measure the approximate rounds per minute (RPM). This test determined that the average rate of fire of the NFC M16-type, M4 machinegun (tag number 0488490) was **870.4** RPM.

To demonstrate that the cyclic rate of fire with a WOT FRT machinegun conversion device equipped semiautomatic AR-type rifle is comparable to an M16-type machinegun, the same test was conducted utilizing a .223 Remington caliber NFC AR15-type semiautomatic rifle receiver (tag number 0550101) equipped with a WOT machinegun conversion device and utilized the same upper assembly, buffer and recoil spring used with the NFC M16 rate of fire test. This test determined that the average rate of fire of the NFC semiautomatic AR15-type rifle receiver (tag number 0550101) equipped with a Wide Open Enterprises WOT machinegun conversion device is **933 RPM**.

It is significant to note that following the above outlined test procedure, utilizing the same magazine and ammunition obtained from the same lot, that the measured rate of automatic fire when both triggers were held to the rear with a single constant pull was similar (933/840.4) in both weapons' automatic cyclic rates.

Exhibit **1, 17,** and **29** are each a combination of parts designed and intended for use in converting a weapon into a machinegun, and through demonstration, each successfully converted the semiautomatic NFC S-15 rifle into a machinegun; therefore, Exhibit **1, 17,** and **29** are each a "machinegun" as defined.

Exhibits **2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 18, 19, 20, 21, 22, 24, 27, 28, 30,** and **31,** each being the same as to Exhibits **1, 17,** and **29,** are also each a "machinegun" as defined.

ATF Form   3311.2
Revised September 2014

Special Agent Daniel Koneschusky

765040-23-0011
2023-258-ALC
Page 10

## Conclusions:

**Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** are each a "**machinegun**" as defined in 18 U.S.C. § 921(a)(24).

**Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** are each a combination of parts designed and intended, for use in converting a weapon into a machinegun; thus, are each a "**machinegun**" as defined in 26 U.S.C. § 5845(b).

**Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** each being a machinegun, are also each a "**firearm**" as defined in 26 U.S.C. § 5845(a)(6).

**Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 27, 28, 29, 30,** and **31** each bear no NFA manufacturers marks of identification or serial number as required by 26 U.S.C. § 5842.

Examined By:

**ANTHONY CIRAVOLO**
Digitally signed by
ANTHONY CIRAVOLO
Date: 2023.01.13
12:30:43 -05'00'

Anthony Ciravolo
Firearms Enforcement Officer

Approved By:

**CODY TOY**
Digitally signed by
CODY TOY
Date: 2023.01.13
13:38:00 -05'00'

Cody Toy
Chief, Firearms Technology Criminal Branch

Attachment:    Thirty-four pages bearing photographs.

**This Firearms Technology Criminal Branch report is provided in response to your request for assistance. Please be aware that these documents may constitute "taxpayer return information" that is subject to the strict disclosure limitations provided in 26 U.S.C. § 6103. Exceptions to the non-disclosure provisions that permit the disclosure internally within ATF are set forth in 26 U.S.C. §§ 6103(h)(2)(C) and (o)(1). Any further disclosure of these reports is strictly limited and must be reviewed and approved by the Office of Chief Counsel prior to any information dissemination. Failure to adhere to the disclosure limitations provided in 26 U.S.C. § 6103 could result in civil and/or criminal liability.**

ATF Form    3311.2
Revised September 2014





765040-23-0011 Exhibits **1-5**

ATF0198



Exhibits **1-5** Front of Packaging

ATF0199



Exhibits 1-5 Rear of Packaging

ATF0200

## Exhibit 1 Packaging







ATF0201

Exhibits **1-5** Packaging Removed



76-5040-23-0011
2023-258-ALC
Page 6

Exhibit 1 Left and Right View





ATF0203





Exhibit 1 Top Views

ATF0204

Exhibit 1 All Parts

Hammer

Hammer Spring

Main Body

Hammer and
Trigger Pins

Trigger

Trigger Spring

Locking Bar Pins
and Locking Bar
Guide Rod Pin

Locking Bar

Locking Bar Guide
Rod, Spring, and
Bushing

ATF0205

Exhibit 1 Installed in NFC AR15-type Rifle

ATF0206



Exhibit 1 Installed in NFC AR15-type Rifle
with Packing Tape Securing Hammer/Trigger Pins





ATF0207



Exhibit 1 Installed in NFC S-15
Compared to NFC M16-type Machinegun

ATF0208



Exhibit 1 Installed in NFC S-15
Compared to NFC M16-type Machinegun

ATF0209



Exhibit 1 Installed in NFC S-15
Compared to NFC M16-type Machinegun

ATF0210



Exhibit 1 Interaction with M16-type Bolt Carrier Trip Surface

ATF0211



The "locking bar" positioned under spring tension to prevent movement of the trigger until the M16-type bolt carrier contact/trip surface pushed the top of the "locking bar" forward.

"Locking Bar"

Hammer

Trigger

The internal component parts are displayed here representing their approximate position as they would be installed within the housing. The view of the parts shown represents their orientation in a "cocked" position.

ATF0212



M16-type machinegun bolt carrier contact surface.

As the bolt closes, the contact surface of the carrier contacts the top of the "locking bar", allowing the trigger sear surface to release the hammer.

"Locking Bar"

Trigger

Hammer

M16-type machinegun bolt carrier shown bottom-up for clarity.

The internal component parts are displayed here representing their approximate position as they would be installed within the housing. The view of the parts shown represents their orientation in a as "fired" position.

ATF0213

76-040-229.0011
2023-25832 ALC
P.43-17

Exhibits **7-11** Front of Packaging



Exhibits **7-11** Rear of Packaging



ATF0215



Exhibits 7-11 Packaging Removed



ATF0216

Exhibits 13-17 Front of Packaging



Exhibits **13-17** Rear of Packaging



ATF0218



Exhibits **13-17** Packaging Removed



Exhibit 17 Installed in NFC AR15-type Rifle

ATF0220



Exhibit **17** Installed in NFC AR15-type Rifle



ATF0221

Exhibits **18-22** Front of Packaging



Exhibits **18-22** Rear of Packaging



ATF0223





Exhibits **18-22** Packaging Removed

ATF0224







Exhibit 24



ATF 0226



Exhibits **27-31** Front of Packaging



ATF0227

Exhibits 27-31 Front of Packaging



ATF0228

Exhibits **27-31** Packaging Removed



ATF0229





Exhibit **29** Installed in NFC AR15-type Rifle

ATF0230



Exhibit **29** Installed in NFC AR15-type Rifle



ATF0231