**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) | Case No. 4:23-cv-00830-O |
| v. | ) ) | |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iv

SUMMARY ................................................................................................................... 1

INTRODUCTION .......................................................................................................... 2

    I.      BACKGROUND ............................................................................................. 2

         a.   Forced Reset Triggers .............................................................................. 3

         b.   Statutory Background .............................................................................. 3

         c.   Regulatory Background ........................................................................... 4

    II.     THRESHOLD ISSUES ................................................................................... 7

         a.   Statutory Interpretation ........................................................................... 7

         b.   Individual and Associational Standing ................................................... 8

         c.   Pre-Enforcement Challenges ................................................................ 10

    III.   LEGAL STANDARD .................................................................................... 12

    IV.   ARGUMENT ................................................................................................. 14

         a.   There is No Genuine Dispute of Material Facts .................................... 14

         b.   The ATF's Classification of FRTs as "Machineguns" is a Final Agency
             Action ................................................................................................... 15

         c.   The Undisputed Facts Show that Plaintiffs are Entitled to Judgment as a
             Matter of Law—FRTs are Not "Machineguns" ................................... 15

         d.   A Failure to Grant a Permanent Injunction Will Result in Irreparable Injury.... 20

         e.   Balance of Hardships and Public Interest .............................................. 22

    V.    SCOPE OF RELIEF ...................................................................................... 23

         a.   The ATF's Classification of FRTs as "Machineguns" Must be Vacated........... 23

         b.   Defendants Should be Enjoined from Continuing Their Enforcement
             Campaign Against Law Abiding FRT Owners ..................................... 24

c.    Return of Seized Triggers..................................................................................28

d.    Corrective Notices to FFLs and Individuals.........................................................28

e.    Injunctive Relief Protecting the Rare Breed Parties from Criminal Liability .... 30

CONCLUSION.............................................................................................................................32

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)............................................................ 11, 12

*Americans for Prosperity v. Bonta*, 141 S. Ct. 2373 (2021)........................................................ 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................... 12, 13

*Babbit v. Farm Workers*, 442 U.S. 289 (1979) ............................................................................ 10

*Calmes v. United States*, 926 F. Supp. 582 (N.D. Tex. 1996) ................................................. 13, 24

*Canal Auth. V. Callaway*, 489 F.2d 567 (5th Cir. 1974) .............................................................. 20

*Cargill v. Garland,* 57 F.4th 447 (5th Cir. 2023) (en banc), *pet. for cert. filed,* No. 22-976 (2023) ................................................................................................................................... passim

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 13

*Chevron USA, Inc. v. Nat. Res. Def. Council*, 267 U.S. 837 (1984 ............................................. 19

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971)............................ 11, 14

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018).................................................... 27, 28

*Data Marketing Partnership, LP v. United States Department of Labor*, 45 F.4th 846 (5th Cir. 2022)........................................................................................................................................ 23

*Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831 (5th Cir. 2004) ............................ 13

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985) . 20

*Fed. Election Comm'n v. Cruz,* 142 S. Ct. 1638 (2022) ............................................................. 12

*Franciscan All., Inc. v. Becerra*, 47 F.4th 378 (5th Cir. 2022)..................................................... 12

*Franciscan All., Inc. v. Becerra*, 553 F.Supp.3d 361 (N.D. Tex. 2021)....................................... 13

*Hodgson v. First Fed. Sav.& L. Ass'n of Broward Cty., Fla*, 455 F.2d 818 (5th Cir. 1972)........ 22

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)................................................ 22

*League of Women Voters of United States, v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................... 22

*Marbury v. Madison*, 5 U.S. 137 (1803)........................................................................................ 7

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007)........................................................ 10

*Menkes v. DHS,* 637 F.3d 319 (D.C. Cir. 2011) ................................................................ 11

*Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F.Supp.2d 802 (N.D. Tex. 2002) ................ 24

*N Mariana Islands v. United States,* 686 F. Supp. 2d 7 (D.D.C. 2009) ........................................ 22

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ........................................................ 27

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ................................................ 10

*Polymer80, Inc. v. Garland,* 4:23-cv-00029-O, 2023 WL 3605430 (N.D. Tex. Mar. 19, 2023) .. 22

*Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955) ........................................................................ 11, 12

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) .......................................................... 8

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141
   (2023) ...................................................................................................................................... 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................................................... 10

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) .............................................................................. 20

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ..................... 12

*U.S. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) ...................................................... 9, 15

*U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) .................................................. 9, 15

*U.S. v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) ................................................... 8, 15

*United States v. Bruggeman*, 2:22-cr-185 (S.D. Tex.) ............................................................... 6

*United States v. Jokel*, 969 F.2d 132 (5th Cir. 1992) ................................................................ 17

*United States v. Mead Corp.*, 533 U.S. 218 (2001) .................................................................... 19

*United States v. Rare Breed Triggers, LLC, et al.,* No. 23-cv-369 (E.D.N.Y.) ................. 6, 15, 16

*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021) .................................................................... 13

*Vanderstok, et al. v. Garland, et al.*, 625 F. Supp.3d 570 (N.D. Tex. 2022) ......................... 20, 23

*Wages and White Lion Investments, L.L.C. v. United States*, 16 F.4th 1130 (5th Cir. 2021) ....... 20

*Walker v. Sears, Roebuck & Co.*, 853 F.2d 355 (5th Cir. 1988) ................................................ 13

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994) .................................................................... 22

*Western Refining Southwest, Inc. v. FERC*, 636 F.3d 719 (5th Cir. 2011) ........................... 19, 20

*Zimmerman v. City of Austin*, 881 F.3d 378 (5th Cir. 2005) ........................................................ 8


## Statutes

18 U.S.C. § 921 *et. seq*.......................................................................................................... 4

18 U.S.C. § 921(a)(24)............................................................................................................ 4

18 U.S.C. § 922(o) .................................................................................................................. 4

18 U.S.C. § 924(a)(2).............................................................................................................. 4

26 U.S.C. § 5812 ..................................................................................................................... 3

26 U.S.C. § 5845(b) ................................................................................................................ 4

26 U.S.C. §§ 5801 *et seq*........................................................................................................ 3

5 U.S.C. § 702......................................................................................................................... 11

5 U.S.C. § 705......................................................................................................................... 12

5 U.S.C. § 706.................................................................................................................. passim

5 U.S.C. §§ 701 *et seq*............................................................................................................ 3

Fed. R. Civ. P. 56.............................................................................................................. 12, 13


## Other Authorities

James Madison, J., THE FEDERALIST No. 47 (Clinton Rossiter ed. 1961) ............................... 2


## Regulations

27 C.F.R § 479.11 (2018) ................................................................................................. passim

27 C.F.R. § 478.11 (2017) ...................................................................................................... 4

## SUMMARY

Consistent with Local Rule 56.3(a), Plaintiffs provide the following summary.

Plaintiffs assert one claim under the Administrative Procedure Act, 5 U.S.C. § 706. The elements of Plaintiffs' claim are: (1) there is a final agency action; and (2) the final agency action, findings, and conclusions are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or in excess of statutory jurisdiction, authority, or limitations.

