IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | ) ) ) |
| Plaintiffs, | ) Case No. 4:23-cv-00830-O ) ) |
| v. | ) ) |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

**INTRODUCTION**

Defendants' Motion to Stay Preliminary Injunction Pending Appeal (ECF No. 64) ("Motion") and Memorandum in Support thereof (ECF No. 63-2) ("Memorandum") rehashes the same arguments Defendants have twice made, first in their opposition to Plaintiffs' Motion for Temporary Restraining Order and then in their opposition to Plaintiffs' Motion for Preliminary Injunction.  Each time this Court rejected these arguments.  The third time is not the charm; the Court should reject these rehashed arguments yet again.

Nothing in Defendants' Memorandum that changes the fundamental conclusions in either the Court's Order granting temporary restraining order (ECF No. 36) ("TRO") or its Order granting preliminary injunction (ECF No. 53) ("Order").  Defendants are *still* unlikely to succeed on the merits of their position.  The balance of harms *still* favors protecting Plaintiffs from being arrested and prosecuted pursuant to an illegal enforcement theory, particularly when Defendants *still* cannot articulate any specific harm associated with forced reset triggers ("FRTs") as distinct from firearm

1

ownership generally. There is *still* no public interest in enforcing an illegal interpretation of law. And this Court absolutely *still* has the power to say what the law is. Plaintiffs should not have to risk criminal prosecution in order to exercise their rights. Defendants' Motion should be denied.

## LEGAL STANDARD

As the Fifth Circuit recently reiterated, "[a] stay pending appeal is 'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). "In considering whether to exercise its discretion, a court must consider four factors[:] . . . '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* (quoting *Nken*, 556 U.S. at 434). Of these, "[t]he first two factors . . . are the most critical." *Id.*

## ARGUMENT

Defendants do not and cannot satisfy their "heavy burden" to justify the "extraordinary relief" of a stay pending appeal—no matter how many times they repeat their arguments. This Court has already ruled against Defendants twice on all four of the *Nken* factors. Defendants have presented no reason for this Court to change course. Moreover, Defendants' arguments to exclude criminal charges from the scope of the injunction have been presented and rejected twice. Finally, Defendants' efforts to narrow the scope of the parties who benefit from the preliminary injunction and conduct protected would leave even the named Plaintiffs without protection in the face of

Defendants' continuing aggressive enforcement efforts.

## I. Defendants *Still* are Unlikely to Succeed on the Merits

Defendants have made *no* showing that they are likely to succeed on the merits, let alone a "strong" showing. This Court has already concluded—twice—that *Plaintiffs* are likely to succeed on the merits. *See* Order at 21 (ECF No. 53) ("Plaintiffs are likely to succeed on the merits."); TRO at 13 (ECF No. 36). Nothing in Defendants' Memorandum compels a different conclusion here.

Controlling Fifth Circuit precedent is squarely dispositive of the sole issue in this case. In *Cargill v. Garland* the *en banc* Fifth Circuit emphatically rejected the ATF's interpretation set forth in § 479.11 and unambiguously defined what "single function of the trigger" means. 57 F.4th 447, 460, 473 (5th Cir. 2023).[1] Defendants' recent disavowal of § 479.11 in favor of a claimed direct interpretation of the statute does not change that it is contrary to the Fifth Circuit's statutory interpretation. FRTs do not fire multiple rounds with a single function of the trigger. The operative mechanical function of the trigger is to release the hammer. For each and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface. It thus "functions" for each and every shot. Unlike with an actual automatic weapon, if the shooter holds the trigger in a fully depressed position, the weapon will malfunction. *See* TRO at 26 (ECF No. 26); Order at 2-3 (ECF No. 53).

