UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR § <br> GUN RIGHTS, INC., *et al.*, § <br> § <br> **Plaintiffs,** § <br> § <br> v. § <br> § <br> MERRICK GARLAND, *et al.*, § <br> § <br> **Defendants.** § | § <br> § <br> § <br> § <br> Civil Action No. 4:23-cv-00830-O |

## ORDER

Before the Court are Defendants' Motion to Stay Preliminary Injunction Pending Appeal (ECF No. 64), filed November 6, 2023; Plaintiffs' Response (ECF No. 69) and Appendix (ECF No. 70), filed November 10, 2023; and Defendants' Reply (ECF No. 71), filed November 13, 2023. Defendants ask this Court to consider their motion on an expedited basis and issue a decision by November 16, 2023. Having considered the briefing and applicable law, the Court **DENIES** Defendants' request for a stay pending appeal.

### I.     BACKGROUND

Plaintiffs filed this action on August 9, 2023.[1] Five days later, on August 14, 2023, Plaintiffs moved for a temporary restraining order ("TRO").[2] Plaintiffs sought to enjoin Defendants from (1) initiating criminal or civil enforcement actions against Patrick Carey, Travis Speegle, and James Wheeler (the "Individual Plaintiffs") based on their current or prior possession of forced reset triggers ("FRTs") as well as from (2) seizing Individual Plaintiffs' FRTs and requesting that Individual Plaintiffs voluntarily surrender FRTs.[3] The Court granted the TRO on

---

[1] Pls.' Compl, ECF No. 1.
[2] Pls.' Mot. for TRO, ECF No. 17.
[3] *Id.* at 1.

1

August 30, 2023, enjoining Defendants from implementing or enforcing the ATF's definition of "machinegun" as against the Individual Plaintiffs.[4]

Plaintiffs also moved for a preliminary injunction seeking broader protection beyond just that afforded to the Individual Plaintiffs.[5] Specifically, Plaintiffs sought to enjoin Defendants from civil and criminal enforcement actions related to FRTs against the Individual Plaintiffs, as well as National Association for Gun Rights, Inc. ("NAGR"), Texas Gun Rights, Inc. ("TGR," and, together with NAGR, the "Organizational Plaintiffs"), and the Organizational Plaintiffs' members and downstream customers.[6] On October 7, 2023, the Court granted the preliminary injunction, enjoining Defendants from undertaking civil and criminal enforcement actions related to FRTs against the parties in this lawsuit: "the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff."[7]

Notably, the preliminary injunction contains important *exclusions*. First, the injunctive relief does not cover "parties beyond this lawsuit" and carves out specific parties subject to a sister court's injunction.[8] The preliminary injunction also excludes "any individual prohibited from possessing firearms under 18 U.S.C. § 922(g)" and emphasized that this "award of injunctive relief does not offer Plaintiffs blanket immunity from prosecution for all firearm-related offenses."[9]

---

[4] August 30, 2023 Opinion & Order, ECF No. 36.
[5] Pls.' Mot. for Prelim. Inj., ECF No. 22.
[6] Pls.' Br. in Support of Mot. for Prelim. Inj. 16–17, ECF No. 22. Among other things, Plaintiffs requested protection for selling or manufacturing FRTs. The Court understood this request to logically include downstream customers. Without such protection, there would be no market for which Plaintiffs could sell FRTs.
[7] October 7, 2023 Opinion & Order 42-43, ECF No. 53.
[8] *Id.* at 43. Specifically, the Court excluded "Rare Breed Triggers, LLC, Rare Breed Firearms, LLC," and "any of their agents, officers, and employees" to avoid trenching upon an order issued by a sister court in the Eastern District of New York. *Id.*
[9] *Id.* at 43, 45.

