**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

NATIONAL ASSOCIATION FOR GUN
RIGHTS, INC., *et al.*,

               Plaintiffs,

      v.

MERRICK GARLAND, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL
OF THE UNITED STATES, *et al.*,

           Defendants.

Case No. 4:23-cv-00830-O

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF CROSS-MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.     Plaintiffs' APA Challenge Is Limited to the Administrative Record. .......................2

II.    Plaintiffs Lack Standing. ..........................................................................................4

       A.    Plaintiffs Lack Pre-Enforcement Standing Because They and Their Members
           Face No Credible Threat of Prosecution. ........................................................4

       B.    Associational Plaintiffs Lack Standing for Further Reasons. ..........................5

       C.    Plaintiffs Lack Standing to Challenge Non-Possession-Related Enforcement
           of the Classification Decision. ........................................................................7

III.    FRTs Are Machineguns. ........................................................................................10

       A.    The Statutory Definition Unambiguously Encompasses FRTs. ....................10

       B.    The Rule of Lenity Does Not Apply. ............................................................14

CONCLUSION .........................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Akins v. United States,*
   312 F. App'x 197 (11th Cir. 2009) .................................................................. 12, 13

*Ala.-Tombigbee Rivers Coal. v. Norton*
   No. CIV.A.CV-01-S-0194-S, 2002 WL 227032 (N.D. Ala. Jan. 29, 2002) ......................... 3

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
   627 F.3d 547 (5th Cir. 2010) ......................................................................... 5

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ............................................................................. 4, 7, 9

*Barber v. Thomas,*
   560 U.S. 474 (2010) .................................................................................15

*Bellion Spirits, LLC v. United States,*
   335 F. Supp. 3d 32 (D.D.C. 2018), *aff'd,* 7 F.4th 1201 (D.C. Cir. 2021) ....................... 3

*Cargill v. Garland,*
   57 F.4th 447 (5th Cir. 2023), *cert. granted,* 144 S. Ct. 374 (2023) .....................*passim*

*City of Dallas v. Hall,*
   Civ. A. Nos. 3:07-CV-0060-P, 3:07-CV-0213-P, 2007 WL 3257188 (N.D. Tex. Oct. 29, 2007) ...... 3

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ............................................................................. 5, 9

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) .................................................................................7

*Energy Mgmt. Corp. v. City of Shreveport,*
   397 F.3d 297 (5th Cir. 2005) .................................................................... 5, 8

*Friends of the Earth, Inc. v. Chevron Chem. Co.,*
   129 F.3d 826 (5th Cir. 1997) .......................................................................7

*Hunt v. Wash. State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ........................................................................... 5, 6, 7

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.,*
   58 F. Supp. 3d 1191 (D.N.M. 2013) ..................................................................3

*Kidd v. Livingston,*
   463 F. App'x 311 (5th Cir. 2012) .................................................................11

*Lockhart v. United States,*
    577 U.S. 347 (2016) ...............................................................................................14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 4, 7, 9

*Maracich v. Spears,*
    570 U.S. 48 (2013) ...............................................................................................15

*N. Arapaho Tribe v. Ashe,*
    92 F. Supp. 3d 1160 (D. Wyo. 2015) .....................................................................2

*Pederson v. La. State Univ.,*
    213 F.3d 858 (5th Cir. 2000) ..................................................................................5

*Sierra Club v. U.S. Dep't of Interior,*
    990 F.3d 909 (5th Cir. 2021) ..................................................................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
    600 U.S. 181 (2023) ...............................................................................................7

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin,*
    37 F.4th 1078 (5th Cir. 2022) ................................................................................6

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...............................................................................................5

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    ---F. Supp. 3d---, 2023 WL 7116844 (S.D. Tex. Oct. 27, 2023),
    *appeal filed,* No. 23-40685 (5th Cir. Dec. 1, 2023) ...............................................7

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017) ...............................................................................................7

*United States v. Camp,*
    343 F.3d 743 (5th Cir. 2003) .......................................................................... 10, 13

*United States v. Fleischli,*
    305 F.3d 643 (7th Cir. 2002) ................................................................................10

*United States v. Jokel,*
    969 F.2d 132 (5th Cir. 1992) ................................................................................10

*United States v. Rare Breed Triggers, LLC,*
    No. 1:23-cv-00369, 2023 WL 504992 (E.D.N.Y. Jan. 25, 2023) .........................10

*United States v. Rare Breed Triggers, LLC,*
    ---F. Supp. 3d---, 2023 WL 5689770 (E.D.N.Y. Sept. 5, 2023),
    *appeal filed,* No. 23-7276 (2d Cir. Oct. 5, 2023) .................................... 10, 13, 14

*Viasat, Inc. v. Fed. Commc'ns Comm'n,*
   47 F.4th 769 (D.C. Cir. 2022) ................................................................................6

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ...............................................................................................4, 5

