**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>               Plaintiffs,<br><br>     v.<br><br>MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>               Defendants. | Case No. 4:23-cv-00830-O |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY
<u>JUDGMENT PENDING APPEAL</u>**

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    1.    ATF Cannot Feasibly Comply with the Order to Return Devices to the Parties Within 30 Days ........................................................................................................ 2

    2.    Other Aspects of the Order Should be Stayed as Unworkable .............................. 4

        a.    The Order Should be Stayed Insofar as ATF Cannot Feasibly Comply with the Prospective Injunctive Relief .................................................................. 4

        b.    The Court's Order, if Not Stayed, Will Create Substantial Confusion and Risks for Plaintiffs ........................................................................................ 5

    3.    Defendants Are Likely to Succeed on the Merits of their Appeal ......................... 6

        a.    These Devices Are Machineguns under the Supreme Court's Decision in *Cargill* ............................................................................................................ 6

        b.    The Relief that this Court Awarded Is Overbroad ..................................... 9

    4.    The Irreparable Harm to the Government and the Public Interest Strongly Favors a Stay ..................................................................................................... 11

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974).................................................................................... 3

*Califano v. Yamasaki*,
  442 U.S. 682 (1979).................................................................................... 9

*District of Columbia v. Heller*,
  554 U.S. 570 (2008).................................................................................. 10

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975).................................................................................... 9

*Douglas v. City of Jeannette (Pennsylvania)*,
  319 U.S. 157 (1943).................................................................................. 11

*Garland v. Cargill*,
  602 U.S. 406 (2024).......................................................................... 6, 7, 8, 9

*Gill v. Whitford*,
  585 U.S. 48 (2018)...................................................................................... 9

*Labrador v. Poe*,
  144 S. Ct. 921 (2024)................................................................................ 10

*Lewis v. Casey*,
  518 U.S. 343 (1996).................................................................................... 9

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................... 3

*Nken v. Holder*,
  556 U.S. 418 (2009).............................................................................. 2, 11

*Stolt-Nielsen, S.A. v. United States*,
  442 F.3d 177 (3d Cir. 2006)...................................................................... 10

*Trump v. Hawaii*,
  585 U.S. 667 (2018).................................................................................... 9

*United States v. Cox*,
  342 F.2d 167 (5th Cir. 1965) ..................................................................... 10

*United States v. Rare Breed Triggers*,
  690 F. Supp. 3d 51 (E.D.N.Y. 2023) ........................................................................ 5, 6, 12, 13

*Valley Forge Christian Coll. v. Am. United for Sep. of Church & St., Inc.*,
  454 U.S. 464 (1982) ........................................................................................................... 3

**Statutes**

5 U.S.C. § 702 ........................................................................................................................ 10

5 U.S.C. § 703 ........................................................................................................................ 11

18 U.S.C. § 922 ............................................................................................................... 3, 5, 11

18 U.S.C. § 924 ........................................................................................................................ 5

Defendants respectfully request that this Court enter a stay pending Defendants' appeal of the July 23, 2024 Memorandum Opinion & Order ("Order"), ECF No. 100, and Final Judgment, ECF No. 101, or at a minimum stay those aspects of the final judgment that impose affirmative obligations on ATF to return certain FRT devices and issue remedial notices and extend injunctive relief to unidentified individuals and entities. If the Court is not inclined to grant a stay pending appeal, Defendants respectfully request that the Court stay its Order to permit Defendants to seek a stay from the Fifth Circuit and for the duration of the Fifth Circuit's consideration of that motion.

At a minimum, the Court should stay its Order requiring return of devices in Defendants' possession, except insofar as it requires Defendants to return devices to members of the Plaintiff organizations who request their devices and provide sufficient documentation to demonstrate their membership and coverage by the Court's Order. As explained below, compliance with the Order's current requirement that Defendants return devices is not feasible on the 30-day timeframe imposed by the Court, and we address that point first.

