IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00830-O |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT PENDING APPEAL**

The Court's July 23, 2024 Memorandum Opinion & Order ("Order"), ECF No. 100, and Final Judgment, ECF No. 101, should be stayed in full. At a minimum, the Court should stay those aspects of the final judgment that impose affirmative obligations on ATF. These obligations are logistically infeasible and risk causing significant public confusion given the conflict between this Court's conclusion and the Eastern District of New York's determination that the devices in question are likely machineguns. Nor would such a limited stay impose any significant harm on Plaintiffs. Indeed, the Court could avoid any harm whatsoever to Plaintiffs by staying its Order requiring return of devices in Defendants' possession, except insofar as it requires Defendants to return devices to members of the Plaintiff organizations who request their devices and provide sufficient documentation to demonstrate their membership and coverage by the Court's Order.

1

**ARGUMENT**

**1. This Court Should Stay The 30-Day Return Requirement.**

At an absolute minimum, this Court should (1) stay the 30-day requirement and (2) further stay the mandatory-return portion of its Order except as it applies to members of an Organizational Plaintiff who request return of their devices and provide ATF sufficient documentation to demonstrate that they were members at the time of filing, that they are not otherwise prohibited from possessing firearms, and that return would not place the individual in violation of state law. *See* Defs.' Mem. (ECF No. 105) at 2-4. Such a stay is necessary because ATF does not have a list of individuals who were members of the Organizational Plaintiffs at the time the Complaint was filed (or ever), and therefore has no way to determine who should receive protection from this Court's Order. *See id*. 2-3.

Plaintiffs respond that ATF could comply in an "overinclusive" manner and return the devices to all individuals and entities, including nonparties and individuals forbidden from possessing firearms under 18 U.S.C. § 922(g). Pls.' Mem. (ECF No. 107) at 9. But this Court declined to order such relief, recognizing the risks posed by persons forbidden from possessing firearms and Article III's mandate that a remedy must "redress the plaintiff's particular injury." Order at 55 (quoting *Gill v. Whitford*, 585 U.S. 48, 73 (2018)). *See also McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) ("The fundamental problem with this injunction is that plaintiffs lack standing to seek—and the district court therefore lacks authority to grant—relief that benefits third parties."). Plaintiffs should not be permitted to override constitutional and equitable limitations on the scope of relief merely because broader relief is more convenient for them than providing a list of their members from whom these devices were seized or confiscated.

Nor would Plaintiffs' "overinclusive" solution (or any other) eliminate the practical obstacles that render compliance with the 30-day-return requirement impossible. Even if

2

Defendants were to return the devices without regard to party status, Defendants would still need to match individuals to devices in ATF's possession, confirm that those devices are required to be returned under the Order, run background checks to confirm those individuals or entities may legally possess the devices in question, contact them at the available contact information (or obtain new contact information), and effectuate a return of the devices in person.  *See* Declaration of Matthew P. Varisco ("Varisco Decl.") ¶¶ 6-15, ECF No. 104-1.  This cannot be done in the 30 (now just 13) days that this Court provided.  *See id.*  For this same reason, Plaintiffs' proposal (Pls.' Mem. 10) for ATF to provide Plaintiffs' counsel with a list of individuals from whom Defendants have seized or confiscated FRTs is beside the point.  Even if such a list were created and provided to Plaintiffs despite the privacy concerns that would create,[1] Plaintiffs make no commitments about how quickly they could review such a list, and ATF would in any event be unable to return the devices within 30 days.

More generally, Plaintiffs do not explain why they cannot simply ask the members they claim to represent who seeks return of a device and convey the relevant information to Defendants. Nor do they identify any harm that would flow from a stay on those terms:  that process would be the least burdensome for all parties, would respect the contours of the order the Court actually

---

[1] And such a list cannot be provided because it could "require ATF to turn over law enforcement records about third parties unrelated to Plaintiffs, risk compromising ongoing investigations, and implicate other statutes and regulations," Varisco Decl. ¶ 4, that prohibit disclosure of such information, including the Privacy Act, 5 U.S.C. § 552a(b), and 26 U.S.C. § 6103.  Plaintiffs note (Pls.' Mem. 10) that ATF releases seizure notices for certain of its seizures.  But, unlike with certain other types of seizures, ATF has no statutory deadline to publish information about seizures of devices such as the FRT-15 or WOT.  *See* 18 U.S.C. 983(i).  ATF may therefore delay providing public notice for seizures of those devices in certain circumstances, such as where it may compromise an ongoing investigation.  Accordingly, that ATF has released information pertaining to some seizures does not mean an entire list of all seizures can be released without any negative effects to those ongoing investigations or to the privacy interests of individuals who are not members of a Plaintiff Organization, particularly without a protective order.

entered, and would not create the privacy concerns for non-members inherent in Plaintiffs' proposal.

