UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR § <br> GUN RIGHTS, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § Civil Action No. 4:23-cv-00830-O <br> v. § <br> § <br> MERRICK GARLAND, *et al.*, § <br> § <br> Defendants. § | |

### ORDER

Before the Court are Defendants' Motion to Stay Judgment Pending Appeal (ECF No. 104) and Brief in Support (ECF 105), filed August 1, 2024; Plaintiffs' Response (ECF No. 107) and Appendix (ECF No. 108), filed August 7, 2024; and Defendants' Reply (ECF No. 109), filed August 9, 2023. Having considered the motion, briefing, and applicable law, the Court find the motion should be and is hereby **DENIED**. The Court also extends the deadline for compliance with the affirmative obligations imposed on Defendants by **SIX (6) MONTHS** and must be meet by **February 22, 2025**.

### I.   BACKGROUND

At this stage, the facts of this case are well-known and the Court will not repeat them at length here.[1] Because of this, the Court only recounts background information necessary to understand and contextualize the pending motion. Plaintiffs comprise of both individuals and organizations. Plaintiffs Patrick Carey, Travis Speegle, and James "J.R." Wheeler are three individual citizens located in the Texas–Louisiana area (the "Individual Plaintiffs"). Each

---

[1] *E.g.*, July, 23, 2024, Op. & Order on Summ. J., ECF No. 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.

1

Individual Plaintiff has owned, currently owns, and/or plans to own FRTs in the future. Plaintiffs also include two organizations—National Association for Gun Rights, Inc. ("NAGR") and Texas Gun Rights, Inc. ("TGR")—with thousands of members in the Northern District of Texas (the "Organizational Plaintiffs").

On August 30, 2023, this Court granted a temporary restraining order ("TRO") to the Individual Plaintiffs,[2] finding that the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") expanded definition of "machinegun" is likely unlawful. The TRO enjoined Defendants from implementing or enforcing, in any civil or criminal manner, the definition against the Individual Plaintiffs.[3] The TRO was narrow in scope, limiting temporary injunctive relief to the Individual Plaintiffs.[4] Due to agreed extensions, the TRO remained in place through October 7, 2023.[5]

On October 2, 2023, the Court conducted an evidentiary hearing to determine whether the TRO should extend throughout the life of the case.[6] Each party was permitted an expert witness to testify about the mechanics of a forced reset trigger ("FRT").[7] Notably, the hearing made clear that

---

[2] Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.
[3] *Id.* at 27.
[4] *Id.* at 25.
[5] *See* Joint Mot. for Extension of Time 1–2, ECF No. 37 ("[T]he parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of September 30, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."); Joint Mot. to Reschedule Hr'g 1–2, ECF No. 43 ("The parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of October 7, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."). The Court granted both motions. Aug. 31, 2023 Order, ECF No. 37; Sept. 14, 2023 Order, ECF No. 43.
[6] *See* Electronic Minute Entry, ECF No. 51 (describing the Court's hearing held on October 2, 2023). Just like the Eastern District of New York (E.D.N.Y. Lawsuit), this Court heard expert testimony regarding how FRTs function. *See* Defs.' Resp. in Opp'n to Mot. for Prelim. Inj. 24, ECF No. 39 (referencing the evidentiary hearing held in the E.D.N.Y. Lawsuit); *see also United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML, 2023 WL 5689770, at *8 (E.D.N.Y. Sept. 5, 2023) (referencing the evidentiary hearing held on August 1–2, 2023).
[7] Sept. 29, 2023 Order, ECF No. 50 (setting time limits and scope of expert testimony).

there are no factual disputes regarding how FRTs work.[8] Instead, the hearing confirmed that the parties' dispute centers entirely on a legal question: whether FRTs qualify as machineguns under the statutory definition. Plaintiffs' expert testified that FRTs *do not* exhibit the attributes of a machinegun, as described by the statute. Defendants' expert, on the other hand, testified that FRTs *do* exhibit those attributes. This live testimony mirrored the positions these same experts proffered during the two-day hearing in the Eastern District of New York Lawsuit.[9] After hearing live testimony and reviewing the briefing, the Court granted Plaintiffs' Motion for Preliminary Injunction on October 7, 2023.[10]

