# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>            Plaintiffs,<br><br>   v.<br><br>MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>           Defendants. | Case No. 4:23-cv-00830-O |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

    A.    This Court's Orders.................................................................................... 2

    B.    Defendants' Notice of Administrative Hearing ...................................... 5

    C.    The Rare Breed Parties' Unsuccessful Attempts To Extend This Court's Orders To Vacate The E.D.N.Y. Proceeding........................................... 6

    D.    Requests to Return FRTs ........................................................................ 7

    E.    Utah And North Dakota Seizures............................................................ 12

STANDARD OF REVIEW ................................................................................................ 13

ARGUMENT ..................................................................................................................... 14

I.     Defendants Have Complied with this Court's Injunction Requiring Return of FRT-15s and WOTs................................................................................................ 14

II.    ATF's Seizures of the Rare Breed Parties' Devices Pursuant to Federal Warrants Do Not Violate this Court's Orders. ....................................................................... 17

III.   Neither ATF's Denial of the Application for a Federal Firearms License by Rare Breed Triggers, LLC and DeMonico nor the Administrative Hearing Violate this Court's Orders........................................................................................................... 18

IV.   The Press Conference Regarding Machinegun Conversion Devices Does Not Conflict With this Court's Order. ................................................................................ 21

CONCLUSION................................................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Franciscan All., Inc. v. Becerra*,
   47 F.4th 368 (5th Cir. 2022) ................................................................................ 16

*In re U.S. Bureau of Prisons*,
   918 F.3d 431 (5th Cir. 2019) ........................................................................... 13, 16

*Petroleos Mexicanos v. Crawford Enters.*,
   826 F.2d 392 (5th Cir. 1987) ................................................................................ 13

*Scarabin v. Drug Enf't Admin.*,
   966 F.2d 989 (5th Cir. 1992) ................................................................................ 17

*Test Masters Educ. Servs., Inc. v. Singh*,
   428 F.3d 559 (5th Cir. 2005) ................................................................................ 14

*United States v. Berrios-Aquino*,
   No. 22-cr-00473 (D.P.R. Apr. 20, 2023), ECF No. 42 ........................................ 18

*United States v. Ford*,
   No. 3:24-cr-0050-S, 2024 WL 2886575 (N.D. Tex. June 7, 2024) ....................... 21

*United States v. Misc. Firearms & Related Parts & Equip. Listed in Ex. A*,
   No. 1:23-cv-00017 (D. Utah Feb. 14, 2023), ECF No. 2 ..................................... 13

*United States v. Premises of Rare Breed Triggers, LLC*,
   No. 3:23-mj-00411 (D.N.D. Aug. 4, 2023), ECF No. 4 ....................................... 13

*United States v. Rare Breed Triggers, LLC*,
   690 F. Supp. 3d 51 (E.D.N.Y. 2023),
   *appeal filed*, No. 23-7276 (2d Cir. Oct. 5, 2023) ....................................... *passim*

*Waste Mgmt. of Wash., Inc. v. Kattler*,
   776 F.3d 336 (5th Cir. 2015) ................................................................................ 13

### <u>Statutes</u>

18 U.S.C. § 2 .......................................................................................................... 5

18 U.S.C. § 922 ................................................................................................ 5, 21

18 U.S.C. § 923 ................................................................................................ 5, 20

18 U.S.C. § 924 ...................................................................................................... 18

18 U.S.C. § 981 ........................................................................................................... 18

26 U.S.C. § 5845 ........................................................................................................ 21

**Rules**

Fed. R. Civ. P. 59 ....................................................................................................... 19

Fed. R. Crim. P. 41 .................................................................................................... 17

**Regulations**

27 C.F.R. § 478.47 ....................................................................................................... 5

27 C.F.R. § 478.72 .................................................................................................. 5, 20

**Other Authorities**

Justice Department Meeting on Machine Gun Conversion Devices (Sept. 6, 2024),
    https://www.c-span.org/video/?538197-1/justice-department-meeting-machine-gun-
    conversion-devices ............................................................................................. 21, 22

# INTRODUCTION

Plaintiffs move for an order to show cause as to why Defendants should not be held in contempt of this Court's permanent injunction. *See* Mot. To Show Cause, ECF No. 116 ("Mot."). This motion should be denied because Defendants have fully complied with their obligations under this Court's orders. Indeed, to avoid uncertainty, Defendants have filed Notices to inform the Court and Plaintiffs, at both the preliminary and permanent injunction stages, how Defendants understood their obligations under the Court's injunctions. *See* ECF Nos. 57 (Notice of Compliance with Preliminary Injunction) & 114 (Notice of Administrative Hearing). Defendants also explicitly stated their construction of relevant parts of this Court's final judgment in Defendants' motion for a stay pending appeal. *See* ECF Nos. 105 & 109. Plaintiffs fail to show by any standard, much less by the clear and convincing evidence necessary for a finding of contempt, that Defendants did not comply with those obligations. Instead, Plaintiffs largely quibble with the best construction of this Court's orders, effectively seeking amendment or clarification of this Court's orders to grant broader relief.

*First*, Plaintiffs argue that Defendants violated this Court's order to return FRTs to members of the Organizational Plaintiffs by returning devices only to those individuals who were members of the Organizational Plaintiffs at the time the complaint was filed. But Defendants twice stated to this Court that Defendants understood this Court's orders to apply only to such members in light of basic principles of Article III jurisdiction, and Plaintiffs never raised any objection. Months later, Plaintiffs now dispute those principles but fail to show that this Court's orders adopted Plaintiffs' preferred interpretation. The proper course for Plaintiffs to broaden this Court's relief would be a motion for amendment or clarification, not a contempt proceeding.

