## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00830-O |

## <u>DECLARATION OF MATTHEW P. VARISCO</u>

1.  I am the Assistant Director for the Office of Field Operations within the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), United States Department of Justice ("DOJ"). I have been in this position since March 2024. Prior to my current position, I was the Assistant Director for the Office of Enforcement Programs and Services (Regulatory Operations), the Special Agent in Charge of the Philadelphia Field Division, and I have served as an ATF Special Agent for over 24 years.

2.  In my current senior executive position, I direct policy, conduct planning, and oversee all ATF criminal investigations and regulatory oversight for ATF's 25 field divisions.

3.  I am authorized to provide this Declaration on ATF's behalf and am providing it in support of Defendants' Opposition to Plaintiffs' Motion for Order to Show Cause. This declaration is based on my personal knowledge and belief, my training and experience, as well as information conveyed to me by ATF personnel in the course of my official duties.

1

4.    After this Court issued its October 7, 2023 Preliminary Injunction, ATF promptly took significant steps to ensure compliance with this Court's order. These steps are outlined in the Notice of Compliance filed in this case on October 20, 2023. *See* ECF No. 57.

5.    On July 23, 2024, the Court granted summary judgment in favor of the Plaintiffs. In addition to continuing to enjoin the matters covered by its preliminary injunction, the Court also imposed affirmative obligations on ATF, including a requirement that ATF return certain FRTs in its possession within 30 days.

6.    On August 20, 2024, in response to concerns raised in Defendants' Motion to Stay, *see* ECF No. 104, the Court issued an Order granting Defendants an additional six months to comply with the affirmative obligation regarding the return of FRT-15s and WOTs. *See* ECF No. 112. The Court noted, however, that the extension did not apply to "Individual Plaintiffs or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation to the ATF." *Id.* at 15.

7.    On August 23, 2024, ATF's Office of Chief Counsel notified the Associate Chief Counsels and Deputy Associate Chief Counsels for all Field Regions of the August 20, 2024 Order and the Agency's obligations regarding return of certain FRT devices to Individual Plaintiffs and members of the Organizational Plaintiffs.  Associate Chief Counsels, along with their Deputies, supervise all ATF field counsel.  The Office of Chief Counsel took this step because inquiries regarding the return of devices subject to litigation, such as the FRT-15 device, are typically brought to ATF field counsel and the Office of Chief Counsel wanted to ensure that all field counsel understood how to respond to such inquiries.

8.    The notification directed that, should the field divisions receive inquiries from people who claim to be members of the Organizational Plaintiffs, the field division should 1) ask for verification of membership in the Organizational Plaintiffs, and 2) establish the date the

Defs. App'x 002

membership began to ensure they were a member at the time the suit was filed (i.e. as of

8/9/23). The notification further advised that, if membership and date is established, or if the

requestor is an Individual Plaintiff, then a background check would have to be conducted.

Once it is established that the requestor is not a prohibited person, field counsel was directed

to contact ATF counsel at ATF Headquarters.  ATF counsel would then work to ensure the

orderly return of property, including by establishing a point of contact at the field office where

the requestor's property is held (which may be a different location than the field office the

requestor initially contacted) and notifying the requestor and/or his or her attorney of the

name and contact information of that ATF employee so that they could schedule a place and

time for the transfer.

9.     As referenced in an earlier declaration, ATF has consistently understood that a member of the

Organizational Plaintiffs must have been a member of such organization as of the date of the

filing of the complaint—August 9, 2023—to be considered a party to this litigation and thus

covered by the Court's relief.  *See* Varisco Declaration, ECF No. 104-1, para. 5; *see also* ECF

No. 105 at 2-3 & n.1; ECF No. 109 at 2.

**The Return of Devices to Individual Plaintiffs and Members of Organizational Plaintiffs**

10.     On or about September 4, 2024, Individual Plaintiff Patrick Carey requested the return of his

FRT-15s directly from ATF's Baton Rouge Field Office.  That same day, the ATF Resident

Agent in Charge of that field office contacted ATF's Office of Chief Counsel regarding the

request.  On September 6, 2024, ATF counsel requested that a background check be

conducted on Mr. Carey.  After confirming that Mr. Carey is not prohibited from possessing

firearms and ammunition under federal law and because he is a represented party, ATF

counsel sent an email to Plaintiffs' attorneys on September 24, 2024, advising them of the

contact and requesting an exchange of points of contact to facilitate the transfer.  Plaintiffs'

counsel responded on September 26, 2024, and ATF counsel provided an ATF point of contact—the Acting Resident Agent in Charge (RAC) in the Baton Rouge Field Office—on October 7, 2024.

11.   On or about October 21, 2024, Mr. Carey's attorney contacted the Acting RAC to arrange for the transfer.  The following day, on October 22, 2024, the Acting RAC submitted a request to release the FRT-15s through ATF's case management system.  Because Mr. Carey had initially signed a consent to abandonment at the time his FRT-15s were taken into ATF custody (*see* Ex. A), the FRT-15s were entered in ATF's case-management system as abandoned property and the request to release was automatically sent to ATF's Asset Forfeiture and Seized Property Division (AFSPD).  AFSPD initially denied the request for release on Friday, October 25, 2024, because it was unclear that the release request pertained to an Individual Plaintiff or a member of the Organizational Plaintiffs due to the FRT-15s designation as abandoned property.  ATF has since developed a process to identify whether release requests for FRT-15s/WOTs are covered by the injunction, even if those devices are designated as abandoned in ATF's case-management system.

12.   Upon learning on Monday, October 28, 2024, that the release request related to an Individual Plaintiff, ATF counsel promptly directed that the abandonment designation be removed from Mr. Carey's FRT-15s, and the requested release was approved by the RAC for ATF's Baton Rouge Field Division the same day—one week after Mr. Carey's counsel's initial request. The Acting RAC contacted Mr. Carey's counsel that same day to arrange for the return of Mr. Carey's FRT-15s, and on October 31, 2024—ten days after Mr. Carey's attorney contacted the Acting RAC—Mr. Carey's FRT-15s were returned to him.

13.   On October 28, 2024, ATF counsel was further informed via DOJ counsel in this case that Plaintiffs' counsel had indicated that three alleged individual NAGR members, Chris

4

Thompson, Edgar Acosta II, and Brian Trapp, were allegedly denied returns of the FRT devices. Upon learning that information, ATF counsel immediately requested additional information, through DOJ counsel, from Plaintiffs' counsel, to determine the name of the agent(s) and field offices that such individuals allegedly contacted to request their returns, to substantially aid and resolve much more quickly investigation into these alleged denials.

14.    Once that information was received, ATF counsel contacted the Division Counsels of the relevant Field Divisions to gather information about these interactions.  The Division Counsels in turn contacted the agents involved to ask what had occurred and the method of contact, *i.e.*, by phone, email, or both.  All emails were forwarded to ATF counsel for review. That investigation revealed the following information.

15.    On or about August 15, 2024, Chris Thompson texted an agent in ATF's Grand Rapids Field Office inquiring about the return of his FRT-15/WOT.  That same day, the agent notified ATF's Office of Chief Counsel.  The next day, the agent asked for verification of membership status in an Organizational Plaintiff and date of membership.  On August 21, 2024, Mr. Thompson provided documentation to ATF Division Counsel for the Detroit Field Division, consisting of an image of an undated NAGR membership card and a letter dated November 14, 2023, thanking Mr. Thompson for his financial contribution to the organization.  Division Counsel then responded to Mr. Thompson asking for clarification as to whether the November 2023 date was his initial membership date.  Mr. Thompson replied that was the date of his initial membership.  On August 23, 2024, Division Counsel relayed to Mr. Thompson over the phone that because he was not a member of NAGR as of the date of the filing of the complaint, his device was not eligible for return.

16.    On August 17, 2021, the Cherokee County (Oklahoma) Sheriff's Office responded to reports of automatic gunfire. As part of that investigation, they and ATF seized an FRT-15 from Brian

Defs. App'x 005

Trapp. ATF initiated administrative forfeiture proceedings against Trapp's FRT-15 on or about September 13, 2021. In accordance with federal law, a notice of the seizure and intent to forfeit was published on www.forfeiture.gov from September 13, 2021 through October 13, 2021. Additionally, direct notice was sent via FedEx to Mr. Trapp at his home address in Tahlequah, Oklahoma, on or about September 23, 2021, and confirmed delivered on September 29, 2021. *See* Ex. B. The notice advised Mr. Trapp of how to contest the forfeiture in federal court through the filing of a claim. No claims were filed, and the property was declared administratively forfeited on December 13, 2021, at which time it became property of U.S. Government and was thereafter destroyed in accordance with federal law. *See* Ex. C.

17.    Three years after Mr. Trapp's FRT-15 was seized, in August 2024, Mr. Trapp called an agent in ATF's Tulsa Field Office inquiring about the return of his FRT-15. According to the agent, Mr. Trapp did not claim to be a member of an Organizational Plaintiff. The agent told Mr. Trapp that the property could not be returned until the litigation was completed. Although that representation was mistaken, a return would not have been possible in any event, given that Mr. Trapp's FRT-15 had been forfeited to the United States and destroyed in accordance with federal law.

18.    On March 26, 2024, an ATF agent in the Fargo Field Office was contacted by the Tioga (North Dakota) Police Department, making a notification that Edgar Acosta II had voluntarily turned in two WOTs to the police department, which were subsequently forwarded to ATF and received on April 2, 2024. ATF initiated administrative forfeiture proceedings against Mr. Acosta's WOTs on or about April 12, 2024. Specifically, a notice of the seizure and intent to forfeit was published on www.forfeiture.gov from April 15, 2024 through May 14, 2024. In addition, direct notice was sent to Mr. Acosta via FedEx at his home in Tioga, North Dakota on or about April 12, 2024 and confirmed delivered on or about April 16, 2024. *See* Ex. D.

