**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:23-cv-00830-O |
| v. | ) ) | |
| MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, ET AL, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THIS COURT'S PERMANENT INJUNCTION**

## INTRODUCTION

This Court issued a clear Order: FRTs are not machineguns and the Government must return FRTs to members of the associational plaintiffs who request them. The Government has repeatedly disregarded that Order by continuing to claim in administrative proceedings that FRTs are machineguns and by outright refusing to return FRTs to NAGR members. This refusal is in open defiance of this Court's Order. Thus, the Government should be held in contempt.

The Government claims that any way it interprets this Court's orders, however unreasonable, can be justified so long as it files "notices" with the Court saying so. Opp. Br. at 1, 2. This is flat wrong. It then claims that Plaintiffs should have objected to those "notices" if they believed them to be wrong. *Id.* at 2. But Plaintiffs *did* write to the Government about these issues and gave the Government an opportunity to cure its order-violating actions. The Government refused to do so, other than returning Plaintiff Patrick Carey's property.

The Government's interpretation disregards the plain text of the Order by writing terms and conditions that are not there. For example, the Government reads language into the Court's order, such as it applying only to members at the time the litigation was filed and not members at the time the injunction was entered (the latter of which is how the plain language of the final judgment reads) and seeks to justify its actions based on that phantom language because that's how it "understood" or "construct[ed]" the Court's orders. *Id.* at 1.

The Government works mightily to shift all blame to Plaintiffs for its own failure to follow this Court's orders. But that is not how Court orders work. The Government overstepped the law and infringed upon the rights of the Plaintiffs and their members. The onus is on *the Government*, not Plaintiffs, to comply with this Court's Order or seek clarification or modification. It did not do so, choosing instead to disregard the clear directives of this Court. An order should be entered

1

finding it to be in contempt.

## ARGUMENT

I.    **The Government has Not Complied with this Court's Injunction Requiring the Return of Forced Reset Triggers.**

a.    **The plain language of the July 23 and 24, 2024, Court Orders and Fifth Circuit law confirm that the final judgment's injunction to organizational plaintiffs applied to *all* members of the organizational plaintiffs and to their downstream customers.**

Plaintiffs specifically identified four members to whom the Government had an obligation to return FRTs.[1] The Court's final judgment states that its "injunction covers the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and any downstream customers of any commercial member of an Organizational Plaintiff" so far as it does not interfere with other courts. Final Judgment ¶ 5, ECF No. 101. This final judgment was issued on July 24, 2024. The plain language of the Court's order, then, is that it applies to "Organizational Plaintiffs and their members." There is no temporal limitation. The Court could have stated that the injunction applied only to those members that were members at the time the lawsuit was filed. It did not. The Government's tortured reading otherwise is not reasonable. If the Government would like to *add* words to the final judgment, it can file a motion with the Court. Its unilateral "notices" advising how the Government reads the Court's orders does not make it so, nor save it from contempt.

What is more, the Government does not seriously contest the principle. Instead, the Government makes a vague reference to Article III and equity as somehow precluding members

---

[1] Efforts to secure the return of FRTs appear to have been hampered in part by the ATF's failure to initially inform the agency at large, including the field offices, of the Court's July 23 and 24 orders. By its own declaration, the Government did not inform the ATF of this Court's orders until it received the August 20, 2024, order denying the Government's motion to stay. *See* Defs. App'x 2, 6, 7, Declaration of Matthew P. Varisco (Dec. 11, 2024) ("Varisco Dec.") ¶¶ 5-7, 17, 19.

of the organizational plaintiffs from relief if their membership occurred after the date of the filing of the complaint but before the issuance of the final judgment. *Id.* at 16. This is plainly wrong. For example, class action lawsuits can and frequently do include future class members and are not limited to members of the class at the time the complaint was filed. *E.g.*, *Cnty. of Suffolk v. Long Island Lighting Co.*, 14 F. Supp. 2d 260, 265–66 (E.D.N.Y. 1998) ("Class actions are predicated on the notion that the interests of all class members are fully represented through the class representatives and through class counsel. It is as if each sues individually in a consolidated action. All party-members, including absent members and future members, are equally bound by the strictures of the class action judgment."). The Government's attempt to locate such a limitation in Article III is thus a figment of its own imagination—there is no such constitutional limit.

