IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,[1]<br><br>Defendants. | Case No. 4:23-cv-00830-O |

## NOTICE OF COMPLIANCE

Defendants respectfully submit this Notice of Compliance to inform the Court of actions taken by the Defendants to comply with the Court's July 24, 2024 Final Judgment, *see* ECF No. 101 ("Final Judgment"), as modified by the August 20, 2024 Order, *see* ECF No. 112 ("Order").

1. The Final Judgment ordered Defendants, among other things, "to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision." Final Judgment at 2.

2. On August 1, 2024, Defendants filed a Motion to Stay the Judgment Pending Appeal, ECF No. 104, explaining, *inter alia*, that the Court's return requirement "presents multiple compliance problems," ECF No. 105 at 2. As Defendants described, "ATF does not know the identities of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Pamela Bondi is automatically substituted as a defendant in her official capacity for former Attorney General Merrick Garland. Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives Marvin Richardson is automatically substituted as a defendant in his official capacity for former Director Steven Dettelbach.

1

Organizational Plaintiffs' claimed members, let alone which of those members is entitled to return of their FRT devices." *Id.* (citing ECF No. 104-1 at ¶ 5 ("Varisco Decl.")). Therefore, "ATF has no ability to determine who must be returned devices under the Order." *Id.* Moreover, even if an individual self-identifies as a member of an Organizational Plaintiff, "ATF does not have the means to verify the accuracy of that representation, or whether they were, in fact, a member at the time the complaint was filed, as is necessary to receive relief." *Id.* (citing Varisco Decl. ¶ 5).

3. Additionally, as ATF explained, returns are time consuming and logistically complicated. ATF has a high volume of FRT-15s and WOTS in its possession, which are located at different points throughout the country. *See id.* at 3 (citing Varisco Decl. ¶ 6). To effectuate the returns, ATF would have to determine which of those devices belong to Organizational-Plaintiff members—presenting all the problems outlined in *supra* ¶ 2; run a background check to ensure that those members are not otherwise prohibited persons who cannot legally own a firearm; and coordinate with the owner and relevant field office where the device is held to arrange for the return. *See* ECF No. 105 at 3 (citing Varisco Decl. ¶¶ 9-15).

4. ATF also identified other foreseeable scenarios where it "is not clear what ATF is to do in such circumstances to avoid non-compliance." *Id.* This includes "that some portion of Plaintiffs' members will not be able to be located (*e.g.*, because they have moved without forwarding information or their mail is returned as undeliverable); will not respond to ATF's outreach; will decline to accept the return of their device(s), either because they do not want them or because they would prefer to wait to see if this Court's judgment is ultimately affirmed; or will be located in states where possession or sale of the devices are illegal under state law." *Id.*

5. While the Court denied Defendants' Motion to Stay, it found the above-listed "practical issues of complying" with the Final Judgment's return requirement to be "well-taken," and thus "modif[ied] the deadline of the . . . return of F[RT]s in the final judgment" to "be completed by

February 22, 2025." Order at 14-15. However, the Court excepted from that modification circumstances where "Individual Plaintiffs or members of the Organizational Plaintiffs . . . specifically request the return of their FRT devices and provide sufficient documentation to the ATF." *Id.* In those circumstances, Defendants must effectuate the returns "as soon as is practicable following the specific request." *Id.*

6. Consistent with that Order, ATF developed and implemented a process for handling returns of FRT-15s and WOTs when requested by an Individual Plaintiff or covered member of an Organizational Plaintiff. *See, e.g.*, ECF No. 118-1 at ¶¶ 7-8. However, ATF continues to face the same administrability concerns outlined in its Stay Motion and above as to the February 22, 2025 deadline for returns to unidentified members. Moreover, as described in the attached Second Declaration of Matthew P. Varisco ("2d Varisco Decl."), after the Supreme Court's decision in *Cargill v. Garland*, 602 U.S. 406 (2024), ATF has been in the process of returning all non-mechanical bump stocks in its custody to identified owners, which consumed a significant amount of the agency's limited resources. 2d Varisco Decl. ¶ 10. ATF also sought to keep the two return processes separate to avoid any confusion that may have resulted from comingling them. *Id.* Notwithstanding these practical issues, ATF has undertaken, and continues to take, the following steps to ensure compliance with the Court's return requirements, as explained in the Second Varisco Declaration.

