IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-00830-O |

## SECOND DECLARATION OF MATTHEW P. VARISCO

1. I am the Assistant Director for the Office of Field Operations within the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), United States Department of Justice ("DOJ"). I have been in this position since March 2024. Prior to my current position, I was the Assistant Director for the Office of Enforcement Programs and Services (Regulatory Operations), the Special Agent in Charge of the Philadelphia Field Division, and I have served as an ATF Special Agent for over 24 years.

2. In my current senior executive position, I direct policy, conduct planning, and oversee all ATF criminal investigations and regulatory oversight for ATF's 25 field divisions.

3. I am authorized to provide this Declaration on ATF's behalf and am providing it in support of Defendants' Notice of Compliance. This declaration is based on my personal knowledge and belief, my training and experience, as well as information conveyed to me by ATF personnel in the course of my official duties.

1

4. After this Court issued its October 7, 2023 Preliminary Injunction, ATF promptly took significant steps to ensure compliance with this Court's order. These steps are outlined in the Notice of Compliance filed in this case on October 20, 2023. *See* ECF No. 57.

5. On July 23, 2024, the Court granted summary judgment in favor of the Plaintiffs. In addition to continuing to enjoin the matters covered by its preliminary injunction, the Court also imposed affirmative obligations on ATF, including a requirement that ATF return certain FRTs in its possession within 30 days and "mail remedial notices correcting [ATF's] prior mailing campaign that 'warned' suspected FRT owners that possession of FRTs and FRT components was purportedly illegal." ECF No. 100 at 63.

6. On August 1, 2024, Defendants filed a Motion to Stay the Judgment Pending Appeal, ECF No. 104, explaining, among other things, that the Court's return requirement "presents multiple compliance problems," ECF No. 105 at 2. As I described in an earlier declaration, ATF does not know the identities of the Organizational Plaintiffs' claimed members, or which of those members are entitled to return of their FRT devices. *Id.* (citing ECF No. 104-1 at ¶ 5 ("Varisco Decl.")). As a result, ATF is not able to determine who must be returned devices under the court's Order. *Id.* Even if an individual self-identifies as a member of an Organizational Plaintiff, ATF would still face difficulties in ensuring compliance. For one, ATF does not have the means to verify the accuracy of a claimed membership or whether that membership was established at the time the complaint filed, as is necessary to receive relief. *Id.* (citing Varisco Decl. ¶ 5).

7. Complying with the return requirement presents other challenges as well. As I previously explained, returns are time consuming and logistically complicated. ATF has a high number of FRT-15s and WOTS in its possession, which are kept in ATF facilities throughout the country. *See id.* at 3 (citing Varisco Decl. ¶ 6). To effectuate the returns, ATF has to determine

       which of those devices belong to Organizational-Plaintiff members—presenting all the problems outlined in above and in my prior declaration; run a background check to confirm that those members are not otherwise prohibited from legally owning a firearm; and coordinate with the owner and relevant field office where the device is located to arrange for the return. *See id* (citing Varisco Decl. ¶¶ 9-15).

8. On August 20, 2024, in response to concerns raised in Defendants' Motion to Stay, *see* ECF No. 104, the Court issued an Order granting Defendants an additional six months to comply with the affirmative obligation regarding the return of FRT-15s and WOTs. *See* ECF No. 112. Additionally, the court similarly extended the deadline for ATF to "mail remedial notices." *Id.*

9. Consistent with that Order, ATF has prepared remedial notices, which ATF has begun sending. ATF has also developed and implemented a process for effectuating returns of FRT-15s and WOTs when requested by an Individual Plaintiff or a covered member of an Organizational Plaintiff who provides ATF with evidence of a qualifying membership. However, ATF continues to face the administrability concerns outlined in its Stay Motion and in my prior and current declaration as to returns of FRT-15s and WOTs to unidentified members.

**The Return of FRT-15s and WOTS**

10. In addition, after the Supreme Court's decision in *Cargill v. Garland*, ATF has been in the process of returning all non-mechanical bump stocks in its custody to identified owners. This process consumed a significant amount of the agency's already limited resources, and ATF believed keeping these return processes separate would be more efficient, as the parameters of the returns were different and it would avoid any confusion that could result by comingling the two different devices or possessors' contact information.

11. On January 16, 2025, ATF sent a notice ("Notice") marked urgent to the leadership of every ATF Field Division summarizing the Court's orders in this case and ATF's return obligations. To facilitate returns, the Notice directs each field division to provide a point of contact to Field Management Staff by January 21, 2025, and to search ATF's case management systems to identify all entries pertaining to FRT-15s and WOTs taken into ATF custody. A follow up meeting was held by Field Management Staff and the Office of Chief Counsel on January 29, 2025, with the identified points of contact to provide further guidance regarding the returns process and obligations and to address any questions.

