IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>  Defendants. | Case No. 4:23-cv-00830-O |

**RESPONSE TO PLAINTIFFS' NOTICE OF NONCOMPLIANCE**

Defendants respectfully submit this Response to Plaintiffs' Notice of Noncompliance, ECF No. 127 ("Pls.' Notice"), to address Plaintiffs' assertions that Defendants have violated this Court's July 24, 2024 Final Judgment, ECF No. 101, as modified by this Court's August 20, 2024 Order, ECF No. 112. As detailed below, none of Plaintiffs' assertions has merit.

*First*, Plaintiffs assert that Defendants did not complete the return of all seized FRT-15s and WOTs by February 22, 2025. *See* Pls.' Notice at 1-3. But Defendants have developed and implemented a process for returning FRT-15s and WOTs as quickly as practicable. Defendants have been transparent with the Court and Plaintiffs regarding serious administrability difficulties, including difficulties in determining which owners are members of the Plaintiff organizations and entitled to the return of their devices and resource constraints. *See* Defs.' Notice of Compliance ("Defs.' Notice") at 2-3, ECF No. 126. Indeed, Defendants repeatedly provided notice of these logistical difficulties to the Court, explaining that "ATF continues to face the same administrability

1

concerns outlined in its Stay Motion . . . as to the February 22 deadline for returns to unidentified members." See Defs.' Notice at 3; see also Defs.' Mem. in Supp. of Mot. for Stay Pending Appeal at 3, ECF No. 105. And as Defendants have also explained, Plaintiffs could have accelerated that process by conveying to Defendants information about the members that they claim to represent who seek return of a device pursuant to the injunction. See Defs.' Reply in Supp. of Mot. for Stay Pending Appeal at 3-4, ECF No. 109. Having refused to do so, Plaintiffs' stated concerns about the time Defendants need to return devices under the only approach available ring hollow.[1]

*Second*, Plaintiffs "disagree with the need, and possibly even the legality of running background checks" prior to the return of seized FRT-15s and WOTs to eligible individuals. Pls.' Notice at 3 n.1. But this Court unequivocally excluded individuals prohibited from possessing firearms from the scope of its injunction. Order at 60, ECF No. 100 ("[T]his injunctive relief shall not extend to any individual prohibited from possessing firearms under 18 U.S.C. § 922(g)."). Accordingly, background checks prior to the return of seized FRT-15s and WOTs are necessary to ensure that Defendants do not return the devices to individuals prohibited from possessing firearms, as this Court's Order contemplated.[2]

*Third*, Plaintiffs take issue with Defendants' refusal to return FRT-15s and WOTs in states where those devices are illegal under state law. Pls.' Notice at 3-4. But this Court's orders do not

---

[1] Plaintiffs also suggest that ATF violated the Court's Order by denying a return "on the ground that the seized FRT had already been destroyed." Pls.' Notice at 2. As Defendants previously advised this Court, however, that device was forfeited to the United States long before this litigation commenced. See Defs.' Opp to Motion for Order to Show Cause at 11, ECF No. 118.

[2] Plaintiffs also ask that "Defendants . . . explain the process and authorization for running background checks on people for possessing nonregulated triggers." Pls.' Notice at 3 n.1. Defendants did precisely that in the declaration accompanying their notice of compliance. See Second Varisco Decl. ¶ 18, ECF No. 126-1 ("Because this Court's orders do not require ATF to return FRT-15s and WOTs to persons prohibited from possessing firearms under 18 U.S.C. § 922(g), a background check will be run on those who provide appropriate proof of membership to determine whether they are entitled to a return of their FRT-15s or WOTs.").

require ATF to aid and abet violations of state law, and Plaintiffs do not attempt to argue otherwise. Instead, Plaintiffs speculate that Defendants should not "be trusted with interpreting state law," Pls.' Notice at 4, suggesting that Defendants will incorrectly construe state law as prohibiting possession of FRT-15s and WOTs to retain seized devices. But Plaintiffs offer no basis to believe that Defendants are misinterpreting state law in this manner, and they are not. Indeed, sixteen states recently filed an *amicus* brief in the appeal from this action claiming that FRT-15s and WOTs violate certain of those states' laws and that the states will incur costs to enforce those laws against owners of those devices. *See Amici Curiae* Brief of the States, *Nat'l Assoc. for Gun Rights, Inc. v. Bondi*, No. 24-10707, ECF No. 110 at 11-14 (5th Cir. Jan. 30, 2025); *see also* Decl. of Eric Barlow ¶ 12, *Nat'l Assoc. for Gun Rights, Inc. v. Bondi*, No. 24-10707, ECF No. 84 (5th Cir. Jan. 16, 2025) ("The New Jersey Attorney General's Office interprets [N.J. Stat. Ann. § 2C:39-1(i)] as covering firearms equipped with an FRT."). That possession of FRT-15s and WOTs violates certain states' laws is therefore not ATF's own legal analysis—it is a conclusion supported by a sworn declaration from state law enforcement officials in this very litigation.