The final agency action is Defendants' classification of forced reset triggers as "machineguns" and the agency's subsequent actions based on this classification pursuing criminal charges and civil seizures of property. This action is arbitrary, capricious, or otherwise not in accordance with law and in excess of Defendants' statutory limitations because a forced reset trigger does not shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

The following undisputed material facts support Plaintiffs' Motion for Summary Judgment:

- The Bureau of Alcohol, Tobacco, Firearms, and Explosives has made a final determination to classify forced reset triggers as "machineguns" (e.g., Pls.' App'x 112-177; Pls.' App'x 179-193; Pls.' App'x 197-253; Pls.' App'x 195-196; Pls.' App'x 498-499 ¶ 42; Pls.' App'x 274-275, Prelim. Inj. Hr'g. Tr. 105:24-106:4);

- For each and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface (Pls.' App'x 67; Pls.' App'x 529-532, Prelim. Inj. Hr'g. Tr. 21:16-22:17, 109:11-18, 111:7-16);

- The trigger in a firearm equipped with a forced reset trigger must reset after every round that is fired (Pls.' App'x 67-68; Pls' App'x 532-533, Prelim. Inj. Hr'g. Tr. 111:17-112:24); and

- If the shooter attempts to overcome the reset and holds the trigger in a fully depressed position so that the trigger cannot reset, the weapon will malfunction (Pls.' App'x 533, Prelim. Inj. Hr'g. Tr. 113:10-21).

This motion otherwise satisfies LR 56.3(a), including complying with LR 56.5(c). *See* LR 56.3(b).

## INTRODUCTION

James Madison warned that "[t]he accumulation of all powers, legislative, executive and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny." THE FEDERALIST No. 47, at 301 (James Madison) (Clinton Rossiter ed. 1961). The crux of this case is that the executive branch has improperly usurped legislative authority by enacting criminal prohibitions that are beyond the scope of its legislatively granted authority. The Court possesses both constitutional and statutory authority to review pre-enforcement challenges to this agency's actions that carry criminal consequences.

Because there is no genuine dispute of material fact and statutory interpretation is the province of the courts, Plaintiffs move for summary judgment dispositive of all issues and awarding appropriate relief.

## I.    BACKGROUND

The United States Congress delegated authority to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to regulate firearms in interstate commerce through an amendment in 1986 to Gun Control Act of 1968. In a 2018 regulation, the ATF expanded the statutory definition of "machinegun" with the intention of encompassing "bump stocks." A few years later, the ATF asserted that additional types of devices qualify as machineguns and are thus illegal to possess or transfer. One of those prohibited devices is a forced reset trigger ("FRT"). Alleging agency overreach because of incongruence between the statutory definition and the ATF's interpretation, Plaintiffs brought this suit under the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701 *et seq.*, to challenge the legality of the ATF's extra-statutory definition and its application thereof, and to seek declaratory and injunctive relief.

### a.      Forced Reset Triggers

The Court determined that an FRT is an assembly that allows the trigger of a semi-automatic weapon to reset quicker than it otherwise would using the standard trigger-return spring. Pls.' App'x 67, Opinion and Order Graning Preliminary Injunction ("Opinion and Order") at 2. An FRT forcibly returns the trigger to its reset state. *Id*. Due to the swifter trigger reset, a firearm equipped with an FRT enables the user to fire at a faster rate than with a traditional trigger. *Id*. In the commercialized FRT designs at issue in this litigation, the trigger is forcibly reset by the hammer when the bolt carrier cycles to the rear. *Id*. A "locking bar" mechanically locks the trigger in its reset state, preventing the user from moving the trigger rearward to function by releasing the hammer, until the bolt has returned to the in-battery position and the firearm is safe to fire. *Id*. When firing multiple rounds using an FRT, the trigger must still reset after each round is fired and must separately function to release the hammer by moving far enough to the rear to fire the next round. *Id*. at 67-68.

### b.      Statutory Background

The National Firearms Act of 1934 ("NFA") regulates certain firearms in interstate commerce. 26 U.S.C. §§ 5801 *et seq.* At the time of its proposal, the NFA "was known to many as the 'the Anti-Machine Gun Bill.'" *Cargill v. Garland,* 57 F.4th 447, 450 (5th Cir. 2023) (en banc), *pet. for cert. filed,* No. 22-976 (2023). Among other things, the NFA criminalized the possession or transfer of certain unregistered firearms while also prohibiting the registration of firearms otherwise banned by law. 26 U.S.C. §§ 5812(a), 5861. In the decades following its enactment, Congress passed the Gun Control Act of 1968 (the "GCA"), which criminalized the

3

possession of firearms for certain classes of people. 18 U.S.C. § 921 *et. seq*. The GCA was amended in 1986 by the Hughes Amendment to the 1986 Firearm Owners Protection Act— colloquially referred to as "the machinegun ban"—to prohibit the possession or transfer of machineguns. 18 U.S.C. § 922(o). With limited exceptions, it is a federal felony today to possess or transfer a machinegun. *Id*. This offense is punishable by up to ten years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2).

According to both the NFA and GCA, a "machinegun" is statutorily defined as:

[a]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (providing the original statutory definition of "machinegun"); 18 U.S.C. § 921(a)(24) (incorporating the NFA's definition of "machinegun" into the GCA). In other words, a machinegun is a weapon "capable of automatic fire" due to "firing more than one round per trigger-action." *Cargill*, 57 F.4th at 452. Firearms incapable of automatic fire per trigger-action are thus not machineguns. *Id*.

### c.    Regulatory Background

For decades, the ATF's regulations mirrored the federal statutory definition of "machinegun." *Compare* 27 C.F.R. §§ 478.11, 479.11 (2017), *with* 26 U.S.C. § 5845(b). This statutory consistency was disrupted in 2018 when the ATF broadened the meaning of machinegun in its most recent regulation by re-interpreting the statutory definition to add additional language (shown in italics):

Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any

4

such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person. *For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.*

27 C.F.R § 479.11 (2018) (emphasis added). [1]

Three years after the ATF broadened its interpretation of the statutory definition, agency subdivisions issued reports applying the revised definition of "machinegun" to FRTs. For example, the Firearms Technology Criminal Branch ("FTCB") issued a Technical Examination Report on July 15, 2021, which purportedly classified the FRT-15—an FRT model—as a machinegun. Pls.' App'x 112-177 (ATF FTCB Report re: FRT-15, July 15, 2021) ("ATF's FRT Report, July 15, 2021"). The FTCB issued a similar report several months later on October 21, 2021, regarding the Wide Open Enterprises ("WOT") iteration of an FRT. Pls.' App'x 179-193 (ATF FTCB Report re: "WOT," October 21, 2021) ("ATF's WOT Report, October 21, 2021"). Both the WOT and the FRT-15 operate on the same mechanical principles. Pls.' App'x 70, Opinion and Order at 5. At the beginning of the next year, the FTCB issued its "Open Letter to All Federal Firearms Licensees" on March 22, 2022. Pls.' App'x 195-196 (ATF Open Letter to All Federal Firearms Licensees, March 22, 2022) (the "Open Letter"). The Open Letter advised that the ATF "recently examined devices commonly known as 'forced reset triggers' (FRTs)" and

---

[1] ATF's rule change is embodied identically in 27 C.F.R §§ 447.11, 478.11, and 479.11. Section 479.11 is used herein exemplarily and reference to this section should be understood to be inclusive of all.

"determined that some of them are 'firearms' and 'machineguns' as defined in the [GCA]." *Id.* at 195. The Open Letter further stated that "ATF's examination found that some FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger" and that "any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a 'machinegun.'" *Id.*

On April 27, 2023, the FTCB issued yet another report on the FRT-15 trigger. Pls.' App'x 197-253 (ATF FTCB Report re: FRT-15 (April 27, 2023) ("ATF's FRT Report, April 27, 2023"). Although each of these reports facially purported to rely on C.F.R. § 479.11, the ATF's expert witness at the October 2, 2023, preliminary injunction hearing—who authored the ATF's FRT Report from April 27, 2023—stated that, if he could, he would change that report now to disavow its reliance on C.F.R. § 479.11 and to instead rely exclusively on the statutory language. Pls.' App'x 274-275, Prelim. Inj. Hr'g. Tr. 105:24-106:4. However, departing again from the statute, the most recent definition asserted by ATF—as proffered by its expert at this Court's preliminary injunction hearing—is that "single function of the trigger" means "initiation of the firing sequence" plus "constant rearward pressure." Pls.' App'x 278, Prelim. Inj. Hr'g. Tr. 130:10-17.