---

[1] Defendants note that "[t]he Supreme Court recently granted the Government's petition for certiorari in *Cargill*." Memorandum at 7. But the Supreme Court has not overruled *Cargill*; thus, the Fifth Circuit opinion remains good law that is binding on this Court. It is not this Court's assigned role to presume that the Supreme Court intends to reverse the Fifth Circuit. That is a particularly important point given that, in *Cargill*, *both* the government *and* the Plaintiff-Respondent supported the petition for certiorari in order to resolve a split between Courts of Appeals. *See* Brief in Support of Certiorari, *Garland, et al. v. Cargill*, No. 22-976 (U.S. June 7, 2023, https://www.supremecourt.gov/DocketPDF/22/22-976/268622/20230607180529147_22-976%20Garland%20v%20Cargill%20Brief%20in%20Opp.pdf).

Defendants do not refute these key material facts. Instead, Defendants spend the substantial majority of their argument on the merits seeking to relitigate the preliminary injunction. To wit, Defendants spill much ink arguing that this Court should adopt the Eastern District of New York's cramped interpretation of the Fifth Circuit's decision in *Cargill* and arguing that this Court was wrong in ruling that other devices, such as the Akins Accelerator, are distinguishable. *See* Memorandum at 8-9. None of this is new. Defendants made these same arguments at the preliminary injunction stage. *See* Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction at 7-9 (ECF No. 39) ("PI Opposition").

And this Court fully considered and rejected each of these arguments at the preliminary injunction stage, stating: "The E.D.N.Y. Decision likewise concluded that 'function' and 'pull' are synonymous. But, once again, *Cargill* controls since decisions from the Fifth Circuit—not the Eastern District of New York—are binding on this Court." Order at 24 (ECF No. 53). This Court further noted:

> [U]nlike a switch-activated device that takes over as the legal trigger of the weapon, FRTs do not alter the basic operation the trigger: the trigger must still move sufficiently rearward for each shot based on external manual input from the shooter. This, in turn, activates the trigger's function—releasing and resetting the hammer—which occurs before each subsequent shot and is not set in motion by a switch. Unlike Defendants' comparison to the Akins Accelerator and electronic motor devices, triggers in FRT-equipped firearms perform the same mechanical function as any normal trigger by releasing the hammer prior to each shot.

Order at 29-30 (ECF No. 53). This Court has taken care to respect its sister court in the E.D.N.Y, but Defendants are now asking it to bow to the New York court's opposite preliminary conclusion—in direct contravention to binding Fifth Circuit precedent.

Defendants' Memorandum adds nothing new. It just rehashes the same arguments Defendants advanced at earlier stages of this litigation. Those arguments were wrong then and they are wrong now. Defendants have made *no* cognizable showing that they are likely to succeed

4

on the merits, let alone a *strong* showing. Defendants have failed to meet their burden; their request for "extraordinary relief" should be denied.

## II. Defendants Will Not Be Irreparably Harmed Absent a Stay and the Public Interest Favors Injunction

The Fifth Circuit has previously noted that "any injury to [the enjoined party] is outweighed by [a] strong likelihood of success on the merits" by Plaintiffs. *Freedom from Religion Foundation, Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). This Court has found—twice—that Plaintiffs are likely to succeed on the merits. As shown above, it should do so again. It is not unduly burdensome for the Government to be required to follow the law. Contrary to Defendants' claim, whether to enforce a "likely unlawful" interpretation of a criminal statute should not be left to "prosecutorial discretion." Accordingly, any claimed harm to Defendants by virtue of this Court's preliminary injunction would be immaterial under binding Fifth Circuit case law.

Even if it were not, Defendants do not show they will be irreparably harmed by the injunction. In its Order on Plaintiffs' Motion for Preliminary Injunction, this Court noted "perhaps most damaging to Defendants are their irreconcilable positions. On the one hand, Defendants generally argue that possession of FRTs by anyone—including possession by these Plaintiffs (who have no criminal history)—poses a threat to public safety. But, on the other hand, Defendants aver that they have no *current* plans to enforce the ATF Rule against these Plaintiffs due to the *historic* enforcement practices targeting large sellers . . .. Taking Defendants' continued representation that they have no current plans to prosecute as true, this dissonance suggests a lack of substance underlying the proffered public safety concern." Order at 38-39 (ECF No. 53). Defendants double down on this dissonance and offer *no* substance to clarify it. *See generally* Memorandum at 10 ("The Government's criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those individuals charged with multiple other gun-related felonies. . .. [B]ecause