Crucially, "Plaintiffs may still be prosecuted for violating otherwise lawful provisions of the [National Firearms Act] and [Gun Control Act], as well as other lawful firearms regulations."[10]

Despite these exclusions, Defendants appealed the preliminary injunction to the Fifth Circuit on November 6, 2023.[11] Shortly thereafter, Defendants moved the Court to enter a stay pending appeal of the preliminary injunction to Plaintiffs.[12] Specifically, Defendants urge the Court to stay the preliminary injunction pending appeal on grounds that they "face irreparable harm with each day that the injunction . . . remains in effect," that "[t]hese irreparable and ongoing injuries to the Government and public outweigh any risk of injury to Plaintiffs if a stay is granted," and that they "have shown a likelihood of success on the merits."[13] The parties have fully briefed this issue[14] and the motion is ripe for review.

## II. LEGAL STANDARD

"While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court *may* suspend . . . an injunction . . . on terms that secure the opposing party's rights." FED. R. CIV. P. 62(d) (emphasis added). Such "[a] stay pending appeal is 'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). In determining whether to grant a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public

---

[10] *Id.* at 43.
[11] Defs.' Notice of Appeal, ECF No. 63.
[12] Defs.' Mot. to Stay Prelim. Inj. Pending Appeal, ECF No. 64. Among other attachments, Defendant's Motion to Stay includes the Declaration of Special Agent Craig Saier (ECF No. 64-1) and Memorandum in Support of Defendants' Motion to Stay (ECF No. 64-2).
[13] Defs.' Mem. in Support of Mot. to Stay Prelim. Inj. Pending Appeal 1–2, ECF No. 64-2.
[14] In addition to Defendants' motion and supporting memorandum, Plaintiffs submitted a response (ECF No. 69) and Defendants filed a reply (ECF No. 71).

interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Of these, "[t]he first two factors . . . are the most critical." *Plaquemines Parish*, 84 F.4th at 373. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433–34. Importantly, "[a] stay is not a matter of right, even if irreparable injury might otherwise result," but "[i]t is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Plaquemines Parish*, 84 F.4th at 373 (quoting *Nken*, 556 U.S. at 433). A court must thoughtfully consider the factors because "'a stay is an intrusion into the ordinary processes of administration and judicial review.'" *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 427).

## III. ANALYSIS

Applying the four well-established factors here and considering the arguments raised by the parties, the Court determines that Defendants have *not* met their burden to show that the Court should "exercise . . . judicial discretion" to stay the preliminary injunction pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

### A. Strong Likelihood of Success on the Merits

To begin, the Court considers whether Defendants have made a *strong* showing that they are likely to succeed on the merits. *U.S. Navy Seals 1-26 v. Biden*, 27 F. 4th 336, 349–50 (5th Cir. 2022) (citing *Nken*, 556 U.S. at 426). Having reviewed Defendants' arguments as to this factor, the Court concludes that they have not made a strong showing of likely success on the merits.

First, Defendants argue that an appellate court is likely to render a different outcome than the decision reached by this Court.[15] In support of this contention, Defendants note that the Supreme Court recently granted certiorari in *Garland, et al. v. Cargill*, No. 22-976 (Nov. 3,

---

[15] Defs.' Mem. in Support of Mot. to Stay Prelim. Inj. Pending Appeal 7, ECF No. 64-2.

4

2023)—the case this Court viewed as dispositive for the likelihood of success on the merits factor.[16] Despite this development, the Court cannot make any inferences—including a presumption that the Fifth Circuit will be reversed—based on the Supreme Court's decision to grant of certiorari in *Cargill*. This is especially true given that *all* parties to that case supported the petition for certiorari to resolve a circuit split regarding bump stocks. *See* Brief in Support of Certiorari, *Garland, et al. v. Cargill*, No. 22-976 (U.S. June 7, 2023). At this point, the Supreme Court has not overruled *Cargill*, meaning that it remains good law still binding on this Court.