*Zebrowski v. U.S. Bureau of Prisons,*
   No. 5:11-cv-164-DPJ-FKB, 2013 WL 838009 (S.D. Miss. Mar. 6, 2013),
   *aff'd*, 558 F. App'x 355 (5th Cir. 2014) .................................................................11

*Zimmerman v. City of Austin,*
   881 F.3d 378 (5th Cir. 2018) ............................................................................4, 7, 9

## REGULATIONS

Bump-Stock-Type Devices,
83 Fed. Reg. 66,514 (Dec. 26, 2018) .......................................................................13

## OTHER AUTHORITIES

IRS Form 990, Return of Organization Exempt From Income Tax (2021), National Association for
   Gun Rights Inc.,
   https://apps.irs.gov/pub/epostcard/cor/542015951_202112_990O_2023050821174961.pdf......6

NAGR, *Join National Association for Gun Rights,*
   https://nationalgunrights.org/join/ .......................................................................6

*Pressure*, MERRIAM-WEBSTER DICTIONARY (2024) ........................................................15

*Pull*, MERRIAM-WEBSTER DICTIONARY (2024) ..............................................................15

TGR, *Join TXGR Today!,*
   https://txgunrights.org/join/ .................................................................................6

## INTRODUCTION

The Court should grant summary judgment in favor of Defendants because of Plaintiffs' jurisdictional deficiencies or, if this Court reaches the merits, because the statutory definition of a machinegun unambiguously encompasses "forced reset trigger" devices ("FRTs").

As a threshold matter, Plaintiffs have not met their burden of establishing standing. Plaintiffs have not established that they, or any of their members, face a credible threat of enforcement because they have not identified a single otherwise law-abiding owner of an FRT who has faced any civil or criminal enforcement action for possession of the device. This is particularly true for Associational Plaintiffs, who have not identified any member who had even been contacted by the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF"), let alone subject to any enforcement activity, at the time of suit. And even if such members did exist, Associational Plaintiffs have not shown that they have standing to bring suit on the members' behalf because Associational Plaintiffs have not established that they are traditional membership organizations or bear indicia of membership. Finally, because Plaintiffs and their members assert only ownership interests in FRTs, they lack standing to challenge the classification decision's application to conduct beyond mere possession of FRTs.

On the merits, Defendants have established that FRTs are machineguns because an FRT-equipped weapon will maintain automatic fire after the trigger functions by initiating the firing sequence. The Fifth Circuit and other courts have repeatedly recognized that, for purposes of the statutory definition of a machinegun, the relevant function of a trigger is to initiate the firing sequence. The trigger on an FRT-equipped firearm performs that function only once in response to a single continuous pull of the trigger by the shooter before automatically and mechanically maintaining fire. In this way, FRTs are analogous to the mechanical bump stocks that the Fifth Circuit plurality in *Cargill v. Garland*, 57 F.4th 447, 462 n.8 (5th Cir. 2023) (plurality op.), *cert. granted*, 144 S. Ct. 374 (2023), recognized as machineguns. And Plaintiffs' last-ditch resort to the rule of lenity, for the first time before this Court, is unavailing because the dual ambiguity present in *Cargill* is absent here, as another federal court has already found.

For these reasons, Defendants' cross-motion for summary judgment should be granted.

## ARGUMENT

I. **Plaintiffs' APA Challenge Is Limited to the Administrative Record.**

Because Plaintiffs' only claim is brought under the Administrative Procedure Act ("APA"), judicial review is limited to the administrative record. *See* Defs.' Combined Mem. in Supp. of Cross-Mot. for Summ. J. & Resp. in Opp'n to Pls.' Mot. for Prelim. Inj. at 7, ECF No. 81. Plaintiffs' efforts to deviate from this rule should be rejected.

First, Plaintiffs argue that the record-review rule should not apply because Plaintiffs and the public did not have an opportunity to weigh in on the ATF decision classifying FRTs as machineguns. Pls.' Combined Br. in Resp. to Defs.' Cross-Mot. for Summ. J. & Reply in Supp. of Pls.' Mot. for Summ. J. at 3, ECF No. 84. The record-review rule applies to any sort of claim brought under the APA, including challenges to a notice-and-comment rulemaking, a formal adjudication, or an informal decision such as the classification determinations at issue here. *See, e.g.*, *N. Arapaho Tribe v. Ashe*, 92 F. Supp. 3d 1160, 1171–72 (D. Wyo. 2015) (applying the record-review rule in a case challenging an "informal adjudication"). Nowhere do Plaintiffs cite any law suggesting that there is an exception to this rule for challenges to administrative decisions that did not involve public input. Nor did they bring any claim arguing that Plaintiffs or the public should have been afforded an opportunity to raise issues before the agency, including that the rule should have been subject to public input in a notice-and-comment rulemaking.