## BACKGROUND

On July 23, 2024, this Court issued the Order granting Plaintiffs' motion for summary judgment and denying Defendants' cross-motion for summary judgment. Order at 1-2. The following day, it issued Final Judgment in this case. ECF No. 101. In doing so, the Court vacated the "classification of FRTs as 'machineguns'"; enjoined Defendants from "implementing or enforcing" the classification against "Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff"; ordered return to all parties of "all FRTs and FRT components confiscated or seized pursuant to" the "classification within thirty (30) days"; and directed "Defendants to mail remedial notices" to those who previously received mailings warning "that

possession of FRTs and FRT components was purportedly illegal." Order at 62-63 (emphasis omitted); *see also* ECF No. 101. Defendants now seek a stay of that decision pending appeal.

## ARGUMENT

In determining whether to grant a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). Here, each of the relevant factors weighs heavily in favor of a stay of the Order pending appellate review.

Although, as discussed below, the Order should be stayed in its entirety, we first discuss aspects of the Order that would create unique difficulties.

### 1. ATF Cannot Feasibly Comply with the Order to Return Devices to the Parties Within 30 Days

The Order to "return to all parties . . . all FRTs and FRT components confiscated or seized . . . within thirty (30) days," Order at 63 (emphasis omitted), presents multiple compliance problems. As the Court is aware, ATF does not know the identities of the Organizational Plaintiffs' claimed members, *see* ECF No. 57 at ¶ 4 (Notice of Compliance), let alone which of those members is entitled to return of their FRT devices. Declaration of Matthew P. Varisco ("Varisco Decl.") ¶ 5. Plaintiffs' counsel has advised that they too do not know which of Organizational Plaintiffs' members are eligible for return of FRTs. *See id.* ¶ 4. Thus, ATF has no ability to determine who must be returned devices under the Order. And even if an individual approaches ATF and self-identifies as an Organizational-Plaintiff member, ATF does not have the means to verify the accuracy of that representation, or whether they were, in fact, a member at the time the complaint

was filed, as is necessary to receive relief.[1] *Id*. ¶ 5. ATF cannot comply with the Order where it does not know to whom the Order applies and Plaintiffs will not say.

Moreover, even if ATF did know the identities of Plaintiffs' members, returning all FRTs covered by the Order within 30 days would still not be feasible. ATF would have to locate the devices among the approximately 11,884 FRT-15s and WOTs in its possession, which may be held at different points around the country; would have to determine whether the owners are otherwise prohibited persons who cannot legally own a firearm[2]; contact the owners; and arrange for the return. *Id*. ¶¶ 6, 9-15. ATF is not able to do that within 30 days—in other words, by August 22. *Id*. ¶ 15. And, further complicating matters, it is inevitable that some portion of Plaintiffs' members will not be able to be located (*e.g.* because they have moved without forwarding information or their mail is returned as undeliverable); will not respond to ATF's outreach; will decline to accept the return of their device(s), either because they do not want them or because they would prefer to wait to see if this Court's judgment is ultimately affirmed; or will be located in states where possession or sale of the devices are illegal under state law. *Id*. It is not clear what ATF is to do in such circumstances to avoid non-compliance.

---

[1] Principles of both Article III and equity require that individuals be members at the time the complaint was filed to receive the benefit of the Court's Order. That is because "standing is to be determined as of the commencement of suit," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.5 (1992), and a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *Valley Forge Christian Coll. v. Am. United for Sep. of Church & St., Inc*., 454 U.S. 464, 474 (1982) (citation omitted). Likewise, equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests," *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974).

[2] The Court's summary judgment order makes clear that such persons are excluded from the scope of the injunction. Order at 60. Thus, Defendants understand the injunction and return requirement to exclude individuals who are prohibited from possessing firearms under 18 U.S.C. § 922(g).