Plaintiffs argue (Pls.' Mem. 11-12) that Defendants should have moved to modify the Court's Order rather than seeking a stay. But courts routinely grant partial stays of injunctive relief pending appeal without modifying the underlying order. *See, e.g.*, *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("[T]he district court's injunction orders are STAYED, in part, … in accordance with this opinion."). That is precisely what Defendants seek here if the Court is unwilling to stay its Order in its entirety.

### 2. Those Parts Of The Order Granting Prospective Injunctive Relief Should Be Stayed As Unworkable.

Plaintiffs have also not refuted Defendants' point that other prospective aspects of the Court's Order are unworkable. As Defendants explained, it is nearly impossible to know to whom injunctive and declaratory relief applies under the Order. *See* Defs.' Mem. 4. Plaintiffs nowhere dispute that Defendants do not know to whom the Court's permanent injunctive relief (and declaratory relief) applies, and do not dispute that Defendants have no way to ascertain that information. And they provide no justification for demanding injunctive relief to "provide full relief to Plaintiffs—including members of the organizational plaintiffs" based on concerns that Defendants might bring enforcement actions against them, Pls.' Mem. 20, without Defendants knowing who those "members" actually are to ensure they receive the protection they demand. Injunctive relief is not proper on those sorts of indefinite terms. *See* Fed. R. Civ. P. 65(d)(1); *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Instead, Plaintiffs again assert that Defendants should simply act as if the injunction grants universal relief that this Court specifically declined to grant. Pls.' Mem. 8. Yet Plaintiffs do not dispute that any enforcement actions ultimately involve application of the statute, *see* Defs.' Mem.

4

5, and Plaintiffs' objections that Defendants might seek to apply the *statute* with respect to *non-parties* both fails to identify any harm to the Plaintiffs and simply describes the normal course of litigation involving the government, under which questions of statutory interpretation—including the scope of criminal statutes—may be litigated in multiple courts before (if necessary) Supreme Court resolution. *See, e.g.*, *United States v. Mendoza*, 464 U.S. 154, 157-63 (1984).

Plaintiffs likewise do not dispute that the aspect of the Order requiring the mailing of "remedial notices" applies to non-parties, and they do not attempt to square that requirement with the bedrock rule that Plaintiffs do not have standing to seek relief for non-parties. *See, e.g.*, *Gill*, 585 U.S. at 66 ("[A] plaintiff's remedy must be limited to the inadequacy that produced [his] injury in fact.") (quotation omitted). The Order's mailing requirement also risks significant public confusion. *See* Defs.' Mem. 5-6.

Plaintiffs' response (Pls.' Mem. 12-13) that such notices must be sent because the Court has ruled that FRTs are not machineguns misses the point. This Court's decision does not settle the meaning of the statute for the entire country—indeed, another court has concluded these devices likely are machineguns, *see United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51 (E.D.N.Y. 2023), and other district courts or courts of appeals with jurisdiction over nonparties could agree with that court. Plaintiffs do not explain why it would be appropriate to tell nonparties that these devices are not machineguns when that remains an open question in other jurisdictions and subject to appellate review in this Circuit, given the confusion and legal risk that would create for nonparties. *See* Defs.' Mem. 6. Nor do plaintiffs identify any harm they would suffer from staying the sending of notices.

### 3. Defendants Remain Likely To Succeed On The Merits Of Their Appeal.

Defendants are likely to succeed on appeal. *First*, the Supreme Court's decision in *Garland v. Cargill*, 602 U.S. 406 (2024), confirms that FRT-15s and WOTs are machineguns because when

5

such a trigger is engaged just one time the firearm automatically and without additional manual input will fire more than one round. *See* Hr'g. Tr. 42:20-43:6. Thus, the two facts regarding the firing cycle of a firearm equipped with a non-mechanical bump stock that the Supreme Court relied on to conclude such devices are legal—that (1) the "shooter must release and reset the trigger" for another shot to fire and (2) that additional manual input *beyond engaging the* trigger is required to maintain fire—are *not* true of a firearm equipped with an FRT-15 or WOT. *Cargill*, 602 U.S. at 415 *see also* Defs.' Mem. 7. These devices are therefore machineguns, unlike the non-mechanical bump stocks addressed in *Cargill*.