Defendants appealed thirty days later pursuant to 28 U.S.C. § 1292(a)(1).[11] Simultaneous to filing an interlocutory appeal, Defendants moved for a stay of the preliminary injunction pending the appeal.[12] To meet Defendants' request for a ruling within ten days, the Court ordered expedited briefing.[13] Finding that Defendants failed to show that the circumstances justified a stay of the preliminary injunction, the Court declined to do so.[14] The next day, Defendants asked the Fifth Circuit to enter an emergency stay until such time that the panel could evaluate the merits of the preliminary injunction.[15] The Fifth Circuit denied this request.[16]

Between the issuance of the preliminary injunction on October 7, 2023, and the Fifth

---

[8] *See* Tr. of Oct. 2, 2023 Hr'g 133, ECF No. 56 ("I think we agree on the way that [these] guns work. I think the disagreement is on how the statute is applied."). Even without the arguments and evidence from October 2, 2023 hearing, Defendants' briefing at every stage of this litigation makes clear that they agree to the basic facts of how the FRT device operates.
[9] *See generally* Tr. of Aug. 2, 2023 Hr'g, *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 140).
[10] Oct. 7, 2023 Op. & Order on Pls.' Mot. for Prelim. Inj. 1, ECF No. 53.
[11] Defs.' Notice of Appeal, ECF No. 63.
[12] Defs.' Mot. to Stay Prelim. Inj., ECF No. 64.
[13] Nov. 6, 2023 Order, ECF No. 66.
[14] Nov. 16, 2023 Order 13, ECF No. 73.
[15] Defs.' Emergency Mot. for Stay Pending Appeal, *Nat'l Assoc. for Gun Rights, Inc.. v. Garland*, No. 23-11138 (5th Cir. Nov. 17, 2023).
[16] Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023).

Circuit deciding not to stay that relief on November 30, 2023, the Supreme Court granted certiorari in *Garland v. Cargill*. No. 22-976, 144 S. Ct. 374 (Nov. 3, 2023) (mem.). The question for the Supreme Court in *Cargill* was whether a bump stock is a "machine gun" as defined by 26 U.S.C. § 5845(b). The same day, Plaintiffs sought summary judgment in this case.[17] Defendants similarly moved for summary judgment approximately one month later.[18] Although briefing on the cross-motions for summary judgment closed on January 12, 2024, the Court waited to consider these motions until after the Supreme Court's guidance in *Cargill* given that it would directly inform the merits of this case. The Supreme Court rendered its decision in *Cargill* on June 14, 2024, affirming the en banc Fifth Circuit.[19] *Garland v. Cargill*, 602 U.S. 406 (2024).

On July 23, 2024, the Court granted Plaintiffs' Motion for Summary Judgment and denied Defendants' Cross-Motion for Summary Judgment.[20] The Court entered final judgment on July 24, 2024. On August 1, 2024, Defendants sought a stay of the relief awarded to Plaintiffs.[21] The motion is now ripe for the Court's consideration following the filing of Plaintiffs' response[22] and Defendants' reply.[23]

## II.   LEGAL STANDARD

"While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . an injunction . . . on terms . . . that secure the opposing party's rights." Fed. R. Civ. Pro. 62(d). Such "[a] stay pending appeal is 'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir.

---

[17] Pls.' Mot. for Summ. J., ECF No. 60.
[18] Defs.' Cross-Mot. for Summ. J., ECF No. 79.
[19] Pls.' Notice of Suppl. Authority, ECF No. 97.
[20] July, 23, 2024, Op. & Order on Summ. J., ECF No. 100.
[21] Defs.' Mot. to Stay J. Pending Appeal, ECF No. 104; Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal, ECF 105.
[22] Pls.' Resp. in Opp'n to Mot. To Stay J. Pending Appeal, ECF No. 107.
[23] Defs.' Reply in Supp. of Mot. to Stay J. Pending Appeal, ECF No. 109.

4

2023). In determining whether to grant a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Of these, "[t]he first two factors . . . are the most critical." *Plaquemines Parish*, 84 F.4th at 373. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433–34. Importantly, "[a] stay is not a matter of right, even if irreparable injury might otherwise result," but "[i]t is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Plaquemines Parish*, 84 F.4th at 373 (quoting *Nken*, 556 U.S. at 433). A court must thoughtfully consider the factors because "'a stay is an intrusion into the ordinary processes of administration and judicial review.'" *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 427).