*Second*, Plaintiffs claim that this Court's orders require Defendants to return FRTs seized from Rare Breed Triggers. But the devices at issue are subject to the jurisdiction of other courts—

1

and thus subject to the injunction's carve-out for such matters—because they were seized pursuant to lawful warrants issued by federal magistrate judges in other districts and/or are now under the exclusive jurisdiction of another court given subsequent forfeiture proceedings.

*Third*, Plaintiffs argue that this Court's orders require ATF to issue a federal firearms license to certain members of the Organizational Plaintiffs. But as Defendants explained in a Notice addressing this very topic, ECF No. 114, this Court's orders do not bar an administrative proceeding initiated and pursued by Plaintiffs' members, which has no relevance to the sale or manufacture of FRTs. And this Court's orders did not (and could not) vacate the findings in *United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51 (E.D.N.Y. 2023), *appeal filed*, No. 23-7276 (2d Cir. Oct. 5, 2023), that ATF initially relied on to deny the requested license.

*Finally*, Plaintiffs are wrong to argue that press conference statements by government officials regarding machinegun conversion devices and the E.D.N.Y. court's conclusion that FRTs are likely machineguns violate this Court's orders. This Court's orders do not preclude government officials from either discussing machinegun conversion devices generally or referencing the findings of federal courts.

In short, Defendants have complied fully with this Court's orders, have repeatedly presented their constructions of those orders to both the Court and Plaintiffs, and have acted consistently with those constructions when they received no objection. For these reasons, explained further below, Plaintiffs' motion for an order to show cause should be denied.

## BACKGROUND

### A. This Court's Orders

On July 23, 2024, this Court issued an order granting Plaintiffs' motion for summary judgment and denying Defendants' cross-motion for summary judgment. ECF No. 100 at 1-2 ("Order"). The following day, it issued its Final Judgment in this case. ECF No. 101 ("Final

Judgment"). In doing so, the Court vacated the "classification of FRTs as 'machineguns'"; enjoined Defendants from "implementing or enforcing" the classification against "Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff"; ordered return to all parties of "all FRTs and FRT components confiscated or seized pursuant to" the "classification within thirty (30) days"; and directed "Defendants to mail remedial notices" to those who previously received mailings warning "that possession of FRTs and FRT components was purportedly illegal." Order at 62-63 (emphasis omitted); *see also* Final Judgment. The Court acknowledged, however, that "Fifth Circuit precedent is clear regarding overlapping decisions from coordinate courts." Order at 59. Accordingly, this Court specified that the scope of the permanent injunction would extend only insofar as it would not "interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties and other pending criminal cases against individuals already subject to prosecution." Final Judgment at 2, ¶ 5.

Defendants appealed, ECF No. 103, and moved for a stay of this Court's final judgment pending appeal, ECF No. 104. In the memorandum accompanying that motion, Defendants explained that the Court's Order "to return to all parties . . . all FRTs and FRT components confiscated or seized . . . within thirty (30) days," Order at 63 (emphasis omitted), presented significant compliance problems. *See* ECF No. 105 at 2. Specifically, Defendants explained that ATF does not know the identities of the Organizational Plaintiffs' claimed members, and therefore has no ability to determine who is entitled to return of devices under the Order. *Id.* Defendants further explained that, "even if an individual approaches ATF and self-identifies as an Organizational-Plaintiff member, ATF does not have the means to verify the accuracy of that representation, or whether they were, in fact, a member at the time the complaint was filed, as is

necessary to receive relief." *Id.* at 2-3; *see also* ECF No. 109 at 2 (explaining that to enable return, an Organizational-Plaintiff member would need to "request return of their devices and provide ATF sufficient documentation to demonstrate that they were members at the time of filing, that they are not otherwise prohibited from possessing firearms, and that return would not place the individual in violation of state law."). Defendants also explained why, even if ATF did know the identities of Plaintiffs' members, returning all FRT-15s and WOTs within 30 days would still not be feasible. ECF No. 105 at 3.

Defendants also addressed why vacatur of "Defendants' unlawful classification of FRTs as 'machineguns,'" Final Judgment at 1, ¶ 1, did not resolve these administrability issues. *See* ECF No. 105 at 4. Defendants explained that there was no single "classification" at issue, and that prosecutions or other enforcement actions are not undertaken on the basis of any classification. *Id.* at 4-5 & n.3. Indeed, the classification carries no binding legal effect apart from the statute, and, as Defendants emphasized, "[a]ny prosecution or other enforcement action is based on the statute." *Id.* at 5.

On August 20, 2024, this Court denied Defendants' request for a stay pending appeal but amended its final judgment to extend the deadline for Defendants to comply with the affirmative obligations imposed on Defendants by six months to February 22, 2025. *See* ECF No. 112. In doing so, the Court characterized as "well-taken" the "practical considerations" that Defendants identified as obstacles to compliance with the affirmative obligations imposed on Defendants, including that "ATF does not know the identities of the Organizational Plaintiffs' claimed members, let alone which of those members is entitled to return of their FRT devices." *Id.* at 14-15. Accordingly, the Court modified the deadline for "the return of [FRTs] in the final judgment—except as it applies to Individual Plaintiffs or members of the Organizational Plaintiffs who

specifically request the return of their FRT devices *and provide sufficient documentation to the ATF.*" *Id.* at 15 (emphasis added).  For those individual members or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation, the Court ordered ATF to "return those [devices] as soon as is practicable following the specific request." *Id.*