Defs. App'x 006

The notice advised Mr. Acosta how to contest the forfeiture in federal court through the filing of a claim. No claim was filed within the statutory period, and the property was administratively forfeited on July 26, 2024. *See* Ex. E. Both WOTs remain in ATF custody. ATF was not aware that Mr. Acosta was a purported member of an Organizational Plaintiff at the time Mr. Acosta voluntarily surrendered his devices and during the administrative forfeiture proceedings.

19.   By email dated July 31, 2024, Mr. Acosta requested the return of the surrendered WOT triggers because "judgement came out in my favor." In his email, Mr. Acosta did not identify himself as a member of an Organizational Plaintiff nor identify the "judgment" or case he was referencing. That same day, the ATF agent erroneously responded that the triggers could not be returned because the agent was "unaware of any Judgment" by "the United States Supreme Court." Evincing his confusion, the agent further asked if Mr. Acosta was referencing a supplemental brief filed in the Fifth Circuit. Mr. Acosta did not respond to the agent's email.

20.   Based on the above findings, ATF counsel, through DOJ counsel, notified Plaintiffs' counsel that ATF would process the returns of Mr. Acosta's and Mr. Thompson's devices if Plaintiffs' counsel could represent that they were NAGR members as of the date of suit. ATF counsel is not aware of any response from Plaintiffs' counsel to that communication.

21.   If Mr. Acosta is confirmed to have been an NAGR member as of the date of the filing of the complaint and ATF confirms that Mr. Acosta is not prohibited under federal law from possessing firearms and ammunition, ATF forfeiture counsel are prepared to rescind the declaration of administrative forfeiture for the two WOTs entered on July 26, 2024, and arrange for their release to Mr. Acosta.

22.   Given the misunderstandings by the agents involved in the interactions with Mr. Acosta and Mr. Trapp, ATF counsel took additional steps to ensure that communications between ATF

7

employees and those seeking the return of their FRT-15s/WOTs are accurate and consistent. ATF counsel relayed to the Division Counsels for the Field Divisions where the relevant agents are located that representations that property could not be returned until the case is over, or heard by the Supreme Court, were inaccurate. More broadly, I also sent guidance to all Special Agents in Charge of ATF Field Divisions indicating that, in response to any calls or emails inquiring about the return of FRT-15s or WOTs, the receiving agent should collect the requestor's contact information, relay that they will receive a return call, and refer the inquiry to field counsel to handle appropriately, as set out in paragraph eight.

23. As of the date of this declaration, ATF's Office of Chief Counsel is aware of approximately 27 individuals who have made contact with ATF seeking the return of their forced reset triggers. As of today's date, none of the requestors who have been asked to provide membership information has provided documentation of membership as of the date of the filing of the complaint in this action.

**The Return of Devices to Rare Breed Triggers**

24. As to the return of devices to Rare Breed Triggers, LLC, the injunction covers members only "to the extent that it does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties and other pending criminal cases against individuals already subject to prosecution." ECF No. 101 at 2.

25. On March 24, 2022, ATF obtained from the United States District Court for the District of Utah a federal search warrant authorizing a search of the premises of 3rd Gen Machine, located in Logan, Utah. 3rd Gen Machine was the contract manufacturer for Rare Breed Triggers, LLC and Rare Breed Firearms, LLC. That warrant authorized seizure of items including FRT-15s and their component parts.

Defs. App'x 008

26.     On or about March 26, 2022, ATF executed that federal search warrant and recovered Rare
        Breed Trigger FRT-15s and components.  *See USA v. Miscellaneous Firearms and Related Parts and
        Equipment Listed in Exhibit A*, 1:23-cv-00017, ECF No. 2-1 (D. Utah Feb. 14, 2023) (listing
        seized items).  Additionally, on or about April 15, 2022, ATF interdicted Lawrence DeMonico
        in New Mexico while transporting FRT-15s and components that 3rd Gen Machine had
        indicated it intended to surrender to ATF.  *See United States v. Rare Breed Triggers, LLC*, 690 F.
        Supp. 3d 51, 117 (E.D.N.Y. 2023).  ATF seized the FRT-15s and components that Lawrence
        DeMonico was transporting.

27.     On February 14, 2023, the United States filed a verified complaint for forfeiture *in rem* in the
        District of Utah against this and other associated property.  *See USA v. Miscellaneous Firearms
        and Related Parts and Equipment Listed in Exhibit A*, 1:23-cv-00017, ECF No. 2 (D. Utah Feb. 14,
        2023).

28.     Because that property is the subject of an *in rem* forfeiture action, it is ATF's understanding
        that the property, including the seized FRT-15s and components, is currently under the
        exclusive jurisdiction of the U.S. District Court for the District of Utah.    It is also ATF's
        understanding that, because this property is currently under the exclusive jurisdiction of the
        U.S. District Court for the District of Utah, the return of this property would interfere with
        that Court's jurisdiction.

29.     On August 3, 2023, ATF obtained from the U.S. District Court for the District of North
        Dakota a federal search warrant authorizing a search of the business premises of Rare Breed
        Triggers, LLC.  *See* Ex. F.  That warrant authorized seizure of items including "All Wide Open
        Trigger (WOT) machineguns, Rare Breed Triggers FRT-15 machineguns, or similar forced
        reset triggers" and "any and all finished and unfinished material, components, and/or

9

packaged to be used in the manufacture, assembly, transfer, distribution, and/or sale of the WOT, FRT-15 or similar forced reset trigger." *Id.*

30. On or about August 4, 2023, ATF executed that federal search warrant at the business premises of Rare Breed Triggers, LLC, and recovered WOTs. *See In the Matter of the Search of The Premises of Rare Breed Triggers, LLC*, 3:23-mj-00411, ECF No. 4 (D.N.D. Aug. 4 2023) (Search Warrant Return).

31. Because these WOTs were lawfully seized pursuant to the jurisdiction of U.S. District Court for the District of North Dakota, it is ATF's understanding that return of these WOTs would interfere with the jurisdiction of the U.S. District Court for the District of North Dakota.

**The Initial Denial of a License to Rare Breed Firearms and Hearing**

32. ATF shall approve an application for a license if certain conditions are met, one being that the "applicant has not willfully violated any of the provisions of [the Gun Control Act] or regulations issued thereunder." *See* 18 U.S.C. § 923(d)(1)(C). With limited exceptions, it is unlawful for any person to possess or transfer machineguns. *See id.* § 922(o). I understand that it is ATF's position that a violation of the Gun Control Act is willful if the licensee/applicant knows of its legal obligations and purposefully disregarded or was plainly indifferent to those requirements.

33. Based on the findings of the court in *United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51 (E.D.N.Y. 2023), Lawrence DeMonico knew that ATF had classified the FRT-15's predecessor device, the AR-1, as a machinegun and he knew that ATF had issued a cease-and-desist letter on July 27, 2021, as to the manufacture and transfer of FRT-15s as machineguns. Despite this knowledge, he continued to market, manufacture, and sell FRT-15s. As such, there was evidence that Mr. DeMonico knew of his legal obligations regarding the FRT-15 and purposefully disregarded them.

10

34. On September 6, 2024, Defendants filed a Notice of Administrative Hearing to inform this Court of a pending hearing regarding the denial of Lawrence DeMonico's and Rare Breed Firearms, LLC's application for a federal firearms license as a manufacturer of firearms.  *See* ECF No. 114.  As explained in that Notice, that hearing was requested by Rare Breed Firearms, LLC and Lawrence DeMonico.  *Id.* at 3.  Also as explained in that Notice, the ATF Houston Field Division had issued its Notice of Denial for the requested license on May 20, 2024, based on the determination that the applicant (Rare Breed) and its President and sole responsible person (DeMonico) did not meet the criteria for licensing pursuant to 18 U.S.C. § 923(d)(1)(C) and 27 C.F.R. § 478.47(b)(3).  Specifically, the relevant ATF official relied on the findings of the District Court in *United States v. Rare Breed Triggers, LLC*, 690 F. Supp. 3d 51 (E.D.N.Y. 2023), to conclude that: (1) DeMonico possessed and/or transferred machineguns in willful violation of 18 U.S.C. § 922(o); (2) DeMonico transported machineguns in interstate commerce without being a licensed importer, manufacturer, dealer, or collector, in willful violation of 18 U.S.C. § 922(a)(4); and, (3) Rare Breed aided and abetted Rare Breed Triggers, LLC, DeMonico, and others to possess and/or transfer machineguns in willful violation of 18 U.S.C. §§ 2 and 922(o).  For the reasons stated in the Notice, this action does not run afoul of the Court's orders.  At the hearing both this Court's ruling and the Eastern District of New York's ruling regarding whether FRT-15s and WOTs constituted machineguns were provided to the Director, Industry Operations of the Houston Field Division—the decisionmaker regarding the ultimate denial or grant of the application.

35. In the event of a denial, Mr. DeMonico and Rare Breed Firearms have the opportunity to petition a court in the district in which the applicant's place of business is located or planned to be located, here the United States District Court for the Western District of Texas, for *de novo* review of that decision.

11

**The September 6, 2024 Press Conference**

36.   Machinegun Conversion Devices ("MCDs") is a term used to describe an array of small devices that convert semiautomatic firearms into automatic firearms by allowing a firearm to fire more than one round by a single function of the trigger.  There are several different types of MCDs that work in different ways, including, most prevalently, "Glock switches."  The acronym MCD is not synonymous with the acronym FRT.  In fact, many devices understood to be MCDs are not here at issue and are undisputedly machineguns.