The Government's attempt to distinguish the Fifth Circuit's decision in *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), is also unavailing. There, this Court granted an injunction covering not just members on the date the injunction was entered, but also members that joined *after* that date. *Franciscan Alliance, Inc. v. Becerra*, 553 F. Supp. 3d 361, 378 (N.D. Tex. 2021), *amended*, No. 7:16-CV-00108-O, 2021 WL 6774686 (N.D. Tex. Oct. 1, 2021), and *aff'd in part, dismissed in part*, 47 F.4th 368 (5th Cir. 2022). The Fifth Circuit dismissed as moot the plaintiffs' APA claim, but then affirmed this Court's "judgment in all other respects." *Franciscan*, 47 F.4th at 371. In other words, the Fifth Circuit affirmed this Court's providing injunctive relief to members at the time the injunction issued and to members who signed up thereafter.

The Government's interpretation seeks to unliterally rewrite this Court's Order to suit the Government's own policy preferences. It is based neither on law nor a good faith reading of this Court's Order.

**b.  There are no overlapping decisions that would prevent the return of FRTs to the Rare Breed Parties.**

There are no overlapping decisions that would prevent the return of FRTs to the Rare Breed Parties. The Government acknowledges that this Court was careful to abide by precedent regarding overlapping *decisions* from coordinate courts. Opp. Br. at 3. As supported by the Court's written decision, the overlapping decision with which the Court was concerned vis-à-vis the Rare Breed Parties is the E.D.N.Y. preliminary injunction. It is undisputed that the E.D.N.Y. injunction did not restrict the Rare Breed Parties from possessing FRTs and that the lawsuit there does "*not* include any claims that the Rare Breed Parties engaged in criminal conduct." Order at 59, ECF No. 100.

But the Government attempts to contort the court's orders to prevent the Rare Breed Parties from receiving their property. For example, the mere presence of a forfeiture action in Utah, *see* Opp. Br. at 17, where no decision on the merits has been entered, does not excuse the Government from returning related triggers to parties covered by the Court's final judgment. The Government is free to do so without any effect on an "overlapping decision" (since one does not exist), and it must do so to comply with this Court's final judgment. Much less does the mere fact that a warrant (predicated on a now-vacated classification report) exists in North Dakota, *see id.* at 17-18, render this Court's final judgment impotent. The Government's reliance on the Federal Rules of Criminal Procedure and 18 U.S.C. § 981(c), *see id.* at 18, has no bearing here. This Court's final judgment has invalidated the *premise* for both the Utah forfeiture action and the North Dakota subpoena. Both were based on a misreading of the law and ATF classifications of FRTs that this Court has vacated and declared unlawful.

The Government blames the Rare Breed Parties; it claims they should go to those courts for relief. Putting aside that the Rare Breed Parties did move in Utah to get the property back, it is

the Government that should be alerting those courts to this Court's orders. *See Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir. 1983) (the duty "to ensure that the tribunal is aware of significant events that may bear directly on the outcome of litigation" is "especially true for government attorneys, who have special responsibilities to both this court and the public at large"). The Government repeats throughout its opposition that the Court's orders cannot interfere with a sister's court's jurisdiction. But this Court's orders *do* and *can* impact the Government's ability to continue to use the unlawful definition and classification that FRTs are machineguns particularly where, as here, the Rare Breed Parties at issue are members of the associational plaintiff group in this case.

While the Court will not tread on the jurisdiction of a sister court, the Government is not immune from the ramifications (effects, consequences) of this Court's Order. That is, this Court "VACATE[D] Defendants' unlawful classification of FRTs as "machineguns," "DECLARE[D] unlawful the ATF's determination that FRTs are "machineguns," and enjoined the Defendants from "Initiating **or pursuing** criminal prosecutions for possession of FRTs" or "Initiating **or pursuing** civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns." Final Judgment, ECF No. 101 (emphasis added).

In other words, the Government, as a litigant, cannot continue to pursue any criminal or civil proceeding "based on the claim that FRTs are machineguns." The Court has not stepped on the toes of its sister courts or ordered another court to do or not do anything, but it has ordered what a party (the Government) can or cannot do in those other proceedings.