7. On January 16, 2025, ATF sent a notice ("Notice") marked urgent to the leadership of every ATF Field Division summarizing the Court's orders in this case and, specifically, ATF's return obligations. *Id.* ¶ 11. The Notice directed that, to facilitate returns, each field division must provide a point of contact to Field Management Staff by January 21, 2025, and search ATF's case management systems to identify all entries pertaining to FRT-15s and WOTs taken into ATF custody. *Id.* A follow up meeting was held on January 29, 2025, with the identified points of contact, the Division Chief,

3

Field Management Staff, and attorneys from the Office of Chief Counsel to provide further guidance and respond to any questions. *Id.*

8. Because there was no "FRT" option regarding the description of these devices in ATF's case management systems, these devices were inconsistently labeled when entered into the systems (*e.g.*, FRT-15s and WOTs could be labeled as "FRTS," "MCDs," or "accessories"). *Id.* ¶ 12. Accordingly, the Notice directed all field divisions to separately conduct a physical inventory of FRT-15s and WOTs in their possession. *Id.* This physical inventory confirmed that the FRT-15s and WOTs seized are still in ATF's possession and identified any additional FRT-15s or WOTs that may be secured in ATF's vault. *Id.*

9. The Notice next directed the field divisions to determine which FRT-15s and WOTs in physical inventory were seized as part of a criminal investigation with charges other than possession of FRT-15s and WOTs in suspected violation of 18 U.S.C. § 922(o) (such as criminal investigations into individuals prohibited from possessing firearms under 18 U.S.C. § 922(g) or criminal investigations in which FRT-15s and WOTs were used in the commission of criminal activity) and which devices were seized as part of a recall/abandonment. *Id.* ¶ 13. Devices associated with such criminal cases will not be returned. *Id.*; *see* ECF No. 100 at 58 ("Summary Judgment Order") ("Defendants may still prosecute violations of otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."); Final Judgment at 2 (requiring returns of FRT devices "confiscated or seized pursuant to . . . [ATF's] classification"). *See also* Summary Judgment Order at 58 (recognizing that "respect for coordinate courts also guides the scope of the relief awarded here" and excluding from injunction "pending criminal cases since that would interfere with another court")).

10. The Notice then directed each supervisory special agent to prepare a list of FRT-15s and WOTs in ATF custody, but not subject to a pending criminal investigation or case, and to record

for each FRT-15/WOT: the possessor's name; last known address; phone number; email address (if known); case number; date of seizure; and item number. 2d Varisco Decl. ¶ 14. The Notice then directed each supervisory special agent to provide that list to the field division's point of contact on or before February 10, 2025. *Id.* The field division point of contact was directed to consolidate those lists so that each field division provides ATF's Office of Chief Counsel with a single list by February 14, 2025. *Id.*

11. Upon receipt of this information, the ATF Office of Chief Counsel contacted the owners of the FRT-15 and WOTs based on the last known contact information identified in the field division lists. *Id.* ¶ 15. ATF advised them that ATF has possession of their FRT-15 or WOT and that, consistent with the Court's Final Judgment and Order, if they wish to obtain return of their device, they must provide proof of membership in an Organizational Plaintiff at the time this suit was filed to a designated ATF email address. *Id.* ATF began sending such notices on February 11, 2025, and, as of the date of this filing, that notification process is complete. *Id.* ¶ 16.

12. Because this Court's orders do not require ATF to return FRT-15s and WOTs to persons prohibited from possessing firearms under 18 U.S.C. § 922(g), *see* ECF No. 100 at 60, a background check will be run on those who provide requisite proof of membership to determine whether they are entitled to a return of their FRT-15s or WOTs. 2d Varisco Decl. ¶ 18. The names of those entitled to return of their FRT-15s and WOTs will then be filtered by state of residence at the time of seizure and provided to the appropriate field division for those states, *i.e.* to the field divisions likely to maintain possession of their device(s). *Id.* The field division will then process the property for release through the field division chain of command. *Id.* ¶ 19. The field divisions will be reminded that these releases are to be expedited. *Id.* Once the appropriate approvals occur, ATF's Office of Chief Counsel will reach out to the property owner and inform them who to contact to arrange the transfer.

*Id.* ATF will not, however, return FRT-15s and WOTs in states where possession of FRT-15s and WOTs is illegal under state law. *Id.*

13. ATF has also provided information regarding its FRT-15 and WOT return efforts on its publicly available website, *see* ATF, "Rare Breed Triggers' FRT-15 and Wide-Open Triggers (WOTs) Return," *available at*: https://www.atf.gov/firearms/rare-breed-triggers%E2%80%99-frt-15s-and-wide-open-triggers-wots-return (last accessed Feb. 12, 2025), along with a dedicated email address (FRT.Return@atf.gov) for affected parties to contact ATF about return of FRT-15s and WOTs. 2d Varisco Decl. ¶ 17.

14. Finally, ATF is complying with the Court's order requiring that it send remedial notices to those who previously received ATF letters warning suspected FRT owners that possession of FRTs and FRT components was illegal. *Id.* ¶¶ 9, 20-21. On February 12, 2025, each ATF Field Division was directed to send a remedial notice to every recipient of an earlier warning notice and instructed that such notice be postmarked by February 21, 2025. *Id.* ¶ 22. ATF also posted the remedial notice on its website on February 13, 2025. *Id.* ¶ 23.

DATED: February 19, 2025

Respectfully submitted,

**BRETT A. SCHUMATE**
Acting Assistant Attorney General

ALEX HAAS
Branch Director

ANDREW I. WARDEN
Assistant Director

/s/ *Laura B. Bakst*
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch

U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-3183
E-mail: Laura.b.bakst@usdoj.gov

*Counsel for Defendants*

**Certificate of Service**

On February 19, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Laura B. Bakst*