12. Because there is no "FRT" option when describing these devices upon entry into ATF's case management systems, they are inconsistently labeled in the systems. For example, FRT-15s and WOTs could be labeled as "FRTs," "MCDs," or "accessories". The Notice therefore directs all field divisions to separately conduct an additional physical inventory of FRT-15s and WOTs in their possession. This physical inventory will confirm the FRT-15s and WOTs seized are still in ATF's possession and identify any additional FRT-15s or WOTs that may be secured in a vault maintained by ATF.

13. The Notice next directs the field divisions to determine which FRT-15s and WOTs in its physical inventory were seized as part of a criminal investigation with charges other than possession of FRT-15s and WOTs in suspected violation of 18 U.S.C. § 922(o) and which devices were seized as part of a recall/abandonment. The former category of devices could include those seized during criminal investigations into individuals prohibited from possessing firearms under 18 U.S.C. § 922(g) or criminal investigations in which FRT-15s and WOTs were used in the commission of criminal activity. Devices associated with criminal cases will not be returned. Relatedly, devices seized pursuant to search warrants or under the jurisdiction of other courts with regard to ongoing forfeiture matters will not be returned.

14. The Notice then directs each supervisory special agent to prepare a list of FRT-15s and WOTs in ATF custody, but not subject to a pending criminal investigation or case, and to record for each FRT-15/WOT: the possessor's name; last known address; phone number; email address (if known); case number; date of seizure; and item number. The Notice then directs each supervisory special agent to provide that list to the field division's point of contact by February 10, 2025. The field division point of contact is directed to consolidate those lists so that each field division provides ATF's Office of Chief Counsel with a single list by February 14, 2025.

15. Upon receipt of this information, the ATF Office of Chief Counsel will contact via Fed Ex the owners of the FRT-15 and WOTs based on the last known contact information identified in the field division lists. In the event the address is for a P.O. Box, ATF will send the notification via certified mail. ATF will advise recipients that ATF has possession of their FRT-15 or WOT and that, consistent with the Court's Final Judgment and Order, if they wish to obtain return of their device, they must provide proof of membership in an Organizational Plaintiff at the time this suit was filed to a designated ATF email address.

16. ATF began sending notifications on February 11, 2025. As of the date of this filing, the notification process is complete.

17. Additionally, on February 10, 2025, ATF posted on its public website that it had begun sending notices to owners of FRT-15s and WOTs that were seized by ATF as part of an earlier recall effort with instructions to request their return, if the owner of the device is covered by the Court's orders. *See* ATF, "Rare Breed Triggers' FRT-15 and Wide-Open Triggers (WOTs) Return," *available at*: https://www.atf.gov/firearms/rare-breed-triggers%E2%80%99-frt-15s-and-wide-open-triggers-wots-return (last accessed Feb. 12, 2025). The website also provides a dedicated email address (FRT.Return@atf.gov) for affected parties to contact ATF about return of FRT-15s and WOTs.

18. Because this Court's orders do not require ATF to return FRT-15s and WOTs to persons prohibited from possessing firearms under 18 U.S.C. § 922(g), a background check will be run on those who provide appropriate proof of membership to determine whether they are entitled to a return of their FRT-15s or WOTs. The names of those entitled to return of their FRT-15s and WOTs will then be filtered by state of residence at the time of seizure and provided to the appropriate field division for those states, which is the field division most likely to maintain possession of the device(s).

19. The field division will then process the property for release through the field division chain of command. The field divisions will be reminded that these releases are to be expedited. Once the appropriate approvals occur, ATF's Office of Chief Counsel will promptly reach out to the property owner and inform them who to contact to arrange the transfer. ATF will not, however, return FRT-15s and WOTs in states where possession of FRT-15s and WOTs is illegal under state law.

**The Remedial Notice**

20. Consistent with the Court's orders, ATF is also sending remedial notices to all recipients of ATF's prior warning letters regarding FRTs. All recipients of the above-referenced return notices will also receive a remedial notice in the same mailing.

21. The remedial notice reiterates this Court's holding that FRT-15s and WOTs are not machineguns under the National Firearms Act and, as such, their possession is not in violation of Federal law. The notice also clarifies that any duty to notify ATF of possession of FRT-15s and WOTs, or their components, as stated in the original warning notices no longer applies.

22. On February 12, 2025, each ATF Field Division was instructed to send a remedial notice to every recipient of the earlier warning notices and directed that such notice be postmarked by February 21, 2025.

23. On February 13, 2025, ATF posted the remedial notice on its website.

Executed on February 19, 2025.

                                                                                                                 _____
Matthew P. Varisco
Assistant Director