*Fourth*, Plaintiffs claim that Defendants "continue to rely on the illegal classification of FRTs as machineguns," pointing to two criminal prosecutions in the United States District Court for the District of Puerto Rico. Pls.' Notice at 4-5. But as Defendants have explained repeatedly, prosecutions and other enforcement actions are not undertaken on the basis of any "illegal classification" because ATF's classification does not carry binding legal effect apart from the statute. *See* Defs.' Opp. to Mot. for Order to Show Cause at 18, ECF No. 118; Defs.' Mem. in Supp. of Mot. for Stay at 5, ECF No. 105. And one of those prosecutions does not even implicate the FRTs at issue in this case. *See* Pls.' Notice at 4 (noting that "United States argued that the FRTs at issue in that case (Alamo-15 FRTs) might be different from the FRT-15 or WOT").

3

Moreover, this Court recognized that Defendants could continue to prosecute violations of the National Firearms Act by limiting its injunction prohibiting criminal prosecutions to "the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff to the extent that it does not interfere with other courts." Final Judgment at 2. This specification would make no sense if Defendants were enjoined from any criminal prosecutions against all individuals throughout the United States, and Plaintiffs do not argue that either of the two prosecutions identified in their notice involved individuals covered by this Court's permanent injunction.

The Fifth Circuit's decision in *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), does not alter this analysis. That case acknowledged that "a challenge to an agency regulation is necessarily a challenge to the underlying statute as well." *Id.* at 378. But Plaintiffs here did not challenge an agency regulation—they instead challenged application of a statute to a particular type of device. *See* Compl. ¶ 1, ECF No. 1 (explaining action seeks "declaratory and injunctive relief to end Defendants' arbitrary, capricious, and otherwise unlawful efforts to misclassify Forced Reset Triggers as 'machineguns' under the National Firearms Act of 1934"). Accordingly, this Court's conclusion that FRT-15s and WOTs are not machineguns does not preclude application of the criminal statute prohibiting possession of machineguns to individuals who possess different devices and, in any event, fall outside the scope of this Court's injunction.

*Fifth*, Plaintiffs argue that Defendants must return all seized forced-reset triggers, not merely seized FRT-15s and WOTs. Pls.' Notice at 6. But this Court's ruling considered only FRT-15s and WOTs, *see, e.g.*, Order at 5, ECF No. 100 ("Both the WOT and the FRT-15 operate on the same mechanical principles"), as those devices were the focus of Plaintiffs' complaint, *see id.* at 22 n.74 ("The Complaint is also full of references to the FRT-15 manufactured and sold by

4

Rare Breed Triggers."). And as this Court emphasized, the statutory "definition [of a machinegun] is solely concerned with the mechanical operation of the trigger." Order at 38. Accordingly, because different types of forced-reset triggers may mechanically operate in a different way, and because there are no standards for the designation of a device as a forced reset trigger, this Court only had occasion to consider the mechanics and rule on the legality of FRT-15s and WOTs.

Moreover, after this Court issued a preliminary injunction on October 7, 2023, ECF No. 53, Defendants repeatedly made clear that they understood this Court's orders as concerning only those two devices. *See, e.g.*, Notice of Compliance at 2, ECF No 57 ("The ATF Destruction Branch was also instructed not to destroy any FRT-15 and WOT devices in their possession."); *id.* (explaining ATF notified "its Office of Field Operations that any FRT-15 and Wide Open Trigger ('WOT') related recall efforts targeting individuals or entities named as Plaintiffs or known to be members of the Associational Plaintiffs should be stopped . . ."); Response to Plaintiffs' Notice of Non-Compliance at ¶ 5, ECF No. 99-1 ("On October 7, 2023, the Court preliminarily enjoined ATF from undertaking certain enumerated criminal enforcement and regulatory actions related to the FRT-15 and Wide Open Triggers ("WOT") forced reset triggers"); *id.* ¶ 9 ("field counsel is instructed to advise that any enforcement activities related to FRT-15s and/or WOTs against that individual or entity must be stopped if the person is not prohibited from possessing firearms").

Defendants reiterated that understanding shortly after the Court issued Final Judgment. *See, e.g.*, Defs.' Mem. in Supp. of Mot. for Stay Pending Appeal at 4 n.3, ECF No. 105 ("The record here contains 7 separate ATF investigation reports or other documents concluding that the FRT-15 or WOT—the two devices Plaintiffs have specifically placed at issue—are machineguns."); *see also* Defs.' Opp. to Mot. for Order to Show Cause at 14, ECF No. 118 (describing "reasonable efforts [undertaken by ATF] to comply with their obligations to return

FRT-15s and WOTs to identified members under the Court's orders"); *id.* at 18 (discussing "this Court's vacatur of ATF's classification of FRT-15s and WOTs as machineguns").  At no point over the course of these filings—which date back to 2023—did Plaintiffs ever raise concerns with Defendants or the Court regarding ATF's understanding of the scope of Plaintiffs' claims and the Court's orders.  Nor did they ever amend their complaint to challenge classifications of FRTs other than the FRT-15 and WOT.  Plaintiffs may not now expand the scope of this Court's orders via a notice after final judgment has been entered.