The ATF's application of its expanded definition is not merely limited to agency reports. In fact, the ATF and other government actors are actively pursuing civil and criminal enforcement actions against manufacturers, sellers, and owners of FRTs. Specifically, the Department of Justice ("DOJ") has brought several criminal prosecutions against individuals for possessing FRTs—including at least one individual located in the State of Texas. *United States v. Bruggeman*, 2:22-cr-185 (S.D. Tex.). The DOJ has also initiated civil proceedings against at least one company and two individuals stemming from the manufacture and sale of FRTs. *United States v. Rare Breed Triggers, LLC, et al.,* No. 23-cv-369 (E.D.N.Y.).

More proceedings seem inevitable. The ATF was sending cease-and-desist letters regarding possession of FRTs (at least as recently as October 3, 2023)[2] and continuing to seize FRTs (at least as recently as September 27, 2023)[3] before this Court issued a Preliminary Injunction on October 7, 2023.

This activity did not stop after the issuance of the Preliminary Injunction. Defendants appear to have treated the preliminary injunction as ***at best*** an affirmative defense to be asserted by individuals ensnared in Defendants' aggressive enforcement activities. Defendants have *continued* to contact individuals they suspect of owning FRTs and demanding those individuals surrender their FRTs or risk criminal prosecution. *See, e.g.*, Pls.' App'x 285 (Declaration of Pete Moreno); 286-289 (Declaration of Nick Barry); 290-293 (Declaration of Mackenzie Mitchell ¶ 5, Ex. A). Notwithstanding Defendant's purported "Notice of Compliance," *See* Pls.' App'x 254-264, Defendants are known to have contacted at least ten members of Plaintiff National Association for Gun Rights, in violation of the preliminary injunction. *See* Pls.' App'x 294 (Declaration of Ryan Flugaur ¶ 3).

## II.   THRESHOLD ISSUES

### a.   Statutory Interpretation

As Chief Justice John Marshall stated in *Marbury v. Madison*: "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803) (1 Cranch). When reviewing an agency action under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The

---

[2] Pls.' App'x 301-303 (Declaration of Lee Boerschig (with attached ATF letter)).
[3] Pls.' App'x 397, 399, 326-327, 330, 391, 393 (ATF Official Notification posted on November 1, 2023 (stating ATF seized FRTs/WOTs on August 31, 2021, September 19, 26, 27, 2023, October 3, 4, 11, 13, 16, 19, 20, 24 2023)).

APA instructs courts to "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations." *Id*. at § 706(2)(C).

### b.    Individual and Associational Standing

Individual and Associational Plaintiffs, including their members, have been determined to have standing to bring this action and to have relief granted. *See* Pls.' App'x 75-80, Opinion & Order at 10-15. Nothing has changed since the Court made that determination.

### i.    The Individual Plaintiffs Have Standing

The Individual Plaintiffs continue to face a credible threat of prosecution.  As the Court previously noted, "There is no dispute that the Individual Plaintiffs 'inten[d] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" Pls.' App'x 77,  Opinion & Order at 12 (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2005)).  Each individual plaintiff either currently possesses or previously possessed an FRT and each would like to purchase additional FRTs in the future.  *See* Pls.' App'x 05-06 (Declaration of Patrick Carey); 1-2 (Declaration of J.R. Wheeler); 03-04 (Declaration of Travis Speegle).

Defendants' aggressive enforcement posture confirms that their erroneous interpretation of the law is not moribund. *See generally Speech First, Inc. v. Fenves*, 979 F.3d 319, 336-37 (5th Cir. 2020) ("Where the policy remains non-moribund, the claim is that the policy causes self-censorship among those who are subject to it, and the students' speech is arguably regulated by the policy, there is standing."). For example, they previously specifically threatened enforcement actions against Plaintiff Patrick Carey. Pls.' App'x 06 (Declaration of Patrick Carey).  They have brought and are continuing to pursue criminal charges against several individuals for possessing an FRT, including in Texas.[4]  And they have continued to visit and send letters to suspected FRT

---

[4] *See* Pls.' App'x 467, Second Superseding Indictment at Count One, *U.S. v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun, that is, six (6) Rare Breed Triggers

owners, including contacting at least ten members of the National Association for Gun Rights *since the preliminary injunction was issued*.  Pls.' App'x 294 (Declaration of Ryan Flugaur ¶ 3).  Defendants have not been chastened by the issuance of this Court's preliminary injunction; instead, they have supercharged their enforcement efforts.  The Individual Plaintiffs have standing.

### ii.  The Associational Plaintiffs Have Standing

To establish associational standing, the Associational Plaintiffs must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Opinion & Order at 14 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023))

The Individual Plaintiffs are all members of both the National Association for Gun Rights and Texas Gun Rights. *See* Pls.' App'x 473, Supplemental Declaration of Patrick Carey; Pls.' App'x 472, Supplemental Declaration of Travis Speegle; Pls.' App'x 474, Supplemental Declaration of J.R. Wheeler; Pls.' App'x 475, Declaration of Ryan Flugaur.  In addition, at least ten members of the National Association for Gun Rights have been contacted by Defendants even after (and in apparent violation of) the preliminary injunction. Pls.' App'x 294 (Declaration of Ryan Flugaur ¶ 3).  The Associational Plaintiffs' members would (and do) have standing to sue in their own right.

---

FRT-15"); Pls.' App'x 479-480, Superseding Indictment at Count Two, *U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for possessing a Rare Breed FRT-15 trigger); Pls.' App'x 482-483, Superseding Indictment at Count One, *U.S. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for possessing three Rare Breed FRT15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger).

The National Association for Gun Rights was formed to "to preserve and defend the Second Amendment rights of gun owners."  Compl. ¶ 4 (ECF No. 1). The mission of Texas Gun Rights is "to protect the Second Amendment rights of its members, including protecting the liberty of individuals to defend themselves, their families, and their property without having to first ask government for permission, and to push back on firearms-related licensing requirements."  Compl. ¶ 5 (ECF No. 1).  As the Court previously noted, these organizational purposes "are clearly germane to this lawsuit challenging Defendants' asserted authority to classify and regulate FRTs as machineguns."  Opinion & Order at 15.

Finally, as the Court previously noted, "because NAGR and TGR seek injunctive relief, there is no need for all of their individual members to participate in the lawsuit."  Pls.' App'x 80, Opinion & Order at 15.  The Associational Plaintiffs have standing.

### c.  Pre-Enforcement Challenges

Plaintiffs facing "a credible threat of prosecution . . . should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."  *Babbit v. Farm Workers*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by the *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis of the threat."); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("When an individual is subject to such a threat [of enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ("Although in regard to criminal statutes, courts are wary of . . . intervening prior to prosecution and foreshortening the prosecutor's action, courts have allowed pre-enforcement review of a statute with criminal penalties.").

"[T]he Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)). As this Court previously recognized, the APA authorizes courts to review agency actions on a pre-enforcement basis, including various agency actions that are "otherwise not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity; ... [or] in excess of statutory jurisdiction, authority, or limitations," a power of judicial review that is "cumulative under the arbitrary and capricious standard." Pls.' App'x 83-84, Opinion and Order at 17-18 (quoting 5 U.S.C. § 706(2)(A)-(B); *Menkes v. DHS,* 637 F.3d 319, 330 (D.C. Cir. 2011)).

Further, the Court acknowledged that "'[i]n *all* cases' of judicial review under § 706, 'agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413-414 (1971)).