5

the Plaintiffs claim to be otherwise 'law-abiding' gun owners [citation omitted] they cannot claim they will suffer substantial injury if the injunction is stayed as to criminal enforcement proceedings."). Defendants' irreconcilable positions on this point continue to be fatal to their assertions of harm.

Defendants also continue to "provide no specific causal arguments explaining how the public would be harmed by an injunction." Order at 39 (ECF No. 53). Instead, Defendants yet again make speculative, conclusory statements about the supposed danger of FRTs that are not supported by their own facts.

Defendants' "the sky is falling" pleas are premised entirely on a presumption that FRTs are machineguns—a conclusion this court has already twice rejected. Defendants claim, "ATF has encountered these devices in numerous criminal settings." Memorandum at 4. But this is not a causal argument; instead, it is little more than sleight of hand to obscure the fact that Defendants have produced no evidence that FRTs are uniquely dangerous or more likely to be involved in criminal activity than any other firearm or firearm accessory. For example, Defendants cite the case of "an eight-time convicted felon on state probation" who was found with an FRT—along with *22 firearms* he was prohibited from possessing, narcotics, and drug paraphernalia. ECF 64-1, ¶ 34. It is not at all clear what work the FRT does in this equation that is not equally applicable to the *22 illegal firearms* the felon allegedly possessed. Likewise, Defendants note that their "criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those individuals charged with multiple other gun-related felonies." Memorandum at 10. As this Court previously observed, "if the only targets of Defendants' enforcement actions are against those who violate other gun laws, then the prohibition on FRTs does nothing to protect the public. It follows, then, that FRT ownership is neither a necessary nor sufficient condition for protecting public

safety." Order at 39 (ECF No. 53). Despite the broad statement that ATF has encountered FRTs "in numerous criminal settings" and the more specific examples a felon in possession of other illegal firearms, they do not claim to have initiated criminal prosecution for possession of an FRT against *any* additional people, including manufacturers of thousands of FRTs. Certainly, *anyone* found in illegal possession of an *actual* machinegun would be charged, even in the absence of other felony charges. ATF's actions show they do not genuinely consider FRTs to be "dangerous machineguns."

At bottom, despite being on their third round of briefing, Defendants have identified just two criminal shootings that *may* have involved FRTs, one of which involved a "narcotics trafficker" who was likely ineligible to possess any firearms in the first place. *See* ECF 64-1, ¶¶ 34-35. This is hardly sufficient to establish that FRTs are unique threats to public safety,[2] let alone that *Plaintiffs*—who, by definition in this case, are not prohibited persons—possession or transfer of FRTs poses a public safety threat. "Such a general public safety concern simply cannot serve as justification for enforcement of an illegal interpretation of a criminal statute." Order at 39 (ECF No. 53).

Next, Defendants lament that the injunction will make it harder for them to seize FRTs from otherwise law-abiding citizens. This begs the question by presuming that FRTs are illegal. As shown above, they are not. This is also not an "irreparable" harm. Presumably, if Defendants were to prevail in this litigation, they would go back to doing exactly what they were doing before:

---

[2] Defendants claim, "It cannot be disputed that firearms equipped with FRT devices like the FRT-15 and WOT are extremely dangerous." Memorandum at 4. Contrary to Defendants' arrogant assertion, it *can be* and *is* disputed whether firearms equipped with FRTs are more dangerous than any other firearm. Moreover, Defendants' argument is fundamentally a *non sequitur*. If they believe FRTs are uniquely dangerous and should be banned, they (or their supporters) can lobby Congress to pass a law banning them. They cannot arrogate that legislative power to themselves in the absence of statutory authority.