Second, Defendants remind the Court that the Eastern District of New York reached a contrary conclusion in a different case: that the government is "'highly likely to succeed in proving that the FRT-15 satisfies the statutory definition of a machinegun' even in light of the *Cargill* plurality's opinion."[17] But this argument is not new.[18] In fact, the Court previously considered and rejected this argument at the preliminary injunction stage.[19] The Court stands on its previous determination. Simply reiterating the fact that another district court in another circuit reached a contrary conclusion is not enough to show a *strong* likelihood of success on the merits. This is particularly true when clear precedential guidance on this question from *Cargill* exists here.[20]

Even if these legal developments suggest that Defendants have a chance of success on the merits, "more than a mere possibility of relief is required" to justify a stay pending appeal. *Nken*, 556 U.S. at 434 (cleaned up). "It is not enough that the chance of success on the merits be better than negligible." *Id.* (cleaned up). Rather than providing something new to demonstrate that there

---

[16] *Id.* at 7–8.
[17] *Id.* at 8 (quoting *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML, 2023 WL 5689770, at *15 (E.D.N.Y. Sept. 5, 2023).
[18] *See* Defs. Resp. in Opp. to Pls.' Mot. for Prelim. Inj. 7–9, ECF No. 39 (raising the same argument regarding the contrary decision reached by the Eastern District of New York).
[19] October 7, 2023 Opinion & Order 24, 29–30, ECF No. 53.
[20] *See id.* at 24 ("*Cargill* controls since decisions from the Fifth Circuit—not the Eastern District of New York—are binding on this Court.").

is a strong likelihood of success on the merits, Defendants largely focus on relitigating issues already decided at the TRO and preliminary injunction stages. But the Court previously determined in two separate orders that the ATF's interpretation of "machinegun" is very likely unlawful.[21] Defendants have still not made any showing—let alone a strong showing—that this conclusion is incorrect. Simply rehashing arguments twice rejected does not eventually transform those points into a cognizable showing—let alone a strong showing—that Defendants are likely to succeed on the merits. Without more, the Court finds that Defendants have failed to meet their burden.

The Court has already concluded *twice* that Plaintiffs—not Defendants—are likely to succeed on the merits. Defendants offer nothing to compel a different conclusion. There are no new arguments or authority beyond noting the grant of certiorari in *Cargill*. Accordingly, the Court finds that Defendants, who bear the burden, fail to demonstrate a likelihood of success on the merits, let alone the "strong" showing required for such "extraordinary relief" as a stay pending appeal. Therefore, this factor weighs heavily against granting a stay.

### B. Irreparable Harm

Turning to the second stay factor, the Court concludes that Defendants have not shown that they will suffer irreparable harm absent a stay pending appeal. Although Defendants focus considerable attention on this factor in their briefing, none of their arguments are availing.

First, Defendants contend that complying with the preliminary injunction pending appeal will make it harder for them to seize FRTs from otherwise law-abiding citizens.[22] Not only does this presume that FRTs are illegal machineguns (meaning that this articulation of harm is tethered

---

[21] August 30, 2023 Opinion & Order, ECF No. 36; October 7, 2023 Opinion & Order, ECF No. 53.
[22] Defs.' Mem. in Support of Mot. to Stay Prelim. Inj. Pending Appeal 5, ECF No. 64-2.

6

entirely to the merits), but this harm also does not rise to the level of irreparability. Should Defendants prevail on the merits, they would simply restart their retrieval efforts anew. There is nothing in the record actually showing that Defendants will be completely unable to later contact individuals suspected of transferring or selling FRTs during the preliminary injunction and trace the movement of those FRTs based on that information. All Defendants have shown is that these retrievals efforts will be more challenging.[23] When paired with the Court's determination that such confiscation of law-abiding citizens' FRTs is likely unlawful, this plea that the injunction interferes with Defendants' ability to seize FRTs merits no sympathy. And the fact that the Defendants have likely acted in violation of the law for years does not make the action any less unlawful.[24]