Second, Plaintiffs argue Defendants should have moved to strike any extra-record material. ECF No. 84 at 3. Defendants have repeatedly objected to the consideration of such materials, most recently in their opening summary judgment brief. *See* ECF No. 81 at 7 (stating "[t]o the extent Plaintiffs rely on materials outside the administrative record . . . in support of the merits of their claims, the Court should decline to consider such materials."). Indeed, Defendants have preserved this objection throughout the course of the litigation, including in their preliminary injunction briefing, *see* Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj. at 4 n.2, ECF No. 39, and at the preliminary injunction hearing, *see* Oct. 2, 2023 Tr. at 6:6-10. A formal motion to strike is not necessary, particularly where, as here, Plaintiffs have not identified what extra-record materials they seek to admit. Indeed,

the common practice is for parties seeking to rely on extra-record evidence to file a motion to supplement the administrative record. *See, e.g.*, *City of Dallas v. Hall*, Civ. A. Nos. 3:07-CV-0060-P, 3:07-CV-0213-P, 2007 WL 3257188, at *1 (N.D. Tex. Oct. 29, 2007). Plaintiffs have not done so.

Third, Plaintiffs argue that the record-review rule does not apply to claims brought under a different cause of action, separate from an APA claim, such as a constitutional cause of action. ECF No. 84 at 3–4. Even assuming Plaintiffs' premise is correct, *but see Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2013) (explaining why record-review rule should apply to constitutional claims brought in conjunction with an APA claim); *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 38–39 (D.D.C. 2018), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021) (similar); *Ala.-Tombigbee Rivers Coal. v. Norton*, No. CIV.A.CV-01-S-0194-S, 2002 WL 227032, at *6 (N.D. Ala. Jan. 29, 2002) (similar), that argument is inapplicable here because Plaintiffs have *only* brought a single claim under the APA, *see* Compl. ¶¶ 65–72, ECF No. 13. Plaintiffs reference a hypothetical *ultra vires* claim, *see* ECF No. 84, at 4, but the Complaint does not even mention the words *ultra vires* or otherwise attempt to plead such a claim.

Plaintiffs also argue that supplementation of the administrative record is appropriate for three reasons. They are mistaken on all counts. First, they say that unspecified extra-record evidence is necessary to show that ATF "failed to consider" certain relevant factors. *Id.* at 6. Plaintiffs have not explained what factors they believe ATF failed to consider or what extra-record evidence pertains to these factors. And Plaintiffs have not argued that the decision was arbitrary and capricious for failing to consider an important issue. Second, Plaintiffs say that the "expert testimony" from the preliminary injunction hearing should be considered because it is "evidence arising after the agency action that shows whether the decision was correct or not." *Id.* (alteration omitted). That testimony is not *new* evidence just because it was presented to the Court after ATF's decision; Plaintiffs' logic would swallow the record-review rule entirely by allowing any testimony or declaration that rebuts an agency's decision *post hoc.* Third, Plaintiffs say that extra-record evidence should be considered for "background information." *Id.* To the extent that Plaintiffs rely on extra-record evidence to demonstrate the

3

functionality of FRTs and whether those devices are properly deemed "machineguns," such evidence goes to key issues on the merits in this case and cannot be considered mere "background information."

Finally, Plaintiffs argue that the government, in noting the standard of review in an APA case, is attempting to "import[] *Chevron*-style deference" into this case. *Id.* The government has never claimed that *Chevron* deference applies in this case. Nevertheless, the standard of review under the APA, including the record-review rule, is generally deferential to the government. *See Sierra Club v. U.S. Dep't of Interior*, 990 F.3d 909, 913 (5th Cir. 2021).

In any event, the Court likely does not need to address the record-review rule in this case. Plaintiffs have not identified any disputed material fact for which Plaintiffs rely on evidence outside the record to support. Indeed, Plaintiffs indicate that they do not believe key facts are in dispute. *See* ECF No. 84 at 4.

## II.     Plaintiffs Lack Standing.

### A.   Plaintiffs Lack Pre-Enforcement Standing Because They and Their Members Face No Credible Threat of Prosecution.

As described in Defendants' opening brief, ECF No. 81 at 8-14, Plaintiffs lack standing because they have not identified any otherwise law-abiding FRT owner *anywhere*—not amongst their membership, not in the entire United States—who has faced a criminal or civil enforcement action for possession of an FRT. That certain Plaintiffs and their members were contacted by ATF and asked to voluntarily surrender their weapons does not establish that they face "a credible threat of" enforcement, *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)), that is "actual or imminent," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Not a single one of those contacted persons purports to have ever faced any criminal or civil penalties, even in the time before the Court's injunction, including those contacted well over a year ago, Compl. ¶ 8, and those who declined to surrender their FRT as requested, ECF No. 47-1 at 96 ¶¶ 8-9. These facts demonstrate that Plaintiffs' concerns that they have "place[d] themselves in potential jeopardy due to acknowledging their possession of FRTs," ECF No. 84 at 7 (citation omitted), are unfounded, and

that ATF has been faithful to its representations that it has no current intention to take action against Individual Plaintiffs. Plaintiffs' claims that they and their members are likely to face enforcement action based on their present or future ownership of FRTs is thus "too speculative" to establish pre-enforcement standing under binding Supreme Court precedent. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (A "theory of *future* injury [must not be] too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" (quoting *Whitmore*, 495 U.S. at 158)); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) ("fear of prosecution" may not be "imaginary or wholly speculative" (citation omitted)).