These issues, in conjunction with the potential for confusion outlined below, *see infra* § 2.b.*, would be a basis to stay this aspect of the Order in full pending appeal. But at an absolute minimum, this Court should (1) stay the 30-day requirement and (2) further stay this portion of its Order except as it applies to members of an Organizational Plaintiff who request return of their devices and provide ATF sufficient documentation to demonstrate that they were members at the time of filing, that they are not otherwise prohibited from possessing firearms, and that return would not place the individual in violation of state law.

### 2.  Other Aspects of the Order Should be Stayed as Unworkable

#### a.  The Order Should be Stayed Insofar as ATF Cannot Feasibly Comply with the Prospective Injunctive Relief

Even apart from the requirement that ATF return devices, ATF is not able to ensure compliance with the Court's prospective injunctive relief. Beyond not knowing who Organizational Plaintiffs' members are, ATF has no means of identifying the "families" of the Individual Plaintiffs, the "commercial member[s] of an Organizational Plaintiff," or "the downstream customers of any commercial member," all of whom are covered by the Court's injunction. *See* ECF No. 101 at 2; Varisco Decl. ¶¶ 17-19. Nor does ATF have any means to verify whether someone is accurately claiming to fall within those categories. *Id.*

The Court suggested that these compliance issues might be resolved by its vacatur of "Defendants' unlawful classification of FRTs as 'machineguns.'" Doc. 101 at 1; *see* Order at 58. That is mistaken.[3] As the Court elsewhere acknowledged, vacatur—even if an authorized remedy

---

[3] It is not clear what agency action(s) the Court is referring to in vacating ATF's "classification." There is no single "classification" at issue. The record here contains 7 separate ATF investigation reports or other documents concluding that the FRT-15 or WOT—the two devices Plaintiffs have specifically placed at issue—are machineguns. *See* AR107, AR173, AR188, AR232, AR832, AR1053, AR1076. Those examination reports are not themselves agency "rules." *See* Order at 49-53. Moreover, in recent years, ATF has created similar documents addressing other similar devices

4

under the APA—is not forward-looking; that is why the Court separately entered declaratory and injunctive relief in Plaintiffs' favor. Order at 54, 56. In addition, to the extent the Court believed that prosecutions or other enforcement actions are undertaken on the basis of the classification—in other words, that the classification carries some binding legal effect apart from the statute, *cf.* Order at 49-53 (discussing vacatur of "rules")—that is incorrect. Any prosecution or other enforcement action is based on the statute. *See, e.g.*, *United States v. Rare Breed Triggers*, 690 F. Supp. 3d 51, 75 (E.D.N.Y. 2023) (holding that "the Government has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the *statutory definition* of a machinegun" (emphasis added)), *appeal filed*, No. 23-7276 (2d Cir. Oct. 05, 2023); Superseding Indictment, *United States v. Berrios-Aquino*, No. 22-cr-00473 (D.P.R. Apr. 20, 2023) (charging defendant with violation of 18 U.S.C. §§ 922(o) and 924(a)(2)). While the Court's declaratory and injunctive relief govern future relations between the government and the parties (if not stayed or reversed), a vacatur cannot preclude future application of the statute itself to non-parties and does not make an injunction applicable to unknown individuals workable.

### b. The Court's Order, if Not Stayed, Will Create Substantial Confusion and Risks for Plaintiffs

The Order's directions to return confiscated FRTs and "mail remedial notices" should also be stayed because they threaten to create confusion and place owners in legal jeopardy. Order at 63. As to the return of devices, multiple states prohibit under state law conversion devices and/or rapid-fire modification devices, which may independently apply to these FRT devices. *See* Varisco Decl. ¶¶ 11, 15. Moreover, if Defendants are ultimately successful on appeal, persons and entities

---

that have not been challenged in this suit and thus are not part of the record here. In addition, as explained *infra* n.4, ATF has reached similar conclusions with respect to other devices that operate on similar mechanical principles in the decades before this suit, and that is the relevant "status quo" preceding 2018, *see* Order at 50-51.

that have received returned devices will be in possession of machineguns in violation of Federal law. ATF would also then need to reach out to these individuals and entities a third time to notify them that their FRTs are, in fact, unlawful, and seek to repossess such devices.