Plaintiffs incorrectly suggest *Cargill* found that maintaining fire with a non-mechanical bump-stock requires only that "'a shooter must also actively maintain just the right amount' of pressure on the trigger." Pls.' Mem. 4-5 (quoting *Cargill*, 602 U.S. at 424). But the quoted passage in *Cargill* refers to "the right amount of forward pressure on the rifle's front grip with the *nontrigger hand*," 602 U.S. at 424 (emphasis added), not the sustained pressure exerted on the trigger itself. This distinction is critical because the Supreme Court in *Cargill* held that it was this *additional* pressure from the nontrigger hand (which is not necessary to sustain fire from a device equipped with an FRT-15) that meant non-mechanical bump stocks did not operate "automatically . . . by a single function of the trigger." *Id.* ("[F]iring multiple shots requires engaging the trigger one time—and then some.") With an FRT-15 or WOT, however, there is no "and then some" required—the trigger need only be engaged one time.

Plaintiffs respond (Pls.' Mem. 3-4) that *Cargill* stated that "[o]n weapons with these standard trigger mechanisms, the phrase 'function of the trigger' means the physical trigger movement required to shoot the firearm," 602 U.S. at 416. But that language concerns only "standard trigger mechanisms" for semiautomatic weapons—not replacement trigger assemblies

6

like the ones at issue here, and it is not in dispute that the firing cycle of the FRT-15 differs from the semi-automatic firing cycle described in *Cargill*. Moreover, *Cargill* described that "physical trigger movement" as encompassing not only the initial engagement of the trigger but also the subsequent disengagement of the trigger by "tak[ing] pressure off" the trigger, which was necessary to the "complete process" of "a 'single function of the trigger.'" *Id.* at 420-21. Here, there is no dispute of fact that an FRT-15-equipped firearm will continue to fire so long as the trigger remains engaged. *See* Hr'g. Tr. 42:20-43:6.

Plaintiffs' recitation (Pls.' Mem. 6-7) of the Supreme Court's definition of a firing cycle in *Cargill* only further demonstrates that an FRT-15 or WOT is a machinegun. As Plaintiffs acknowledge, the Supreme Court in *Cargill* made clear that the firing cycle is not complete until "the shooter takes pressure off the trigger and allows it to move forward" and "the hammer slips off the disconnector." Pls.' Mem. 6 (quoting *Cargill*, 602 U.S. at 418-21). Unlike with a standard firearm (or, indeed, a firearm equipped with a non-mechanical bump-stock), neither of these events must occur for a firearm equipped with an FRT to continue to fire: the shooter need not reduce pressure on the trigger, Hr'g. Tr. 42:20-43:6, and the hammer never slips off the disconnector because an FRT-15 or WOT contains no disconnector, *see id.* at 60:5-9.

Plaintiffs emphasize that "[i]f the shooter takes their finger off the trigger," of an FRT-15, "the gun will not fire." Pls.' Mem. 4. But the same is true of a standard machinegun, so this fact is irrelevant to the statutory analysis, *see Cargill*, 602 U.S. at 422 ("The statutory definition hinges on how many shots discharge when the shooter engages the trigger."). Nor is it relevant that, "[i]f the shooter holds the trigger in its most rearward position, the gun will malfunction," Pls.' Mem. 4, because even Plaintiffs' expert conceded that an FRT-15 or WOT will continue to fire if the trigger is engaged with the correct level of force, Hr'g. Tr. 42:20-43:6.

7

*Second*, the Court's Order impermissibly requires Defendants to conduct a nationwide mailing campaign in violation of longstanding Article III and equitable principles that limit relief only to parties. Defs.' Mem. 9-10. Plaintiffs do not dispute these principles, and instead assert that ATF's mailing program "was undertaken to chill legal behavior." Pls. Mem. 12-13. But even if that were correct (and it is not), that does not explain how the mailing requirement remedies any injuries to Plaintiffs.

*Third*, Defendants are likely to succeed on the merits of their appeal because the Court's Order is overbroad insofar as it enjoins prospective criminal prosecutions in violation of an equitable rule against such relief grounded in the separation of powers. *See* Defs.' Mem. 10-11. Plaintiffs argue (Pls.' Mem. 13) that this rule lacks support outside of *Stolt-Neilsen, S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006), *as amended* (May 16, 2006). Not so. That courts in equity should not enjoin criminal prosecutions is a well-established rule in the Fifth Circuit, *see United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965), and elsewhere, *see, e.g.*, *Yung v. Garland*, No. CV 20-032-LPS, 2021 WL 1027486, at *4 (D. Del. Mar. 16, 2021), *aff'd sub nom. Yung v. Att'y Gen. United States*, No. 21-1974, 2022 WL 4077135 (3d Cir. Sept. 6, 2022); *United States v. Trevino*, 7 F.4th 414, 421 n.6 (6th Cir. 2021); *Deaver v. Seymour*, 822 F.2d 66, 68-70 (D.C. Cir. 1987); *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016); *Peters v. United States*, No. 23-CV-03014-NYW-JPO, 2024 WL 2274079, at *6 (D. Colo. May 20, 2024).