Additionally, federal district courts possess the inherent power to control proceedings in their courts. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). While the exact boundaries of the district court's inherent power have not been explicitly delineated, "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)). The power to stay any part of a case—or even the entire proceeding—is incidental to a court's power to dispose of cases to promote fair and efficient adjudication. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). The Court has discretion to manage its docket "with a view toward the efficient and expedient resolution of cases." *Dietz*, 579 U.S. at 47 (2016).

### III. ANALYSIS

Defendants "respectfully request that this Court enter a stay pending . . . appeal . . . , or at a minimum stay those aspects of the final judgment that impose affirmative obligations on ATF to return certain FRT devices and issue remedial notices and extend injunctive relief to unidentified individuals and entities."[24] The Court considers the motion in two parts, beginning with whether to stay the entire final judgement and then turning to the implicit question of whether to amend the deadline to comply with the affirmative obligations.

Applying the four well-established factors here and considering the arguments raised by the parties, the Court determines that Defendants have *not* met their burden to show that the Court should "exercise . . . judicial discretion" to stay the *entire* final judgment pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

That said, construing Defendants narrow request regarding the affirmative obligations as a motion to extend the time period for compliance with the affirmative obligations, the Court exercises its discretion to extend the deadline as to the affirmative obligations to return FRTs and engage in a remedial mail campaign in light of the administrability concerns raised by Defendants.[25]

#### A. Stay Pending Appeal

The Court stands on its prior analysis and fully incorporates the reasoning here.[26] Nonetheless, the Court will address the four factors below.

#### 1. Success on the Merits

---

[24] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 1, ECF 105.
[25] *See Id.* 4–5, ECF 105 (explaining the practical difficulties with complying with the deadline).
[26] *See* July, 23, 2024, Op. & Order on Summ. J. ECF 100.

The Court must first consider whether Defendants have made a *strong* showing that they are likely to succeed on the merits. *U.S. Navy Seals 1-26 v.* Biden, 27 F. 4th 336, 349–50 (5th Cir. 2022) (citing *Nken*, 556 U.S. at 426). They have not. Defendants disagree with the Court's ultimate ruling at the summary judgment stage that FRTs are not machine guns. Defendants' arguments have been rejected on numerous occasions by the Court.[27] The only notable change in Defendants' argument is the Supreme Court's decision in *Cargill*, which was addressed and rejected in the order with which Defendants now take issue.

First, Defendants argue that because of the Supreme Court's ruling in *Garland v. Cargill*, 602 U.S. 406 (2024), an appellate court is likely to render a different outcome than the decision reached by this Court.[28] In support, Defendants argue *Cargill* defines trigger in such a way to include FRTs.[29] Plaintiffs argue *Cargill* clearly demonstrates "it is the physical movement of the trigger that matters, not the movement of the trigger finger, or pull of the trigger."[30] After considering Defendants' argument—and having already considered this aspect of *Cargill* at the summary judgment stage—the Court agrees with the Plaintiffs. Both versions of *Cargill* support the conclusion that the ATF's classification decision cannot stand. Indeed, the record in this case is clear: "FRTs do not fire multiple rounds with a single function of the trigger and, thus, do not qualify as machineguns."[31]

The Court previously determined that Plaintiffs succeed on the merits in light of the Supreme Court's opinion in *Cargill*.[32] Defendants' reading of the case does not compel a different

---

[27] *See e.g.* July, 23, 2024, Op. & Order on Summ. J., ECF 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.
[28] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 6, ECF No. 105.
[29] *Id.* at 7(quoting *Cargill*, 602 U.S at 415–16) ("a 'trigger' is an apparatus, such as a 'movable catch or lever,' that 'sets some force or mechanism in action,'").
[30] Pls.' Resp. in Opp'n to Mot. To Stay J. Pending Appeal 3, ECF No. 107 (citing *Cargill*, 602 U.S. at 422).
[31] July, 23, 2024, Op. & Order 41 on Summ. J., ECF No. 100.
[32] *Id.* at 41–47.

conclusion. There are no new arguments or authorities in the Supreme Court's decision in *Cargill*. Accordingly, the Court finds that Defendants, *who bear the burden* to show a stay pending appeal is warranted, fail to meet their burden here, let alone produce the "strong" showing required for such "extraordinary relief" as a stay pending appeal. *Plaquemines Parish*, 84 F.4th 373. Therefore, this factor weighs heavily against granting a stay.

### 2. Irreparable Harm

Regarding the second stay factor, the Court concludes that Defendants have not shown that they will suffer irreparable harm absent a stay pending appeal.