### B. Defendants' Notice of Administrative Hearing

While this action was pending, Rare Breed Firearms, LLC ("Rare Breed") and Lawrence DeMonico applied for a federal firearms license ("FFL") as a manufacturer of firearms other than destructive devices (FFL Application Number: 5-74-453-07-PA-14130).  The ATF Houston Field Division issued a Notice of Denial on May 20, 2024, based on its belief that the applicant (Rare Breed) and its President and sole responsible person (Mr. DeMonico) did not meet the criteria for licensing pursuant to 18 U.S.C. § 923(d)(1)(C) and 27 C.F.R. § 478.47(b)(3).  Specifically, that official relied on the findings of the district court in *Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51, to conclude that: (1) Mr. DeMonico possessed and/or transferred machineguns in willful violation of 18 U.S.C. § 922(o); (2) Mr. DeMonico transported machineguns in interstate ecommerce without being a licensed importer, manufacturer, dealer, or collector, in willful violation of 18 U.S.C. § 922(a)(4); and, (3) Rare Breed aided and abetted Rare Breed Triggers, LLC, Mr. DeMonico, and others to possess and/or transfer machineguns in willful violation of 18 U.S.C. §§ 2 and 922(o). *See* 18 U.S.C. § 923(d)(1)(C) (providing that a condition for licensure is that "the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder").  Rare Breed and Mr. DeMonico requested an administrative hearing regarding the denial of the application for a federal firearms license, as provided by 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.72. That hearing took place on September 18, 2024.

Because counsel for Rare Breed and Mr. DeMonico claimed that ATF's refusal to reconsider denial of the license "would be seen as a violation of [this] Court's order," Defendants submitted a Notice of Administrative Hearing on September 6, 2024.  ECF No. 114 at 2. Defendants submitted that notice "to explain that this Court's orders . . . do not preclude holding the scheduled hearing, and moreover do not preclude further consideration of Rare Breed and DeMonico's application for a federal firearms license."  *Id.*  Defendants explained that the license application administrative hearing is not an enforcement action brought by Defendants, and that this Court did not (and could not) vacate the determination of the E.D.N.Y. court that Rare Breed and Mr. DeMonico had likely unlawfully possessed and/or transferred machineguns, which was the basis on which the license was denied.  *Id.* at 3-4.  Plaintiffs did not respond to that Notice.

### C.  The Rare Breed Parties' Unsuccessful Attempts to Extend This Court's Orders to Vacate the E.D.N.Y. Proceeding

On September 5, 2023, a federal court in the Eastern District of New York issued a preliminary injunction against Rare Breed Triggers LLC, Rare Breed Firearms LLC, Mr. DeMonico, and Kevin Maxwell (together, "the Rare Breed Parties").  The E.D.N.Y. court enjoined those parties, "their agents, officers, and employees, and all other persons and entities in active concert or participation with them," from "engaging in any sales of the FRT-15, the Wide Open Trigger, forced-reset triggers, and other machinegun conversion devices."  *Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 123.  That injunction was premised, in part, on the E.D.N.Y. court's determination that the FRT-15 is an illegal machinegun.  *See id.* at 75 ("The Government's motion for a preliminary injunction—indeed, this entire action—depends in part on the threshold question of whether the FRT-15 is, in fact, an illegal machinegun."); *id.* at 88 ("[T]he Government is likely to succeed on the merits of its contention that the FRT-15 is an illegal machinegun.").  The Rare Breed Parties appealed the preliminary injunction to the United States Court of Appeals for the

6

Second Circuit. *See United States v. Rare Breed Triggers, LLC*, No. 23-7276 (2d Cir. 2023). However, the Rare Breed Parties disclaimed any appeal from the district court's determination that the FRT-15 meets the statutory definition of a machinegun. *See* Appellant's Br. at 4, *United States v. Rare Breed Triggers, LLC*, No. 23-7276 (2d Cir. Jan. 23, 2023), ECF No. 35.1 ("In this appeal, Appellants are *not* asking this Court to decide which district court is correct about whether the FRT-15 meets the statutory definition of a machine gun." (emphasis in original)).

On September 25, 2024, the Rare Breed Parties filed an emergency motion with the Second Circuit to set aside the preliminary injunction and to remand with directions to dismiss the complaint as moot for lack of standing. *See Rare Breed Triggers, LLC*, Appellants' Mem. in Supp. of Appellants' Mot. to Set Aside (2d Cir. Sep. 25, 2024), ECF No. 65.1. The Rare Breed Parties claimed that, because this Court "recently entered a final judgment vacating the Government's classification of FRTs as 'machineguns' as contrary to federal law," there no longer exists the "necessary precondition for the Government's claim." *Id.* at 1. In response, the United States emphasized that this Court's vacatur of ATF's "classification" does not control because the E.D.N.Y. court "did not rest its conclusion that the FRT-15 is a machinegun on an ATF 'classification' or any other administrative action subject to vacatur," but instead merely applied the statutory definition. *Rare Breed Triggers, LLC*, Appellee's Mem. in Opp. to Mot. to Set Aside at 2-3 (2d Cir. Oct. 7, 2024), ECF No. 69.1. The Second Circuit denied the Rare Breed Parties' motion in a summary order. *See Rare Breed Triggers, LLC*, Order (2d Cir. Nov. 11, 2024), ECF No. 74.1.