37.   On September 6, 2024, a Justice Department Meeting on Machinegun Conversion Devices was held and broadcast on C-SPAN.  Both Deputy Attorney General Lisa Monaco and ATF Director Steve Dettelbach gave remarks.  Nowhere in either the Deputy Attorney General's remarks nor the ATF Director's remarks was there a mention of FRT-15 or WOT triggers.  Rather, those statements spoke broadly about MCD devices and their emergence as a threat to public safety and law enforcement.

38.   In his remarks during this meeting, United States Attorney for the Western District of Virginia Christopher Kavanaugh did mention the E.D.N.Y. court's decision in *United States v. Rare Breed Triggers*.  That opinion is a public document and has not otherwise been vacated or set aside.  ATF does not understand anything in this Court's Orders to preclude an individual from referencing a publicly available judicial decision.

Executed on December 11th, 2024.

MATTHEW
VARISCO

Digitally signed by
MATTHEW VARISCO
Date: 2024.12.11
13:52:00 -05'00'

_____

Matthew P. Varisco
Assistant Director

Defs. App'x 012

# **<u>EXHIBIT A</u>**

Defs. App'x 013

# Consent to Forfeiture or Destruction of Property and Waiver of Notice

| 1. Investigation Number    777010-22-0122 | |
|---|---|
| 2. Full Name and Address of Party Granting Consent<br><br>Patrick Carey | 3a. Date of Seizure/Receipt<br>8-22-22 |
| | 3b. Date taken into ATF Custody<br>8-22-22 |
| 4. Judicial District in which Property was Seized/Received<br><br>MDLA | 5. ATF Field Division<br><br>BRFO |

## 6. Description of Property

| (a) Item Number | (b) Description of Property |
|---|---|
| I (em #1)<br><br>Item#2) | 1) FRT 15 - Rakdreed Trigger<br><br>2) FRT 15 - Rakebreed Trigger |

(Use reverse side if necessary)

## 7. Consent to Forfeiture or Destruction of Property and Waiver of Notice

I, the undersigned, hereby voluntarily surrender and relinquish all rights, title, and interest in, and all claims to the above-described property in order that said property may be disposed of by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in accordance with law. I understand that the above-described property may be subject to administrative or judicial forfeiture under State or Federal law, or may otherwise be disposed of in accordance with law, including destruction as abandoned property or contraband material. I hereby expressly consent to such action by ATF without further notice.

In the event that ATF seeks to forfeit the above-described property, I understand that ATF is required to send notice of any non-judicial civil forfeiture proceeding pursuant to Title 18, United States Code, Section 983 or Title 19, United States Code, Section 1607. I hereby consent to the forfeiture of the above-described items. Furthermore, I expressly waive any right to receive notice of any forfeiture proceeding, any right to challenge any forfeiture, and any right to later request remission or mitigation of forfeiture or otherwise seek the return of the above-described property under Federal law. I hereby expressly waive all constitutional, legal and equitable claims arising out of and/or defenses to forfeiture of the above-described property in any proceeding, including any claim of innocent ownership and any claim or defense under the Eighth Amendment, including any claim that such forfeiture constitutes an Excessive Fine.

I further agree to unconditionally release and hold harmless the Bureau of Alcohol, Tobacco, Firearms and Explosives, its officers, employees and agents from any and all claims, grievances, entitlements, demands, damages, causes of action or suits, whether in their official or individual capacity, of whatever kind and description, and wherever situated, that might now exist or hereafter arise by reason of, or growing out of, or affecting, directly or indirectly, the possession, seizure, custody, destruction, or other lawful disposition of the above described property. I further agree to hold harmless and indemnify the Bureau of Alcohol, Tobacco, Firearms and Explosives, its officers, employees, and agents, to the extent of the value of the above-described property, against any claims possessed by any third party that may arise in any way from the possession, seizure, custody, destruction, or other lawful disposition of the above-described property in accordance with law.

| Signature | Date<br>8-22-22 |
|---|---|
| 8. Witnessed by<br>a. Special Agent Signature | Date<br>8-22-22 |
| b. Other Witness Signature (Name and Title)<br>TFO | Date<br>8-22-22 |

ATF E-Form 3400.1
Revised May 2013

Defs. App'x 014

# <u>EXHIBIT B</u>



**After printing this label**

1   Use the 'Print' button on this page to print your label to your laser or inkjet printer

2   Fold the printed page along the horizontal line

3   Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned

**Warning**   Use only the printed original label for shipping   Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex com FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim Limitations found in the current FedEx Service Guide apply   Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value   Recovery cannot exceed actual documented loss Maximum for items of extraordinary value is $1,000, e g jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide   Written claims must be filed within strict time limits, see current FedEx Service Guide

Defs. App'x 016

To ensure timely receipt and processing  of your claim or petition, please file online at www.Forfeiture.gov.

If you don't have access to the internet you can mail in your claim or petition.

**THE DEPARTMENT OF JUSTICE WILL CONTACT YOU CONCERNING YOUR CLAIM WITHIN 120 DAYS FROM THE DATE OF ITS RECEIPT.**

**After 120 days, you can contact OM-AFSPD-LRT@ATF.GOV**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Washington, DC  20226*
*www.atf.gov*

Brian TRAPP

████████████████

Tahlequah, OK 74464

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

## SEIZED PROPERTY IDENTIFYING INFORMATION

| | |
|---|---|
| **Notice Date:** September 23, 2021 | **Asset ID Number:** 21-ATF-027975 |

| |
|---|
| **Notice Letter ID:** 299097 (use ID when searching for assets during online filing) |

| |
|---|
| **Description of Seized Property:** UNKNOWN MANUFACTURER unknown MACHINE GUN CAL:ZZ SN:unknown, Valued at $85.00 |

| |
|---|
| **Seizure Date and Location:** The asset(s) referenced in this notice letter were seized on August 17, 2021 by the ATF at Park Hill, Oklahoma. |

| |
|---|
| **Forfeiture Authority:** The forfeiture of this property has been initiated pursuant to 26 USC Section 5872 and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9. |

**I.    THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.**

**TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION**

A.   **What to File:**  You may file both a claim (see section II below) and a Petition for Remission or Mitigation (Petition). If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

B.   **To File a Petition:**  A petition should be filed online or by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Forfeiture Counsel, Asset Forfeiture & Seized Property Division, 99 New York Avenue., NE AFSPD Room (3.N.600), Washington, DC 20226. It must be received no later than 11:59 PM EST thirty (30) days of your receipt of this Notice.  *See* 28 C.F.R. Parts 8 and 9.

C.   **Requirements for Petition:**  The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. § 1746.

D.   **Petition Forms:**  A petition need not be made in any particular form but a standard petition form and the link to file the petition online are available at https://www.forfeiture.gov/FilingPetition.htm.  If you wish to file a petition online for the assets referenced in this asset list of this letter, please use the Notice Letter ID referenced above.

E.   **Supporting Evidence**:  Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your petition.

F.   **No Attorney Required:**  You do not need an attorney to file a petition.  You may, however, hire an attorney to represent you in filing a petition.

G.   **Petition Granting Authority:**  The ruling official in administrative forfeiture cases is the Associate Chief Counsel, Office of Chief Counsel.  The ruling official in judicial forfeiture cases is the Chief, Money Laundering and Asset Recovery Section, Criminal Division, Department of Justice.  *See* 28 C.F.R. § 9.1.

H.   **Regulations for Petition:**  The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

I.   **Penalties for Filing False or Frivolous Petitions:**  A petition containing false information may subject the petitioner to criminal prosecution under 18 U.S.C. § 1001 and 18 U.S.C. § 1621.

Brian TRAPP                                     Notice of Seizure

    J.  **Online Petition Exclusions:**  If you cannot find the desired assets online, you must file your petition in writing at the address listed above.  For more details regarding what assets can be petitioned online, please see the Frequently Asked Questions at https://www.forfeiture.gov/FilingPetitionFAQs.htm.

**II.  TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM.**  *If you do not file a claim, you will waive your right to contest the forfeiture of the asset.  Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

    A.  **To File a Claim:**  A claim must be filed to contest the forfeiture.  A claim should be filed by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the ATF, Forfeiture Counsel, Asset Forfeiture & Seized Property Division, 99 New York Avenue., NE AFSPD Room (3.N.600), Washington, DC 20226.

    B.  **Time Limits:**  A claim must be filed within 20 days of the date of this letter; therefore, you must file your claim by **October 13, 2021**.  *See* 19 U.S.C. § 1608.  A claim is deemed filed on the date received by the agency at the address listed above.

    C.  **Requirements for Claim:**  A claim must be in writing, describe the seized property, state your ownership or other interest in the property and be **made under oath**, subject to penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. § 1746.  Due to the cost bond requirement explained below, these claims cannot be filed online.

    D.  **Cost Bond:**  The claim must be accompanied by a cost bond in the amount of $5,000 or ten percent (10%) of the value of the claimed property, whichever is lower, but not less than $250, made payable to ATF.  If you are unable to post a cost bond, you may request that ATF waive the cost bond requirement by submitting an In Forma Pauperis Cost Bond Waiver Petition to ATF Forfeiture Counsel.  The cost bond must be in the form of a cashier's check or money order.  No personal checks will be accepted.  *See* 19 U.S.C. § 1608.

    E.  **Claim Forms**:  A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above.  *See* 18 U.S.C. § 983(a)(2)(D).

    F.  **Supporting Evidence**:  Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

    G.  **No Attorney Required**:  You do not need an attorney to file a claim.  You may, however, hire an attorney to represent you in filing a claim.

    H.  **When You File a Claim**:  A timely claim stops the administrative forfeiture proceeding.  The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.  You may also file a petition for remission or mitigation.

    I.  **Penalties for Filing False or Frivolous Claims**:  If you intentionally file a claim containing false information, you may be subject to criminal prosecution.  *See* 18 U.S.C. § 1001.

    J.  **If No Claim is Filed**:  Failure to file a claim by **October 13, 2021** may result in the property being forfeited to the United States.