## II.    The Government's Continued Representations that FRTs are Machineguns Violate this Court's Final Judgment.

The Government's continued representations that FRTs are machineguns violate this Court's final judgment. This Court's final judgment ruled pointblank that FRTs are not

machineguns and required the Government to issue corrective notices to those people who it sent the unlawful notice that FRTs are machineguns. It is both contrary to the text of the Order and illogical for the Government to be taking agency action premised on FRTs being machineguns. But that is exactly what they are doing.

Whether it is refusing to reconsider its intent to deny Rare Breed Firearms a federal firearms license and instead hold a hearing on that issue, submitting an opposition brief in the Utah forfeiture action arguing that FRTs are machineguns, or holding a press conference to include reference that FRTs are machineguns, these actions directly contradict the vacatur and declaration of the Court's final judgment. The Government's attempts to explain away these actions come up short.

### a. Federal Firearms License

This Court declared that FRTs are not machineguns. At minimum, this declaration resolves the matter as between NAGR members and the Government. Rare Breed Firearms ("RBF") is a NAGR member and has been since before the complaint was filed in this case. Pls.' Reply App'x 1, Declaration of Lawrence DeMonico (Dec. 18, 2024) ("Reply DeMonico Dec."), ¶ 5. Thus, as a matter of law, FRTs *are not* machineguns in any new proceeding involving RBF save the E.D.N.Y. case itself.

In spite of this clear and unequivocal conclusion, the Government inexplicably continues to claim that FRTs are machineguns for purposes of RBF's federal firearms license. This is an argument that is foreclosed by this Court's order.

Moreover, it undisputed that the E.D.N.Y. lawsuit contained *no* criminal claim and that there must be a *criminal* violation of the Gun Control Act to deny the license on the grounds ATF based its denial. Thus, by its own terms, the E.D.N.Y lawsuit does not apply to the FFL application.

The Government's response is that the E.D.N.Y. lawsuit and preliminary injunction was

6

not based on ATF's classification of FRTs, Opp. Br. at 19, and that the Court's orders don't apply to non-enforcement actions like an FFL hearing, *id.* at 6. These arguments fail.

First and foremost, it ignores this Court's declaratory judgment, which adjudicated the status of FRTs.

Second, it seeks to draw a distinction between the ATF's classification and the Government's interpretation of the statute that was rejected by the Fifth Circuit. *Franciscan Alliance* rejected an agency's attempt to "implicitly argue[] that a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different," concluding "as the Court recently noted in *FEC v. Cruz*, a challenge to an agency regulation is necessarily a challenge to the underlying statute as well . . . because an agency 'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute.'" 47 F.4th at 378 (quoting *FEC v. Cruz*, 596 U.S. 289, 301 (2022)).[2]

Third, while the Court's orders specify enforcement actions in its injunctive relief, its declaration that FRTs are not machineguns and vacatur of ATF classifications stating otherwise prevent ATF from taking the contrary position. That is, Plaintiffs understand the final judgment enjoined Defendants from initiating or pursuing criminal prosecutions and civil proceedings for possessing, selling, or manufacturing FRTs. Final Judgment, ECF No. 101. But it also vacated and set aside Defendants' unlawful classification of FRTs as machineguns, and declared unlawful Defendants' determination that FRTs are machineguns. This prohibits the Government from taking

---

[2] The Government claims "prosecutions and other enforcement actions are not 'undertaken on the basis of the classification' because the ATF's classification does not carry any 'binding legal effect apart from the statute.'" *See* Opp. Br. at 18 (quoting ECF No. 105 at 5). But its own exhibits belie this claim. *See* Defs. App'x 10, Varisco Dec. ¶ 33 ("Lawrence DeMonico knew *that ATF had classified the FRT-15's predecessor device*, the AR-1, as a machinegun and he knew that ATF had issued a cease-and-desist letter on July 27, 2021, as to the manufacture and transfer of FRT-15s as machineguns. . . . *As such, there was evidence that Mr. DeMonico knew of his legal obligations* regarding the FRT-15 and purposefully disregarded them." (emphasis added)); Exhibit F, Def. App'x at 043, 045, 047-048 (referencing Technical Examination Reports for the FRT-15 and WOT and ATF Open Letter concerning Forced Reset Triggers).

a position contrary to that declaration. The Government took a contrary position when it refused to reconsider its intent to deny the FFL even after receiving this Court's order.