*Finally*, Plaintiffs speculate that Defendants are violating the injunction based on a Government filing in a state court civil proceeding brought by an individual that Plaintiffs claim "was involved in Rare Breed Triggers, LLC's formation and operation" where the Government was not a party.  Pls.' Notice at 6-7 & n.3.  Plaintiffs are incorrect.  In that case, the United States opposed a motion to compel production of communications between defendants, alleged confidential informants and an ATF Special Agent, arguing that the records sought were protected under the law enforcement privilege.  *See* United States' Opposition to Motion to Compel Responses and Overrule Objections to Defendant, Jose David Lopez, Propounded on 7/23/2024, *Leleux v. Lopez*, No. 22-CA-533 (Fl. 18th Jud. Circ. Feb. 7, 2025) ("United States' Lopez Opp."); United States' Opposition to Motion to Compel Responses and Overrule Objections to Defendant, Gabriela de Amorin Zipperer Habowsky, Propounded on 7/23/2024, *Leleux v. Lopez*, No. 22-CA-533 (Fl. 18th Jud. Circ. Feb. 7, 2025) ("United States' Habowsky Opp.").  Plaintiffs here claim that the United States' assertion of the law enforcement privilege establishes that there remains an ongoing federal criminal investigation of the Rare Breed Parties in violation of this Court's injunction enjoining "Defendants from pursuing criminal proceedings or criminal enforcement

6

actions against" the Rare Breed Parties "on the grounds that FRTs are 'machineguns.'" Final Judgment at 2.[3]

The United States, however, did not assert that there exists any federal *criminal* investigation ongoing after Final Judgment into the Rare Breed Parties predicated upon an assertion that FRTs are machineguns. Rather, it recognized that *at the time the communications occurred*—which long predates this litigation—"they were made during the course of a federal criminal investigation." United States' Habowsky Opp. at 1. The basis for ATF's assertion of law enforcement privilege, however, was pending civil enforcement proceedings, namely an *in rem* civil asset forfeiture action in the District of Utah, *United States of America v. Miscellaneous Firearms and Related Parts and Equipment*, 1:23-cv-00017 (D. Utah), and the ongoing civil fraud action in the Eastern District of New York, *United States v. Rare Breed Triggers, LLC*, et. al., 1:23-cv-00369 (E.D.N.Y.). *See* United States' Lopez Opp. at 5 ("Litigation pertaining to the Rare Breed Parties is ongoing in EDNY and the District of Utah, and ATF's investigation remains open."); United States' Habowsky Opp. at 5 (same). As Defendants previously explained, these proceedings are carved out from the Court's injunction, which is limited "to the extent that it does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties." Final Judgment at 2; *see also* Defs.' Opp to Motion for Order to Show Cause at 3, 17-18, ECF No. 118.

Nor does the assertion of the law enforcement privilege require prospective criminal proceedings. It is well established that the law enforcement privilege may be invoked to protect civil proceedings. *See, e.g.*, *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020)

---

[3] The Rare Breed Parties covered by this Court's orders are Rare Breed Triggers, LLC; Rare Breed Firearms, LLC; Lawrence DeMonico; and Kevin Maxwell. *See* Final Judgment at 2.

(explaining law enforcement privilege "has periodically been invoked in civil litigation when parties have sought internal FEC enforcement materials"); *United States v. Lang*, 766 F. Supp. 389, 403 (D. Md. 1991) (recognizing law enforcement privilege where "SEC has an on-going investigation of this matter from which a civil enforcement action may result").

Accordingly, nothing in the United States' submissions indicates the existence of any ongoing federal criminal proceedings in violation of the Court's injunction, and Defendants actions are therefore consistent with this Court's Final Judgment.

DATED: March 11, 2025                     Respectfully submitted,

                                          YAAKOV M. ROTH
                                          Acting Assistant Attorney General

                                          ALEXANDER K. HAAS
                                          Branch Director

                                          ANDREW I. WARDEN
                                          Assistant Branch Director

                                          <u>/s/Alexander W. Resar</u>
                                          LAURA B. BAKST
                                          MICHAEL P. CLENDENEN
                                          ALEXANDER W. RESAR
                                          Trial Attorneys
                                          Civil Division, Federal Programs Branch
                                          U.S. Department of Justice
                                          1100 L Street, NW
                                          Washington, DC 20005
                                          Phone: (202) 616-8188
                                          E-mail: alexander.w.resar@usdoj.gov

                                          *Counsel for Defendants*

## Certificate of Service

On March 11, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<em>/s/ Alexander W. Resar</em>