The APA's text refers to "mandatory or injunctive decree[s]" issued thereunder. 5 U.S.C. § 702. The import of this text is that injunctive relief is available under the APA without any express limitation precluding the availability of such relief on a pre-enforcement basis.

Moreover, the text of § 702 makes clear that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof." *Id.* And the APA expressly provides that criminal proceedings are *included* in such review. *Id*. This ability to obtain an appropriate remedy is not contingent on the person being subject to existing enforcement. To the contrary, the APA recognizes judicial authority to "issue all necessary and appropriate process . . . to preserve status or rights" from "irreparable injury"

caused by agency action. 5 U.S.C. § 705 Indeed, the APA's explicit textual entitlement would be undermined by an interpretation that § 702 confers no right to obtain meaningful equitable relief on a pre-enforcement basis when wronged by agency action.

Based on its text, the APA empowers courts with specific authority to "hold unlawful and set aside agency action, findings, and conclusions found to be" unlawful without subjecting that authority only to post-enforcement situations. 5 U.S.C. § 706. This is the only reading of the text that gives "a 'hospitable' interpretation" to the APA's "generous review provisions." *Abbott Lab'ys,* 387 U.S. at 140 (quoting *Shaughnessy,* 349 U.S. at 51). It also tracks with the important purpose the APA serves. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 378, 372 (5th Cir. 2022) ("[A]n agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'" (quoting *Fed. Election Comm'n v. Cruz,* 142 S. Ct. 1638, 1649 (2022)). This authority to "issue all necessary and appropriate process . . . to preserve status or rights" from "irreparable injury" caused by agency action is not limited to relief for only the Plaintiffs. *See Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015), *as revised* (Nov. 25, 2015). The relief granted for the facial attack on ATF's actions must inure to the benefit of all similarly situated non-party persons in the United States.

### III.   LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its

motion and by identifying the portions of the record that reveal there are no genuine material-fact issues. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must resolve all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. And if there appears to be some support for the disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Id*. at 250.

Plaintiffs in this case seek a permanent injunction. As with summary judgment, "[a] 'court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved.'" *Franciscan Alliance, Inc. v. Becerra*, 553 F. Supp. 3d 361, 368 (N.D. Tex. 2021) (quoting *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996)). "The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits." *Id*. at 375 (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004)). "Thus, a permanent injunction is proper if the plaintiff shows: '(1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.'" *Id*. (quoting *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021)). Here, the parties agree that this case is appropriate for summary judgement. *See* Unopposed Motion to Stay Deadline to Respond to Complaint (ECF No. 58) at 1.

Finally, under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). "'In all cases' of judicial review under Section 706, 'agency action must be set aside if the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or if the action failed to meet statutory, procedural, or constitutional requirements.'" Pls.' App'x 85-86, Opinion and Order at 21-22 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–414 (1971) (internal quotation marks omitted).

## IV.   ARGUMENT

### a.   There is No Genuine Dispute of Material Facts

The following undisputed material facts support Plaintiffs' Motion for Summary Judgment:

- The Bureau of Alcohol, Tobacco, Firearms, and Explosives has made a final determination to classify forced reset triggers as "machineguns" (e.g., Pls.' App'x 112-177; Pls.' App'x 179-193; Pls.' App'x 197-253; Pls.' App'x 195-196; Pls.' App'x 498-499 ¶ 42; Pls.' App'x 274-275, Prelim. Inj. Hr'g. Tr. 105:24-106:4);

- For each and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface (Pls.' App'x 67; Pls.' App'x 529-532, Prelim. Inj. Hr'g. Tr. 21:16-22:17, 109:11-18, 111:7-16);

- The trigger in a firearm equipped with a forced reset trigger must reset after every round that is fired (Pls.' App'x 67-68; Pls' App'x 532-533, Prelim. Inj. Hr'g. Tr. 111:17-112:24); and

- If the shooter attempts to overcome the reset and holds the trigger in a fully depressed position so that the trigger cannot reset, the weapon will malfunction (Pls.' App'x 533, Prelim. Inj. Hr'g. Tr. 113:10-21).

On October 2, 2023, the Court held an evidentiary hearing where each party was permitted an expert witness to testify about the mechanics of FRTs. The Court concluded that, having been made clear by the testimony, there are no factual disputes regarding how FRTs work and confirmed that the parties' dispute centers entirely on whether FRTs qualify as machineguns under the

statutory definition. Pls.' App'x 74, Opinion and Order at 9. All Parties agreed. *See* Pls.' App'x 279, 283, Prelim. Inj. Hr'g. Tr.133:17-22, 141:17-20. Thus, there is no genuine issue of material fact.  FRTs function as described above.  *See supra* 3.

### b.    The ATF's Classification of FRTs as "Machineguns" is a Final Agency Action

There is no—and cannot be any—material dispute that the ATF has classified FRTs as "machineguns" and that this classification is a final agency action that represents the culmination of the agency's decision-making on this matter.  It has issued multiple reports asserting this position,[5] reiterated it in letters threatening prosecution against individuals,[6] used this theory to bring multiple criminal prosecutions, [7] used it as the basis of a civil fraud action,[8] and reiterated it in this litigation.

### c.    The Undisputed Facts Show that Plaintiffs are Entitled to Judgment as a Matter of Law—FRTs are Not "Machineguns"

Controlling Fifth Circuit precedent is squarely dispositive of the sole issue in this case. *Cargill v. Garland* emphatically rejected the ATF's interpretation set forth in § 479.11 and unambiguously defined what "single function of the trigger" means. 57 F.4th at 460, 473. The ATF's regulation and subsequent re-interpretation broadening the machinegun definition has

---

[5] *See* Pls.' App'x 112-177, ATF's FRT Report, July 15, 2021; Pls.' App'x 179-193, ATF's WOT Report, October 21, 2021; Pls.' App'x 197-253, ATF's FRT Report, April 27, 2023; Pls.' App'x 195-196 (ATF Open Letter to All Federal Firearms Licensees, March 22, 2022).

[6] Pls.' App'x 05-06 (Declaration of Patrick Carey (with attached letter)); Pls.' App'x 286-289 (Declaration of Nick Barry (with attached letter)); Pls.' App'x 290-293 (Declaration of Mackenzie Mitchell (with attached letter)); Pls.' App'x 536-540 (with transcript of call)).

[7] *See* Pls.' App'x 467, Second Superseding Indictment at Count One, *U.S. v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun, that is, six (6) Rare Breed Triggers FRT-15"); Pls.' App'x 479-480, Indictment at Count Two, *U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for possessing a Rare Breed FRT-15 trigger); Pls.' App'x 482-483, Superseding Indictment at Count One, *U.S. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for possessing three Rare Breed FRT15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger).

[8] *See* Pls.' App'x 490-527, *United States v. Rare Breed Triggers, LLC, et al.,* No. 23-cv-369 (E.D.N.Y.) (civil lawsuit against the "Rare Breed Parties") (hereinafter "E.D.N.Y. Lawsuit").

already been determined to be an arbitrary and capricious expansion of the agency's authority by the *en banc* Fifth Circuit. *Id.* at 472-73. The same definition must apply to forced reset triggers and mandates the same conclusion: that a forced reset trigger is not a machinegun.

ATF has not limited itself to the broadened definition set forth in its published regulations (§ 479.11, et al.), which defined "function of the trigger" as a "single pull of the trigger and analogous motions." It has used an ever-changing series of definitions, including "constant rearward pressure,"[9] "continuous pull,"[10] "constant rearward pull" or "single function of the trigger means single pull of the trigger,"[11] and most recently "initiation of the firing sequence" plus "constant rearward pressure."[12] But all of these contortions are foreclosed by the proper, controlling definition of "single function of the trigger" set forth in *Cargill*.