7

contacting suspected FRT owners. They could also, presumably, ask those suspected owners if they have transferred or sold any FRTs and, if so, contact the person who purportedly acquired the FRT. The cry that the injunction is interfering with its continued "likely unlawful" confiscation of property under threat of criminal prosecution merits no sympathy. That was the point of the injunction. Defendants have treated the injunction as a mere potential affirmative defense rather than as an order to be obeyed. Enforcing its "likely unlawful" statutory interpretation has become *de rigueur* for the ATF. It is no "intrusion by a federal court into the workings of a coordinate branch of Government" to require the Defendants to comply with the law.

Defendants further lament that the preliminary injunction will result in the acquisition of FRTs by prohibited persons. Defendants should not be able to restrict the rights of law-abiding citizens because some criminal somewhere might break the law. *See* Order at 38 (ECF No. 53) ("[T]he government similarly cannot seriously argue there is a threat to public safety based on what a person *might* do without some justification.") FRTs only work with a preexisting firearm, that, by definition, prohibited persons cannot legally possess. If Defendants are concerned with prohibited persons acquiring FRTs for use with their already illegal firearms, they can already arrest that person now, with or without the preliminary injunction.[3] *See* Order at 43 (ECF No. 53) ("Plaintiffs may still be prosecuted for violating otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."). Plaintiffs' "record as law-abiding citizens who have possessed FRTs already without incident differentiates them from individuals who create the very public safety risks Defendants fear." Order at 39 (ECF No. 53). Defendants' reference to prohibited persons continues to be a *non sequitur*.

---

[3] While Plaintiffs cannot dictate to Defendants how they allocate their own resources, they nevertheless suggest that perhaps if Defendants are concerned about prohibited persons acquiring firearms, they spend more time tracking down and investigating convicted felons and less time tracking down and harassing otherwise law-abiding FRT owners.

Defendants are not substantially or irreparably harmed by the preliminary injunction.

## III. Plaintiffs would be Substantially Injured by a Stay

The Court has already found—twice, in slightly different contexts—that Plaintiffs face a substantial risk of irreparable harm if Defendants are not enjoined from engaging in enforcement activities. *See* TRO at 16-20 (ECF No. 36); Order at 31-37 (ECF No. 53). Defendants' Memorandum is a stale retread of the same tired arguments that this Court has twice rejected.

First, as the Court has already found—in two well-reasoned opinions—Plaintiffs are harmed by the credible threat of prosecution (including when used coercively to confiscate property without filing charges). As the Court previously noted, "[t]here is no dispute that the Individual Plaintiffs 'inten[d] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" Order at 12 (ECF No. 53) (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2005)). Each individual Plaintiff either currently possesses or previously possessed an FRT and each would like to purchase additional FRTs in the future. *See* Pls.' App'x 05-08 (Declaration of Patrick Carey); 1-2 (Declaration of J.R. Wheeler); 03-04 (Declaration of Travis Speegle).

Defendants' aggressive enforcement posture confirms that their erroneous interpretation of the law is not moribund. *See generally Speech First, Inc. v. Fenves*, 979 F.3d 319, 336-37 (5th Cir. 2020) ("Where the policy remains non-moribund, the claim is that the policy causes self-censorship among those who are subject to it, and the students' speech is arguably regulated by the policy, there is standing.").

Defendants continue to ignore that they are actively pursuing criminal charges against several individuals for possessing an FRT, including in Texas.[4] Moreover, contrary to Defendants'

---

[4] *See* Pls.' App'x 10, Second Superseding Indictment at Count One, *U.S. v. Bruggeman*, 2:22-CR-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun,

9

prior statements downplaying the scope of their enforcement activities, Defendants' own supporting declaration now reverses course and claims that "the FRT-15 and WOT are subject to active retrieval efforts." Declaration of Special Agent Craig Saier at 8 (ECF No. 64-1). There is every reason to believe these "retrieval efforts" will be directed at National Association for Gun Rights and Texas Gun Rights members in the absence of the preliminary injunction. To wit, Defendants have contacted and threatened at least ten National Association for Gun Rights members *since the preliminary injunction was entered*, in apparent violation of the preliminary injunction. Pls.' App'x 9 (Declaration of Ryan Flugaur).