Next, Defendants lament that the preliminary injunction will result in the acquisition of FRTs by prohibited persons.[25] But this concern exists with *any* firearm—not just FRTs. More importantly, the Court is not persuaded that Defendants should be allowed to restrict the rights of law-abiding citizens simply because some criminal somewhere might break the law. The Court cannot grant the extraordinary remedy of a stay pending appeal based on what a prohibited person *might* do. Even more fundamental is the fact that FRTs only work with a preexisting firearm, which, by definition, prohibited persons cannot legally possess. If Defendants are concerned with prohibited persons acquiring FRTs, they already possess the authority to arrest that person now, with or without the preliminary injunction. *See* 18 U.S.C. § 922(g) (listing persons prohibited from using firearms). The Court was careful to emphasize this point when granting the preliminary injunction: "Plaintiffs may still be prosecuted for violating otherwise

---

[23] *Id.* at 5–6 (arguing that "the Government would face significant hardships" because, without a stay, the injunction will "make recovery even more challenging and resource intensive with each passing day") (citing *Rare Breed Triggers, LLC*, 2023 WL 5689770, at *48).
[24] *See id.* at 1, 3–4 (discussing ATF's history of classifying FRTs and similar devices as machineguns).
[25] *Id.* at 4–6.

lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."[26] Thus, Defendants' fear regarding prohibited persons is—and continues to be—a non sequitur.

Even if Defendants' interest in enforcing their interpretation of machinegun is legitimate, that interest carries less weight in the stay analysis. *Cf. Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2019) (staying injunction where the government's interest in enforcing its laws was *coupled with* its strong showing of likely success on the merits). The Fifth Circuit stressed that "any injury to [the enjoined party] is outweighed by [a] strong likelihood of success on the merits" by Plaintiffs. *Freedom from Religion Foundation, Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). As such, even if Defendants are correct that the identified harms are irreparable, this alone would still not satisfy Defendants' burden of showing the Court that it should exercise discretion to grant a stay when likelihood of success is the main bearing wall of the test. Indeed, "simply showing some 'possibility of irreparable injury'" does not weigh in favor of a stay because, on its own, that "standard is too lenient." *Nken*, 556 U.S. at 434–35.

Moreover, contrary to Defendants renewed argument that pre-enforcement judicial review is harmful by undermining separation of powers,[27] it is no "intrusion by a federal court into the workings of a coordinate branch of Government" to require the Defendants to comply with the law. *Legalization Assistance Project*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers). That is precisely the role of the judicial branch and particularly in the Administrative Procedure Act ("APA") context.[28] Indeed, the APA's text makes clear that "[a] person suffering a legal wrong

---

[26] October 7, 2023 Opinion & Order 43, ECF No. 53.
[27] Defs.' Mem. in Support of Mot. to Stay Prelim. Inj. Pending Appeal 9–10, ECF No. 64-2.
[28] The APA recognizes judicial authority to "issue all necessary and appropriate process . . . to preserve status or rights" from "irreparable injury" caused by agency action. 5 U.S.C. § 705. Indeed, the APA's explicit textual entitlement would be undermined by an interpretation that § 702 confers no right to obtain meaningful equitable relief on a pre-enforcement basis when wronged by agency action. The Court

because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof," including criminal proceedings. 5 U.S.C § 702. And it is certainly not unduly burdensome to require Defendants, as executive officials, to follow the law they are tasked with enforcing. If Defendants prefer to ban all FRTs, there is a pathway to achieving that end—they and their supporters can lobby Congress to change the definition. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 378, 372 (5th Cir. 2022) ("[A]n agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'" (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1649 (2022)). Defendants cannot arrogate the legislative power to themselves in the absence of statutory authority. Thus, until Congress changes the law, allowing enforcement of a "likely unlawful" interpretation of a criminal statute should not be left to mere prosecutorial discretion. And any claimed harm to Defendants by virtue of this loss of discretion is immaterial under *Cargill*.

Accordingly, Defendants have, at best, demonstrated inconvenience as a result of the preliminary injunction. Without more, Defendants fail to satisfy their burden of showing that the circumstances justify a stay pending appeal. Therefore, this factor also weighs against a stay.