### B. Associational Plaintiffs Lack Standing for Further Reasons.

Plaintiffs' theory of associational standing suffers from two additional infirmities. First, Associational Plaintiffs have not demonstrated that any member would "have standing to sue in their own right." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (finding a member with standing necessary for "association [to have] standing to bring suit on behalf of its members" (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977))). "Standing is determined as of the time that suit is filed." *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000)). But Plaintiffs' opposition brief effectively concedes that at the time they filed suit, no Associational Plaintiff member was ever contacted by ATF, let alone suffered any enforcement action. *See* ECF No. 84 at 9. Indeed, Plaintiffs argue only that National Association for Gun Rights, Inc. ("NAGR") has standing because some of its then-members reported that they owned FRTs and Individual Plaintiff Wheeler—who owns FRTs and does not purport to have ever been contacted by ATF—is a member. ECF No. 84 at 9. They say nothing about Plaintiff Texas Gun Rights, Inc. ("TGR"). *Id.* For these reasons, and those described *supra* § II.A, Plaintiffs do not carry their burden of establishing that any member faced a credible threat of enforcement to confer standing on the Associational Plaintiffs.

Second, Associational Plaintiffs have not carried their burden of demonstrating that they are traditional membership organizations or bear "indicia of membership," such that they have standing

to bring suit on behalf of their members. *Hunt*, 432 U.S. at 342–43. Associational Plaintiffs claim that they are traditional membership organizations, but they provide virtually no support for that contention. They have not submitted into the record their bylaws or other documentation demonstrating their membership structure, and none of their members' declarations describes their relationship "beyond a bare assertion of membership," *Viasat, Inc. v. Fed. Commc'ns Comm'n*, 47 F.4th 769, 782 (D.C. Cir. 2022). Associational Plaintiffs assert that they have two classes of members, "voting members and supporting members." ECF No. 85 at 8 ¶ 7; *id.* at 9 ¶ 5. Neither has offered any information about the so-called "voting members," including membership qualifications or control rights. Nor does the vague information provided suggest that "supporting members" have any meaningful control rights, such as the ability to elect directors. *Compare Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1084–85 (5th Cir. 2022) (finding traditional membership organization where "bylaws provide for a single class of 'General Members,' who pay membership dues and elect one of [organization's] five directors") *with* ECF No. 85 at 8 ¶¶ 8–9, 10 ¶ 6 (stating that "[s]upporting members" of NAGR and TGR "are people who either make a financial contribution above a certain level" or have "certain specified relationships with the organization and/or affiliated groups," and may provide input on certain policy referenda). To the contrary, NAGR's 2021 tax filing indicates that its members do *not* have "power to elect or appoint one or more members of the governing body" and that "governance decisions" are *not* "reserved to (or subject to approval by) members."[1] And neither NAGR nor TGR's website includes voting or input opportunities amongst the listed membership benefits.[2] Finally, Associational Plaintiffs do not claim to be litigating on behalf of any "identified members," let alone that such members "receive updates about the status of th[is]

---

[1] IRS Form 990, Return of Organization Exempt From Income Tax (2021), at 6, National Association for Gun Rights Inc., https://apps.irs.gov/pub/epostcard/cor/542015951_202112_990O_2023050821174961.pdf (last visited Jan. 11, 2024).

[2] *See* NAGR, *Join National Association for Gun Rights*, https://nationalgunrights.org/join/ (last visited Jan. 11, 2024); TGR, *Join TXGR Today!*, https://txgunrights.org/join/ (last visited Jan. 11, 2024).

case" or "have had the opportunity to have input and direction on [the] case," *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023) (citation omitted).

Having failed to establish that they are traditional membership organizations, Associational Plaintiffs must demonstrate that they bear sufficient "indicia of membership." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997). For similar reasons, they do not. NAGR and TGR do not have a "clearly articulated and understandable membership structure," *id.* Associational Plaintiffs have not even attempted to articulate the differences between supporting and voting members nor the rights of, or process for becoming, a voting member. They do not claim that members "elect[] the governing body of the organization," *id.*, serve in governance roles, or that "they alone finance its activities," *Hunt*, 432 U.S. at 344–45; *see also Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, ---F. Supp. 3d---, 2023 WL 7116844, at *7 (S.D. Tex. Oct. 27, 2023) ("One way to apply the indicia of membership test is to look at whether nonstandard members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." (citation omitted)), *appeal filed*, No. 23-40685 (5th Cir. Dec. 1, 2023). Rather, NAGR and TGR's websites suggest that members are mere donors who receive trivial perks like membership cards, decals, hats, and newsletters. *See supra* n.2. Associational Plaintiffs thus lack standing.