Similarly, the mailing of remedial notices to non-parties threatens to create significant confusion. Such devices are, according to another federal court, likely machineguns. *See Rare Breed Triggers*, 690 F. Supp. 3d at 75. Sending a remedial notice to individuals not protected by the Court's injunction or declaratory judgment, and who may reside in jurisdictions that will ultimately disagree with this Court's determination, could leave them with the misimpression that possessing, selling, or manufacturing FRT-15s and WOTs is without legal risk. That could also require follow-up communications if, for example, this Circuit or another Circuit holds that FRT-15s and WOTs are machineguns. This confusing back-and-forth regarding the legal status of FRT-15s and WOTs can be wholly avoided by staying the Court's Order for the duration of an appeal.

### 3. Defendants Are Likely to Succeed on the Merits of their Appeal

Even apart from the issues identified above, a stay of the Order pending appeal is warranted because Defendants are likely to succeed on the merits.

#### a. These Devices Are Machineguns under the Supreme Court's Decision in *Cargill*

Defendants are likely to succeed on the merits because the Supreme Court's ruling in *Garland v. Cargill*, 602 U.S. 406 (2024), confirms the correctness of ATF's longstanding treatment of devices like the ones at issue here as machineguns.[4]

---

[4] This Court suggested that its order "simply reinstates the longstanding status quo prior to 2018[.]" Order at 50-51. As explained in Defendants' cross-motion for summary judgment, ECF No. 81 at 3, ATF has consistently classified devices the operate on the same basic mechanical principles as machineguns, including in 1975 (AR498-502, AR506), 1994 (AR534), 2004 (AR552), 2005 (AR576), 2006 (AR610), and 2017 (AR677). Indeed, as Defendants' expert explained, ATF's classification analysis of the FRT-15 "does not" "rely on the regulation 27 C.F.R., Section 479.11,"

In *Cargill*, the Supreme Court explained that "a 'trigger' is an apparatus, such as a 'movable catch or lever,' that 'sets some force or mechanism in action,'" and that the term "function" means "the mode of action by which [an object] fulfils its purpose." 602 U.S. at 415-16 (citations omitted). Thus, "[t]he phrase 'function of the trigger' . . . refers to the mode of action by which the trigger activates the firing mechanism." *Id*. at 416.  This analysis examines the entire "trigger assembly" and its relationship to the "mechanics of the firing cycle[.]" *Id.*

The dispositive consideration is thus "how many shots discharge when the shooter engages the trigger." *Id*. at 422. "With a machinegun, a shooter can fire multiple times, or even continuously, by engaging the trigger only once. This capability distinguishes a machinegun from a semiautomatic firearm. With a semiautomatic firearm, the shooter can fire only one time by engaging the trigger. The shooter must release and reengage the trigger to fire another shot." *Id*. at 410-11. Applying that understanding to the non-mechanical bump stocks at issue in *Cargill*, the Supreme Court explained that such devices do not alter the ordinary firing sequence of a semiautomatic rifle with a standard trigger. Instead, "[w]ith or without a bump stock, a shooter must release and reset the trigger between every shot." *Id.* at 415; *accord id.* at 412 ("[T]he trigger still must be released and reengaged to fire each additional shot."); *id.* at 421 ("For each shot, the shooter must engage the trigger and then release the trigger to allow it to reset."); *id.* ("Between every shot, the shooter must release pressure from the trigger and allow it to reset before reengaging the trigger for another shot."). Those devices only "accelerate the rate of fire by causing these distinct 'function[s]' of the trigger to occur in rapid succession." *Id.* at 415.

---

which was promulgated in 2018. Transcript of Evidentiary Hearing, ("Hr'g. Tr.") 93:20-22 (Oct. 2, 2023).