Plaintiffs attempt to distinguish *Stolt-Neilsen* because that case "involved 'a fundamentally individualized determination rather than a review of a generally applicable administrative action.'" Pls.' Mem. 13 (quotation omitted). This distinction is illogical: if enjoining the Executive Branch from filing a single indictment impermissibly infringes on the separation of powers, then enjoining numerous prospective investigations and prosecutions is an even greater infringement. And

8

Plaintiffs' observation (Pls.' Mem. 15) that the rule against restraining criminal prosecutions existed "before the APA was even passed" only underscores that it is an equitable limitation incorporated into the APA, 5 U.S.C. § 702.

### 4. Significant Irreparable Harm To The Government And Public Interest Favor A Stay.

A stay during the pendency of an appeal will prevent unnecessary harm to the government and the public without harming the Plaintiffs. Plaintiffs' response to the government's public safety arguments is, essentially, that it does not matter if FRTs are dangerous because they are "legal" under the Court's ruling on the merits. Pls.' Mem. 15-18. But that is the point of a stay *pending appeal*. This Court's ruling on the merits might be overturned, in which case FRTs were never legal to begin with. A stay would prevent irreparable harm to the public from the acquisition and transfer of these largely untraceable and highly dangerous devices while the appellate court decides the merits. Plaintiffs do not provide any argument that public safety will not be put at risk by the proliferation of unlawful FRT devices *if* the appellate courts ultimately find that the devices are unlawful machineguns. And they do not provide any argument that this public safety harm is not irreparable.

On the other hand, a stay would not harm Plaintiffs' interests. To the extent the Court's Order provides relief to non-parties (including individuals and entities that are not members of the Organizational Plaintiffs), Plaintiffs can claim no harm from a stay of those benefits to *non-parties* during the pendency of an appeal. *See Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) ("[A] litigant … cannot rest a claim to relief on the legal rights or interests of [others]." (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991))); *supra* at 2.

Moreover, staying the prospective injunctive aspects of the Order would impose virtually no harms to Plaintiffs and their members. These individuals and entities, as parties to this suit, are

already aware of the Court's ruling and thus sending them remedial notices would provide no benefit. Nor is there significant harm posed by delaying return of FRT-15 and WOT devices to Plaintiffs' members, who have been operating under that status quo for years. That is particularly true because, as Plaintiffs do not dispute, ATF has classified similar devices as machineguns for the past five decades. *See* Defs.' Mem. 6 n.4  And if the Court disagrees and believes that immediate return of the covered devices is necessary to avoid harms, Defendants have proposed a more workable alternative: the Court can stay its return requirement "except insofar as it requires Defendants to return devices to members of the Plaintiff organizations who request their devices and provide sufficient documentation to demonstrate their membership and coverage by the Court's Order." *Id*. at 14. If the Court adopts this limitation, then any Plaintiff of member of an Organizational Plaintiff can retrieve their covered FRTs (assuming they are not a prohibited person), preventing any conceivable harm from a stay.

## CONCLUSION

For all these reasons, a stay of the Order pending resolution of Defendants' appeal is warranted, or a stay of those aspects of the final judgment that impose affirmative obligations on ATF to return certain FRT devices and issue remedial notices and extend injunctive relief to unidentified individuals. If the Court is not inclined to grant a stay pending appeal, the Court should stay its Order to permit Defendants to seek a stay from the Fifth Circuit and for the duration of the Fifth Circuit's consideration of that motion.

At a minimum, the Court should stay its Order requiring return of devices in Defendants' possession to Plaintiffs except insofar as it requires Defendants to return devices to members of the Plaintiff organizations who request their devices and provide sufficient documentation to demonstrate their membership and coverage by the Court's Order.

DATED: August 9, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEX HAAS
Branch Director

BRIGHAM J. BOWEN
Assistant Branch Director

<u>/s/ *Alexander W. Resar*</u>
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone:   (202) 616-8188
E-mail:   alexander.w.resar@usdoj.gov

*Counsel for Defendants*

**<u>Certificate of Service</u>**

On August 9, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Alexander W. Resar*