Defendants contend the Court's final judgment "upends a decades-old understanding" of devices such as FRTs.[33] Defendants' presumption that FRTs are illegal machineguns tethers the harm to the merits of the case. If Defendants prevail on the merits, retrieval efforts would restart. Defendants contend that they are irreparably harmed because FRTs will be "impossible, to recover." However, ATF already has or will obtain the Organization members return information. Thus, making recovery of FRTs easy if the Defendants prevail.

Next, Defendants reassert the claim that the Court's ruling will result in the acquisition of FRTs by prohibited persons.[34] As explained before "this concern exists with *any* firearm—not just FRTs."[35] The Court is *still* not persuaded that Defendants can punish law-abiding citizens—the innocent—because there are criminals who may commit crimes. The Court cannot grant the extraordinary remedy of a stay pending appeal based on what a prohibited person *might* do. FRTs only work with a preexisting firearm, which, by definition, prohibited persons cannot legally possess. If Defendants are concerned with prohibited persons acquiring FRTs, they already possess

---

[33] Defs' Rep. Mot. to Stay Final J. 11, ECF No. 109.
[34] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 13, ECF No. 105.
[35] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 1, ECF No. 53; July, 23, 2024, Op. & Order on Summ. J., ECF No. 100.

the authority to arrest that person now, with or without the injunction in place. *See* 18 U.S.C. § 922(g) (listing persons prohibited from using firearms). The Court was careful to emphasize this point when initially granting the preliminary injunction: "Plaintiffs may still be prosecuted for violating otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."[36] And the Court continued to exercise this same caution when granting summary judgment: "Defendants may still prosecute violations of otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations. This relief should alleviate demonstrable injuries without unnecessarily burdening Defendants."[37] Thus, Defendants' fear regarding prohibited persons is—and continues to be—a non sequitur.

Even if Defendants' interest in enforcing their interpretation of machinegun is legitimate, that interest carries less weight in the stay analysis, because they are not likely to succeed on the merits. *Cf. Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2019) (staying injunction where the government's interest in enforcing its laws was *coupled with* its strong showing of likely success on the merits). The Fifth Circuit stressed that "any injury to [the party] is outweighed by [a] strong likelihood of success on the merits." *Freedom from Religion Foundation, Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). Indeed, "simply showing some 'possibility of irreparable injury'" does not weigh in favor of a stay because, on its own, that "standard is too lenient." *Nken*, 556 U.S. at 434–35. As noted before, "the fact that the Defendants have likely acted in violation of the law for years does not make the action any less unlawful."[38]

Finally, Defendants argue that "[t]he Court's Order will make it nearly impossible to recover FRT-15s and WOTs acquired while the Order is in effect if ATF prevails in this

---

[36] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 43, ECF No. 53.
[37] July, 23, 2024, Op. & Order on Summ. J. 59, ECF No. 100.
[38] *See* Nov. 16, 2023, Order 7, ECF No. 73 (citing ATF's history of classifying FRTs and similar devices as machineguns).

9

litigation."[39] But this conveniently ignores that nearly all of the injunctive relief with which Defendants contest is *identical* to the other relief that has been in effective for over ten months. And, importantly, the Fifth Circuit declined to stay this same injunctive relief. Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023). In fact, the Fifth Circuit rejected these same arguments: "Defendants argue that they will suffer irreparable harm because the injunction will make it harder for them to seize FRTs—but this assumes (wrongly, in our view) that FRTs are illegal." *Id.* at 6.

Accordingly, Defendants fail to demonstrate irreparable injury as a result of the final judgment. This is especially true given the extension of time described below. Therefore, this factor also weighs against a stay.

### 3. Balance of Equities and the Public Interest

The Court also finds that the remaining two factors—comparative balance of the equities and the public interest—once again do not justify a stay pending appeal. The Court previously balanced the competing interests at issue in this case and reaffirms that conclusion.[40] Defendants fail to shift the equities in their favor, the Court addresses the public interest factor.[41]

Defendants reassert many arguments the Court has considered in previous motions. These arguments once again do not tip the public interest factors in their favor. Defendants concentrate on the potential harm the public will face absent a stay.[42] For instance, Defendants state "ATF has