### D. Requests to Return FRTs

Upon the Court's August 20, 2024 order on Defendants' stay motion, ATF's Office of Chief Counsel took steps to notify the relevant ATF personnel regarding their obligations and the process to return FRT-15s and WOTs to Individual Plaintiffs and Organizational Plaintiffs. Specifically,

7

on August 23, 2024, ATF's Office of Chief Counsel sent notice to the Associate Chief Counsels and Deputy Associate Chief Counsels for all Field Regions—*i.e.* the officials responsible for supervising the ATF field counsel who would typically be contacted in the event of a return request—for dissemination to all field counsel. Defs. App'x at 2 (Varisco Decl. ¶ 7). That notice provided information regarding the contents of the Court's August 20, 2024 order and instructed that, upon receipt of a request for return by a claimed member of a Plaintiff Organization, counsel should respond by (1) asking for verification of membership, and (2) establishing the date the membership began. *Id.* at 2-3 (Varisco Decl. ¶ 8). ATF further advised that if membership is verified as of August 9, 2023, *i.e.* the date of the complaint, or if the requestor is an Individual Plaintiff, a background check must be conducted. *Id.* at 3 (Varisco Decl. ¶ 8). Field counsel was directed that, once they establish the requestor is not a prohibited person, they should contact ATF Counsel at ATF Headquarters who would work to coordinate the return, including by connecting the requestor (or their counsel) to the field office where the requestor's device is held. *Id.*

On Monday October 28, 2024, counsel for Plaintiffs e-mailed counsel for Defendants, alleging, *inter alia*, that ATF had not effectuated requested returns for Individual Plaintiff Patrick Carey and the following NAGR members: Brian Trapp, Edgar Acosta II, and Chris Thompson. *See* ECF No. 116-1 at 145-46 ("Pls. App'x"). ATF determined that additional information regarding the agents and field offices involved in the alleged communications with the three identified NAGR members would more quickly facilitate their investigation. Defs. App'x at 5 (Varisco Decl. ¶ 13).

Though its investigation, ATF also learned, still that same day, that the Baton Rouge Field Office had received from Mr. Carey a request for return of his devices on or about September 4, 2024, and that the Field Office had asked that a background check be conducted for him on

8

September 6, 2024. *Id.* at 3 (Varisco Decl. ¶ 10).  After it was determined that Mr. Carey was eligible for return based on him being a named Plaintiff and a non-prohibited person, ATF Counsel contacted Plaintiffs' counsel on September 24, 2024, to effectuate the return. *Id.*  However, when the relevant field office began arrangements for the transfer of the device in October 2024, the office's Acting Resident Agent in Charge's request for release of the device was mistakenly denied due to a classification of the device as abandoned in ATF's case management system, which made it unclear that the request pertained to Mr. Carey. *Id.* at 4 (Varisco Decl. ¶ 11).

Based on these findings, Defense counsel responded to Plaintiff's counsel within five hours of receipt of the October 28, 2024 email from Plaintiffs' counsel, stating in relevant part:

> ATF takes its compliance obligations with the Court's order extremely seriously. At this point, we can confirm that ATF is working to effectuate return of Mr. Carey's device and is investigating the remaining allegations contained in your email. To that end, please provide the name of the agent(s) and/or office(s) that Mr. Acosta II, Mr. Trapp, and Mr. Thompson contacted.

Pls. App'x at 144.  Consistent with that representation, ATF immediately began working to obtain release of Mr. Carey's devices and facilitate their return to him. *Id.* at 4 (Varisco Decl. ¶ 12).  Mr. Carey's FRT-15s were returned three days later, on October 31, 2024, and just ten days after his counsel contacted the Acting Resident Agent in Charge to arrange for the transfer. *Id.*

Plaintiffs' counsel responded to Defense counsel's communication on November 1, 2024, providing information regarding the field office and/or agents involved in alleged communications with the identified NAGR members. Pls. App'x at 143-44.  Once that information was received, ATF Counsel immediately contacted the Division Counsels of the relevant Field Divisions to gather information about these interactions. Defs. App'x at 5 (Varisco Decl. ¶ 14).  The Division Counsels, in turn, contacted the agents involved to ask about what had occurred and their methods of communication with the requestors. *Id.*  Based on this information, ATF determined that none

of the three identified members had provided sufficient proof of NAGR membership. *Id*. at 5-7 (Varisco Decl. ¶¶ 15, 17, 19).

As to Mr. Thompson, email communications indicated that he sought return of his FRT from the Grand Rapids Field Office, and, when asked for proof of membership, he indicated that his NAGR membership was effective November 2023. *Id*. at 5 (Varisco Decl. ¶ 15). The field agent thus notified Mr. Thompson that "returns are made [to] those who were members of the plaintiff organization at the time suit was filed . . . ." Pls. App'x at 9-10; *see* Defs. App'x at 5 (Varisco Decl. ¶ 15).

As to Mr. Acosta II, ATF determined that on July 31, 2024, Mr. Acosta II and an ATF agent in Bismarck, North Dakota, corresponded via email in which Mr. Acosta II requested return of voluntarily surrendered "wot triggers" based on a "judgment [that] came out in my favor." Pls. App'x at 4; *see* Defs. App'x at 6-7 (Varisco Decl. ¶¶ 18-19). Mr. Acosta II did not identify the case he was referencing or claim to be a member of NAGR. Pls. App'x at 4; Defs. App'x at 7 (Varisco Decl. ¶ 19). Apparently confused by the request, the agent responded that he was "unaware of any Judgment stating the triggers are now reclassified by the United States Supreme Court" and asked Mr. Acosta II if he was "referring to the supplemental brief filed . . . in the 5th Circuit by the National Association for Gun Rights, Incorporated?" Pls. App'x at 3; Defs. App'x at 7 (Varisco Decl. ¶ 19). Based on this misunderstanding, the agent advised that "[a]t this time I am unable to return the items to you." Pls. App'x at 3. Mr. Acosta II did not reply to that email. Defs. App'x at 7 (Varisco Decl. ¶ 19). ATF confirmed that it still had possession of Mr. Acosta II's devices, notwithstanding that they had been administratively forfeited in July 2024. *Id*. (Varisco Decl. ¶ 18). ATF was not aware that Mr. Acosta II was a claimed member of NAGR at the time he surrendered the WOTs or at the time of their forfeiture. *Id*.