Defs. App'x 019



**FOR GOVERNMENT AGENCY USE ONLY**

DATE CLAIM RECEIVED: _____

**CLAIM FILED TIMELY?    Y ☐      N ☐**

## SEIZED ASSET CLAIM FORM

**Name:** _____    **Telephone No. (        )**_____

**Address:**_____

**City, State, Zip Code:**_____

**Agency Case No.:**_____

**Asset ID No.:**_____

**Date & Place of Seizure:**_____

# PART I

**List the items in which you claim an interest. Include sufficient information to identify each item, such as make, model, and serial numbers, tail numbers, photographs, and so forth. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.**

1._____
2._____
3._____
4._____
5._____
6._____

# PART II

**State your interest in each item of property listed above. Please provide any documents that support your claim of interest in these items. Supporting documentation includes titles, registrations, bills of sale, receipts, etc. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.**

_____
_____
_____
_____
_____
_____

## PART I (continued)

7. _____
8. _____
9. _____

## PART II (continued)

_____
_____
_____

## PART III  -  INSURANCE

**Did you file an insurance claim for the property you are claiming?** _____

**Did you receive compensation from your insurance company for the property you are claiming?**
_____

**If so, please provide the name and address of your insurance company.** _____
_____

## PART IV  -  ATTESTATION AND OATH

**I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of my petition is true and correct, to the best of my knowledge and belief.**


_____          _____
**Signature**                                     **Date**


_____
**Name (Print)**


**For claims with NFA cost bonds, the cost bond <u>must</u> be in the form of a cashier's check or money order, payable to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).**


**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER TITLE 18, UNITED STATES CODE, SECTIONS 1001 AND/OR 1621, AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**

**THE DEPARTMENT OF JUSTICE WILL CONTACT YOU CONCERNING YOUR CLAIM WITHIN 120 DAYS FROM THE DATE OF ITS RECEIPT.**

Defs. App'x 021



FOR GOVERNMENT AGENCY USE ONLY

DATE PETITION RECEIVED: _____

PETITION FILED TIMELY?    Y ☐      N ☐

# REMISSION OR MITIGATION OF FORFEITURE PETITION FORM

**Name:** _____    **SSN or TIN:**_____

**Address:**_____    **Telephone No. (      )**_____

**Address:**_____

**Agency Case No.:**_____

**Asset ID No:** _____

**Date & Place of Seizure:**_____

## PART I

**List the items in which you claim an interest. Include sufficient information to identify each item, such as make, model, and serial numbers, tail numbers, photographs, and so forth. Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.**

1._____

2._____

3._____

4._____

5._____

6._____

## PART II

**Describe your interest in each item of property as owner, lienholder, or otherwise, for which you seek remission or mitigation of forfeiture. Please provide any documents that support your petition for each item. Supporting documentation includes original or certified bills of sale, title, registration, receipts, etc.  Additional space is provided on the back of the form. You may attach additional sheets of paper if more space is needed.**

_____

_____

_____

_____

_____

_____

## PART I (continued)

7. _____

8. _____

9. _____

## PART II (continued)

_____

_____

_____

_____

_____

_____

_____

## PART III  -  INSURANCE

**Did you file an insurance claim for the property you are claiming?** _____

**Did you receive compensation from your insurance company for the property you are claiming?**

_____

**If so, please provide the name and address of your insurance company.** _____

_____

## PART IV  -  ATTESTATION AND OATH

**I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of my petition is true and correct, to the best of my knowledge and belief.**

_____          _____
**Signature**                                      **Date**

_____
**Name (Print)**

**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER TITLE 18, UNITED STATES CODE, SECTIONS 1001 AND/OR 1621, AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**

Defs. App'x 023



Name: _____

Address: _____

_____

Agency Case No: _____

### *IN FORMA PAUPERIS* CLAIM BOND WAIVER PETITION

*To contest a National Firearms Act (26 U.S.C. Chapter 53) based forfeiture, a person asserting an interest in the property must file not only a claim with ATF but also a claim bond to cover the costs and expenses of the forfeiture proceeding. Those costs are charged against the bond only if the firearm is actually forfeited.* **The amount of the bond is $5,000 or 10 percent of the value of the firearm, whichever is lower, but not less than $250.  <u>See</u> 19 U.S.C. § 1608.**

If a claimant cannot afford to pay the claim bond amount, he/she may be able to have the fees waived.

To aid ATF in making an indigence determination, please answer the following questions. Please note that these questions represent some of the factors that ATF will use to make a determination, and if there are other relevant facts about your financial status that you believe ATF should consider, you should provide them in Section 5.  The information on this form is entirely voluntary; however, please be aware that incomplete financial information might result in a denial of the claim bond waiver.

    1.  Are you presently employed or do you have another source of income in your household?

        a.  If the answer is yes, state the amount of your salary or wages per month or other household income? _____

_____

_____

_____

        b.  If the answer is no, state the date of your last employment and the amount of the salary and wages per month which you received. _____

_____

_____

_____

2.  Within the past twelve months, have you received any income from a business, profession or other form of self-employment, or in the form of rent payments, benefits, interest, dividends, or other sources?

    a.   If the answer is yes, describe each source of income and state the amount received from each during the past twelve months.

    _____

    _____

    _____

3.  Do you own any cash, checking accounts, or savings accounts?

    a.   If the answer is yes, state the total amount of the cash and accounts.

    _____

    _____

    _____

4.  Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

    a.   If the answer is yes, describe the property and state its approximate value.

    _____

    _____

    _____

Please provide any additional information, which you believe might be relevant to a determination of indigence (including, for example, the number of dependents in your household, other significant expenses, etc.).

    _____

    _____

    _____

**I attest and declare under penalty of perjury that the information provided in support of my petition is true and correct, to the best of my knowledge and belief**


_____     _____

**Name (Print)**                    **Date**


_____

**Signature**

**Please return the completed paperwork with your Claim form and any other supporting documentation.**

# **<u>EXHIBIT C</u>**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms
and Explosives

*Washington, DC 20226*
*www.atf.gov*

## DECLARATION OF ADMINISTRATIVE FORFEITURE

| | | |
|---|---|---|
| Agency Case Number | : | 781065-21-0244 |
| Seizure Number | : | 01 |
| Serial Number | : | unknown |
| Asset Identification | : | 21-ATF-027975 |
| Asset Description | : | UNKNOWN MANUFACTURER unknown MACHINE GUN CAL:ZZ SN:unknown |

On 08/17/2021 at Park Hill, OK, the described property(ies) was/were seized for forfeiture pursuant to 26 USC Section 5872.

In accordance with 19 USC 1602-1621, notice of the seizure and intent to forfeit was published for thirty (30) consecutive days on the official government web site ([www.forfeiture.gov](www.forfeiture.gov)) from September 13, 2021 to October 13, 2021 and was sent to each party who appeared to have an interest in this/these property(ies).

Because no claim was filed for the seized property within the time period provided by law from the date of the last publication of the Notice of Seizure or by the date required under the Personal Notice Letter mailed (whichever is applicable), it is hereby declared that the property referenced above by asset identification number or seizure number has been forfeited to the United States Government pursuant to Federal law.

*Clifford M. Luhn*
*for* Associate Chief Counsel, Asset Forfeiture Division
Office of Chief Counsel

**APPROVED**
**By Clifford M. Luhn at 9:32 am, Dec 13, 2021**

**<u>EXHIBIT D</u>**

Defs. App'x 028


Dear Customer,

The following is the proof-of-delivery for tracking number: 775929835670

Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Residence |
| Signed for by: | E.ACOSTA | Delivery Location: | |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday;<br>Residential Delivery;<br>Adult Signature Required | | TIOGA, ND, |
| | | Delivery date: | Apr 16, 2024 12:58 |

Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 775929835670 | Ship Date: | Apr 12, 2024 |
| | | Weight: | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| TIOGA, ND, US, | WASHINGTON, DC, US, |

Reference                    24-10106

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.

Thank you for choosing FedEx

Defs. App'x 029



U.S. Department of Justice

Bureau of Alcohol, Tobacco, Firearms and
Explosives

*Washington, DC 20226*
*www.atf.gov*

Edgar Acosta II

Tioga, ND 58852

# NOTICE OF SEIZURE OF PROPERTY AND INITIATION OF ADMINISTRATIVE FORFEITURE PROCEEDINGS

## SEIZED PROPERTY IDENTIFYING INFORMATION

| | |
|---|---|
| **Notice Date:** April 12, 2024 | **Asset ID Number:** Multiple Assets |
| **Notice Letter ID:** 531155 (use ID when searching for assets during online filing) | |
| **Description of Seized Property:** See Attached List | |
| **Seizure Date and Location:** See Attached List | |
| **Forfeiture Authority:** See Attached List | |

**I.** **THE GOVERNMENT MAY CONSIDER GRANTING PETITIONS FOR REMISSION OR MITIGATION, WHICH PARDONS ALL OR PART OF THE PROPERTY FROM THE FORFEITURE.**

**TO REQUEST A PARDON OF THE PROPERTY YOU MUST FILE A PETITION FOR REMISSION OR MITIGATION**

A. **What to File**: You may file both a claim (see section II below) and a Petition for Remission or Mitigation (Petition). If you file only a petition and no one else files a claim, your petition will be decided by the seizing agency.

B. **To File a Petition:** A petition should be filed online or by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Forfeiture Counsel, Asset Forfeiture & Seized Property Division, 99 New York Avenue., NE AFSPD Room (3.E.454), Washington, DC 20226. It must be received no later than 11:59 PM EST thirty (30) days of your receipt of this Notice. *See* 28 C.F.R. Parts 8 and 9.

C. **Requirements for Petition:** The petition must include a description of your interest in the property supported by documentation and any facts you believe justify the return of the property and be **signed under oath**, subject to the penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury. *See* 28 U.S.C. § 1746.