### b.    Utah Forfeiture and North Dakota Seizure

This Court declared "unlawful Defendants' determination that FRTs are 'machineguns.'" Opinion at 62 (ECF No. 100). Yet Defendants continue to offer that determination in the forfeiture action in Utah, where upwards of 1000 FRTs and 15,000 component parts remain unjustly out of the Rare Breed Parties' possession. Indeed, in its Utah motion response the Government seeks to relitigate the question of whether FRTs are machineguns—a question that was definitively answered by this Court's vacatur and declaratory judgement as between members of the associational plaintiffs and the Government. *See* Response to Motion for Summary Judgement at 10-15, *United States v. Misc. Firearms & Related Parts & Equip. Listed in Ex. A*, No. 1:23-cv-00017 (D. Utah Nov. 14, 2024). The Government further claims that this Court's vacatur is of no practical effect, and that the Utah court can address the question of the status of FRTs *de novo*. *See id.* at 20 (under the heading "The *NAGR* Vacatur Has No Bearing Here."). In short, the Government is blatantly disregarding the import of the ruling of this Court, including this Court's explanation that "Vacatur of the ATF's unlawful action classification of FRTs as machineguns achieves the same effect here as a nationwide injunction." Order at 53, ECF No. 100.

In North Dakota, the Government failed to ever file a forfeiture action, which it was obligated to do, denying due process. Even without this Court's final judgment, the Government would have to return to the Rare Breed Parties the property seized in North Dakota.

### c.    CSPAN Press Conference

At a nationally circulated press conference, in the presence of ATF Director Dettelbach and Deputy Attorney General Monaco, US Attorney Kavanaugh referenced the Eastern District of New York case and stated that a "firearms company [] was illegally selling forced reset triggers, a

device designed to convert AR-15 type rifles into machineguns themselves," *id.* (citing recording at 37:18-36). The only reasonable interpretation of this statement is that the Government has not only *not* sent out corrective notices, as it is required to do under this Court's Order, but is instead continuing to spread misinformation by continuing to falsely assert that FRTs are machineguns.

The Government's principal response to being called to task for hosting a press conference on machinegun conversion devices ("MCDs") is that FRTs are not MCDs so the MCD press conference did not infringe upon the Court's orders. Opp. Br. at 21-22. But that's both tautological and not what US Attorney Kavanaugh actually said.

To be clear, the contemptuous activity was not the Government holding an MCD press conference. It was including FRTs at that MCD press conference as an example of an illegal device, especially when the Government continues to refer to FRTs as MCDs. While it is true that what US Attorney Kavanaugh said was a summary of the Easter District of New York opinion, in context and with the omission of any mention of this Court's ruling to the contrary, it can only be understood as a reaffirmation of the Government's (vacated) position that FRTs are machineguns. This omission is all the more ironic given that the Government's actual claim in the Eastern District of New York is in part that the Rare Breed Parties committed fraud by failing to tell customers how the ATF might in the future classify FRTs. By the Government's own standards then, its material omission is deceptive and in clear disregard of this Court's Order.

## CONCLUSION

As the foregoing demonstrates, Defendants should be held in contempt and ordered to comply with the orders of this Court.

Date: December 18, 2024

Respectfully submitted,

/s/Gary M. Lawkowski
Gary M. Lawkowski (VA Bar No. 82329)*
David A. Warrington (VA Bar No. 72293)*
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703)-574-1654
glawkowski@dhillonlaw.com
dwarrington@dhillonlaw.com

Whitney A. Davis (TX Bar No. 24084843)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue, Suite 300
Weatherford, TX 76086
Telephone: (703) 748-2266
whit@ekdlaw.com

Glenn Bellamy (OH Bar No. 0070321)*
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

Date: December 18, 2024

By: /s/ Gary M. Lawkowski
Gary M. Lawkowski