All of Defendants shifting interpretations improperly focus on the action imposed *on* the trigger rather than the function *of* the trigger itself. Any interpretation that seeks to transform the required statutory focus away from the objective trigger mechanics to the subjective actions of the gun user instead is incorrect and is the same rewriting of the statute Defendants already attempted with bump stocks, which the Fifth Circuit rejected in *Cargill*. *Cargill*, 57 F.4th at 460. ("The statute does not care what human input is required to activate the trigger—it cares only whether more than one shot is fired each time the trigger acts."). Under *Cargill*, the Court cannot look to the shooter's actions in deciding whether FRTs are machineguns. *Id.* Indeed, the "notion that the definition turns on the actions of an unnamed shooter is inconsistent with both the [definition's] grammatical and statutory contexts." *Id.* at 461.

---

[9] Pls.' App'x 112-177, ATF's FRT Report, July 15, 2021; Pls.' App'x 179-193, ATF's WOT Report, October 21, 2021.
[10] Pls.' App'x 112-177, ATF's FRT Report, July 15, 2021.
[11] Pls.' App'x 197-253, ATF's FRT Report, April 27, 2023, at 5; Pls.' App'x 299, Prelim. Inj. Hr'g. Tr. 162:1-4, *United States v. Rare Breed Triggers, LLC*, et al., No. 23-cv-369 (NRM) (RML), 2023 WL 5689770 (E.D.N.Y. Aug. 1, 2023).
[12] Pls.' App'x 278, Prelim. Inj. Hr'g. Tr. 130:10-17.

In light of *Cargill*, the critical—and sole—consideration is how the trigger mechanically functions. And that function is the "follow-on action where the trigger acts out its mechanical design or purposes" after the shooter has initiated it by some action. *Id*. at 460. *Cargill* leaves no doubt that this required "action" is in relation to the function of the trigger itself, which is defined purely mechanically under the statute rather than an action taken by the user. *Id*. at 461 ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire . . .. Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."). In a hammer-fired gun like those an FRT enhances, the trigger's function is still to release the hammer as part of a "simple mechanical process." *See id.* at 459 (explaining that "the trigger disengages the hammer from the sear" starts the "process" that "happens every single time one bullet is fired"). This definition is consistent with prior Fifth Circuit precedent. *See, e.g.*, *United States v. Jokel*, 969 F.2d 132, 134 (5th Cir. 1992) (concluding that the role of the trigger is "the part of the action of a firearm moved by the finger to *release the hammer . . . in firing*") (emphasis added)).

As the Fifth Circuit's statutory interpretation makes clear, a "single function of the trigger" means what it says: a single function *of the trigger*. It does not mean a single pull by the shooter. *Cargill,* 57 F.4th at 459. In fact, the word "pull" is not found anywhere in the statutory definition. The parties agree that the trigger in an FRT-equipped firearm releases the hammer for every shot. Pls.' App'x 279, Prelim. Inj. Hr'g. Tr.133:17-22, 141:17-20. Moreover, both parties confirmed at the October 2, 2023, hearing that there is no disagreement as to how FRTs function. *Id*. The ATF's witness concedes the trigger has to be moved (i.e., "function") each time a round is fired and the only force that moves that trigger rearward comes from the user's finger. Pls.' App'x 276, Prelim.

Inj. Hr'g. Tr. 111:10-12. For every shot fired by an FRT-15, the trigger must move rearward to release the hammer. *Id.*, Prelim. Inj. Hr'g. Tr. 111:13-16.

By contrast, the auto sear in a fully automatic gun takes over to retain and release the hammer for all subsequent shots so that its trigger functions only once in a string of automatic fire. *See* Pls.' App'x 276-277, Prelim. Inj. Hr'g. Tr. 111:17-112:2; *Cargill*, 57 F.4th at 454 (contrasting the auto sear of a "fully automatic gun" with a bump stock). Although an FRT-equipped firearm contains a locking bar that prevents a subsequent trigger function until the weapon is safe to fire again, this is not the same as an auto sear. Pls.' App'x 93, Opinion and Order at 28. Unlike an auto sear, the locking bar prevents firing until it is safe to do so again after unlocking the trigger. *Id.* Also unlike a fully automatic weapon's auto sear, the FRT's locking bar does not alter the basic mechanical process where the trigger must move to cause every shot fired. Pls.' App'x 276, Prelim. Inj. Hr'g. Tr. 111:1-16. Whether that movement occurs by the shooter "apply[ing] forward pressure to the weapon's forebody in order to maintain the shooting mechanism" for bump stocks, *Cargill*, 57 F.4th at 454, or by the shooter maintaining rearward pressure as the hammer forces the trigger forward for FRTs, the fact remains that the trigger resets to retain the hammer and release the hammer between each shot fired. *Cargill* explains that each of these retentions and releases caused by the trigger's movement is a separate function of the trigger. *Id.* at 459. Like bump stocks, FRTs do not enable a weapon to automatically fire multiple rounds with a single function of the trigger itself. Pls.' App'x 93, Opinion and Order at 28.

Furthermore, unlike a switch-activated device that takes over as the legal trigger of the weapon, FRTs do not alter the basic operation of the trigger: the trigger must still move sufficiently rearward for each shot based on external manual input from the shooter. Pls.' App'x 94-95, Opinion and Order at 29-30. This, in turn, activates the trigger's function—releasing the

hammer—which must occur for each shot and is not set in motion automatically by a single action of a switch. *Id.* Unlike a mechanical bump stock, such as the Akins Accelerator, and electronic motor devices, triggers in FRT-equipped firearms perform the same mechanical function as any normal trigger by releasing the hammer for each shot. Pls.' App'x 95, Opinion and Order at 30.

Defendants attempted to analogize FRTs to machineguns by pointing to two similarities that FRTs and machineguns share: (1) the comparable rates of fire and (2) the absence of a disconnector. *Id.* But these arguments are foreclosed by the statutory definition and *Cargill*. *Id.* The statutory definition does not define machineguns "according to how quickly they fire." *Id.*; Pls. App'x 300, Prelim. Inj. Hr'g. Tr. 102:11-18; *Cargill*, 57 F.4th at 464. Nor does it identify the absence of a disconnector as the dispositive characteristic. Pls.' App'x 95, Opinion and Order at 30; *Cargill*, 57 F.4th at 460 (declining to "read words into the statute").

*Cargill* also discussed the relevance (or lack thereof) of deference under *Chevron USA, Inc. v. Nat. Res. Def. Council*. Pls.' App'x 87, Opinion and Order at 22 n.56; *Cargill*, 57 F.4th at 456-57 (citing *Chevron USA, Inc. v. Nat. Res. Def. Council*, 267 U.S. 837 (1984)). The ATF does not receive interpretive deference under *Chevron*. Pls.' App'x 87, Opinion and Order at 22 n.56; *Cargill*, 57 F. 4th at 456-57. This is primarily due to the Step Zero command that interpretive rules—which the ATF's broadened machinegun definition appears to be—are not eligible for *Chevron* deference. Pls.' App'x 87, Opinion and Order at 22 n.56 (citing *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001)). But even assuming otherwise, *Chevron* deference would still not apply for at least two reasons. First, the statutory definition is unambiguous. *Id.* (citing *Western Refining Southwest, Inc. v. FERC*, 636 F.3d 719, 727 (5th Cir. 2011)) ("[If] the statute's text is unambiguous, we need not proceed to Step Two of *Chevron*."). Second, "[t]he Supreme Court has

never held that the Government's reading of a criminal statute is entitled to any deference." *Id*.
(quoting *Cargill*, 57 F.4th at 466-67) (cleaned up).

Plaintiffs have succeeded on the merits.  Under the binding interpretation of *Cargill*, FRTs
are not "machineguns."  Defendants' contrary classification and enforcement actions based on it
are unlawful.