Defendants also continue to pointedly refuse to disavow enforcement against Plaintiffs. Defendants provide *no* assurances for members of the Associational Plaintiffs. And Defendants continue to refuse to disavow enforcement against the Individual Plaintiffs, stating only that "ATF has no *present plan* to take enforcement actions against them, and that [they] would notify the Court in advance of doing so." Memorandum at 7 (emphasis added). "But this phrasing reveals the implicit threat that the Plaintiffs fear: the Defendants could change their *current* plans at any time by deciding to prosecute." Order at 10 (ECF No. 53). As the Court previously noted, "[w]ithout disavowing that these plans will not change during this lawsuit, Plaintiffs face endemic uncertainty and pressure to comply with Defendants' interpretation of the definition to avoid prosecution." Order at 19 (ECF No. 36). In light of "Defendants repeated refusals to disavow taking any action against Plaintiffs during this lawsuit," Plaintiffs continue to face a credible threat of prosecution.

---

that is, six (6) Rare Breed Triggers FRT-15"); Pls.' App'x 13-14, Superseding Indictment at Count Two, *U.S. v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for possessing a Rare Breed FRT-15 trigger); Pls.' App'x 16-17, Superseding Indictment at Count One, *U.S. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for possessing three Rare Breed FRT15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger).

Second, Defendants completely ignore that Plaintiffs face economic harms derived from the Hobson's choice of either continuing to exercise ownership and constitutional protected freedoms or forfeiting those freedoms to avoid civil and criminal consequences. Unlawfully depriving a person of property is an irreparable harm. "[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016).

In its Order granting Plaintiffs' preliminary injunction, this Court noted "Defendants did not sufficiently address this point at the TRO stage and once again fail to do so at this stage." Order at 35 (ECF No. 54). Even now, with their third bite at the apple, Defendants *continue* to fail to address this point. Rather than refuting these concerns, Defendants blithely attempt to minimize the harm, claiming "Plaintiffs would at most be deprived of a trigger modification device. They remain fully able (subject to other applicable laws) to continue to enjoy the use of their firearm." This arrogant position misses the point: Plaintiffs would be illegally deprived of the use and enjoyment of their property. *See* Order at 36 (ECF No. 53) ("[Defendants'] argument completely ignores that any seizure or surrender under duress would deprive Plaintiffs of the use and enjoyment of their property." (citing *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 584 (N.D. Tex. 2022)).

Finally, Defendants reassert their argument that Plaintiffs' purported delay in challenging the ATF's classification means there is not substantial harm. Defendants raised this same point in opposition to Plaintiffs' Motion for Preliminary Injunction. This Court directly addressed and rejected it, stating:

> [T]here are at least two problems with this argument. First, Defendants ignore that the case they rely on—*Opulent Life Church v. City of Holy Springs*—considered and rejected the lengthy delay argument. 697 F.3d 279, 297 (5th Cir. 2012). Indeed, the Fifth Circuit explained that a court must consider the particular facts before it.

11

> *Id*. (concluding that, "[w]hether frivolous or not," the argument that plaintiff's "'long litigation delay' suggests it is not suffering irreparable harm" is "unconvincing on these facts"). Second, the Fifth Circuit emphasized that "[t]he loss of [constitutionally protected] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id*. at 295 (cleaned up). This is true even if the right at issue is statutory. *See id*. ("This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms.").

Opinion at 33 (ECF No. 53). Defendants do not even *address*—let alone overcome—these deficiencies. The fact that the Defendants have been acting in violation of the law for a long time does not make the action any less unlawful.