### C. Balance of Equities and the Public Interest

---

previously acknowledged that "'[i]n all cases' of judicial review under § 706, 'agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.'" October 7, 2023 Opinion & Order 17–18, ECF No. 53 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14 (1971)). The APA's text refers to "mandatory or injunctive decree[s]" issued thereunder. 5 U.S.C. § 702. The import of this text is that injunctive relief is available under the APA without any express limitation precluding the availability of such relief on a pre-enforcement basis. "[T]he Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)). The APA authorizes courts to review agency actions on a pre-enforcement basis, including various agency actions that are "otherwise not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity; ... [or] in excess of statutory jurisdiction, authority, or limitations," a power of judicial review that is "cumulative under the arbitrary and capricious standard." October 7, 2023 Opinion & Order 17–18, ECF No. 53 (quoting 5 U.S.C. § 706(2)(A)–(B); *Menkes v. DHS*, 637 F.3d 319, 330 (D.C. Cir. 2011)).

The Court also finds that the remaining two factors—comparative balance of the equities and the public interest—likewise do not justify a stay pending appeal. The Court previously balanced these competing interests and reaffirms that conclusion absent convincing otherwise.[29] Because Defendants once again fail to shift the equities in their favor, the Court addresses the public interest factor.[30]

In their third bite at the apple, Defendants concentrate on the potential harm the public will face absent a stay.[31] For instance, Defendants state "ATF has encountered these devices in numerous criminal settings."[32] But this is not a causal argument. Nor is it evidence that FRTs are uniquely dangerous or more likely to be involved in criminal activity than any other firearm or firearm accessory. Even in the example Defendants provide involving "an eight-time convicted felon on state probation" who possessed an FRT, the felon also illegally possessed twenty-two other firearms, along with narcotics and other drug paraphernalia.[33] It is not at all clear what causal work the FRT is doing in this example that is not equally applicable to the other illegally possessed firearms. And it is similarly unclear how the FRT added to the danger of this situation. Thus, just like the TRO and preliminary injunction stages, Defendants "provide no specific causal arguments explaining how the public would be harmed by an injunction."[34]

The causal deficiencies become even more apparent when Defendants admit that their "criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those

---

[29] August 30, 2023 Opinion & Order 20–23, ECF No. 36; October 7, 2023 Opinion & Order 37–41, ECF No. 53.
[30] Unlike the Court's prior orders, the public interest factor does not merge here because the government is the moving—rather than the opposing—party. *See U.S. Navy Seals 1-26*, 27 F.4th at 353 ("Those factors merge 'when the Government is the opposing party[,] i.e., when the government is not the party applying for a stay.'" (quoting *Nken*, 556 U.S. at 435)).
[31] Defs.' Mem. in Support of Mot. to Stay Pending Appeal 3–6, ECF No. 64-2.
[32] *Id.* at 4.
[33] Decl. of Special Agent Craig Saier ¶ 34, ECF No. 64-1.
[34] October 7, 2023 Opinion & Order 39, ECF No. 53.

individuals charged with multiple other gun-related felonies."[35] As observed when granting the preliminary injunction, "if the only targets of Defendants' enforcement actions are against those who violate other gun laws, then the prohibition on FRTs does nothing to protect the public."[36] And, it follows, then, "that FRT ownership is neither a necessary nor sufficient condition for protecting public safety."[37] Beyond the broad statement that the ATF has encountered FRTs "in numerous criminal settings" and pointing to examples of felons in possession of other illegal firearms, all of the dangerous situations Defendants fear involve other illegal activities.

Despite being on their third round of briefing, Defendants have identified just two criminal shootings that may have involved FRTs, one of which involved a "narcotics trafficker" who was likely ineligible to possess any firearms in the first place.[38] This is hardly sufficient to establish that FRTs are unique threats to public safety, let alone that possession or transfer of FRTs by Plaintiffs—who, by definition in this case, are not prohibited persons—pose a public safety threat. For a third time the Court concludes: "[s]uch a general public safety concern simply cannot serve as justification for enforcement of an illegal interpretation of a criminal statute."[39] There is no evidence suggesting that FRTs in the hands of law-abiding citizens will disserve the public interest.