### C. Plaintiffs Lack Standing to Challenge Non-Possession-Related Enforcement of the Classification Decision.

Plaintiffs' argument that the Court must vacate the classification decision as to manufacturing and sales of FRTs because if ATF's classification "for purposes of possession is wrong, it is also wrong for purposes of the transfer or sale of FRTs," ECF No. 84 at 12, ignores fundamental principles of standing. Before even considering the merits, the Court must determine that Plaintiffs "demonstrate standing for each claim [they] seeks to press and for each form of relief that is sought," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Plaintiffs have not demonstrated that they or their members face a "credible threat" of enforcement, *Zimmerman*, 881 F.3d at 391 (quoting *Babbitt*, 442 U.S. at 298), or an "actual or imminent" injury, *Lujan*, 504 U.S. at 560 (citation omitted), related to their manufacturing or sale of FRTs.

Only at the summary judgment stage have Plaintiffs attempted, in vain, to establish standing to challenge the classification decision as it applies to FRT manufacturing. Plaintiffs do not allege in the Complaint that any Plaintiff or member thereof is a manufacturer of FRTs or suffered an injury related to manufacturing of FRTs. Instead, they state, for the first time, that the Rare Breed Parties in the E.D.N.Y lawsuit are members of NAGR.[3] *See* ECF No. 62 at 30; *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369 (E.D.N.Y. 2023). Even if true, Plaintiffs have not provided sufficient information to establish standing to assert the interests of the Rare Breed Parties in manufacturing. While Plaintiffs provided a declaration in connection with their summary judgment motion stating that "Mr. Lawrence DeMonico, Mr. Kevin Maxwell, Rare Breed Triggers, LLC, and Rare Breed Firearms, LLC" are all members of NAGR, ECF No. 62-1 at 541 ¶ 3, they have never asserted that the Rare Breed Parties were members of NAGR *at the time the suit was filed* as required for standing, *Energy Mgmt. Corp.*, 397 F.3d at 301 n.3. Indeed, Associational Plaintiffs themselves described the purpose of their suit at the time of filing as vindicating the alleged rights of those "who own FRTs or who wish to acquire them," Compl. ¶ 5; *see id.* ¶ 4, *not* of those who wish to manufacture them. There is thus no jurisdiction to consider—let alone extend any relief based on—the classification decision's applicability to the manufacturing of FRTs.

Plaintiffs' claim to represent the interests of sellers fares little better. They identify a single individual—Plaintiff Wheeler—who they suggest is a seller of FRTs. But as Defendants have repeatedly noted, Mr. Wheeler claims only to own a partial interest in a business that owns FRTs, *id.* ¶¶ 14–15. That business is not a party to this case, nor has any Associational Plaintiff purported to be representing its interests as a member. Despite ample opportunities, Plaintiffs have not proffered any

---

[3] Contrary to their suggestion, *see* ECF No. 84 at 30, Plaintiffs did not make this assertion in their preliminary injunction briefing, nor at the preliminary injunction hearing. While they accuse Defendants of being "deeply misleading" in suggesting that Plaintiffs first raised the membership status of the Rare Breed Parties in their motion for summary judgment, *id.*, it is Plaintiffs who have been misleading in citing a number of excerpts from the preliminary injunction transcripts discussing Rare Breed Triggers swhere, nowhere in that transcript, did they claim that the Rare Breed Parties were members of NAGR.

information about the business' identity, corporate form, or ownership structure to establish that Mr. Wheeler or an Associational Plaintiff has standing to assert any injury on the business's behalf.

Moreover, even if Plaintiffs could vindicate the interests of Mr. Wheeler's business, they have not established that there is a credible threat of enforcement against it. *See Zimmerman*, 881 F.3d at 391. Plaintiffs state that Defendants represented that their "'enforcement priorities' are 'focused on . . . sellers of FRTS.'" ECF No. 84 at 13 (alteration by Plaintiffs) (quoting ECF No. 81 at 9). Not so. In fact, Defendants represented that "enforcement priorities have been focused on *large-scale manufacturers and sellers* of FRTs and those with criminal histories." ECF No. 81 at 9 (emphasis added). This is supported by the sole enforcement action Plaintiffs identify as demonstrating that "Defendants have pursued legal actions against companies involved in the sale of FRTs"—the E.D.N.Y. civil fraud case against major-manufacturer Rare Breed Triggers, ECF No. 84 at 13. By contrast, the Complaint and Mr. Wheeler both describe the business as "a small business," Compl. ¶ 14; Decl. of Mr. James Joseph Ross Wheeler ¶ 3, Compl. Ex. B, ECF No. 13-2, which owns only two FRTs, Compl. ¶ 15. Nor does Mr. Wheeler or the business claim to have ever been contacted by law enforcement regarding FRT sales. There is thus no basis to believe that "there exists a credible threat of" enforcement, *Babbitt*, 442 U.S. at 298; *accord Zimmerman*, 881 F.3d at 391, against the small business, and plainly not one that is "certainly impending," *Clapper*, 568 U.S. at 401.