With a firearm equipped with an FRT-15 or WOT, by contrast, the trigger need only activate the firing mechanism one time to initiate a firing cycle in which the weapon will continue to fire automatically until the trigger is disengaged, Hr'g. Tr. 42:20-43:6, with no need to "release and reengage," *Cargill*, 602 U.S. at 411. There is no dispute of fact that an FRT-15-equipped firearm will continue to fire "even if the shooter does not lessen his rearward pressure on the trigger." Hr'g. Tr. 42:20-43:6. Moreover, as the Supreme Court emphasized, additional manual input was required to maintain fire from a weapon equipped with a bump stock. *Cargill*, 602 U.S. at 424, 426-27. Again, there is no dispute of fact that this is not true here, as weapons equipped with these devices will continue to fire so long as an appropriate level of force is maintained on the trigger without any additional input. Hr'g. Tr. 42:20-43:6.

This Court held that, because "[t]he basic function of any trigger is to release the hammer," Order at 2, and an FRT-15 or WOT must "release the hammer from [the trigger's] sear surface for every round fired," *id*. at 36, the trigger in a firearm equipped with an FRT-15 or WOT must function for every round fired. This conclusion rests on a definition of "function of the trigger" that is narrower than the definition adopted by the Supreme Court. *Cargill* held that "[t]he phrase 'function of the trigger' thus refers to the mode of action by which the trigger activates the firing mechanism." 602 U.S. at 416. The distinction between the two definitions is that, while this Court defined function of the trigger as only the first step in the firing cycle (*i.e.*, "[w]hen the shooter engages the trigger . . . the square point of the trigger pivots downward and out of the notch securing the hammer," and "releases the spring-loaded hammer, allowing it to swing forward," *id.* at 418), the Supreme Court instead considered the initiation of the entire firing cycle as the

"function of the trigger," *see id.* at 421 ("[T]his complete [firing cycle] process is what constitutes a 'single function of the trigger.'").[5]

### b.  The Relief that this Court Awarded Is Overbroad

Defendants are also likely to succeed on appeal because the relief this Court ordered is overbroad in two fundamental ways: it extends to non-parties and impermissibly interferes with prospective criminal proceedings.

*First*, the Court ordered "Defendants to mail remedial notices correcting their prior mailing campaign that 'warned' suspected FRT owners that possession of FRTs and FRT components was purportedly illegal." Order at 63. But Plaintiffs have adduced no evidence establishing—and this Court does not cite any basis to believe—that all recipients of the prior mailing campaign are party to this action. Accordingly, this part of the Court's order seeks to protect non-parties in violation of Article III. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018) ("[A] plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury in fact.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996))). Similarly, principles of equity require that relief "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). For this reason, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs" that brought the action. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *see also Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring) (explaining that English and early American "courts of equity" typically "did not provide relief beyond the parties to the

---

[5] Moreover, the Supreme Court's definition, unlike this Court's, applies to all types of firearms. *See* Hr'g. Tr. 97:24-98:11 (explaining that defining "function of the trigger" to mean "release the hammer" would omit "different operating systems, such as striker fires, or open bolts," whereas "saying that the function of the trigger is to initiate the firing sequence is applicable to all firearms universally").

case"). And the Supreme Court recently underscored that "foundational rule" by staying a district court's injunction to the extent it applied to nonparties. *Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Mem.) (Gorsuch, J., concurring in the grant of stay); *see id.* at 931, 933 n.4 (Kavanaugh, J., concurring in the grant of stay).