---

[39] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 12, ECF No. 105.
[40] July, 23, 2024, Op. & Order on Summ. J., ECF No. 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.
[41] Unlike the Court's prior orders, the public interest factor does not merge here because the government is the moving—rather than the opposing—party. *See U.S. Navy Seals 1-26*, 27 F.4th at 353 ("Those factors merge 'when the Government is the opposing party[,] i.e., when the government is not the party applying for a stay." (quoting *Nken*, 556 U.S. at 435)).
[42] *See* Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 11–13, ECF No. 105 (combining irreparable harm and these factors in one section.).

encountered these devices in numerous criminal settings."[43] But this is not a causal argument. Nor is it evidence that FRTs are uniquely dangerous or more likely to be involved in criminal activity than any other firearm or firearm accessory. Defendants state that they cannot provide the specifics "due to the illicit nature of the market" yet maintain the "number of unlawfully manufactured, imported, and distributed FRT machineguns likely exceeded the number of lawfully manufactured and imported machineguns."[44] It is not at all clear what extra criminal actively is caused by an FRT as opposed to other illegally possessed firearms. And it is similarly unclear how an FRT added to the danger of these situation, particularly after the Courts ruling that FRTs are not machineguns. Thus, just like the TRO and preliminary injunction stages, Defendants "provide no specific causal arguments explaining how the public would be harmed by an injunction."[45]

The causal deficiencies become even more apparent given Defendants' previous admission that their "criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those individuals charged with multiple other gun-related felonies."[46] As observed when granting the preliminary injunction, "if the only targets of Defendants' enforcement actions are against those who violate other gun laws, then the prohibition on FRTs does nothing to protect the public."[47]

Defendants' new argument that FRTs appear like "normal triggers" is both speculative and relies on the negligence of officers handling the weapons.[48] This is not sufficient to establish that FRTs are unique threats to public safety, let alone that possession or transfer of FRTs by Plaintiffs—who, by definition in this case, are not prohibited persons—and do not pose a public

---

[43] *Id.* at 11.
[44] *Id.* at 12.
[45] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 39, ECF No. 53.
[46] Defs.' Mem. in Supp. of Mot. to Stay Pending Appeal, ECF No. 64-2.
[47] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 40, ECF No. 53.
[48] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 4, ECF No. 105.

safety threat. "Such a general public safety concern simply cannot serve as justification for enforcement of an illegal interpretation of a criminal statute."[49] There remains no evidence to suggest that FRTs in the hands of law-abiding citizens will disserve the public interest.

Even after *Cargill*, Defendants continue to point to the rate of fire being similar to machineguns.[50] But this fact is irrelevant to any consideration of the potential harm FRTs pose. That is because the statutory definition of machinegun—as emphasized by both versions of *Cargill*—does not define a machinegun based on this attribute. 57 F.4th at 461 (5th Cir. 2023) ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire. . . . Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."); 602 U.S. at 423 (2024) ("Congress did not write a statutory definition of 'machinegun' keyed to when a firing sequence begins and ends. Section 5845(b) asks only whether a weapon fires more than one shot 'by a single function of the trigger.'") (quoting 26 U.S.C. § 5864(b)). Until Congress changes the statutory definition, any contentions regarding rate of fire have no bearing on the Court's analysis. For better or for worse, the statutory definition of machinegun does not presently include the rate of fire as an attribute of machineguns. Despite Defendants' claim that it "cannot be disputed" FRTs are "extremely dangerous," this claim does have any bearing on the analysis.[51]

Defendants argue that potential confusion can occur from the remedial mail notices. Again, this is fundamentally tied to the merits. If, as this Court has ruled, FRTs are not machine guns,

---

[49] *Id.* at 39.
[50] *See* Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 11, ECF No. 105 ("An AR-type firearm equipped with an FRT-15 can fire at a rate comparable to an M16 machinegun—roughly 800 to 900 rounds per minute, irrespective of the shooter's skill—and often in an indiscriminate and uncontrolled fashion.").
[51] *Id.* at 11.

then informing people about the ATF's erroneous rule is not an irreparable harm but an affirmative good to inform the public who has already received false information.

In contrast, Plaintiffs would be substantially injured by a stay. The Court has already found twice —in slightly different contexts—that Plaintiffs face a substantial risk of irreparable harm if Defendants are not enjoined from engaging in enforcement activities.[52] Not only do Plaintiffs face a credible threat of prosecution (including when used coercively to confiscate property without filing charges), they also face the loss of the use and enjoyment of their property as a result of Defendants' renewed retrieval efforts. Given Plaintiffs' actual success on the merits, a stay would only undermine—and even threaten—the vindication of their rights.