As to Mr. Trapp, ATF determined that Mr. Trapp's device was seized for forfeiture on August 17, 2021, after the Cherokee County Sheriff's Office and ATF responded to a report of automatic weapon fire and discovered Mr. Trapp in possession of an FRT-15. *Id.* at 5-6 (Varisco Decl. ¶ 16). In accordance with federal law, ATF provided "notice of the seizure and intent to forfeit" by publication and directly to Mr. Trapp. *Id.* at 6 (Varisco Decl. ¶ 16); *id.* at 16-25 (Ex. B). No claim was filed for the seized property, and it was thus forfeited to the U.S. Government on December 13, 2021—roughly eighteen months before filing of the instant suit. *Id.* at 6 (Varisco Decl. ¶ 16); *id.* at 27 (Ex. C). Consistent with that forfeiture action, the device was destroyed. *Id.* at 6 (Varisco Decl. ¶ 16).

Mr. Trapp only attempted to recover his device years later, after the Court's summary judgment order on July 23, 2024. *See id.* at 6 (Varisco Decl. ¶ 17); Pls. App'x at 12, ¶ 5. ATF determined that Mr. Trapp spoke with an agent in the Tulsa, Oklahoma Field Office. Defs. App'x at 6 (Varisco Decl. ¶ 17). During that conversation, Mr. Trapp did not identify himself as a member of an Organizational Plaintiff. *Id.* The agent mistakenly relayed to Mr. Trapp that his devices could not be returned until litigation was over. *Id.* Nevertheless, because Mr. Trapp did not provide any indication that he was a member of an Organizational Plaintiff and because his device had been long-ago destroyed, ATF could not effectuate a return. *Id.*

Consistent with the above findings, Defense counsel responded to Plaintiffs' counsel on November 5, 2024, stating:

> Regarding Mr. Acosta and Mr. Thompson, our understanding is that neither has provided proof that they were members of NAGR at the time the suit was filed. If you are able to represent that they were members of NAGR as of August 9, 2023, ATF will proceed with the return process. Regarding Mr. Trapp, our understanding is that he did not claim to ATF to be a member of NAGR, much less provide proof of membership. Additionally, Mr. Trapp's FRT was forfeited and destroyed prior to entry of any injunctive relief in this case.

Pls. App'x at 143. Plaintiffs' counsel never responded to that communication. *See id.*; Defs. App'x at 7 (Varisco Decl. ¶ 20). They did not provide any confirmation of the above-identified individuals' membership in NAGR or contest ATF's understanding that membership as of the date of suit was required. *See* Pls. App'x at 143. Indeed, Defense counsel heard nothing further on the matter until Plaintiffs filed their Motion to Show Cause three weeks later.

Given the misunderstandings associated with the communications between ATF agents and Messrs. Trapp and Acosta II, ATF also undertook additional steps to ensure communications between ATF employees and those seeking the return of their FRT-15s or WOTs are accurate and consistent. Defs. App'x at 7-8 (Varisco Decl. ¶ 22). ATF Counsel relayed to the Division Counsels for the Field Divisions where the relevant agents were located that representations that property could not be returned until the case is over, or heard by the Supreme Court, were inaccurate. *Id.* at 8 (Varisco Decl. ¶ 22). More broadly, Matthew Varisco, ATF's Assistant Director for the Office of Field Operations, requested that guidance be sent out by the Office of Field Operations to *all* field offices indicating that, in response to any inquiries regarding returns of FRT-15s or WOTs, the receiving agent should collect the requestor's contact information, notify the requestor that they will receive a return call, and refer the inquiry to field counsel to handle appropriately. *Id.* at 1, 8 (Varisco Decl. ¶¶ 1, 22). ATF also developed processes for handling return requests of devices designated as abandoned in ATF's case management system to avoid recurrence of the issue that led to the denial of release of Mr. Carey's device. *Id.* at 4 (Varisco Decl. ¶ 11).

**E.  Utah And North Dakota Seizures**

In March 2022, ATF executed a federal search warrant issued by the District of Utah to seize FRT-15s located at the Logan, Utah premises of 3rd Gen Machine, a contract manufacturer for Rare Breed Triggers, LLC and Rare Breed Firearms, LLC. *See id.* at 8-9 (Varisco Decl. ¶¶ 25-26). The following month, ATF interdicted Mr. DeMonico in New Mexico, where he was

transporting FRT-15s and components that 3rd Gen Machine had indicated it intended to surrender to ATF. *Id.* at 9 (Varisco Decl. ¶ 26); *see also Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 117. The E.D.N.Y. court determined that Mr. DeMonico had attempted to transport these FRT-15s and components "to prevent ATF from lawfully taking possession of the FRT-15s from 3rd Gen." *Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 117. On February 14, 2023, the United States filed a verified complaint for forfeiture *in rem* in the District of Utah for this seized property and other associated property. Defs. App'x at 9 (Varisco Decl. ¶ 27); *see United States v. Misc. Firearms & Related Parts & Equip. Listed in Ex. A*, No. 1:23-cv-00017 (D. Utah Feb. 14, 2023), ECF No. 2.

On August 4, 2023, ATF executed another federal search warrant issued by the District of North Dakota to seize FRTs at the business premises of Rare Breed Triggers, LLC in North Dakota. *See* Defs. App'x at 9-10 (Varisco Decl. ¶¶ 29-30). The warrant has since been unsealed. *See United States v. Premises of Rare Breed Triggers, LLC*, No. 3:23-mj-00411 (D.N.D. Aug. 4, 2023), ECF No. 4; Defs. App'x at 62-63 (Ex. F).