D. **Petition Forms:** A petition need not be made in any particular form but a standard petition form and the link to file the petition online are available at https://www.forfeiture.gov/FilingPetition.htm. If you wish to file a petition online for the assets referenced in the asset list of this letter, please use the Notice Letter ID referenced above.

E. **Supporting Evidence**: Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your petition.

F. **No Attorney Required:** You do not need an attorney to file a petition. You may, however, hire an attorney to represent you in filing a petition.

G. **Petition Granting Authority:** The ruling official in administrative forfeiture cases is the Associate Chief Counsel, Office of Chief Counsel. The ruling official in judicial forfeiture cases is the Chief, Money Laundering and Asset Recovery Section, Criminal Division, Department of Justice. *See* 28 C.F.R. § 9.1.

H. **Regulations for Petition:** The Regulations governing the petition process are set forth in 28 C.F.R. Part 9, and are available at www.forfeiture.gov.

I. **Penalties for Filing False or Frivolous Petitions:** A petition containing false information may subject the petitioner to criminal prosecution under 18 U.S.C. § 1001 and 18 U.S.C. § 1621.

J. **Online Petition Exclusions:** If you cannot find the desired assets online, you must file your petition in writing at the address listed above. For more details regarding what assets can be petitioned online, please see the Frequently Asked Questions at https://www.forfeiture.gov/FilingPetitionFAQs.htm.

Edgar Acosta II                                    Notice of Seizure

**II.  TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM.**
*If you do not file a claim, you will waive your right to contest the forfeiture of the asset.  Additionally, if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.*

    A.  **To File a Claim:**  A claim must be filed to contest the forfeiture.  A claim should be filed by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the ATF, Forfeiture Counsel, Asset Forfeiture & Seized Property Division, 99 New York Avenue., NE AFSPD Room (3.E.454), Washington, DC 20226.

    B.  **Time Limits**:  A claim must be filed within 20 days of the date of this letter; therefore, you must file your claim by **May 02, 2024**.  *See* 19 U.S.C. § 1608.  A claim is deemed filed on the date received by the agency at the address listed above.

    C.  **Requirements for Claim:**  A claim must be in writing, describe the seized property, state your ownership or other interest in the property and be **made under oath**, subject to penalty of perjury or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. § 1746.  Due to the cost bond requirement explained below, these claims cannot be filed online.

    D.  **Cost Bond:**  The claim must be accompanied by a cost bond in the amount of $5,000 or ten percent (10%) of the value of the claimed property, whichever is lower, but not less than $250, made payable to ATF.  If you are unable to post a cost bond, you may request that ATF waive the cost bond requirement by submitting an In Forma Pauperis Cost Bond Waiver Petition to ATF Forfeiture Counsel.  The cost bond must be in the form of a cashier's check or money order.  No personal checks will be accepted.  *See* 19 U.S.C. § 1608.

    E.  **Claim Forms**:  A claim need not be made in any particular form, but a claim form is available at [www.forfeiture.gov](www.forfeiture.gov), which you may print and deliver to the agency pursuant to the instructions above.  *See* 18 U.S.C. § 983(a)(2)(D).

    F.  **Supporting Evidence**:  Although not required, you may submit supporting evidence (for example, title paperwork or bank records showing your interest in the seized property) to substantiate your claim.

    G.  **No Attorney Required**:  You do not need an attorney to file a claim.  You may, however, hire an attorney to represent you in filing a claim.

    H.  **When You File a Claim**:  A timely claim stops the administrative forfeiture proceeding.  The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings.  You may also file a petition for remission or mitigation.

    I.  **Penalties for Filing False or Frivolous Claims**:  If you intentionally file a claim containing false information, you may be subject to criminal prosecution.  *See* 18 U.S.C. § 1001.

    J.  **If No Claim is Filed**:  Failure to file a claim by **May 02, 2024** may result in the property being forfeited to the United States.

Defs. App'x 031

Edgar Acosta II                                    Notice of Seizure

**Asset List**

**Seizure Date and Location:**  The asset(s) referenced in this notice letter were seized on March 27, 2024 by the US FEDERAL BUREAU OF INVESTIGATION at Tioga, North Dakota and adopted by the ATF on April 2, 2024.

**Forfeiture Authority:**  The forfeiture of this property has been initiated pursuant to 26 U.S.C. Section 5872 and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9. Additional statutes, if applicable, are indicated below.

| ASSET ID | ASSET DESCRIPTION | ASSET VALUE | ACCT/VIN/SERIAL NO |
|---|---|---|---|
| 24-ATF-012272 | Wide Open Trigger FRT Machinegun Conversion Device CAL:None SN:None | $150.00 | None |
| 24-ATF-012275 | Wide Open Trigger FRT Machinegun Conversion Device CAL:None SN:None | $150.00 | None |

Defs. App'x 032

# **<u>EXHIBIT E</u>**

Defs. App'x 033



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Washington, DC  20226*
*www.atf.gov*

## <u>DECLARATION OF ADMINISTRATIVE FORFEITURE</u>

| | |
|---|---|
| Asset ID Number: | See Attached List |
| Case Number: | 24-10106 |
| Seizure Number: | 01 |
| Judicial District: | District of North Dakota |
| Seizure Date: | 03/27/2024 |
| Seizure Location: | Tioga, ND |

The property described above was taken into custody by the Bureau of Alcohol, Tobacco, and Firearms for civil forfeiture pursuant to Title 26, United States Code (U.S.C.), Section 5872. Notice of this action was sent to all known parties who may have a legal or possessory interest in the property in accordance with law. Notice of this action was posted on an official internet government forfeiture site for at least 30 consecutive days in accordance with 19 U.S.C. Section 1602-1621.

As of the date of execution of this form, no valid claim was filed as required by law to contest this action.

It is hereby declared that the property has been forfeited to the United States pursuant to 26 U.S.C. Section 5872, and is to be disposed of in accordance with law. This declaration shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a U.S. District Court. See 19 U.S.C. Section 1609 and 28 C.F.R. Section 8.12.

Signed by Patricia Lancaster via the FR application          Date: 07/26/2024

Attorney Advisor
As delegated by the Deputy Associate Chief Counsel for Asset Forfeiture
General Law and Information Division
Office of Chief Counsel

| Asset ID | Asset Description | VIN/Account/Serial Number | Asset Value At Seizure |
|----------|------------------|---------------------------|------------------------|
| 24-ATF-012272 | Wide Open Trigger FRT Machinegun Conversion Device CAL:None SN:None | None | $150.00 |
| 24-ATF-012275 | Wide Open Trigger FRT Machinegun Conversion Device CAL:None SN:None | None | $150.00 |

# **<u>EXHIBIT F</u>**

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of North Dakota

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the Premises of Rare Breed Triggers, LLC,<br>Located at 3523 45th Street S, Suite 100, Unit 186,<br>in Fargo, North Dakota | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:23-mj-411 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A;

located in the _____ District of _____North Dakota_____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Illegal Possession of Machineguns |
| 26 U.S.C. § 5861(d) | Unlawful Possession of Unregistered Machineguns |
| 26 U.S.C. § 5861(e) | Unlawful Transfer of Unregistered Machineguns |

The application is based on these facts:

see Affidavit of Christine Gass.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christine Gass, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 3, 2023

City and state: Fargo, ND

*Judge's signature*

Alice R. Senechal, U.S. Magistrate Judge
*Printed name and title*

Defs. App'x 037

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Christine Gass, being duly sworn, hereby depose and state the following:

1.    I am currently employed as a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since September 2021. I am currently assigned to ATF's Fargo Field Office in ATF's Saint Paul Field Division. I have conducted and participated in investigations concerning the illegal possession of firearms under both the Gun Control Act of 1968 and the National Firearms Act of 1934.

2.    I received training through the ATF Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center (FLETC). I received training through the Criminal Investigator Training Program (CITP) at FLETC. Prior to this position, I was employed as a Patrol Deputy with the Crow Wing County Sheriff's Office in Brainerd, Minnesota. Prior to that employment, I was employed as a Special Agent with the North Dakota Bureau of Criminal Investigation. As a Patrol Deputy and Special Agent, I have participated in numerous investigations, which resulted in the arrests, searches, seizures, and convictions of individuals.

3.    I am familiar with the facts and circumstances set forth herein as a result of my personal participation in this investigation as well as my review of official reports, records, and conversations with other law enforcement officers and ATF personnel as more fully described below.

4.    This affidavit is submitted for the limited purpose of establishing probable cause in support of a search warrant alleging that Rare Breed Triggers, LLC (RBT), Lawrence DeMonico, Kevin Maxwell, and others, are in violation of:

    a.  18 U.S.C. § 922(o), illegal possession of machineguns

    b.  26 U.S.C. § 5861(d), unlawful possession of unregistered machineguns

    c.  26 U.S.C. § 5861(e), unlawful transfer of unregistered machineguns

Since this Affidavit is for the limited purpose of establishing probable cause to support the search warrant, it contains only a summary of relevant facts. I have not included every fact known to me concerning the entities, individuals, and the events described in this affidavit.

5.    The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers and personnel employed by ATF; (c) my review of documents and records in the possession of ATF; and (d) my training and experience. Where the content of documents and the actions and statements of individuals are reported herein, they are reported in substance and part, except where otherwise indicated.

6.    Title 28 of the United States Code provides ATF the authority to investigate criminal and regulatory violations of Federal firearms law at the direction of the Attorney General. Under the corresponding Federal regulation at 28 C.F.R. § 0.130, the Attorney General has delegated to ATF the authority to investigate, administer, and enforce the laws related to firearms, which, in relevant part, include the Gun Control Act of 1968, 18 U.S.C. Chapter 44 (GCA) and the National Firearms Act of 1968, 26 U.S.C. Chapter 53 (NFA). ATF's Firearms and Ammunition Technology Division (FATD) provides expert technical support on firearms and ammunition to federal, state, and local law enforcement agencies regarding the GCA and NFA.