> **d.**    **A Failure to Grant a Permanent Injunction Will Result in Irreparable
> Injury**

"[C]omplying with [an agency order] later held invalid almost always produces the
irreparable harm of nonrecoverable compliance costs." *Wages and White Lion Investments, L.L.C.
v. United States*, 16 F.4th 1130, 1142 (5th Cir. 2021) (emphasis added) (quoting *Texas v. EPA*,
829 F.3d 405, 433 (5th Cir. 2016)); *see also VanDerStok, et al. v. Garland, et al.*, 625 F. Supp.3d
570, 584 (N.D. Tex. 2022) (quoting *Texas*). Accordingly, "Federal courts have long recognized
that, 'when the threatened harm is more than de minimis, it is not so much the magnitude but the
irreparability that counts for purposes of a preliminary injunction.'" *Enter. Int'l, Inc. v.
Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (quoting *Canal
Auth. V. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974)); *see also VanDerStok*, 625 F.Supp.3d at
584 (quoting *Enter. Int'l.*). And "compliance costs are 'likely unrecoverable,' usually 'because
federal agencies generally enjoy sovereign immunity for any monetary damages.'" *VanDerStok*,
625 F. Supp. 3d at 584 (quoting *Wages and White Lion Investments*, 16 F.4th at 1142).

First, Plaintiffs are irreparably harmed by the credible threat of prosecution.  As described
above—and as found previously by this Court—Plaintiffs face a credible threat of prosecution.
*See supra* 8-9; Pls.' App'x 97-99, Opinion and Order at 32-34.  This threat has not abated since
the Court issued its preliminary injunction.  To the contrary, Defendants have continued
aggressively threatening citizens with criminal prosecution for possessing FRTs, including

contacting at least ten National Association for Gun Rights members, in apparent violation of the preliminary injunction. Pls.' App'x 294 (Declaration of Ryan Flugaur). This constitutes a more than *de minimis* harm justifying a permanent injunction.

Second, as the Court previously found, Plaintiffs face irreparable economic compliance costs "stem[ming] from the Hobson's choice Plaintiffs still face: continue to exercise ownership and constitutionally protected freedoms while risking federal prosecution *or* forfeit those freedoms to avoid civil and criminal consequences." Pls.' App'x 99, Opinion and Order at 34. Likewise, Plaintiffs are still concerned with the harm derived from the loss of use and enjoyment of their property, even for a limited period of time.

Defendants may argue that vacatur is sufficient to address Plaintiffs' concerns. As discussed more *infra* 22-23, vacatur alone is insufficient. First, Defendants have advanced at least six different regulatory interpretations to justify their criminalization of FRTs.[13] If the Court vacates one or all of these impermissible interpretations, there is every reason to worry Defendants will simply proffer yet another specious formulation. Second, Defendants have evinced an intention to engage in intercircuit nonacquiescence. Associational Plaintiffs have members in other judicial circuits. It is not clear that Defendants will treat a vacatur as binding outside of the Fifth Circuit. Finally, Defendants have repeatedly violated the spirit—and quite possibly the letter—of the preliminary injunction by repeatedly contacting National Association for Gun Rights members *after* the issuance of the injunction. This Court's injunctive relief is an order the Government must obey, not a mere affirmative defense to be asserted by National Association for

---

[13] *See* 27 CFR § 479.11 (Defining "function of the trigger" as a "single pull of the trigger and analogous motions."); Pls.' App'x 112-177, ATF's FRT Report, July 15, 2021 ("continuous pull"); Pls.' App'x 179-193, ATF's WOT Report, October 21, 2021 ("constant rearward pressure"); Pls.' App'x 197-253, ATF's FRT Report, April 27, 2023, at 5; Pls.' App'x 299, Prelim. Inj. Hr'g. Tr. 162:1-4, *United States v. Rare Breed Triggers, LLC*, et al., No. 23-cv-369 (NRM) (RML), 2023 WL 5689770 (E.D.N.Y. Aug. 1, 2023) ("constant rearward pull" or "single function of the trigger means single pull of the trigger"); Pls.' App'x 278, Prelim. Inj. Hr'g. Tr. 130:10-17 ("initiation of the firing sequence" plus "constant rearward pressure.").

Gun Rights members. Plaintiffs have a solid basis for concern that Defendants will take a similarly self-serving and permissive approach to anything short of a clear, binding permanent injunction.

### e.    Balance of Hardships and Public Interest

Regarding the third and fourth factors, the ongoing and future injuries sustained by Plaintiffs outweigh any harms to Defendants as Defendants have no "interest in the perpetuation of unlawful agency action." *League of Women Voters of United States, v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Rather, there is a "public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994). The aim of an injunction is remedial, not punitive. *Hodgson v. First Fed. Sav.& L. Ass'n of Broward Cty., Fla*, 455 F.2d 818, 826 (5th Cir. 1972).

The Court previously noted that there is also an interest in ensuring that the government adheres to its constitutional and statutory obligations. *Polymer80, Inc. v. Garland,* 4:23-cv-00029-0, 2023 WL 3605430, at *11 (N.D. Tex. Mar. 19, 2023). It is not unduly burdensome to the Defendants to obey the law. *Hodgson,* 455 F.2d at 826. Indeed, there is undoubtedly "an overriding public interest [in] . . . an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams,* 556 F.2d 52, 59 (D.C. Cir. 1977). And "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *N Mariana Islands v. United States,* 686 F. Supp. 2d 7, 21 (D.D.C. 2009).

In view of the undisputed facts, because FRTs are not machineguns under the proper interpretation of the statute, Plaintiffs are entitled to a declaratory judgment of the same and appropriate injunctive relief.

## V.        SCOPE OF RELIEF

Permanent relief in this case must be broad enough to fully protect the parties before the Court.  The standard remedy for an APA violation is vacatur.  The ATF's classification of FRTs as "machineguns" should be vacated.  In addition, given Defendants' constantly shifting justifications and repeated efforts to continue to enforce their *ultra vires* interpretation of law—even after a preliminary injunction was issued—Defendants should be permanently enjoined from attempting to seize FRTs.  Defendants have made plain that they intend to play right up to the line—and likely over it—in contacting National Association for Gun Rights members and demanding they surrender their FRTs or risk criminal penalties.    Thus, it is necessary to expand the scope of any injunction beyond that in the Court's preliminary injunction.  Finally, Defendants should be required to return any property confiscated or seized pursuant to their void classification and to mail corrective notices to people targeted with "warning" letters inaccurately claiming possessing a forced reset trigger violated the law.

### a.        The ATF's Classification of FRTs as "Machineguns" Must be Vacated

"The default rule is that vacatur is the appropriate remedy."  *Data Marketing Partnership, LP v. United States Department of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). The APA provides that "[t]he reviewing court *shall* . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added).  Thus, "district courts have a duty to vacate unlawful agency actions."  *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 945 (N.D. Tex. 2019); *see also VanDerStok v. Garland*, Case No. 4:22-cv-00691, 2023 WL 45359591 at *18 (N.D. Tex. June 30, 2023) ("Vacatur is appropriate given the Court's conclusion that the ATF exceeded its statutory authority.  An illegitimate agency action is void *ab initio* and therefore

cannot be remanded as there is nothing for the agency to justify.").  Thus, the ATF's classification of FRTs as "machineguns" must be declared to be unlawful and expressly vacated.

This is not a case where there is a specific regulation at issue.  Instead, there is a litany of constantly shifting agency justifications that seem purpose-driven to reach the same result: concluding FRTs are "machineguns," regardless of the applicable statutory language. Accordingly, the agency action that is vacated should not be a specific justification.  Rather, it should be Defendants' impermissible action: the improper classification of FRTs.