Plaintiffs face a credible threat of enforcement, including, but not limited to, civil or criminal enforcement and the loss of the use and enjoyment of their property as a result of Defendants "active retrieval" efforts. Plaintiffs will be substantially harmed if the preliminary injunction is stayed.

### IV. The Preliminary Injunction Appropriately Protected All Associational Plaintiffs

Defendants ask this Court to "stay those parts of the injunction that . . . afford relief beyond named Plaintiffs." Memorandum at 9. This request ignores that the National Association for Gun Rights and Texas Gun Rights *are* named Plaintiffs. They are full parties to this case. They—and their members—should not be treated as second class citizens or sacrificed on the altar of Defendants' administrative convenience. This Court has already found that the Associational Plaintiffs have standing to bring this case on behalf of its members. Their members are harmed by Defendants' unlawful actions. They should be protected by this Court's preliminary injunction.

### V. The Preliminary Injunction Appropriately Restrains Criminal Prosecutions

Defendants argued that this Court should not enjoin its criminal prosecutions at both the temporary restraining order and preliminary injunction phases of this case. This Court rejected Defendants' argument twice, noting that Defendants' "line of argument runs afoul of multiple

12

Supreme Court decisions." *See* Order at 15-20 (ECF No. 53); TRO at 9-12 (ECF No. 36); *see also Steffel v. Thompson,* 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) ("When an individual is subject to such a threat [of enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law.").

Plaintiffs facing "a credible threat of prosecution . . . should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbit v. Farm Workers*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by the *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis of the threat."); *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ("Although in regard to criminal statutes, courts are wary of . . . intervening prior to prosecution and foreshortening the prosecutor's action, courts have allowed pre-enforcement review of a statute with criminal penalties."). Certainly, those currently facing criminal prosecution would be irreparably harmed if convicted under an unlawful statutory interpretation. This is why the DOJ is enjoined along with the ATF.

"[T]he Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)). As this Court previously recognized, the APA authorizes courts to review agency actions on a pre-enforcement basis, including various agency actions that are "otherwise not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity; ... [or] in excess of statutory jurisdiction, authority, or limitations,"

13

a power of judicial review that is "cumulative under the arbitrary and capricious standard." Order at 17-18 (ECF No. 53) (quoting 5 U.S.C. § 706(2)(A)-(B); *Menkes v. DHS,* 637 F.3d 319, 330 (D.C. Cir. 2011)).

Further, the Court acknowledged that "'[i]n *all* cases' of judicial review under § 706, 'agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413-414 (1971)).

The APA's text refers to "mandatory or injunctive decree[s]" issued thereunder. 5 U.S.C. § 702. The import of this text is that injunctive relief is available under the APA without any express limitation precluding the availability of such relief on a pre-enforcement basis.

Moreover, the text of § 702 makes clear that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof." *Id.* And the APA expressly provides that criminal proceedings are *included* in such review. *Id.* This ability to obtain an appropriate remedy is not contingent on the person being subject to existing enforcement. To the contrary, the APA recognizes judicial authority to "issue all necessary and appropriate process . . . to preserve status or rights" from "irreparable injury" caused by agency action. 5 U.S.C. § 705 Indeed, the APA's explicit textual entitlement would be undermined by an interpretation that § 702 confers no right to obtain meaningful equitable relief on a pre-enforcement basis when wronged by agency action.

Based on its text, the APA empowers courts with specific authority to "hold unlawful and set aside agency action, findings, and conclusions found to be" unlawful without subjecting that authority only to post-enforcement situations. 5 U.S.C. § 706. This is the only reading of the text

14

that gives "a 'hospitable' interpretation" to the APA's "generous review provisions." *Abbott Lab'ys,* 387 U.S. at 140 (quoting *Shaughnessy,* 349 U.S. at 51). It also tracks with the important purpose the APA serves. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 378, 372 (5th Cir. 2022) ("[A]n agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'" (quoting *Fed. Election Comm'n v. Cruz,* 142 S. Ct. 1638, 1649 (2022)). This authority to "issue all necessary and appropriate process . . . to preserve status or rights" from "irreparable injury" caused by agency action is not limited to relief for only the Plaintiffs. *See Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015), *as revised* (Nov. 25, 2015).