Furthermore, Defendants also repeatedly highlight that the FRT's rate of fire is similar to how quickly a machinegun fires. But this fact is irrelevant to any consideration of the potential harm posed. That is because the statutory definition of machinegun—as emphasized by *Cargill*—does not define a machinegun based on this attribute. 57 F.4th 447, 461 (5th Cir. 2023) ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire. . .

---

[35] Defs.' Mem. in Support of Mot. to Stay Pending Appeal 10, ECF No. 64-2.
[36] October 7, 2023 Opinion & Order 39, ECF No. 53.
[37] *Id.*
[38] Decl. of Special Agent Craig Saier ¶¶ 34–35, ECF No. 64-1.
[39] October 7, 2023 Opinion & Order 39, ECF No. 53.

. Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."). Rate of fire may be Defendants' *preferred* way of defining machineguns. But until Congress changes the statutory definition, any contentions regarding rate of fire have no bearing on the Court's analysis. For better or for worse, the statutory definition of machinegun does not presently include the rate of fire as an attribute of machineguns. As such, Defendants intensified efforts to show that allowing FRTs to be possessed, distributed, sold, or transferred is uniquely dangerous because of their rate of fire similar to a machinegun has no bearing on the analysis.

In contrast, Plaintiffs would be substantially injured by a stay. The Court has already found—twice, in slightly different contexts—that Plaintiffs face a substantial risk of irreparable harm if Defendants are not enjoined from engaging in enforcement activities.[40] Not only do Plaintiffs face a credible threat of prosecution (including when used coercively to confiscate property without filing charges), Plaintiff also face the loss of the use and enjoyment of their property as a result of Defendants "active retrieval" efforts.[41] Contrary to Defendants' prior statements downplaying the scope of their enforcement activities, Defendants' supporting declaration now reverses course and claims that "the FRT-15 and WOT are subject to active retrieval efforts."[42] There is every reason to believe these "retrieval efforts" will be directed at members of the Organizational Plaintiffs in the absence of the preliminary injunction, which reaffirms the very need for such protection.

As before, Defendants' "sky is falling" arguments do not overcome the serious harms Plaintiffs face. Defendants' arguments are premised entirely on a presumption that FRTs are

---

[40] August 30, 2023 Opinion & Order 16–20, ECF No. 36); October 7, 2023 Opinion & Order 31–37, ECF No. 53.
[41] Decl. of Special Agent Craig Saier 8, ECF No. 64-1.
[42] *Id.*

machineguns—a conclusion already twice rejected. For the third time in this litigation, Defendants offer speculative, conclusory statements about the supposed danger of FRTs that are not supported by their own facts. And the realities discussed above cast doubt on the parade of horribles that Defendants say will occur if the injunction remains in force pending appeal. Defendants do not carry their burden to show how the equities now weigh in their favor. Nor do Defendants show how the public interest will be served by a stay pending appeal. To the contrary, the preliminary injunction broadly maintains the status quo of general non-enforcement against law-abiding citizens and serves the public interest by preventing Defendants from enforcing their likely unlawful definition of machinegun. For these reasons, the final two factors also weigh against a stay.

## IV.    CONCLUSION

At bottom, the preliminary injunction may frustrate Defendants enforcement and retrieval interests. But for the reasons discussed, any injury to Defendants continues to be "outweighed by [Plaintiffs'] strong likelihood of success on the merits." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). Defendants have not only failed to make a strong showing of success on the merits but have also not identified how their asserted harms will still exist if they *do not* prevail on the merits—and these "two factors . . . are the most critical." *Plaquemines Parish*, 84 F.4th at 373. Given the combination of these factors, the Court finds that Defendants have demonstrated that issuance of a stay pending appeal is warranted.

Therefore, the Court concludes that Defendants have not met their burden of showing that the circumstances justify an exercise of the Court's discretion to grant a stay pending appeal. Accordingly, the Court **DENIES** Defendants' Motion (ECF No. 64).

**SO ORDERED** this **16th day** of **November, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**