Plaintiffs' attenuated theory of standing as to the manufacturing and sale of FRTs based on harms to their and their members' *ownership* interests is also unavailing. While they suggest that absent broad relief as to sellers and manufacturers they will be unable to themselves acquire FRTs, Plaintiffs have proffered no evidence to demonstrate that assertion is anything more than "pure speculation," *Lujan*, 504 U.S. at 567. In fact, all evidence points to the opposite. The classification decision was in effect for over two years before filing suit, yet Plaintiffs and their members apparently acquired dozens of FRTs and do not claim that they faced any difficulties in doing so. *See, e.g.*, Decl. of Mr. Travis Speegle ¶ 4, Compl. Ex. C, ECF No. 13-3 (Individual Plaintiff Speegle owns ten FRTs); ECF No. 84 at 9 (stating that NAGR "conducted a poll of a subset of its members on July 26, 2023" wherein "55

[NAGR] Members self-reported that they own FRTs"⁴). Nor do they claim to have faced such difficulties in the wake of the E.D.N.Y. court's temporary restraining order and preliminary injunction, which have enjoined Rare Breed Triggers from selling FRTs for nearly a year now. *See United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369, 2023 WL 504992, at *3 (E.D.N.Y. Jan. 25, 2023); *United States v. Rare Breed Triggers, LLC*, ---F. Supp. 3d---, 2023 WL 5689770, at *50 (E.D.N.Y. Sept. 5, 2023), *appeal filed*, No. 23-7276 (2d Cir. Oct. 5, 2023). The Court should thus find that Plaintiffs lack standing to challenge the classification decision's application to manufacturing and sales.

### III.    FRTs Are Machineguns.

#### A.  The Statutory Definition Unambiguously Encompasses FRTs.

FRTs meet the statutory definition of a machinegun because the shooter of an FRT-equipped weapon need only initiate the firing sequence once through a single continuous pull of the trigger for the weapon to maintain continuous and automatic fire. *See* ECF No. 81 at 14. Plaintiffs' opposition rests on the fact that the trigger shoe on an FRT-equipped firearm automatically moves back and forth (i.e., resets) against that single continuous pull for each round that an FRT-equipped weapon fires. *See* ECF No. 84 at 13-14. But movement does not equate to function. The Fifth Circuit and other courts have repeatedly explained that the relevant function of a trigger is to initiate the firing sequence. *See, e.g., United States v. Jokel*, 969 F.2d 132, 135 (5th Cir. 1992) (per curiam) ("The ordinary meaning is that a trigger is a mechanism that is used to initiate the firing sequence."); *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003) (explaining that *Jokel*, 969 F.2d at 135, "defined a trigger . . . as any 'mechanism . . . used to initiate the firing sequence'"); *United States v. Fleischli*, 305 F.3d 643, 655 (7th Cir. 2002) ("We join our sister circuits in holding that a trigger is a mechanism used to initiate a firing sequence.").

Plaintiffs claim to dispute the fact that the weapon will fire repeatedly and automatically from a single continuous pull of the trigger. ECF No. 84 at 14. But Plaintiffs offer *no* evidence to rebut ATF's classification analyses, every one of which found that the FRT fired all available rounds when

---

⁴ In fact, the declaration underlying this assertion by Plaintiffs states that of the subset of polled members, "55 NAGR members self-reported that they currently own or wish to own a forced reset trigger." ECF No. 85 at 7 ¶ 5.

the trigger was subject to a continuous rearward pull. *See* ECF No. 81 at 15-16; AR246; AR111; AR195; AR157. These classification analyses were conducted by multiple ATF officers and assessed multiple different FRTs. Plaintiffs' "conclusory assertions" to the contrary cannot create "a genuine dispute" of fact. *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012); *see also Zebrowski v. U.S. Bureau of Prisons*, No. 5:11-cv-164-DPJ-FKB, 2013 WL 838009, at *4 (S.D. Miss. Mar. 6, 2013) ("Aside from his own conclusory assertions, [Plaintiff] has not created a material dispute of fact."), *aff'd*, 558 F. App'x 355 (5th Cir. 2014).

Nor does the fact that the trigger forcibly resets and thus moves back and forth when subject to a single continuous pull of the trigger disprove ATFs' findings. Whether the trigger shoe moves against the shooter's finger has no bearing on whether the weapon fires automatically from a single continuous pull of the trigger because both statements can be (and, in fact, are) true of FRTs. As ATF explained when conducting its initial classification analyses on an FRT-15,

> [an FRT-15 differs] from a cycle of o[p]erations in a typical AR-type semiautomatic firearm in which a shooter must release and pull the trigger to fire a second projec[t]ile. As stated, a firearm assembled with the FRT-15 requires no such release and subsequent pull . . . . Instead, the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation.