*Second*, this Court's Order is overbroad insofar as it enjoins prospective criminal prosecutions. "[A]s an incident of the constitutional separation of powers, . . . courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). The narrow exception to this general rule exists only where injunctive relief is necessary "in order to avoid a chilling effect on constitutional rights." *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006), *as amended* (May 16, 2006). This Court concluded that this case falls within the exception because "[t]he stakes . . . are of a comparable gravity to situations in which constitutional rights are violated" given the "deprivation of a liberty interest" involved. Order at 24-25. Plaintiffs have never asserted—and could not assert—a constitutional right to possess these devices. *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) (acknowledging that "weapons that are most useful in military service—M–16 rifles and the like—may be banned"). Nor did the Court explain how the "liberty interest" at issue is any different from that at play any time a criminal prosecution is threatened based on a purportedly erroneous interpretation of a statute.

This Court was also incorrect in holding that the APA authorizes a district court to enjoin criminal prosecutions. Order at 25-26. The APA by its express terms does not "affect[] other limitations on . . . the power or duty of the court to . . . deny relief on any other appropriate legal or equitable ground[.]" 5 U.S.C. § 702. Accordingly, even when adjudicating an APA claim, courts

10

are bound by the limitation that "courts of equity do not ordinarily restrain criminal prosecutions." *Douglas v. City of Jeannette (Pennsylvania)*, 319 U.S. 157, 163 (1943). And Section 703 of the APA does not authorize judicial review of prospective criminal proceedings, instead authorizing review of agency action "in . . . criminal proceedings." 5 U.S.C. § 703.

### 4. The Irreparable Harm to the Government and the Public Interest Strongly Favors a Stay

Defendants will suffer irreparable harm absent a stay of the preliminary injunction. For the same reason, a stay is in the public interest. *See Nken*, 556 U.S. at 435 (when the Government is a party, its interests and the public interest "merge").

As previously explained, the Court's Order upends a decades-old understanding of the application of the statutory definition to devices like the ones at issue here. The Order should be stayed pending appeal so that appellate courts can finally resolve that question before the unfettered transfer of these devices makes them widespread and difficult, or even impossible, to recover if Defendants ultimately prevail.

It cannot be disputed that firearms equipped with devices like the FRT-15 and WOT are extremely dangerous. An AR-type firearm equipped with an FRT-15 can fire at a rate comparable to an M16 machinegun—roughly 800 to 900 rounds per minute, irrespective of the shooter's skill—and often in an indiscriminate and uncontrolled fashion. Varisco Decl. ¶ 20; Declaration of Craig Saier ("Saier Decl."), ECF No. 64-1 at ¶¶ 11, 31, 38. While crimes involving these types of FRTs are likely underreported, ATF has encountered these devices in numerous criminal settings. Varisco Decl. ¶ 22; Sair Decl. ¶¶ 32-33. There is further evidence that FRT-15s are being distributed by manufacturers and third-party sellers to individuals prohibited from receiving or possessing firearms under 18 U.S.C. § 922(g). Varisco Decl. ¶ 22; Saier Decl. ¶¶ 35, 37. Even absent malintent, these devices present a unique risk of injury. Because they look like normal

triggers, individuals and law enforcement may unknowingly acquire or recover a firearm that has an FRT-15 or WOT type device installed, presenting safety concerns to users who may not expect or be able to handle a weapon with a rapid rate of automatic fire. Saier Decl. ¶¶ 38-40.

The unlawful manufacture, importation, and distribution of FRT-15 and WOT devices has been substantial. While ATF is unable to identify precise figures due to the illicit nature of the market, from 2020 through 2023, the number of unlawfully manufactured, imported, and distributed FRT machineguns likely exceeded the number of lawfully manufactured and imported machineguns. *Id.* ¶ 20. Critically, ATF has no effective means of tracking the manufacture, transfer, and possession of these types of devices. FRT-15s, and similar devices, are being unlawfully sold, including online, without any of the background checks, identity verification, registration, or recordkeeping required for sales of firearms. *Id.* ¶¶ 20-21; Varisco Decl. ¶ 20. Subsequent transfers on the secondary market make it more difficult, if not infeasible, for ATF agents to ascertain the ultimate recipient of such devices. Saier Decl. ¶¶ 19, 25. As a result, effectuating a single retrieval is massively resource intensive. Even for those devices that remain with the initial purchaser, retrieval is estimated to consume 16-to-24 ATF man-hours, *id.* ¶ 24, and presents real dangers to law enforcement officials who have faced threats in the course of retrieving these devices, *id.* ¶ 28.