As before, Defendants' "sky is falling" arguments do not overcome the serious harms Plaintiffs face. Defendants' arguments are premised entirely on a presumption that FRTs are machineguns—a conclusion rejected by the Court on three separate occasions. Defendants continue to offer speculative, conclusory statements about the supposed danger of FRTs that are not supported by their own facts. And the realities discussed above cast doubt on the parade of horribles that Defendants say will occur if the final judgment remains in effect pending appeal. Defendants do not carry their burden to show how equities now weigh in their favor. Nor do Defendants show how the public interest will be served by a stay pending appeal. To the contrary, vacatur of the ATF's classification decision, along with the accompanying declaratory and injunctive relief, collectively reestablish the status quo of non-enforcement against law-abiding citizens and serves the public interest by preventing Defendants from enforcing their unlawful definition of machinegun. For these reasons, the final two factors also weigh against a stay.

### B. Affirmative Obligations

---

[52] Aug. 30, 2023 Opinion & Order on Pls.' Mot. for TRO 16–20, ECF No. 36; October 7, 2023 Opinion & Order on Pls.' Mot. for Prelim. Inj. 31–37, ECF No. 53.

Unlike earlier relief awarded to Plaintiffs, the Court's final judgment ordered the ATF to comply with two affirmative obligations: (1) "to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision" and (2) "to mail remedial notices correcting their prior mailing campaign that 'warned' suspected FRT owners that possession of FRTs and FRT components was purportedly illegal."[53] For the same reasons discussed above, Defendants do not carry their burden for the Court to "exercise . . . judicial discretion" to stay the final judgment pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

Nonetheless, Defendants have identified a number of practical considerations as it relates to the timeline to comply with the affirmative obligations.[54] First, "ATF does not know the identities of the Organizational Plaintiffs' claimed members, let alone which of those members is entitled to return of their FRT devices.[55] Additionally, Plaintiffs are also unaware of some members who are eligible for the return of their FRTs.[56] Defendants also contend that "returning all FRTs covered by the Order within 30 days would still not be feasible."[57] According to Defendants, the "ATF would have to locate the devices among the approximately 11,884 FRT-15s and WOTs in its possession, which may be held at different points around the country."[58] And it would also "have to determine whether the owners are otherwise prohibited persons who cannot legally own a firearm" before having to "contact the owners; and arrange for the return."[59] In sum,

---

[53] July, 23, 2024, Op. & Order on Summ. J. 63, ECF No. 100 (emphasis original).
[54] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal, ECF No. 105.
[55] *Id.* at 2 (citing Notice of Compliance, ECF No. 57 at ¶ 4–5).
[56] *Id.*
[57] *Id.* at 3.
[58] *Id.*
[59] *Id.* (citing Notice of Compliance, ECF No. 57 at 6, 9–15).

the ATF claims it is not able to comply with the Court's order "within 30 days—in other words, by August 22."[60] These points are well-taken.

Pursuant to the inherent power of federal courts to control proceedings, the Court determines that an extension—not a stay—is the appropriate relief here. Such an extension is in this case a "reasonable response to the problems and needs." *Degen*, 517 U.S. at 823–24. Thus, with a view toward the "fair administration of justice" in this case and to effectively vindicate the full rights of the parties who succeeded on the merits, the Court will adjust the compliance deadline. *Dietz*, 579 U.S. at 45.

The practical issues of complying with the Court's final judgment is sufficient reason for the Court, in an exercise of its inherent powers, to modify the deadline of the of the return of FTRs in the final judgment—except as it applies to the Individual Plaintiffs or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation to the ATF. Affirmative notices from a Plaintiff obviates the administrability concerns articulated by Defendants.

IV.   **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Stay Judgment Pending Appeal (ECF No. 104). The Court grants Defendants an additional **SIX (6) MONTHS** to comply with the affirmative obligation, which **SHALL** be completed by **February 22, 2025**. This extension does **NOT** apply to the Individual Plaintiffs or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation to the ATF. ATF shall return those as soon as is practicable following the specific request.

**SO ORDERED** this **20th day** of **August, 2024**.

_Reed O'Connor_
UNITED STATES DISTRICT JUDGE

---

[60] *Id.*

15