## STANDARD OF REVIEW

A party moving for a contempt order must demonstrate that the respondent "violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re U.S. Bureau of Prisons*, 918 F.3d 431, 439 (5th Cir. 2019) (quoting *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015)). If the Court were to issue an order to show cause, Plaintiffs would "bear[] the burden of establishing by clear and convincing evidence . . . that [Defendants] failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987). To meet the clear-and-convincing standard, "[t]he evidence must be so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth

13

of the precise facts of the case." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citation omitted).

## ARGUMENT

As explained below, Plaintiffs cannot establish even a prima facie case that any of Defendants' actions have violated the Court's final judgment. Accordingly, the Court should deny Plaintiffs' motion for an order to show cause.

## I.    Defendants Have Complied with this Court's Injunction Requiring Return of FRT-15s and WOTs.

ATF has undertaken reasonable efforts to comply with their obligations to return FRT-15s and WOTs to identified members under the Court's orders. As described *supra* 7-8, ATF provided specific guidance to all field counsel likely to be involved in any return request regarding the Court's August 20, 2024 order and the necessary steps to effectuate returns to Individual Plaintiffs and Organizational Plaintiff members. Upon learning that certain members received inaccurate information regarding returns, ATF notified the Division Counsels where the relevant agents were located of the misrepresentations and requested that additional guidance be sent out to *all* field offices regarding the processing of return requests. *Supra* at 12; Defs. App'x at 7-8 (Varisco Decl. ¶ 22). ATF also proceeded with the returns process where appropriate and implemented new processes to avoid reoccurrence of the case management system issue that led to the initial denial of the release of Mr. Carey's device. *See supra* at 12; Defs. App'x at 4 (Varisco Decl. ¶¶ 11-12). Nevertheless, Plaintiffs advance two arguments as to why ATF has not complied with the order to returns FRTs. Neither has merit.

First, in claiming that ATF has taken the position that it is "delaying the return of FRTs pending appeal," Mot. at 10, Plaintiffs attack a strawman. This claim relies on a single, mistaken representation made by a field agent to Mr. Acosta II, *see id.,* which, as described *supra* at 12,

ATF took immediate steps to rectify upon learning of the misunderstanding. Plaintiffs are, in fact, aware that this is not ATF's position; ATF advised in email communications that it would "proceed with the return process" for Mr. Acosta II (and Mr. Thompson) so long as Plaintiffs' counsel confirms that they were "members of NAGR as of August 9, 2023." Pls. App'x at 143.

Second, Plaintiffs object to ATF's understanding of the Court's grant of injunctive relief to "the Organizational Plaintiffs and their members," Final Judgment at 2, ¶ 5, as extending only to Organizational-Plaintiff members at the time of suit. Defendants have repeatedly made clear in their stay motion filings that they understood the Court's injunctive relief to be so limited. *See* ECF No. 105 at 2-3 (stating that Defendants needed the ability to confirm that an asserted member was "a member at the time the complaint was filed, as is necessary to receive relief"); *id.* at 3 n.1 (explaining legal basis for such understanding); ECF No. 109 at 2 (stating that to enable return, an Organizational-Plaintiff member would need to "request return of their devices and provide ATF sufficient documentation to demonstrate that they were members at the time of filing"); ECF No. 104-1 at 2, ¶ 5 (stating that "[e]ven if a member self-identifies to ATF and requests return, ATF does not have information sufficient to independently verify whether . . . any such individual or entity was a member at the time this suit was filed[.]").

Plaintiffs did not oppose that understanding in their response brief, *see generally* ECF No. 107, and the Court's order on that motion similarly did not suggest that Defendants' understanding was improper, instead stating that members seeking return of their devices now must "provide *sufficient documentation* to the ATF," ECF No. 112 at 15 (emphasis added). Nor did Plaintiffs' counsel raise the issue in subsequent email communications with Defense counsel. *See generally* Pls' App'x at 143-46. Rather, Plaintiffs waited to raise the issue for the first time in their motion

to show cause—over four months after ATF first made its understanding known.  For this reason alone, Plaintiff cannot demonstrate any basis for a contempt finding on this issue.

Plaintiffs' only rebuttal to this is to point out that some district courts have sometimes extended relief to current and future members.  *See* Mot. at 11-12 (citing cases/orders). The presence of such express language in the cited cases simply underscores the absence of such language in the permanent injunction here.  Plaintiffs provide no legal argument as to why the injunctive relief here should or could be understood to apply to members who join after suit, and the only Fifth Circuit case they cite does not address the issue at all.  *See generally Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022).  That decision therefore does not establish that relief to an organization reaches third parties who are not members at the time a complaint is filed (or become members months or years after the litigation concludes). Instead, as explained in Defendants' stay motion briefing, *see* ECF No. 105 at 3 n.1, basic principles of Article III standing and equity require that individuals and entities be members at the time the complaint was filed to receive the benefit of any relief.

At bottom, Plaintiffs cannot demonstrate that Defendants' understanding of this Court's injunction as extending to Organizational-Plaintiff members who were members at the time of suit, "violates a definite and specific order of the court," *In re U.S. Bureau of Prisons*, 918 F.3d at 439 (citation omitted).  Defendants' understanding is supported by basic legal principles and was repeatedly communicated to this Court and Plaintiffs *ex ante* without any indication of disagreement.  That is sufficient to deny Plaintiffs' motion to show cause.  To the extent that Plaintiffs now seek to expand the Court's judgment, a motion to show cause is not the proper vehicle for doing so, and such issues could be litigated, if necessary, in a properly framed motion.