7.    18 U.S.C. § 921(a)(24) provides "the term 'machinegun' has the meaning given such terms in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b))."

8.    26 U.S.C. § 5845(a)(6) defines, in relevant part, the term "firearm" to mean "a machinegun."

9.    26 U.S.C. § 5845(b) defines the term "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically, more than one shot, without manual reloading, by a single function of the trigger. The term shall also include … any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun…."

10.    27 C.F.R. § 478.11 and 27 C.F.R. 479.11 similarly further define the term "machinegun", in relevant part, as follows:

> *Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall include … any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun…. For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot" means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions…*

11.    26 U.S.C. § 5842(a) provides that "[e]ach manufacturer and importer and anyone making a firearm shall identify each firearm … manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered…."

12.    Machineguns are very strictly regulated under federal law. With limited exceptions, 18 U.S.C. § 922(o) prohibits the manufacture, possession, transfer, and importation of machineguns manufactured after May 19, 1986. I know through my training and experience, post-1986 machineguns are generally non-transferable to the public, and can be manufactured only under very limited circumstances which would involve ultimate use for the military or law enforcement.

13.    Pursuant to 26 U.S.C. § 5841, NFA firearms, including machineguns, must also be registered in the National Firearms Registration and Transfer Record (NFRTR), which is administered by ATF. The registry is required to include the identification of the registered firearm, the date of registration, and the identification and address of the person entitled to possession of the registered firearm. The NFA also imposes a $200.00 making tax on each NFA firearm made, and additional $200 tax on each NFA firearm transferred (26 U.S.C. §§ 5811 and 5821).

14.    Based on my training and experience, I am aware that a semi-automatic firearm will fire only one round for each function of the trigger. After pulling the trigger, the shooter must release the trigger and then pull the trigger again to fire another round. This process of operation—pull and release—must be repeated each time the shooter wishes to fire the weapon. With an automatic firearm—a "machinegun" under federal law—the firearm will continue to fire with each function of the trigger (typically a pull), until the trigger is released, the ammunition supply is exhausted, or the firearm malfunctions.

### RBT and the FRT-15

15.    RBT was incorporated in Florida in April of 2020 as a limited liability company. At the time, four individuals held ownership interest in RBT: (i) Lawrence DeMonico; (ii) Kevin Maxwell; (iii) Cole LeLeux; and (iv) Michael Register. DeMonico, LeLeux, and Register surrendered or divested their ownership interest by December 14, 2020. By November 2021, RBT re-incorporated as a North Dakota limited liability company. On December 7, 2021, RBT filed a form to change the address of its principal executive office to Fargo, North Dakota.

16.    Lawrence DeMonico holds himself out to be the President of RBT.

17.    Kevin Maxwell, an attorney, who has represented RBT in multiple matters, holds himself out to be the sole owner of RBT.

18.    Maxwell, DeMonico, LeLeux, and Register maintain a substantial financial interest in RBT through a complex set of interlocking companies.

19.    RBT is the maker and distributor of the FRT-15. The FRT-15 is a trigger assembly designed to be fitted into an AR-15 style firearm. It replaces the standard trigger assembly for such firearm.



20.    The Wide Open Trigger (WOT) is also a trigger assembly designed to be fitted into an

AR-15 style firearm.  The WOT is a copy of the FRT-15.

 

21.    On or about May 24, 2021, an ATF Special Agent acting in an Undercover (UC) capacity

purchased a RBT FRT-15 from a website.  Upon receipt, on or about June 2, 2021, the FRT-15

was retrieved by an ATF Special Agent and shipped to FATD for technical examination by a

Firearms Enforcement Officer (FEO).

22.    On or about July 15, 2021, an FEO issued a Report of Technical Examination in which

the FEO observed that the FRT-15 is a drop-in fire control group manufactured by Rare Breed

Triggers and which was not marked with a serial number.  The FEO further observed that upon

installing the FRT-15 into an ATF-owned AR style rifle, the rifle was test-fired with

successively increasing rounds of ammunition loaded into the magazine.  The FEO test-fired the

firearm first with the magazine loaded with one round of ammunition, followed by a magazine

loaded with two-rounds, then a magazine loaded with five rounds.  Each method of test-fire was

repeated one time.  For the test-fires with multiple rounds (two rounds, and then five rounds), the

AR-15 style rifle equipped with the FRT-15 expelled all rounds loaded in the magazine

automatically with a single pull or function of the trigger.  In other words, when the magazine

was loaded with two rounds, both rounds of ammunition were fired from the firearm when the trigger was pulled. When the magazine was loaded with five rounds of ammunition, all five rounds were fired from the firearm when the trigger was pulled.

23.     The FEO concluded that the examined FRT-15 is a combination of parts, designed and intended for use in converting a weapon (AR-15 style) into a machinegun, and is a "machinegun" under the GCA and NFA.

24.     On July 27, 2021, the Special Agent in Charge and Division Counsel of the ATF Tampa Field Division met with Kevin Maxwell at an ATF office in Orlando, Florida, for the purpose of serving on RBT a cease-and-desist letter informing RBT that ATF had examined the FRT-15 and determined it to be a machinegun. The letter further informed RBT that because the FRT-15 is a machinegun, RBT must cease and desist the manufacturing and transfer of the FRT-15 and, within five days of receipt of the letter, develop a plan for addressing the machineguns already distributed.

25.     The letter informed RBT of the potential civil and criminal penalties, which included, if they failed to cease and desist, possible referral to the United States Attorney's Office for criminal prosecution; tax assessment and collection; and/or seizure and forfeiture of firearms and property involved in violations of federal law.

26.     Maxwell stated that he was not surprised by the ATF determination and added that he believed that ATF would have tried to stop RBT from selling the FRT sooner than it had. Maxwell stated that RBT would not comply with the cease-and-desist letter, and that it already had drafted pleadings to file.

27.     On August 2, 2021, RBT and Kevin Maxwell filed a civil lawsuit against the Attorney General and various ATF officials in their official capacities, in the Middle District of Florida

(*Rare Breed Triggers, LLC et al., v. Garland, et al.,* 6:21-cv-01245), seeking declaratory and injunctive relief.  On August 5, 2021, United States District Judge Carlos E. Mendoza denied RBT and Maxwell's motion for a Temporary Restraining Order.  On October 21, 2021, Judge Mendoza denied RBT and Maxwell's Motion for a Preliminary Injunction.  On October 28, 2021, Judge Mendoza *sua sponte* dismissed the matter without prejudice.

28.     On November 15, 2021, ATF issued another letter to Maxwell and RBT reinforcing ATF's determination that the FRT-15 is a "machinegun" under federal law in that it allows a firearm to expel more than one shot, without manual reloading, with a single, continuous pull of the trigger.  The letter again warned RBT of the possible penalties associated with non-compliance.

### RBT Lawsuit for Patent Infringement

29.     On or about March 8, 2022, RBT, and an associated entity, ABC IP, LLC, filed a complaint in the Northern District of Florida for patent infringement against the manufacture of the WOT and other (*Rare Breed Triggers, LLC et al., v. Big Daddy Enterprises, Inc., et al.,* 1:22-cv-00061).  On October 19, 2022, the District Court entered a consent judgement and permanent injunction in favor of RBT.  Upon information and belief, as part of an agreement between the parties, RBT acquired the remaining stock of WOTs.

30.     By this point, ATF had also examined the WOT.  On or about October 20, 2021, an FEO assigned to ATF's FATD issued a Report of Technical Examination in which the FEO determined that, like the FRT-15, the WOT was a "machinegun" under federal law.  The examined WOT also lacked a required serial number.

## District of Utah Federal Search Warrant and DeMonico Interdiction

31.    At no time did RBT comply with the cease-and-desist letter or heed any ATF warnings regarding the FRT-15. RBT continued to sell and distribute the FRT-15. The ATF investigation revealed that the FRT-15s, though being sold by RBT with shipping labels indicating their origin in Florida, were actually being shipped by a company called 3rd Gen Machine, Inc., (3rd Gen) in Logan, Utah. It was subsequently determined that 3rd Gen was the contract manufacturer of the FRT-15 and was also shipping orders on behalf of RBT directly from 3rd Gen's premises via common carrier.

32.    On January 13, 2022, an ATF Assistant Special Agent in Charge and Resident Agent in Charge of the ATF's Salt Lake City Field Office, Denver Field Division, served a cease-and-desist letter on 3rd Gen regarding the FRT-15. The 3rd Gen cease-and-desist contained the same information and warnings as was contained in the cease-and-desist letter served on RBT and Maxwell.

33.    3rd Gen ignored the cease-and-desist letter and continued to manufacture and ship the FRT-15 on behalf of RBT.

34.    On March 26, 2022, ATF executed a federal search warrant issued in the District of Utah, at the premises of 3rd Gen Machine, Inc., (3rd Gen), seizing FRT-15s components and other evidence. After the warrant was executed, RBT, through Lawrence DeMonico, made public statements on social media regarding RBT's supplier being "raided" by ATF.

35.    On or about April 13, 2022, ATF learned through the United States Attorney's Office in Utah, that counsel for 3rd Gen communicated to the United States Attorney's Office that there remained FRT-15s that were not located and seized by ATF during the execution of the search warrant on March 26, 2022, and which 3rd Gen wished to turn over to ATF. On April 14, 2022,

an ATF Special Agent contacted 3rd Gen's counsel regarding the FRT-15s. 3rd Gen's Counsel advised that the FRT-15s were on a small pallet in the parking lot. Later that same day, counsel for 3rd Gen again contacted ATF and informed ATF that an individual associated with RBT was at 3rd Gen's location and was taking the FRT-15s. This person was subsequently identified as Lawrence DeMonico.