### b.    Defendants Should be Enjoined from Continuing Their Enforcement Campaign Against Law Abiding FRT Owners

This Court should also enter a permanent injunction preventing Defendants from seeking to enforce its unlawful interpretation against *any* law-abiding citizen.

While vacatur is the "default rule," it is not the *only* remedy available.  "A 'court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved.'"  *Franciscan Alliance, Inc. v. Becerra*, 553 F.Supp.3d 361, 368 (N.D. Tex. 2021) (quoting *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996)), *aff'd in part* 47 F.4th 368 (5th Cir. 2022). Courts grant permanent injunctions on "essentially the same" standards as for preliminary injunctions, with the exception that "unlike for a preliminary injunction, a plaintiff seeking a permanent injunction 'must demonstrate actual success on the merits.'"  *Id*. (quoting *Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F.Supp.2d 802, 809 (N.D. Tex. 2002)).

As described above and in the Court's Order and Opinion on preliminary injunction, Plaintiffs satisfy the standards for injunction.  They have demonstrated actual success on the merits. They will be irreparably harmed by Defendants' continued efforts to enforce an illegal interpretation.  And the balance of harms and public interest favors Plaintiffs.

24

In this case, injunction is appropriate to ensure that Plaintiffs are fully protected from unlawful government action. Defendants have advanced at least six different regulatory interpretations to justify their criminalization of FRTs.[14] With the Fifth Circuit having struck down their regulatory interpretation as unlawful, Defendants have now disclaimed/distanced themselves from it and say they no longer rely on regulatory authority (§§ 479.11, et al.) as the basis for their actions. Pls.' App'x 274, Prelim. Inj. Hr'g. Tr. 105:1-23. Instead, their position is that the statute should be interpreted for "single function of the trigger" to mean "initiation of the firing sequence" and "constant rearward pressure." Pls.' App'x 278, Prelim. Inj. Hr'g. Tr. 130:10-17. The Defendants argue this interpretation is consistent with *Cargill*, Pls.' App'x 280-282, Prelim. Inj. Hr'g. Tr. 135:10-137:20, but this Court has rejected that argument. Pls.' App'x 92, Opinion and Order at 27. If the Court vacates one or all of these impermissible interpretations, there is every reason to worry Defendants will simply proffer yet another specious formulation. Thus, with Defendants having untethered themselves from the ATF's own regulations, vacatur of the regulation alone would be ineffective to provide relief from the ATF's everchanging, but nevertheless improper, statutory interpretation and unlawful actions. Accordingly, a permanent injunction is appropriate and needed.

Moreover, Defendants' arguments and conduct suggests they believe there is a split between district courts that influences picking and choosing which judicial decisions they will follow and to what extent. Pls.' App'x 534-535, Prelim. Inj. Hr'g Tr. 138:23-139:13. In the absence of a permanent injunction, it is likely—indeed, probable—that Defendants will engage in

---

[14] *See* 27 CFR § 479.11 (Defining "function of the trigger" as a "single pull of the trigger and analogous motions."); Pls.' App'x 112-177, ATF's FRT Report, July 15, 2021 ("continuous pull"); Pls.' App'x 179-193, ATF's WOT Report, October 21, 2021 ("constant rearward pressure"); Pls.' App'x 197-253, ATF's FRT Report, April 27, 2023, at 5; Pls.' App'x 299, Prelim. Inj. Hr'g. Tr. 162:1-4, *United States v. Rare Breed Triggers, LLC*, et al., No. 23-cv-369 (NRM) (RML), 2023 WL 5689770 (E.D.N.Y. Aug. 1, 2023) ("constant rearward pull" or "single function of the trigger means single pull of the trigger"); Pls.' App'x 278, Prelim. Inj. Hr'g. Tr. 130:10-17 ("initiation of the firing sequence" plus "constant rearward pressure.").

intercircuit nonacquiescence and view this Court's vacatur as geographically limited to the Fifth Circuit, if not the Northern District of Texas.  This is problematic for Plaintiffs.

First, at least one Individual Plaintiff, Plaintiff Carey, does not live in the Northern District of Texas. Second, Associational Plaintiff National Association for Gun Rights has members throughout the country. Geographically limited relief does not provide protection to all of their members.

This is not a hypothetical problem. Plaintiffs requested an injunction preventing Defendants from sending "Notice Letters" or other similar communications to known or suspected owners, sellers, and manufacturers of FRTs stating that FRTs are machineguns, requesting that any person "voluntarily" surrender their FRTs to the government based upon the claim that FRTs are machineguns, or otherwise interfering in the possession or exchange of FRTs is to ensure Plaintiffs' quiet enjoyment of their lawful property and prevent Defendants from seeking to jawbone Plaintiffs into surrendering their property through not-so-subtle intimidation.

Defendants' conduct indicates that they have no intention of allowing citizens to quietly and lawfully enjoy their property.  Rather than leaving Plaintiffs' members alone and unmolested, Defendants have treated the preliminary injunction as an affirmative defense at best and polite suggestion at worst.  Since the entry of the preliminary injunction alone, Defendants have contacted and threatened criminal enforcement against at least ten National Association for Gun Rights members.  App'x at 294 (Declaration of Flugaur ¶ 3).

Rather than abiding by the Courts' preliminary injunction, Defendants have demanded that Plaintiffs provide their membership lists or face continued harassment.  *See* Pls.' App'x 258, Notice of Compliance at 5 ("Unless Plaintiffs are willing to provide ATF advance notice of those covered by the Preliminary Injunction, *e.g.*, by sharing membership lists or lists of members at the

time the injunction issued who state that they possess these devices and seek the protection of the injunction, ATF cannot guarantee that agents will not inadvertently contact persons subject to the Preliminary Injunction.").

Plaintiffs should not be required to trade their First Amendment rights for the quiet enjoyment of their Second and Fifth Amendment rights.  "It is hardly a novel perception that compelled disclosure of affiliation with grounds engaged in advocacy may constitute as effective a restrain on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). Indeed, "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *Id.* at 460. As such, "disclosure requirement[s] impose[] a widespread burden on donors' associational rights. And this burden cannot be justified . . .." *Americans for Prosperity v. Bonta*, 141 S. Ct. 2373, 2389 (2021).

Defendants have shown that they are unwilling to faithfully abide by a narrowly drawn preliminary injunction.  Thus, it is necessary for this Court to enter a broader permanent injunction that is not specifically limited to Associational Plaintiffs' members in order to protect against the continued violation of Plaintiffs' Second, First, and Fifth Amendment rights.

Finally, a broader injunction is appropriate given the nature of this case.  This case presents a narrow issue that is purely legal; it is not fact-dependent and will not vary from one locality to another. A narrow question of law such as is present here is more likely to lend itself to broader injunctive relief, particularly where the court has made a final determination that the agency acted beyond the scope of it power and had taken widespread enforcement actions nationwide based on its unlawful interpretation. *City of Chicago v. Sessions*, 888 F.3d 272, 290 (7th Cir. 2018).

There are some legal issues which benefit from consideration in multiple courts—such as issues as to the reasonableness of searches or the excessiveness of force—for which the context of different factual scenarios will better inform the legal principle. *Id.* at 291. But a determination as to the plain meaning of a sentence in a statute is not such an issue. *Id.* For that issue, the duplication of litigation will have little, if any, beneficial effect. Moreover, the public interest would be ill-served here by requiring simultaneous litigation of this narrow question of law in countless jurisdictions.

This Court should enter a permanent injunction that protects Plaintiffs and other similarly situated individuals and entities from continued governmental harassment.  It should not allow Defendants to condition their compliance with a binding judicial order protecting Plaintiffs Second Amendment rights on surrendering their First and Fifth Amendment rights.