Defendants claim that their "criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those individuals charged with multiple other gun-related felonies . . . [therefore] because the Plaintiffs claim to be otherwise 'law-abiding' gun owners [citation omitted] they cannot claim they will suffer substantial injury if the injunction is stayed as to criminal enforcement proceedings." Memorandum at 10 (ECF 64-2).

First, as a logical matter, either the injunction on criminal proceedings is doing no work by protecting otherwise law-abiding gun owners—in which case Defendants cannot possibly be harmed by it—or Defendants are overstating their position. Second, Defendants claim they "mainly" target individuals charged with other gun-related felonies—not that they *exclusively* prosecute individuals charged with other offenses. This effectively invalidates any value in Defendants' statement because Plaintiffs have no way of knowing whether they will be the exception to "mainly." These concerns are heightened by Defendants' use of scare quotes around the phrase "law-abiding," suggesting that they do not concede that all of the persons protected by the injunction would fall outside the scope of individuals typically targeted for criminal enforcement.

There is no reason to exclude criminal prosecutions from the scope of the injunction. To the contrary, doing so would effectively gut the force of the injunction. Let us be blunt: There is a reason that Defendants want this carveout, and that reason is that they want to use the criminal power to intimidate law-abiding FRT owners into giving up their rights. Thus, Defendants' proposed narrowing must be rejected.

## VI.  The Preliminary Injunction Should Protect Conduct Beyond Mere Possession

Defendants suggest that the preliminary injunction should be limited to "mere possession" of FRTs. Memorandum at 9. Defendants explicitly made this argument during the preliminary injunction hearing. *See* Pls.' App'x 30, Prelim. Inj. Tr. 138:8-10 ("[Defendants] would ask that [the injunction] be limited to enforcement against individual owners for possession of forced reset triggers."). It was appropriately rejected. Nothing has changed.

Defendants' argument ignores that not everyone already owns an FRT. All of the individual Plaintiffs have represented that they would like to purchase additional FRTs. *See* Pls.' App'x 05-08 (Declaration of Patrick Carey); 1-2 (Declaration of J.R. Wheeler); 03-04 (Declaration of Travis Speegle). Similarly, members of the Associational Plaintiffs intend to acquire FRTs but for Defendants' unlawful classification. In order to use and enjoy FRTs, these Plaintiffs must be able to legally acquire one. Moreover, both the Individual and the Associational Plaintiffs include persons who sell gun parts, such as FRTs. A narrower injunction would not protect their ability to engage in lawful commerce.

The preliminary injunction appropriately protects more than just "mere possession."

## CONCLUSION

In granting the preliminary injunction, this Court appropriately considered each of the *Nken* factors. Defendants' arguments have gotten no stronger with repetition. They are unlikely to

16

prevail on the merits of the claim and are not substantially harmed by the preliminary injunction. In contrast, Plaintiffs would be substantially and irreparably harmed if the injunction were stayed. Thus, Defendants' Motion for a stay should be denied.

Date: November 10, 2023

Respectfully submitted,

/s/ Whitney A. Davis
Whitney A. Davis (TX Bar No. 24084843)
Ben Sley (TX Bar No. 18500300)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue, Suite 300
Weatherford, TX 76086
Telephone: (703) 748-2266
whit@ekdlaw.com
ben@ekdlaw.com

Jonathan M. Shaw (VA Bar No. 98497)
Gary M. Lawkowski (VA Bar No. 82329)
David A. Warrington (VA Bar No. 72293)
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com
glawkowski@dhillonlaw.com
dwarrington@dhillonlaw.com

Glenn Bellamy (OH Bar No. 0070321)
WOOD HERRON & EVANS
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2023, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

By    /s/ Whitney A. Davis
       Whitney A. Davis