ATF FRT-15 Classification Report, July 15, 2021 (AR110). Accordingly, another ATF agent conducting another classification analyses on the FRT-15 found that:

> From the moment the trigger is pulled, and as long as rearward pressure is applied to the trigger through a single constant pull, a firearm with an FRT-15 continues to fire until the finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted. The described firing cycle takes place regardless of the purported 'forced reset' pushing the trigger forward.

ATF FRT-15 Classification Report, Apr. 27, 2023 (AR246).

In this way, FRTs are analogous to the Akins Accelerator, which a plurality of the Fifth Circuit excluded from the scope of its holding in *Cargill*, 57 F.4th at 462 n.8. *See also* ECF No. 81 at 17-18. The *Cargill* plurality stated that "[w]ith a [non-mechanical] bump stock, the shooter need not pull and release his trigger finger. But the shooter must still apply forward pressure to the weapon's forebody

in order to maintain the shooting mechanism." 57 F.4th at 454. The plurality then noted "one important distinction" between the bump stocks at issue and other bump stocks "called mechanical bump stocks," such as the Akins Accelerator. *Id.* These mechanical bump stocks "are equipped with springs or other internal mechanical devices that automatically assist the shooter to engage in bump firing. For such a bump stock, the shooter does not have to maintain pressure on the barrel or trigger ledge in order to maintain this firing sequence." *Id.* Based on that reasoning, the plurality concluded that the government was mistaken in attempting to draw support from the Eleventh Circuit's decision in *Akins v. United States*, 312 F. App'x 197 (11th Cir. 2009) (per curiam), which upheld ATF's classification of the Akins Accelerator as a machinegun. The plurality stated: "Unlike non-mechanical bump stocks, a shooter using an Akins Accelerator need only pull the trigger once to activate the firing sequence. The mechanical bump stock then maintained the bump fire of its own accord. . . . Precisely for that reason, our decision today would not apply to an Akins Accelerator." *Cargill*, 57 F.4th at 462 n.8 (internal citation omitted). Plaintiffs offer two responses, neither of which is availing.

First, Plaintiffs claim that the *Cargill* plurality offered only a "conditional statement" that mechanical bump stocks might be machineguns, purporting to leave open the possibility that the *Cargill* plurality's reasoning would also render such devices legal. *See* ECF No. 84 at 16. Not so. The plurality expressly carved out mechanical bump stocks such as the Akins Accelerator from the scope of its ruling. There is nothing ambiguous about this phrasing: "[O]ur decision today would not apply to an Akins Accelerator." *Cargill*, 57 F.4th at 462 n.8 (internal citation omitted). The *Cargill* plurality's reasoning does not apply to mechanical bump stocks, and FRTs function in similar manner. [5]

Second, Plaintiffs insist that the *Cargill* plurality distinguished the Akins Accelerator and mechanical bump stocks from non-mechanical bump stocks on an unrelated basis. Specifically, they claim that "[t]he reason that the classification of mechanical bump stocks may differ from the classification of non-mechanical bump stocks is because the *legal trigger* may be different." ECF No. 84 at 16. That is mistaken and unsupported by the plurality's opinion. Some devices, when attached

---

[5] While functioning in a similar manner, an FRT is not a bump stock and has not been classified as such by ATF.

to an otherwise semiautomatic rifle, have a switch or other mechanism that initiates the firing sequence and thus becomes the "trigger" for statutory purposes. *See, e.g.*, *Camp*, 343 F.3d at 744 (addressing device that used a switch to activate a motorized fishing reel placed within the trigger guard that then repeatedly pulled and released the weapon's original trigger); *Cargill*, 57 F.4th at 462 (stating that the switch became the "legally relevant trigger"). The *Cargill* plurality observed that such reasoning could apply to an Akins Accelerator or other mechanical bump stock if there were a "switch activating" mechanism, because the switch might become "the legal trigger." *Id.* The plurality was aware, however, that the Akins Accelerator did not have such a mechanism. Neither ATF, the *Cargill* plurality, nor the Eleventh Circuit in *Akins* ever suggested that the Akins Accelerator had any trigger other than the rifle trigger pulled by the shooter. *See id.* at 454 (explaining how mechanical bump stocks operate with no reference to an alternative trigger); *Akins*, 312 F. App'x at 198; Bump-Stock-Type Devices, 83 Fed. Reg. 66,514, 66,517 (Dec. 26, 2018).