The Court's Order will make it nearly impossible to recover FRT-15s and WOTs acquired while the Order is in effect if ATF prevails in this litigation. As the Eastern District of New York court recognized in finding the Government would face significant hardships absent an injunction against Rare Breed Triggers, "thousands of illegal machineguns could be added to the current stockpile of FRT-15s scattered throughout the country." *Rare Breed Triggers, LLC*, 690 F. Supp.

3d at 121.[6] Some of these acquirers will be prohibited persons or otherwise not covered by the Order's injunctive relief. But given the lack of recordkeeping, registration, or identity verification, ATF will have limited capability to interdict the acquisitions, Saier Decl. ¶ 35; Varisco Decl. ¶ 20, 22. And, if ATF is ultimately successful in this action, these additional transfers (and re-transfers) will, at best, make recovery even more challenging and resource intensive. *See Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 121-22. The Court's Order will increase the number of FRT-15s and WOTs in the public domain that ATF is unable to retrieve, and which may be used for unlawful ends with deadly consequences. *See* Varisco Decl. ¶¶ 20-23; Saier Decl. ¶ 27. The order for ATF to return FRT-15s and WOTs to Plaintiffs will similarly further the proliferation of these devices.

These harms outweigh any harm to Plaintiffs from a stay. Defendants have made clear that their enforcement of the statute with respect to these devices has not prioritized individual possessors, so many Plaintiffs and their members face no prospect of enforcement while the appeal proceeds. At a minimum this Court could ameliorate any harms to Plaintiffs by tailoring its stay to leave in place those aspects of the judgment that preclude enforcement actions based on the mere possession of these devices (as opposed to their unlicensed manufacture or transfer). And as to other aspects of the Order—such as the requirement of mailing notices to non-parties—Plaintiffs would suffer no discernable harm if those aspects were stayed.

## CONCLUSION

For all these reasons, a stay of the Order pending resolution of Defendants' appeal is warranted, or a stay of those aspects of the final judgment that impose affirmative obligations on

---

[6] While this Court excluded Rare Breed Triggers from the scope of its injunction (except as to criminal charges), third-party sellers continue to distribute the FRT-15 and WOT, and other companies have developed "copy-cat" devices that function akin to them. Saier Decl. ¶ 21.

ATF to return certain FRT devices and issue remedial notices and extend injunctive relief to unidentified individuals. If the Court is not inclined to grant a stay pending appeal, the Court should stay its order to permit Defendants to seek a stay from the Fifth Circuit and for the duration of the Fifth Circuit's consideration of that motion.

At a minimum, the Court should stay its Order requiring return of devices in Defendants' possession to Plaintiffs except insofar as it requires Defendants to return devices to members of the Plaintiff organizations who request their devices and provide sufficient documentation to demonstrate their membership and coverage by the Court's Order. As explained, compliance with the Order's current requirement that Defendants return devices is not feasible on the 30-day timeframe imposed by the Order.

DATED: August 1, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         ALEX HAAS
                                         Branch Director

                                         BRIGHAM J. BOWEN
                                         Assistant Branch Director

                                         /s/ *Laura B. Bakst*
                                         LAURA B. BAKST
                                         MICHAEL P. CLENDENEN
                                         ALEXANDER W. RESAR
                                         Trial Attorneys
                                         Civil Division, Federal Programs Branch
                                         U.S. Department of Justice
                                         1100 L Street, NW
                                         Washington, DC 20005
                                         Phone:   (202) 514-3183
                                         E-mail:  laura.b.bakst@usdoj.gov

                                         *Counsel for Defendants*

14

**<u>Certificate of Service</u>**

On August 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Laura B. Bakst*

15