**II.   ATF's Seizures of the Rare Breed Parties' Devices Pursuant to Federal Warrants Do Not Violate this Court's Orders.**

Plaintiffs are also incorrect in claiming that ATF violated the Court's Final Judgement with regard to the seized devices belonging to Rare Breed Triggers, LLC and the other Rare Breed Parties. *See* Mot. at 8.  The seizures in the District of Utah and the District of North Dakota were both conducted prior to this Court ordering any relief in this case, and the devices seized are subject to other courts' jurisdiction because they were seized pursuant to valid warrants issued by federal magistrates for other U.S. district courts and/or are subject to the exclusive jurisdiction of another court in a forfeiture action.[1]  Defs. App'x at 8-10 (Varisco Decl. ¶¶ 25-31).  This Court's permanent injunction expressly applies only "to the extent that it does not interfere with other courts."  Final Judgment at 2.  This carveout means that property that ATF has lawfully seized subject to the jurisdiction of another court is outside the scope of this Court's Final Judgment.  Thus, to the extent that Plaintiffs now argue that ATF is in violation of the Final Judgment by not returning the Rare Breed Parties' seized property in the District of Utah and the District of North Dakota (Mot. at 12-13), their argument ignores this Court's carveout and should be rejected.

Plaintiffs also object (Mot. at 8) to the fact that ATF has not "substantively responded to [Rare Breed Triggers, LLC's] Seized Asset Claim Form" as to the North Dakota seizure.  But, as stated above, the Final Judgment does not require the return of property subject to other courts' jurisdiction.  Accordingly, any objections to ATF's seizures conducted in North Dakota pursuant to a valid warrant issued by the U.S. District Court for the District of North Dakota should be

---

[1] Indeed, return of the property that is currently subject to the forfeiture action in the District of Utah would be impossible because that property is subject to that court's *in rem* jurisdiction.  "The basic requirement of jurisdiction *in rem* (and *quasi in rem,* for that matter) is that a court must have exclusive possession or control over the property in order to consider the suit and grant or deny the relief sought.  The long-accepted purpose of this rule is to avoid conflicts in the administration of justice and the unseemliness of two courts vying simultaneously for control of the same property."  *Scarabin v. Drug Enf't Admin.*, 966 F.2d 989, 994 (5th Cir. 1992).

addressed by that court, not here. *See* Fed. R. Crim. P. 41(g) (providing that a party may move for the return of seized property where no civil forfeiture proceeding has yet commenced, but stating that "[t]he motion must be filed in the district where the property was seized"); 18 U.S.C. § 981(c) ("Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, subject only to the orders and decrees of *the court . . . having jurisdiction thereof*." (emphasis added)).

Finally, Plaintiffs take issue (Mot. at 9) with the content of arguments made by the United States in the District of Utah forfeiture case, suggesting that the United States cannot oppose Rare Breed Triggers, LLC's motion for summary judgment in that case in light of this Court's vacatur of ATF's classification of FRT-15s and WOTs as machineguns. But as Defendants have previously explained, prosecutions and other enforcement actions are not "undertaken on the basis of the classification" because the ATF's classification does not carry any "binding legal effect apart from the statute." ECF No. 105 at 5; *see also, e.g.*, *Rare Breed Triggers*, 690 F. Supp. 3d at 75 (holding that "the Government has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the *statutory definition* of a machinegun" (emphasis added)); Superseding Indictment, *United States v. Berrios-Aquino*, No. 22-cr-00473 (D.P.R. Apr. 20, 2023), ECF No. 42 (charging defendant with violation of 18 U.S.C. §§ 922(o) and 924(a)(2)). In any event, Plaintiffs' arguments regarding the effect of this Court's vacatur should be raised in the District of Utah, which has exclusive jurisdiction over the seized property, *supra* at 17 & n.1, not here.

## III.   Neither ATF's Denial of the Application for a Federal Firearms License by Rare Breed Triggers, LLC and DeMonico nor the Administrative Hearing Violate This Court's Orders.

Plaintiffs are also wrong to argue (Mot. at 13-16) that ATF's denial of the application for a license to Rare Breed and Mr. DeMonico as a manufacturer of firearms other than destructive

devices violates this Court's orders.  As an initial matter, there can be no basis for a contempt finding on this issue because Defendants made clear to both Plaintiffs and the Court through the Notice of Administrative Hearing, ECF No. 114, that Defendants did not construe this Court's orders to require ATF to issue such a license to Rare Breed and Mr. DeMonico.  If Plaintiffs interpreted this Court's orders differently, they should have moved this Court to amend the judgment to clarify that issuance of the license was required.  *See* Fed. R. Civ. P. 59(e).  But Plaintiffs did not respond to Defendants' Notice, proceeded with the hearing, and waited over two months after the hearing to file this motion.

In any event, Plaintiffs are incorrect (Mot. at 13) that this Court's vacatur of the classification and declaratory relief precludes the denial of the application for a license.  The license was not denied on the basis that *ATF* had classified FRT-15s as machineguns—it was denied because, based on the findings of the E.D.N.Y. court in *Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51, Mr. DeMonico had possessed, transferred, and transported machineguns in willful violation of federal law, and Rare Breed had aided and abetted Mr. DeMonico and others in those actions.  *See* ECF No. 114 at 1-2.  And the E.D.N.Y. court based that decision on "the statutory definition of a machinegun," not on any ATF classification.  *Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 75 ("[T]he Court concludes that the Government has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the statutory definition of a machinegun.").  This Court's declaratory relief does not (and cannot) vacate that finding.  Accordingly, this Court's orders do not undermine ATF's basis for denying Rare Breed and Mr. DeMonico a federal firearms license.