36.    DeMonico told the General Manager of 3rd Gen, "I'm here to take my shit [FRT-15s]". The General Manager told him not to take the items and advised him that ATF was coming to take them. DeMonico responded, "I don't care." DeMonico proceeded to load boxes that contained FRT-15s and component parts—the same products 3rd Gen had set aside for ATF—into a U-Haul van, and drove off.

37.    DeMonico was interdicted by ATF Special Agents in New Mexico on April 15, 2022. During the interdiction, ATF seized nearly 1,000 FRT-15s, and over 15,000 parts and components meant to assemble an FRT-15.

38.    On or about February 14, 2023, the United States Attorney's Office for the District of Utah filed a verified complaint for forfeiture *in rem* with respect to the FRT-15s and component parts seized from DeMonico as a result of the April 15, 2022, interdiction, as well as from the March 26, 2022 search warrant at 3rd Gen (*United States of America v. Miscellaneous Firearms and Related Parts and Equipment Listed in Exhibit A*, 1:23-cv-00017). RBT and Maxwell have filed a claim for the return of the seized items, and the matter is ongoing.

### ATF Open Letter

39.    On or about March 22, 2022, ATF issued a document entitled "Open Letter to All Federal Firearms Licensees", available at https://www.atf.gov/firearms/docs/open-letter/all-ffls-mar-2022-open-letter-forced-reset-triggers-frts/download. The Open Letter informed the general

public that certain "forced reset triggers" allow a firearm to automatically expel more than one

shot by a single, continuous pull of the trigger, and are therefore "machineguns" under federal

law.  The FRT-15 and WOT, though not specifically identified in the letter due to restrictions

imposed by 26 U.S.C. § 6103, are such devices.

### District of North Dakota Lawsuit

40.     On May 16, 2022, RBT again sued ATF, this time in the District of North Dakota (*Rare

Breed Triggers, LLC, v. Garland et al.*, 3:22-cv-00085).  On November 4, 2022, United States

Magistrate Judge Alice R. Senechal dismissed the complaint without prejudice for lack of venue.

### RBT Sells WOTs

41.     In November 2022, withing weeks of their North Dakota lawsuit being dismissed, RBT

began selling WOTs to consumers throughout the United States via the United States Postal

Service (USPS).

42.     In a mass marketing email sent on November 22, 2022, RBT stated that "As crazy as it

might sound, we have WOTs for sale.  And you assuredly have questions but unfortunately, we

can't really answer them.  We can't tell you where these came from and … we can't tell you why

we can't tell you but rest assured, these are real WOTs.  Notwithstanding the cloak and dagger,

these WOTs are the property of RBT and they are available now at a ridiculously huge

discount."

43.     On November 28, 2022, RBT began shipping WOTs.  According to records obtained

from USPS, between November 28, 2022, and January 16, 2023, RBT shipped packages

presumptively containing WOTs to an estimated 2,409 unique purchasers.  At least 22 such

shipments were to individuals located in North Dakota.  It is not known how many WOTs were

distributed by RBT, but based on package weight, it is estimated that at least some recipients

received multiple WOTs in a single shipment.  Further, some recipients received multiple WOTs across two or more shipments.

44.    According to USPS records, the shipping account used to mail the WOTs was opened on November 22, 2022, and is registered to Lawrence DeMonico under the company name Rare Breed Triggers.  The billing address is listed at 3523 45th Street South, Suite 100, Fargo, North Dakota, 58104.  The registrant's physical address and mailing address are listed as 3523 45th St S., Fargo, North Dakota, 58104.

45.    On or about November 23, 2022, ATF Special Agents in the New York Field Division began directing the UC purchase of WOTs from RBT by UC personnel across several field divisions.  These purchases were made through RBT's website www.rarebreedtriggers.com.

46.    Between November 23, 2022, and November 29, 2022, ATF Special Agents purchased 31 WOTs from RBT.  The packaging for these shipments universally identified the return address as "Red Beard Treasures, 3523 45th Street South, Suite 100, Fargo ND 58104.  Further, the packing slips accompanying the shipments identified the seller as Rare Breed Triggers, 3523 45th Street South, Suite 100, Fargo, ND 58104.  ATF UCs were able to purchase multiple WOTs.



According to USPS, based upon a review of some tracking numbers associated with the UC purchases, RBT shipments originated from North Dakota and Texas.

47.    These 31 WOTs were sent to ATF's FATD for examination.  On January 13, 2023, an ATF FEO issued a Report of Technical Examination, in which the FEO confirmed the WOTs functioned in the same manner as previously examined WOTs and FRT-15s.  Based upon the FEO's examination and testing of a representative sample of the WOTs, the FEO concluded that the WOTs are "machineguns" under federal law in that each WOT is a combination of parts designed and intended for use in converting a weapon into a machinegun, and through demonstration, each successfully converted a semi-automatic rifle into a machinegun.

### Eastern District of New York Lawsuit

48.    On January 19, 2023, the United States Attorney's Office for the Eastern District of New York filed a complaint against RBT, DeMonico, Maxwell, and an associated entity, Rare Breed Firearms, pursuant to 18 U.S.C. § 1345 seeking injunctive relief (*United States of America v. Rare Breed Triggers et al.,* 1:23-cv-00369).  On January 25, 2023, United States District Judge Nina R. Morrison issued a TRO against the Defendants.  The TRO remains in effect and the litigation is ongoing.  A hearing on the government's motion for a preliminary injunction was held August 1 and 2, 2023, and the court has not ruled on the motion.

49.    On July 7, 2023, DeMonico was deposed by the government in connection with the lawsuit filed in EDNY.  DeMonico was represented by counsel.  Kevin Maxwell participated by teleconference.

50.    DeMonico was asked about existing inventory of WOT, to which he responded:

Okay.  Glad that was your next question, because I was going to make sure you didn't move on.  Yes, we still have quite a bit of WOTs.

I find it very interesting that, throughout all of this, the ATF has never

actually showed up to my office in Fargo, North Dakota, because I have a ton of

them sitting in my office in Fargo, North Dakota.

And if the end of this depo results in a phone call to the ATF, I just ask

that they ask to be let in the door and not, you know, knock it off its hinges.

But other than that, we also have inventory in storage units.

51.     When pressed to the quantity of WOTs at RBT's office in Fargo, ND, DeMonico

estimated that there were five or six boxes each containing approximately 100 WOTs.

DeMonico also confirmed that the WOTs were shipped to RBT by "Big Daddy Unlimited"—

who RBT has sued for patent infringement in the Northern District of Florida—and that they

were shipped to RBT by common carrier.  DeMonico stated that RBT received the WOTs as part

of the settlement agreement between the parties.

52.     The Assistant United States Attorney (AUSA) asked when RBT received "these five or

six boxes" to which, DeMonico responded:

Okay. I want to back up to be very, very clear.  I feel like there's been a

little bit of a misunderstanding.  There's a lot more than five boxes – five, six

boxes.

There's five or six boxes in my office in Fargo.  There are many, many,

many – many more boxes in storage units.

53.     DeMonico was asked how many WOTs are in each storage unit.  He responded, "I can't

even begin to guess, but it's a lot."

54.     When asked where the storage units are located, DeMonico responded, "There is one

storage unit in Fargo, North Dakota.  And there is one storage unit in the outskirts of Dallas,

Texas. The AUSA inquired about the address of the storage units, to which DeMonico

responded that he did not have the address.

55.    DeMonico was asked if he would be willing to turn the WOTs over to ATF. DeMonico

responded, "I prefer not to", and that "I still plan on winning the case." DeMonico was then

asked if he would provide the addresses for the storage units, and he responded, "I prefer not to.

I still plan to win this case."

56.    On July 10 and July 11, the United States Attorney's Office in the Eastern District of

New York inquired with counsel for RBT, DeMonico, and Maxwell whether RBT would agree

to turn over the WOTs possessed in Fargo, ND, and Dallas, TX, to ATF. The United States

Attorney's Office represented that such as a surrender would not be a waiver of any rights and

that RBT would have the ability to file a claim for the return of the WOTs in accordance with

applicable federal forfeiture law. This is a process to which RBT is familiar as they are currently

contesting the forfeiture of FRT-15s in the District of Utah. Counsel for RBT has, to this date,

not responded.

## Licensing and Registration

57.    RBT is not licensed by ATF as a Federal Firearms License (FFL) holder under the GCA.

It is not authorized under Federal law to manufacture, import, or deal in firearms. RBT is not a

Special Occupation Taxpayer (SOT) under the NFA and is not licensed under the NFA. It is not

authorized under Federal law to manufacture, import, or deal in NFA firearms, including

machineguns. There is no record of RBT submitting to ATF an application to make, receive, or

transfer an FRT-15 or WOT, nor is there a record for approval of any such activity.

58.    RBT does not have any FRT-15s or WOTs registered to it in the NFRTR. As post-1986

machineguns, it would not be permissible for RBT, Lawrence DeMonico, or Kevin Maxwell to

register in their names an FRT-15 or WOT, except for certain exceptions not applicable here. Further, because there do not appear to be any FRT-15s or WOTs marked with required serial numbers, such FRT-15s and WOTs cannot be registered in the NFRTR.

## Premises to be Searched

59.    On August 2, 2023, I conducted a business search on the website maintained by the North Dakota Secretary of State (SOS) (https://firststop.sos.nd.gov/search/business) for "Rare Breed Triggers". The search yielded one result for "Rare Breed Triggers, LLC" with SOS control ID # 005688394. According to information maintained by the SOS, RBT is a limited liability company in good standing in North Dakota with a principal address of 3523 45th Street, Suite 100, Fargo, ND 58104. This is the same address identified in the records provided by USPS and which appeared on the return shipping labels for the WOTs purchased by the ATF UCs.