### c.      Return of Seized Triggers

This Court's Preliminary Injunction required Defendants not to destroy any seized or voluntarily surrendered FRTs. This preserved the status quo so that the wrongfully seized property could be returned to its rightful owners. With the entry of final judgment that the ATF's statutory interpretation—which was the basis for these seizures—was unlawful, that property should be returned promptly to its rightful owners at the location where it was wrongfully taken. Such a mandate would be remedial, not punitive. Any burden to the agency of compliance is a product of its own doing and no further unrecoverable costs should be imposed on the innocent victims.

### d.      Corrective Notices to FFLs and Individuals

Defendants (particularly the ATF) undertook a widespread, extensive, and unlawful campaign to chill citizens' exercise of their rights. This was not merely by advertising or website publication, but was in the form of specific, targeted letters sent to specific, individual recipients.

One example of the individual ("Notice Letters") letters has been presented (*see* Pls.' App'x 265-269). Defendants do not deny that an untold number of similar letters were delivered to individuals and entities. Another example was sent as recently as October 20, 2023, to Nick Barry. Pls.' App'x 286-289; *see also* Pls.' App'x 290-293. The Notice Letters display the heading:

<u>**WARNING NOTICE**</u>

<u>**YOU MAY BE IN VIOLATION OF FEDERAL LAW**</u>

The letter states that ATF obtained information identifying the recipient as an FRT purchaser from seller information (e.g., a Gunbroker.com account or Tommy Triggers). The letter further states that "[t]his letter notifies you that the unlawful receipt and possession of any of these devices is a felony violation of Federal law" and the continued possession "could result in prosecution for criminal violations of Federal law." *Id*.

On March 22, 2022, ATF issued and distributed an "Open Letter to All Federal Firearms Licensees" (the "Open Letter"). *See* Pls.' App'x 195-196. The Open Letter advised that the ATF "recently examined devices commonly known as 'forced reset triggers' (FRTs)" and "determined that *some* of them are 'firearms' and 'machineguns' as defined in the [GCA]" (emphasis added). The Open Letter further explained that "ATF's examination found that *some* FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger" and that "any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a 'machinegun.'" *Id*. (emphasis added).

Regardless of whether the intent was benign or malicious, these were directed mailing campaigns of misinformation. Mere publicity of the fact that the ATF's threats were false and unlawful is not sufficient to correct the specifically targeted letters, and similarly distributed corrective notices are appropriate. No statute or Congressional directive required the ATF to

undertake its direct notification campaign. It was undertaken to chill legal behavior by discouraging possession, sale, or manufacture of FRTs under the false pretense that they were illegal machineguns. Thus, requiring corrective notification *to the same recipients* of the ATF's targeted mailing campaign and in the same manner is appropriate and is neither unduly burdensome nor punitive to the agency. Again, this mandate would be remedial, not punitive, and any compliance costs to the agency are of their own making.

### e. Injunctive Relief Protecting the Rare Breed Parties from Criminal Liability

In its Opinion and Order, the Court carved out an exception to the preliminary injunctive relief it ordered for National Association for Gun Rights and Texas Gun Rights members. The Court was concerned about treading upon the prerogatives of its sister court in an E.D.N.Y. civil lawsuit filed by the Justice Department. *See* Pls.' App'x 490, *United States v. Rare Breed Triggers, LLC,* No. 23-cv-369 (NRM) (RML) (E.D.N.Y.) ("E.D.N.Y. Lawsuit"). It therefore concluded that the parties to the E.D.N.Y Lawsuit, if members of the associational plaintiffs here, should not benefit from the Court's preliminary injunction. Pls.' App'x 43-44.

Lawrence DeMonico, Kevin Maxwell, Rare Breed Triggers, LLC, and Rare Breed Firearms, LLC (collectively, "Rare Breed Parties") are indeed members of NAGR and also defendants in the E.D.N.Y. Lawsuit. Plaintiffs do not take issue with the Court's desire to respect the jurisdiction of the E.D.N.Y. Nevertheless, in one discrete aspect, Plaintiffs request that the Court enter a permanent injunction that respects the E.D.N.Y. decision while providing some relief to the Rare Breed Parties that is outside of the scope of the E.D.N.Y.'s civil claims and potential remedies.

The E.D.N.Y. Lawsuit alleges that the Rare Breed Parties defrauded their customers by stating that their brand of FRTs is not a "machinegun" and engaged in a *Klein* conspiracy by,

among other things, not ceasing to sell the device when the ATF stated its conclusion the device is a machinegun. Pls.' App'x 512-525. The E.D.N.Y. Lawsuit does not include any accusations that the Rare Breed Parties engaged in criminal conduct that the E.D.N.Y. Lawsuit would or could adjudicate.. Accordingly, an injunction protecting the Rare Breed Parties from criminal prosecution based on the theory that FRTs are machineguns would not conflict with the E.D.N.Y.'s proceedings.

Plaintiffs in this case have demonstrated that the government is threatening criminal prosecutions for those in possession of FRTs on the theory that FRTs are machineguns. The Court has already preliminarily concluded that the government should generally be enjoined from prosecuting Plaintiffs on that theory. Pls.' App's 42 (enjoining Defendants from "[i]nitiating or pursuing criminal prosecutions for possession of FRTs" and from "[i]nitiating or pursuing criminal prosecutions for representing to the public of potential buyers and sellers that FRTs are not machineguns").

 Additionally, the Rare Breed Parties do not live in New York and are not organized under the laws of New York.  To the contrary, at least two of the Rare Breed Parties live or are organized in Texas, within the Fifth Circuit.

Thus, notwithstanding the civil claim allegations in the E.D.N.Y. against the Rare Breed Parties, there is no reason why the Rare Breed Parties should not similarly be protected from criminal enforcement based on a concern over the jurisdiction of the court in the E.D.N.Y. Lawsuit. This Court's respect for a sister court's civil proceedings on fraud theories should not leave the Rare Breed Parties vulnerable to criminal prosecution based on an agency classification that this Court has concluded is contrary to law.

Consequently, Defendants should be enjoined from initiating any *criminal* prosecutions against the Rare Breed Parties related to their possession, manufacture, or sale of FRTs.

## CONCLUSION

For the reasons stated above, Plaintiffs are entitled to summary judgment and (1) a declaration that holds unlawful and sets aside the AFT's finding that FRTs are "machineguns" and vacates Defendants' unlawful classification of FRTs as "machineguns;" (2) permanent injunctive relief preventing Defendants, along with their respective officers, agents, servants, and employees, from implementing or enforcing against the parties in this lawsuit and all similarly situated persons or entities, in any civil or criminal manner, the ATF's expanded definition of "machinegun" that this Court has determined is unlawful; (3) the return of all seized FRTs and FRT components; (4) the mailing of corrective notices to persons targeted by the ATF's prior mailing campaign; and (5) permanent injunctive relief preventing Defendants from initiating any *criminal* prosecutions against the Rare Breed Parties related to their possession, manufacture, or sale of FRTs on the grounds that FRTs are "machineguns."

Date: November 3, 2023                     Respectfully submitted,

                                           /s/ Whitney A. Davis
                                           Whitney A. Davis (TX Bar No. 24084843)
                                           Ben Sley (TX Bar No. 18500300)
                                           EGGLESTON KING DAVIS, LLP
                                           102 Houston Avenue, Suite 300
                                           Weatherford, TX 76086
                                           Telephone: (703) 748-2266
                                           whit@ekdlaw.com
                                           ben@ekdlaw.com

Jonathan M. Shaw (VA Bar No. 98497)
Gary M. Lawkowski (VA Bar No. 82329)
David A. Warrington (VA Bar No. 72293)
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com
dwarrington@dhillonlaw.com

Glenn Bellamy (OH Bar No. 0070321)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Date: November 3, 2023

By: /s/ Whitney A. Davis
Whitney A. Davis