Plaintiffs also claim that FRTs are different from mechanical bump stocks because "[a]n external force supplied by the user is required to cause actuation of the trigger" in an FRT. ECF No. 84 at 17. But this is true of both FRTs and mechanical bump stocks. In using an FRT-15 or WOT, a shooter pulls the trigger and maintains pressure on the trigger to automatically fire repeatedly, even though the trigger moves to release the hammer for each shot fired. *See* AR110 (explaining that, in an FRT-15 equipped firearm, "the shooter may fire a second projectile merely by maintaining the initial trigger pull and allowing the self-acting internal mechanism to complete its automatic cycle of operation."). That was likewise true of the Akins Accelerator, which used "tension supplied by [a] spring" to repeatedly "push[] 'the trigger . . . into the [shooter's] finger[]" after the shooter pulled the trigger the first time. *Akins*, 312 F. App'x at 198; *see also* 83 Fed. Reg. at 66,517 (describing operation of Akins Accelerator); *Rare Breed Triggers, LLC*, 2023 WL 5689770 at *23 (noting that the plurality's "analysis of the distinctions between various firearm-modification devices in fact provides further grounds to find that the [forced-reset trigger] is a machinegun."). For both FRTs and mechanical bump stocks such as the Akins Accelerator, a single continuous pull of the trigger is the sole external

13

force necessary for the firearm to fire automatically and repeatedly. Both devices are therefore machineguns.

### B.  The Rule of Lenity Does Not Apply.

Plaintiffs for the first time before this Court suggest that the rule of lenity compels the conclusion that these devices are not machineguns under *Cargill*. ECF No. 84 at 18-20. But the majority in *Cargill* invoked the rule of lenity based on two separate perceived ambiguities in the statute as applied to non-mechanical bump stocks—whether those devices operated by "a single function of the trigger" and whether they operated "automatically." *Cargill*, 57 F.4th at 470. No such combination of ambiguities applies here, as there can be no dispute of fact that an FRT-equipped firearm functions automatically. Indeed, it is in its very name: *forced* reset trigger. Regardless, the *Cargill* plurality makes clear that its view does not apply to devices such as the Akins Accelerator, as explained *supra* at 11-12.

Indeed, the Eastern District of New York concluded for these reasons that Section 5845(b) "is simply not ambiguous when applied to the FRT-15" in light of the fact that courts have consistently held "that if a shooter can maintain pressure on a weapon's trigger and the weapon fires multiple shots, then that weapon is a machinegun." *Rare Breed Triggers,* 2023 WL 5689770, at *25 n.30. Accordingly, "[a] word in a statute does not become ambiguous for purposes of lenity simply because [a party] proposed a different possible meaning to the Court." *Id.* (citing *Lockhart v. United States*, 577 U.S. 347, 361 (2016), for the proposition that that "the rule of lenity does not apply simply because the court may be able to select more than one interpretation from 'multiple, divergent principles of statutory construction'").

Plaintiffs nonetheless argue that the ambiguity "is highlighted by the constantly shifting definitions employed by Defendants," ECF No. 84 at 19-20, but then quote five substantively synonymous characterizations of the way in which a shooter interacts with the trigger to cause the trigger to function and thus initiate the firing sequence. *See id.* at 19-20 (citing the following as examples of "different definitions": "constant rearward pressure"; "constant rearward pull"; "single pull of the trigger"; "continuous pull"; "[a] single pull of the trigger and analogous motions"). Beyond stating in

14

conclusory fashion that the definitions are inconsistent, Plaintiffs offer no explanation how these characterizations diverge or describe different actions. Nor could they, as all five phrases describe the same thing: there can be no dispute that the trigger shoe in an FRT-equipped firearm moves rearward to initiate the firing sequence, and "pull" and "pressure" describe the same exertion of force that the shooter exerts to cause the trigger shoe to move rearward. *Compare Pull*, MERRIAM-WEBSTER DICTIONARY (2024) ("to exert force upon so as to cause or tend to cause motion toward the force") *with Pressure*, MERRIAM-WEBSTER DICTIONARY (2024) ("the application of force to something by something else in direct contact with it").

Plaintiffs have therefore failed to show the ambiguity necessary for the rule of lenity to apply. *Maracich v. Spears*, 570 U.S. 48, 76 (2013) ("[T]he rule of lenity only applies, if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the [c]ourt must simply guess as to what Congress intended." (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010))).[6]

## CONCLUSION

For the reasons stated above, the Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.


DATED: January 12, 2024                                  Respectfully submitted,

---

[6] As explained in Defendants' opening brief, injunctive relief is not warranted. *See* ECF No. 81 at 19-23. If the Court is inclined to grant injunctive relief, Defendants respectfully request that such relief be limited as previously described. *See id.* at 23-30; *supra* § II.C.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEX HAAS
Branch Director

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ Laura B. Bakst
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone:   (202) 514-3183
E-mail:   laura.b.bakst@usdoj.gov

*Counsel for Defendants*

**Certificate of Service**

On January 12, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Laura B. Bakst*