Plaintiffs further argue (Mot. at 14) that the E.D.N.Y. court's findings did not include claims that the Rare Breed Parties engaged in criminal conduct.  But Plaintiffs do not argue that

Mr. DeMonico or the Rare Breed Parties could lawfully possess machineguns. Accordingly, their possession of a machinegun—which, again, the E.D.N.Y. court found an FRT-15 likely to be— would be in violation of federal law.[2] Similarly, Plaintiffs' claim that the E.D.N.Y. court's findings are irrelevant because they were in the context of a preliminary injunction is beside the point: nothing precludes ATF from denying a federal firearms license based on a separate court's finding that the applicant likely unlawfully possessed, transferred, and transported machineguns, and thus willfully violated the Gun Control Act and its implementing regulations.

Plaintiffs suggest (Mot. at 13-14) that Defendants violated this Court's injunction by pursuing the claim that FRTs are machineguns "in a civil proceeding—the FFL application process." But this Court enjoined Defendants from, in relevant part, "[i]nitiating or pursuing civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns." Final Judgment at 2, ¶ 4b. The administrative licensing proceedings fall outside the scope of this Court's injunction twice over. For one, ATF did not initiate or pursue these administrative proceedings: as explained in the Notice of Administrative Hearing, Rare Breed and DeMonico initiated the license application and further pursued the process by requesting an administrative hearing regarding the denial of the application as provided by 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.72. *See* ECF No. 114 at 2-3. Moreover, the administrative proceeding is not a "civil proceeding[] for possessing, selling, or manufacturing FRTs." Final Judgment at 2, ¶ 4b. Rare Breed and Mr. DeMonico have applied for a license as a manufacturer of firearms other than destructive devices. Such a license authorizes manufacturing of certain firearms but does not apply

---

[2] Plaintiffs note (Mot. at 14) that this Court has recognized that "[t]he E.D.N.Y. Lawsuit does *not* include any claims that the Rare Breed Parties engaged in criminal conduct." Order at 59. But the Court in this section of its order was merely explaining why the injunction enjoining Defendants from pursuing criminal actions against the Rare Breed Parties based on the classification that FRTs are machineguns does not conflict with the E.D.N.Y. court's jurisdiction. And the administrative proceeding is not a criminal action.

to manufacturing of devices like the FRTs-15 or WOT if those devices are not machineguns, as no license is required to manufacture unregulated firearms components. *See* ECF No. 114 at 2-3. Accordingly, the federal firearms license that Rare Breed and Mr. DeMonico sought has no relevance to their ability to possess, sell, or manufacture FRTs.[3]

## IV. The Press Conference Regarding Machinegun Conversion Devices Does Not Conflict With this Court's Order.

Plaintiffs' argument that Defendants should be held in contempt over statements made at a Justice Department press conference on September 6, 2024, should be rejected. *See* Mot. at 9 (citing https://www.c-span.org/video/?538197-1/justice-department-meeting-machine-gun-conversion-devices); *id.* at 14-15. The topic of this press conference, as the title ("Justice Department Meeting on Machine Gun Conversion Devices") and Plaintiffs' quotations (Mot. at 8) indicate, was machinegun conversion devices (MCDs), not FRTs. MCDs are devices that can convert a semiautomatic weapon into a machinegun, such as drop-in auto sears, and are defined by statute to be machineguns themselves. *See* Defs. App'x at 12 (Varisco Decl. ¶ 36); *see also* 26 U.S.C. § 5845(b) ("The term [machinegun] shall also include . . . any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . . ."). For example, "[a] 'Glock switch' is a device that converts a semiautomatic firearm into a fully automatic machinegun," and possession of a Glock switch is a violation of 18 U.S.C. § 922(o). *United States v. Ford*, No. 3:24-cr-0050-S, 2024 WL 2886575, at *1 n.1 (N.D. Tex. June 7, 2024); *see also* Defs. App'x at 12 (Varisco Decl. ¶ 36) (observing that Glock switches are one prevalent type of MCD). Plaintiffs have made no argument, and the Court has made no finding, that MCDs generally are lawful. The statements by the ATF Director and

---

[3] Of course, Rare Breed and DeMonico are enjoined from selling FRTs under the E.D.N.Y. court's injunction, *Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 123, which this Court did not disturb, *see* Order at 60 (relief afforded does not "trench[] upon the E.D.N.Y. Decision").

Deputy Attorney General regarding efforts to combat illegal MCDs (Mot. at 9) thus in no way implicate this Court's ruling regarding FRTs.

The only reference to FRTs that Plaintiffs cite in the nearly 40-minute-long press conference video is a brief, eighteen-second clip in which the United States Attorney for the Western District of Virginia mentioned the E.D.N.Y. court case and stated that a "firearms company [] was illegally selling forced reset triggers, a device designed to convert AR-15 type rifles into machineguns themselves."  Mot. at 9 (citing https://www.c-span.org/video/?538197-1/justice-department-meeting-machine-gun-conversion-devices at 37:18-36).  This short reference is an accurate description of what the E.D.N.Y. court found.  *See Rare Breed Triggers, LLC*, 690 F. Supp. 3d at 75-90.  Nothing in this Court's order prevents government officials from mentioning the publicly available E.D.N.Y. decision, *see* Defs. App'x at 12 (Varisco Decl. ¶ 38), and doing so was not in violation of this Court's orders.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for an order to show cause.

DATED: December 11, 2024        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEX HAAS
Branch Director

LESLEY FARBY
Deputy Branch Director

_/s/ Alexander W. Resar_____
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone:  (202) 616-8188
E-mail:  alexander.w.resar@usdoj.gov

*Counsel for Defendants*

23

**<u>Certificate of Service</u>**

On December 11, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Alexander W. Resar*