60.    Kevin Maxwell is also identified within the SOS records under both the principal address and mailing address for RBT.  Upon information and belief, when Lawrence DeMonico stated in the deposition that he had WOTs at his office in Fargo, North Dakota, he was referring to 3523 45th Street South, Suite 100, Fargo, ND 58104.

61.    On July 24, 2023, an ATF Special Agent visited 3523 45th Street South, Suite 100, Fargo, ND 58104. Upon information and belief, the location is a shared office space where individuals and entities can rent individual offices and utilize common meeting rooms and receptionist support.  Suite 100 refers to the entire facility in which there appears to be approximately 97 individual offices.

62.    On August 2, 2023, ATF Special Agents visited 3523 45th Street South, Suite 100, Fargo, ND 58104 and spoke to a male located at the receptionist desk.  The male receptionist informed Special Agents that Rare Breed Triggers occupies Unit 186.  The male receptionist stated that the

employees of the business were not currently on the premises and that "they" only come to town for planned business.

## Authorization Request

63.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(o), and 26 U.S.C. §§ 5861(d) and 5861(e) have been committed by RBT, Lawrence DeMonico, and Kevin Maxwell.  Further, there is probable cause to believe that property that constitutes evidence of such violations is located at 3523 45th Street South, Suite 100, Unit 186 Fargo ND 58104 (PREMISES), including approximately 500 to 600 WOTs.

64.     Based on my experience and training, business premises will be used to house and store electronic equipment, such as computers, and store documents and records related to business activities.  Because the PREMISES have been identified as the return address for RBT's shipments of WOTs, and because DeMonico volunteered that WOTs remain at the PREMISES, there is probable cause to believe that documents and records are present at the PREMISES related to the receipt, sale, shipment, distribution, and storage of WOTs.

## Computers, Electronic Storage, Cellular Telephones and Forensic Analysis

65.     As described above and in Attachment B, this application seeks permission to search for records at the PREMISES, in whatever form they are found.  One usual form in which the records would be found in any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Federal Rule of Criminal Procedure 41(e)(2)(B).

66.    I submit that if a computer or storage medium is found at the PREMISES, there is

probable cause to believe those records will be stored on that computer or storage medium, for at

least the following reasons:

      a.    Based on my knowledge, training, and experience, I know that computer files or

remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files

downloaded to a storage medium can be stored for years at little or no cost.  Even when

files have been deleted, they can be recovered months or years later using forensic tools.

This is so because when a person "deletes" a file on a computer, the data contained in the

file does not actually disappear; rather, that data remains on the storage medium until it is

overwritten by new data.

      b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack

space — that is, in space on the storage medium that is not currently being used by an

active file — for extended periods of time before they are overwritten.  In addition, a

computer's operating system may also keep a record of deleted data in a "swap" or

"recovery" file.

      c.    Wholly apart from user-generated files, computer storage media — in particular,

computers' internal hard drives — contain electronic evidence of how a computer has

been used, what it has been used for, and who has used it.  To give a few examples, this

forensic evidence can take the form of operating system configurations, artifacts from

operating system or application operation, file system data structures, and virtual memory

"swap" or paging files.  Computer users typically do not erase or delete this evidence,

because special software is typically required for that task.  However, it is technically

possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically

downloaded into a temporary Internet directory or "cache.

67.    As further described in Attachment B, this application seeks permission to locate not only

electronically stored information that might serve as direct evidence of the crimes described on

the warrant, but also forensic evidence that establishes how the Device was used, the purpose of

its use, who used it, and when.  There is probable cause to believe that this forensic electronic

evidence might be on the Device because:

>   a.  Data on the storage medium can provide evidence of a file that was once on the
>
>   storage medium but has since been deleted or edited, or of a deleted portion of a
>
>   file (such as a paragraph that has been deleted from a word processing file).
>
>   b.  Forensic evidence on a device can also indicate who has used or controlled the
>
>   device.  This "user attribution" evidence is analogous to the search for "indicia of
>
>   occupancy" while executing a search warrant at a business.
>
>   c.  A person with appropriate familiarity with how an electronic device works may,
>
>   after examining this forensic evidence in its proper context, be able to draw
>
>   conclusions about how electronic devices were used, the purpose of their use, who
>
>   used them, and when.
>
>   d.  The process of identifying the exact electronically stored information on a storage
>
>   medium that is necessary to draw an accurate conclusion is a dynamic process.
>
>   Electronic evidence is not always data that can be merely reviewed by a review
>
>   team and passed along to investigators.  Whether data stored on a computer is

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

68.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

69.    It is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well. Typically, law enforcement will perform an onsite preview of all electronic devices owned by, used by, or accessible to the suspect. If, in this case, law enforcement can preview and determine that the electronic devices (1) are not owned by, used by, or accessible to the suspect, or (2) do not contain fruits and/or evidence of the violations listed, the electronic devices will be returned to their rightful owner.

## Conclusion

70.    Based on the information set forth in this affidavit, I respectfully submit that there is

probable cause to believe that the PREMISES and computer or storage media therein contain

fruits, evidence, and instrumentalities of violations of the GCA, specifically 18 U.S.C. § 922(o),

and the NFA, specifically 26 U.S.C. §§ 5861(d) and 5861(e), as described in "Attachment B".

Christine Gass
Special Agent
Bureau of Alcohol, Tobacco,
    Firearms and Explosives

Sworn to before me and signed in my presence this __3rd__ day of August, 2023.

Alice R. Senechal
United States Magistrate Judge

## ATTACHMENT A

### (Property to be Searched)

The property to be searched is described as follows:

    The property to be search is the business location of Rare Breed Triggers, LLC, located at 3523 45th Street, Suite 100, Fargo, ND 58104, Unit 186, in Cass County, North Dakota, in the District of North Dakota.  It is located within a modular, shared office space in a single-story building with the name "Regus" prominently appearing in lettering to the left of the double glass entry doors.  It is in proximity to the intersection of 36th Avenue South, Fargo, North Dakota. Unit 186 is located in the southwest quadrant of the Regus building located at 3523 45th Street, Suite 100, Fargo, ND 58104.




## ATTACHMENT B

### (Items to be Seized)

All evidence, records, documents, fruits, and instrumentalities relating to violations of 18

U.S.C. § 922(o), and 26 U.S.C. §§ 5861(d) and 5861(e), to include:

1. All Wide Open Trigger (WOT) machineguns, Rare Breed Triggers FRT-15 machineguns, or similar forced reset triggers;

2. Any and all finished and unfinished material, components, and/or packaging to be used in the manufacture, assembly, transfer, distribution, and/or sale of the WOT,  FRT-15, or similar forced reset triggers;

3. All business, supplier, and customer transactions and records related to the manufacture, transportation, receipt, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers;

4. All bank records, credit card bills, account information, and other financial records related to or associated with RBT and its business dealings with respect to the manufacture, receipt, transportation, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers;

5. Any computer, cellular phones, computer hard drives, or other physical objects upon which computer data relating to RBT and its business dealings with respect to the manufacture, receipt, transportation, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers, that have been recorded/stored (hereinafter, "COMPUTER") that is called for by this warrant.  Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email

contacts, "chat", instant messaging logs, photographs, and correspondence;

6. Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence specifically relating to RBT and its business dealings with respect to the manufacture, receipt, transportation, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers;

7. Evidence of counter-forensic programs and associated data that are designed to eliminate data from the COMPUTER;

8. Evidence of the times the COMPUTER was used which is specifically related to RBT and the manufacture, transportation, receipt, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers;

9. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

10. Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER specially used to store records related to RBT and the manufacture, transportation, receipt, shipment, storage, transfer, distribution, and/or sale of the WOT, FRT-15, or similar forced reset triggers;

11. Contextual information, software and or/hardware necessary to understand the evidence described in this attachment. As used above, the terms "records", "documents", and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); and handmade form; and mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, digital images or photocopies).

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>3:23-mj-411 | Date and time warrant executed:<br>8/4/23  1030 | Copy of warrant and inventory left with:<br>left on desk on premises |
| Inventory made in the presence of :<br>ATF personnel | | |
| Inventory of the property taken and name of any person(s) seized:<br><br>See attached list - ATF E-Form 3400.23 | | |

| Certification |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: 8/4/23<br><br>_Executing officer's signature_<br>Special Agent Christine Gass<br>_Printed name and title_ |

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Receipt for Property and Other Items

| Page __1__ of __1__ | Case/Inspection Number<br>**778015-23-0077** | Case/Inspection Title<br>**Rare Breed Triggers, LLC** | Office<br>**Fargo Field Office** |
|---|---|---|---|

Taken from: *(name, title, address, if appropriate)*
**Rare Breed Triggers, LLC**
**3523 45th Street S, Suite 100, Unit 186, Fargo, North Dakota 58102**

Recipient: *(name, title, address, if appropriate)*

Location of Transfer or Seizure

Basis for Transfer or Seizure of Items:
**Search Warrant**

| Amount or Quantity | Description of Item(s) |
|---|---|
| 5 | Brown cardboard boxes containing approximately 192 WOT per box |
| 2 | Mail envelopes from Cadence Bank for "Rare Breed Triggers LLC" |
| 2 | Mail envelopes from US Dept. of Commerce for "Rare Breed Triggers LLC Kevin C Maxwell MBR" |
| 1 | Fedex envelope containing (1) FRT-15 and packing slip |
| 7 | USPS Priority Mail return boxes containing (1) WOT per box |
| 1 | USPS Priority Mail return box containing (3) WOT |

I hereby acknowledge receipt of the above item(s) into my custody.

Received by: *(signature)*　Date 8/4/23

Transferred by: *(signature, if appropriate)*　Date　Witnessed by: *(signature)*　Date

ATF E-Form 3400.23
Revised March 2005

Defs. App'x 063